# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT TERRACINO and<br>BRADIE TERRACINO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 4:22-cv-3 |
| | ) | |
| TRIMACO, INC., f/k/a 2300 Gateway, Inc. | ) | |
| and | ) | |
| 2300 GATEWAY, LLC., | ) | |
| and | ) | **JURY TRIAL DEMANDED** |
| CHARLES COBAUGH, | ) | |
| and | ) | |
| DAVID C. MAY, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs Robert and Bradie Terracino ("Plaintiffs" or "Terracinos"), through their undersigned counsel, and for their Complaint against defendants Trimaco, Inc. f/k/a 2300 Gateway, Inc. ("Trimaco"), 2300 Gateway, LLC ("2300 Gateway" or "Gateway"), Charles Cobaugh ("Cobaugh"), and David C. May ("May," and each of Trimaco, 2300 Gateway, and Cobaugh a "Defendant," and collectively the "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      This is a civil action for violations of the federal Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*), patent infringement under 35 U.S.C. §271, violations of North Carolina's Unfair and Deceptive Trade Practices Act, breach of contract, fraud in the inducement, and civil conspiracy.

2.      Plaintiffs' claims arise out of actions wherein Defendants engaged in a scheme to steal the business and intellectual property from a small growing company. Specifically, the

Defendants fraudulently induced the Terracinos to enter an unconscionable patent license agreement (the "Agreement"), while knowingly paying far below market royalty rates solely to gain their trust and to learn their intellectual property.

3.     Defendants also copied the Terracinos's patented invention, filed a separate U.S. patent application claiming the Terracinos's invention, and terminated the license with the Terracinos once Trimaco received a separate U.S. Patent for a manufacturing method also invented by the Terracinos.

4.     Defendants further wronged the Terracinos by filing for patent protection for the Terracinos's invention without their knowledge and without naming the Terracinos as inventors.

5.     By and through the manufacture and sales of, at least, Trimaco's "Stay Put" canvas drop cloths, Trimaco has breached the Agreement with the Terracinos and is infringing upon the Terracinos' patent.

6.     The Terracinos are seeking injunctive and monetary relief.

## PARTIES

7.     Plaintiff Robert Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

8.     Plaintiff Bradie Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

9.     Defendant Trimaco Inc. ("Trimaco"), formerly known as 2300 Gateway, Inc., is an Ohio Corporation with its Principal Office located at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina, 27560. In addition to its Principle Office, Trimaco has offices located in St. Louis, Missouri and Surprise, Arizona. Trimaco also owns and operates manufacturing plants in Surprise, Arizona; Manning, South Carolina; Ridgefield, Washington; and Elk Grove

2

Village, Illinois. Trimaco has additional affiliated entities that may also be liable and will be added if necessary.

10.    Defendant 2300 Gateway, LLC ("Gateway") is an affiliate of Trimaco, owns the property utilized by Trimaco as its corporate headquarters, and shares the same Principle Office as Trimaco. Gateway owns the facility in North Carolina in which Trimaco has been making, using, and/or selling its infringing products.

11.    Gateway is also the registered owner of certain intellectual property that Trimaco utilizes to market and infringe upon the Terracinos's intellectual property and patent rights.

12.    Defendant Charles Cobaugh is an individual, and the owner of Trimaco, Inc. as well as other related entities. Cobaugh in his individual capacity has availed himself of the jurisdiction of this Court as, among other things, some or all of the actions taken by him to fraudulently induce the Terracinos to enter into the License Agreement were made in this jurisdiction.

13.    Defendant David C. May is an individual residing in North Carolina, a co-owner and the Vice President and Southeast Regional Sales Manager of Trimaco. He is also a managing member of Gateway. May is also a named inventor on the patent application filed by Trimaco claiming the Terracinos's invention.

## JURISDICTION AND VENUE

14.    The Court has jurisdiction to hear this matter as the claims herein arise from Trimaco transacting business in and infringing Terracinos' patent in this jurisdiction. This Court also has personal jurisdiction over Trimaco as Trimaco's corporate headquarters and Principle Office are located in Wake County at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560. Trimaco is also a foreign corporation registered with the North Carolina Secretary

3

of State to do business in this jurisdiction, and has therefore availed itself to the laws and protections of the State of North Carolina. Accordingly, this Court has jurisdiction over Trimaco, and venue in this District is proper under 28 U.S.C. § 1400(b).

15. Jurisdiction and venue are also proper as to 2300 Gateway, LLC as it is a North Carolina limited liability company with its primary business address in Wake County at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560.

16. Jurisdiction and venue are also proper in this jurisdiction as to Trimaco and the individual defendants Cobaugh and May as the misrepresentations inducing the Terracinos to enter into the Agreement at issue were made in the Trimaco corporate headquarters in this District. The trade secrets were also misappropriated by Trimaco in North Carolina, were communicated to the same corporate officers located at the Trimaco corporate headquarters, and the trade secrets were appropriated by Trimaco in this District for a patent application that matured into an issued patent (albeit naming the wrong inventors).

17. By and through those same actions taking place in the Eastern District of North Carolina, Defendants breached the Agreement and enacted the civil conspiracy. This Court has pendant jurisdiction over the North Carolina claims for violations of the North Carolina Trade Secrets Protection Act (N.C. Gen. Stat. § 66-152 *et seq.*), the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 *et seq.*), and the North Carolina common law claim for civil conspiracy.

## **FACTUAL BACKGROUND**

### **The Terracinos's Patent and Formation of the License Agreement**

18. Plaintiffs Robert and Bradie Terracino (the "Terracinos") are a couple living in Virginia Beach, Virginia. Robert Terracino retired from a painting business.

4

19.     As a result of their experience with painting and painting related technology, the Terracinos developed a layered drop cloth that in addition to providing protection for floors and other surfaces also provides a bottom surface creating high friction allowing the drop cloth to protect a floor or other surface without slipping and without harming the surface on which the drop cloth is utilized.

20.     The Terracinos filed a patent application directed to this first invention, and were ultimately issued U.S. Patent No. 9,044,917 ("the '917 patent") on June 2, 2015 directed to their "Non-Skid Protective Cloth or Pad."  The '917 Patent is valid and enforceable.  A true and correct copy of the '917 patent is attached as Exhibit 1.

21.     Seeking to monetize their invention, the Terracinos began confidential discussions with Cobaugh, the owner of Trimaco, regarding their patented invention and the possibility of Trimaco manufacturing and selling their invention.

22.     After speaking with Cobaugh on June 18, 2015, the Terracinos sent images, video, and a sample of the invention to Cobaugh demonstrating their patented drop cloth (the "Drop cloth").

23.     At least one element of the invention, the non-skid bottom layer, was a new concept to Cobaugh and he admitted to the Terracinos that he had no idea where he would obtain the material.

24.     The Terracinos, with the understanding that doing so would be confidential and subject to the formation and execution of the Agreement being negotiated, provided Cobaugh with the information needed to obtain the material to create the non-skid bottom layer.

25.     Cobaugh indicated to the Terracinos that he would manufacture numerous sizes of the Drop Cloth on the Terracinos's behalf, and that he would market it globally.

5

26.     From June through October, 2015, the Terracinos continued conversations with Cobaugh related to their invention for the purpose of, among other things, licensing their invention to Trimaco.

27.     Cobaugh enticed the Terracinos to enter into the Agreement by telling them, in an October 26, 2015 email, that "I think we could sell at least $1 million dollars by the end of 1½ - 2 years and then double that in 4-5 years." In that same email, Cobaugh advised that they would have their attorney draft the Agreement and did, in fact, provide the Agreement to the Terracinos.

28.     Cobaugh also represented to the Terracinos that the royalties would include sales outside of the United States.

29.     Cobaugh proposed a 5-year license to the Terracinos with a 2% royalty rate.

30.     A 2% royalty rate was far below what the industry norms would provide for and less than the royalty rates that he told the Terracinos Trimaco typically paid (3-5%). Cobaugh represented that the lower rate was justified because the Trimaco product would technically not infringe the Terracinos's patent, and therefore no royalty payment was actually required at all. Cobaugh made this representation knowing it was false.

31.     Cobaugh also advised the Terracinos that their royalty rate would be a percentage of Trimaco's net sales, which he defined as "[g]ross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale."

32.     Despite Cobaugh's assertions of what the "net sales" were, the Agreement itself, however, states that net sales are "[Trimaco's] gross sales less outbound freight, sales commissions, and other customer givebacks such as COOP, rebates, and other allowances and, further, less any *bona fide* returns (net of all returns actually made or allowed as supported by

6

credit memoranda actually issued to the customers) up to the amount of the actual sales of Royalty-Bearing Products during the Royalty Period." Because the Terracinos's royalty is based upon "net sales," Cobaugh's misrepresentations as to net sales were directed at a material term of the Agreement.

33. Upon receiving the Agreement from Trimaco, the Terracinos reminded Cobaugh that the proposed royalty rate was lower than what he had indicated as typical royalty rates paid by Trimaco. Cobaugh responded by offering two options: first, the 2% royalty on net sales for 5 years; or two, a $10,000.00 up front fee plus the 2% royalty over 5 years but Trimaco would own the Terracinos's Patent.

34. Despite that, Cobaugh followed up on October 29, 2015, claiming that "your patent doesn't apply to us since it has to do with sewing the backing on to the cloth (which we are not doing). Therefore, we do not want the patent so option 2 is not a good offer. In good faith, however, we will still agree to honor the 2% royalty for 5 years, and I hope we sell millions of $'s of these so that your royalty will be a big number." That was a false statement of material fact as the Stay Put drop cloth manufactured, imported, and sold by Trimaco within the United States and worldwide does, in fact, infringe the Terracinos's patent.

35. The Terracinos do not own a large business and are unsophisticated when it comes to patent license agreements; they did not understand that the proposed royalty rate was significantly lower than market rates for similar technologies and that they were entitled to more. They relied on the false material representations from one or more Defendants.

36. Market rates for similar technologies are two to four times the royalty rate offered to the Terracinos.

37.     By enticing the Terracinos with the threat of Trimaco manufacturing and selling Drop Cloths that as a matter of material fact infringe upon the Terracinos's '917 patent but convincing them otherwise, Trimaco and Cobaugh fraudulently induced the Terracinos into entering into the Agreement.  That statement by Cobaugh was a false statement of a present material fact.

38.     A true and correct copy of the Agreement as ratified by the Terracinos is attached as Exhibit 2.

39.     Although the Agreement provides that the Terracinos are entitled to a royalty based upon net sales of the invention, the Agreement provides them with no ability to meaningfully audit or monitor the royalty payments.

40.     Section 4.A. of the Agreement provides, in part, that "[i]n no event shall [the Terracinos] have the right to examine information with respect to [Trimaco's] costs, pricing formulas, or percentages of markup."

41.     Section 4.A. is unconscionable as it leaves the Terracinos with no way to determine, even upon inspection of what information § 4.A. of the Agreement provides, what the royalty paid to them was based upon.

42.     Cobaugh told the Terracinos in October of 2015 that their royalty would be 2% of Trimaco's "net" which he defined as follows:  "[g]ross sales less all customer givebacks and prepaid freight ie what we net out of the sale. If we sell something for $1 and we pay the freight carrier 8 cents and the customer deducts 12 cents for coop and rebates and warehouse allowances, then we net 80 cents out of that sale transaction."

43.     The Terracinos relied upon that representation when entering into the Agreement.

44. Despite that reassurance, the Agreement provided that "sales commissions" would also be deducted from the gross sales.

45. Trimaco further provided in the Agreement that Trimaco had the unilateral power to terminate the Agreement at any time. Agreement, § 6.C.

46. The Terracinos ratified the Agreement on February 10, 2016.

47. On June 25, 2018, the Agreement was assigned to 2300 Gateway, Inc. *See* Assignment and Assumption Agreement attached as Exhibit 3.

48. Trimaco gave notice on February 10, 2021 of its intent to terminate the Agreement. *See* termination letter attached as Exhibit 4.

49. Until the termination letter was sent, the Terracinos were entirely dependent upon the licensing royalties for income.

**Defendants Misappropriated the Terracinos's Intellectual Property and
Filed for US and Foreign Patent Protection of the Terracinos's Invention Without Naming
the Terracinos**

50. During discussions leading up to the formation of the Agreement, the Terracinos, understanding that doing so was part of and subject to the formation of the Agreement and done so confidentially as part of that process, provided Cobaugh with proprietary information related to the design, structure, and manufacture of the Drop Cloths.

51. Cobaugh promised that, as part of their agreement, he and Trimaco would prepare and file a patent application naming the Terracinos as co-inventors that would include the Terracinos's follow-on invention of providing a middle, impervious layer to the Drop Cloth.

52. Unbeknownst to the Terracinos, however, Cobaugh and Trimaco had been working behind the scenes to file a patent application capturing, in whole or in part, the inventive material provided by the Terracinos to Trimaco, Cobaugh, and David May ("May"). That patent application, U.S. Provisional Pat. App. No. 62/249,806 for "Slip-Resistant Protective Mat" was

9

filed on November 2, 2015 ("the '806 application"), just four days after Cobaugh told the Terracinos that the Stay Put drop cloths did not infringe the '917 Patent, and the '806 application did not name the Terracinos as inventors or co-inventors.

53.    The '806 application and the subsequent applications and patents enumerated below all list David May ("May") as the first named inventor.

54.    Despite having already filed the '806 application claiming the elements of what was actually the Terracinos's invention, in a conversation on November 3, 2015 between the Terracinos and Cobaugh, Cobaugh again discussed filing a patent application naming the Terracinos that included what had already been filed in the '806 application but withheld the material fact that Trimaco had already filed the '806 application.

55.    Trimaco subsequently filed Patent Cooperation Treaty (PCT) Application No. PCT/US2016/060109 (the "PCT Application") on November 2, 2016, claiming the benefit of the '806 application but again failing to name the Terracinos as inventors or co-inventors and without providing notice to the Terracinos. The PCT Application was subsequently nationalized in the United States as U.S. Pat. App. No. 15/770,913, filed on April 25, 2018 ("the '913 Application"). A true and correct copy of the file wrapper for the PCT application is attached herein as Exhibit 5.

56.    The '913 Application subsequently issued as U.S. Pat. No. 10,683,607 on June 16, 2020, a true and correct copy of which is attached as Exhibit 6.

57.    Trimaco also extended the PCT Application into Great Britain (App. No. GB2557836, currently pending) and China (App. No. CN108698359, currently pending);

58.    The claims as filed in the PCT Application and the '913 Application included the elements described and claimed in the Terracinos's '917 Patent and the '913 Application and the

issued '607 patent specifically state in the specification that "in some embodiments, the first layer, the second layer, and the third layer are connected through a first process and a second process that is different from the first process. In some embodiments, the first process is lamination and the second process is stitching."

59.     In addition, the claims as filed with the '806 provisional application include the use of stitching in fastening the layers of the Terracino Drop Cloth despite Cobaugh's claim that Trimaco's product (embodied in the application) did not infringe because it did not include stitching.  *See* Exhibit 5, p. 36 claim 11.  The infringing drop cloth has been and continues to be manufactured and sold with stitching.

60.     Trimaco, rather than properly marking the Drop Cloth with the Terracinos's patent, marked the Drop Cloth packaging with "Patent Pending," referencing the pending application(s) filed by Trimaco.

61.     To this day, the Stay-Put drop cloth as manufactured, imported, and sold by Trimaco infringes each and every element of at least one claim of the '917 Patent.  *See* Opinion Regarding Infringement of U.S. Patent No. 9,044,917 B1, attached as Exhibit 7.  Trimaco continues to manufacture, cause to be manufactured, import, export, and sell the infringing Stay Put drop cloths not only in the United States but globally as well.

62.     Trimaco makes and sells the Stay Put drop cloths in two versions; the Stay Put Canvas with a canvas layer and a surface grip layer, and the Stay Put Canvas Plus drop cloth further incorporating a liquid barrier layer in between the canvas layer and the surface grip layer.

63.     Trimaco's infringing Stay Put products are ubiquitous and are sold, in part, by Amazon.com, Home Depot, Lowe's, Blain's Farm and Fleet, MyTarp.com, Harbor Freight

Tools, Mutual Screw & Supply, W.W. Grainger, Inc. (Grainger Industrial Supply), Ace Hardware, and Sherwin-Williams, among others.

64.    The Trimaco Stay Put drop cloths include each and every element of Claim 1 of the Terracinos's '917 Patent, specifically:

a.    A non-skid protective cloth or pad;

b.    a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

c.    a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being

d.    greater than said height of bumps having said larger of said at least two circumferential sizes; and

e.    stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer; whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75.

## COUNT I

### FRAUD IN THE INDUCEMENT AGAINST
### CHARLES COBAUGH, INDIVIDUALLY

65.     Plaintiffs hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

66.     Cobaugh, individually, induced the Terracinos to enter into the Agreement by misstating or concealing material facts as detailed above, including among other things withholding the material fact that Trimaco intended to and had filed a patent application (the '806 application and its progeny) claiming the Terracinos's invention.  These statements and omissions were intended to and did in fact deceive the Terracinos into entering the Agreement and into disclosing their inventions and trade secrets.

67.     Cobaugh intended the Terracinos to rely on his false representations and omissions.

68.     Plaintiffs relied on the false representations and intentional omissions made by Cobaugh.

69.     As a direct and proximate cause of the false representations and intentional omissions made to them by Cobaugh, and their reliance on same, the Terracinos have been damaged in an amount to be proven at trial.

70.     The Terracinos have no adequate remedy at law for the Cobaugh's foregoing wrongful conduct.

### COUNT II
### FRAUD IN THE INDUCEMENT AGAINST TRIMACO

71.     The Terracinos hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

72.    Trimaco, by and through Cobaugh, induced the Terracinos to enter into the Agreement by misstating or concealing material facts as detailed above, including among other things withholding the material fact that Trimaco intended to and had filed a patent application (the '806 application and its progeny) claiming the Terracinos's invention. These statements and omissions were intended to and did in fact deceive the Terracinos into entering the Agreement and into disclosing their inventions and trades secrets.

73.    Trimaco intended the Terracinos to rely on its false representations and omissions.

74.    Plaintiffs relied on the false representations and intentional omissions made by Trimaco.

75.    As a direct and proximate cause of the false representations and intentional omissions made to them by Trimaco, and the Terracinos's reliance on the same, the Terracinos have been damaged in an amount to be proven at trial.

76.    The Terracinos have no adequate remedy at law for the Defendants' foregoing wrongful conduct.

**COUNT III**
**IN THE ALTERNATIVE BREACH OF LICENSE AGREEMENT**

77.    The Terracinos hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

78.    The Terracinos and Defendants entered into the Patent License Agreement attached as Exhibit 2 in 2016.

79.    The Patent License Agreement is valid and legally binding.

80.    Trimaco assigned its obligations under the Patent License Agreement to 2300 Gateway (see Ex. 3) on June 25, 2018.

81. Trimaco and/or 2300 Gateway breached the Agreement by, among other things, failing to make the complete royalty payments to the Terracinos as required by the Agreement, misusing the Terracinos's trade secret and other proprietary information to file Trimaco's own patent application directed to the same, and failing to give notice to the Terracinos regarding Trimaco's patent applications directed to the Terracinos's invention.

82. As a direct result of Defendants' breach, the Terracinos have been damaged in an amount to be proven at trial.

## COUNT IV
## VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *et seq.*, AGAINST DAVID MAY, INDIVIDUALLY

83. The Terracinos hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

84. The Terracinos had knowledge and information as detailed above that was unknown to others, including May and Trimaco, that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, others who would exploit that disclosure for economic gain.

85. At all relevant times, the Terracinos took reasonable steps to maintain the secrecy of such information.

86. Understanding that May and Trimaco had a duty to maintain the secrecy of such information and not exploit such information for their own gain, the Terracinos disclosed the information to May and Trimaco.

87. May misappropriated the Terracinos' trade secret, and the trade secret is related to a product – the Drop Cloth – used in interstate commerce. The misappropriation was the direct and proximate cause of harm to the Terracinos.

88. The Terracinos have been damaged in an amount to be proven at trial.

## COUNT V
### VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *et seq.*, AGAINST TRIMACO

89. Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

90. The Terracinos had knowledge and information as detailed above that was unknown to others, including May and Trimaco, that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, others who would exploit that disclosure for economic gain.

91. At all relevant times, the Terracinos took reasonable steps to maintain the secrecy of such information.

92. Understanding that May and Trimaco had a duty to maintain the secrecy of such information and not exploit such information for their own gain, the Terracinos disclosed the information to May and Trimaco.

93. Trimaco misappropriated the Terracinos' trade secret, and the trade secret is related to a product – the Drop Cloth – used in interstate commerce. The misappropriation was the direct and proximate cause of harm to the Terracinos.

94. The Terracinos have been damaged in an amount to be proven at trial.

## COUNT VI
### UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF N.C. GEN. STAT. § 75-1.1 AGAINST TRIMACO

95. Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

96.     At all relevant times, Trimaco is and was engaged in commerce in North Carolina as defined by chapter 75 of the North Carolina General Statutes.

97.     The wrongful conduct of Trimaco in commerce in at least North Carolina, as alleged above and including at least its fraudulent inducement of the License Agreement and intentional failure to properly mark its Drop Cloths with the Terracinos's patent information, affects the Terracinos rights in North Carolina and constitutes unfair and deceptive acts and practices.

98.     Trimaco's actions and false statements were deceptive and designed to intentionally and unfairly compete with the Terracinos. Such wrongful acts which have injured and will continue to injure the Terracinos have resulted in, and will continue to result in damages to the Terracinos in North Carolina and beyond.

99.     As a direct and proximate result of this unfair and deceptive conduct, the Terracinos have been damages and are entitled to a judgment against Trimaco for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

100.     The Terracinos  are also entitled to an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## <u>COUNT VII</u>
**IN THE ALTERNATIVE, DECLARATORY JUDGMENT THAT THE PATENT LICENSE AGREEMENT IS INVALID FOR UNCONSCIONABILITY IN VIOLATION OF N.C. GEN. STAT. § 25-2-302.**

101.     Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

102.     Defendants have been exercising and continue to exercise purported rights afforded to them from the Patent License Agreement that is unconscionable and unenforceable.

17

103.    By and through the actions and inactions of both Trimaco and Cobaugh, the Terracinos are the victims of unfair bargaining in negotiating that caused them to enter into the License Agreement.

104.    By and through the actions and inactions of both Trimaco and Cobaugh, the Terracinos are subject to have unfair substantive terms contained within the License Agreement.

105.    Trimaco exerted undue influence on the Terracinos and leveraged its unequal bargaining power to induce the Terracinos to accept the unconscionable terms of the License Agreement.

106.    The Terracinos, as a result of the unfair bargaining and the unfair substantive terms were left without a real, meaningful choice regarding both the existence of and the terms of the License Agreement.

107.    As a result, the License Agreement is unconscionable and should be found to be invalid and unenforceable.

## COUNT VIII
## CORRECTION OF INVENTORSHIP OF
## UNITED STATES PATENT NO. 10,683,607

108.    Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

109.    This claim arises out of the failure of Trimaco to identify the proper inventors of the invention embodied in U.S. Patent No. 10,683,607.

110.    The '607 Patent identifies May, Yichen Wang, and Akashdeep Khera as inventors. However, the invention claimed in the '607 Patent includes and claims elements derived by one or more Defendants from trade secret information conceived of and developed by the Terracinos.

18

111.    The Terracinos were intentionally omitted by Trimaco as named inventors from the '607 Patent.

112.    Trimaco intentionally misidentified the inventors listed on the '607 Patent knowing that the Terracinos actually conceived of and contributed to the claims of the '607 Patent.

113.    Pursuant to the provisions of 35 U.S.C. § 256, an order directing that the '607 Patent be corrected to reflect the Terracinos as inventors should issue. The Court should further direct Trimaco and/or the U.S. Patent and Trademark Office to correct inventorship accordingly.

<u>COUNT IX</u>

**PATENT INFRINGEMENT UNDER 35 U.S.C. § 271**

114.    Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

115.    The Terracinos own all right, title, and interest in U.S. Patent No. 9,044,917.

116.    The '917 Patent is valid and enforceable.

117.    By and through their actions above, Trimaco has been and continues to infringe the '917 Patent by making, using, and selling its drop cloths, including but not limited to Trimaco's Stay Put drop cloth product, that meet each and every element of at least one claim of the '917 Patent, including at least each and every element of claim 1.

118.    Trimaco has at all relevant times had actual knowledge of the '917 Patent.

119.    Trimaco's infringement has at all relevant times been and continues to be willful, and done with the intention to illegally profit from its infringement of the Terracinos patent.

120.    The Terracinos have sustained injury and damage caused by Defendants' conduct.

19

121. The Terracinos have suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

122. The Terracinos have been damaged in an amount to be proven at trial.

123. By virtue of Defendants' actual knowledge of the 917 Patent at all relevant times, the Terracinos are entitled to pre-suit damages.

## COUNT X
## CIVIL CONSPIRACY AGAINST ALL DEFENDANTS UNDER NORTH CAROLINA COMMON LAW

124. Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

125. The Defendants colluded and agreed to commit the wrongful acts identified herein, and in particular agreed, among other things, to fraudulently induce the Terracinos to enter into the Agreement as well as inducing the Terracinos to provide confidential information to Defendants.

126. The Defendants fraudulently convinced the Terracinos to enter into the Agreement and provide the confidential information to the Defendants, thereby acting in furtherance of the unlawful acts agreed to among the Defendants.

127. The Terracinos have sustained injury and damage caused by Defendants' conduct.

128. The Terracinos have suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

129. The Terracinos have been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor against the Defendants on all counts and as follows, that the Defendants be found liable for the claims asserted and that Plaintiffs be awarded compensatory damages, enhanced and exemplary damages

20

based on Defendants willful conduct and willful patent infringement, treble damages pursuant to N.C. Gen. Stat. § 75-1.1 *et seq.*; reasonable attorneys' fees; an order causing the Terracinos to be named as inventors on the '607 Patent and such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs demand trial by jury.

**ROBERT TERRACINO AND BRADIE TERRACINO**

Dated: January 7, 2022

By: */s/ Robert C. Van Arnam*
Robert C. Van Arnam (N.C. Bar No. 28838)
Andrew R. Shores (N.C. Bar No. 46600)
**WILLIAMS MULLEN**
P.O. Box 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax: (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

Of Counsel

Duncan G. Byers, Esq.
Va. Bar ID #48146
PATTEN, WORNOM, HATTEN & DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone:    (757) 223-4500
Facsimile:    (757) 249-1627
dbyers@pwhd.com
*Counsel for the Plaintiffs,*
*Robert and Bradie Terracino*