# TannerIP PLLC

**Patent Attorneys And Intellectual Property Counsel**

Daniel A. Tanner, III
dan@TannerIP.com
www.TannerIP.com
Office:   (703) 232-1160, Ext. 101

**VIA EMAIL**

January 6, 2022

Robert and Bradie Terracino
3017 Egyptian Lane
Virginia Beach, Va. 23456

      Re:    Opinion Regarding Infringement of
                   U.S. Patent No. 9,044,917 B1

Dear Robert and Bradie:

You engaged our Firm, via counsel, to review and investigate the potential infringement of U.S. Patent No. 9,044,917 B1 ("the 917 patent") to Terracino et al., which issued on June 2, 2015, and is entitled "Non-Skid Protective Cloth or Pad." Your counsel, Mr. Duncan Byers, provided us with a sample of a particular commercially-available non-skid backed drop cloth ("sample non-skid drop cloth"), and certain high resolution photos of portions of the sample non-skid drop cloth on which to base our evaluation and analysis.

### I. Executive Summary

Our analysis was informed and conducted by first reviewing the specification and claims of the 917 patent, as issued. We also reviewed, in requisite detail, the prosecution history of the 917 patent in the U.S. Patent and Trademark Office ("USPTO") to ascertain the existence and scope of any possible prosecution history estoppels that a putative infringer may be able to exploit in any attempt to limit the scope of any claim term or terms. Next, we evaluated the claims of the 917 patent as those claims, and terms and phrases therein, may be construed by the district court in any infringement action in which the 917 patent is asserted.[1] Ultimately then, we compared the features of the sample non-skid drop cloth with the claims of the 917 patent, as we believe those

---

[1] *See generally Markman v. Westview Instruments*, 52 F.3d 967 (Fed. Cir. 1995) *aff'd* 517 U.S. 370, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996).

claims should reasonably be construed by the district court. We detail our evaluation and analysis in this regard below.

This letter confirms our opinion that U.S. Courts and the U.S. International Trade Commission (ITC) should hold at least independent claims 1 and 6 of the 917 patent, as well as most, if not all of the dependent claims, valid[2] and infringed by the sample non-skid drop cloth, which we were provided for our evaluation and analysis.

## II. <u>Legal Standard</u>

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States ... during the term of the patent." 35 U.S.C. § 271(a). Courts employ a two-step analysis in making an infringement determination. *See Markman,* 52 F.3d at 976. "First, the court determines the scope and meaning of the patent claims asserted ... [Second,] the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc) (citations omitted). Construction of the claims is a question of law undertaken by the judge in the district court. *See id*; *see also Markman*, 52 F.3d at 967. Comparison of the claim to the accused device, requires a determination that every claim limitation be found in the accused device as those limitations have been construed for the purposes of litigation. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The application of a properly construed claim to an accused device is a question of fact, which is reviewed for substantial evidence. *See, e.g.*, *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-1130 (Fed. Cir. 2011) ("Infringement, whether literal or under the doctrine of equivalents, is a question of fact.").

"To establish literal infringement, *every limitation set forth in a claim must be found in an accused product, exactly.*" *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.

---

[2] *See, e.g.*, *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 973 (Fed. Cir. 1986) ("Under 35 USC § 282, a patent is presumed valid, and one attacking validity has the burden of proving facts supporting a conclusion of invalidity by *clear and convincing evidence*. Where prior art not considered by the examiner is introduced at trial, the challenger's sustaining of the burden of proof *may be facilitated*, but the presumption remains the same and the burden remains on the challenger throughout the litigation." (emphasis added)).

Cir. 1995) (emphasis added). "Patent infringement, whether literal or by equivalence, is an issue of fact, which the patentee must prove by a preponderance of the evidence." *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1279 (Fed. Cir. 2011).

The language of the claims "determine[s] what 'the applicant regards as his invention.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting 35 U.S.C. §112). "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1315; *see also Kyocera Wireless Corp. v. ITC*, 545 F.3d 1340, 1347 (Fed. Cir. 2008) ("[T]his court does not interpret claim terms in a vacuum, devoid of the context of the claim as a whole."). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313. "The scope of the claims [must] be sufficiently definite to inform the public of the bounds of the protected invention, *i.e.*, what subject matter is covered by the exclusive rights of the patent." *Halliburton Energy Svcs, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008) (often referred to as "the *public notice function* of patent claims." (emphasis added)). "[W]here a claim is ambiguous as to its scope [courts] have adopted a narrowing construction when doing so would still serve the notice function of the claims. *Id.* at 1253. "Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." *Phillips,* 415 F.3d at 1314 (Sources include "the words of the claims [], the remainder of the specification, the prosecution history, and extrinsic evidence … and the state of the art."). Importantly, "Courts do not rewrite claims; instead, [courts] give effect to the terms chosen by the patentee." *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1364 (Fed. Cir. 1999).

### III. Background

#### A. Overview of the 917 Patent

As you are aware, the 917 patent issued on June 2, 2015 from U.S. Patent Application No. 14/044,130 ("the 130 application"), which was filed on October 2, 2013 as a continuation-in-part

of U.S. Patent Application No. 12/460,763 filed, in turn, on July 27, 2009, and now abandoned. The 917 application is directed to a two-layer, non-skid protective cloth or pad for use generally as a painter's drop cloth, or as a protective pad for surfaces where a non-skid pad may be essential. *See generally* the Abstract of the Disclosure of the 917 patent.

The 130 application was filed with 20 claims. *See* Appendix. Originally-filed claims 1 and 10 were independent claims. Originally-filed dependent claims 2-9 and 19 depend from claim 1. Originally-filed dependent claims 11-18 and 20 depend from claim 10.

The 130 application was subject to a non-final rejection ("Office Action") mailed by the USPTO on May 30, 2014. The May 30 Office Action raised certain formalities objections, and separately rejected all of pending original claims 1-20 as allegedly being rendered obvious by various combinations of asserted prior art references. A review of the May 30 Office Action reveals that the particular obviousness rejections raised by the USPTO examiner do not appear to be well grounded.

Nonetheless, in a response filed in the USPTO on August 21, 2014, the applicant amended claims 1, 10 and 19 to specify that the previously-recited "means for fastening" the layers together in these claims was limited to "stitching disposed through" those layers. Applicants' representative had spoken with the examiner to determine (and agree) that none of the references that had been previously applied by the USPTO, alone or in combination, included such a feature. Claims 9 and 18, which had specified stitching and other "means for fastening" were contemporaneously canceled. Certain other non-consequential administrative changes were made to claims 1, 4 and 10.

A detailed review of the applicants' arguments set forth in its August 21 response reveals that the *only* limitation on which the applicants' relied in distinguishing the applied prior art references, and the claim rejections based thereon, was the "stitching" feature that the examiner had apparently acknowledged in discussion with applicants' representative was not present in any of the then particularly-applied references.

A final rejection ("Final Office Action") was mailed by the USPTO on October 31, 2014. The October 31 Final Office Action rejected all of the then-pending claims as allegedly being rendered obvious by various combinations of previously-asserted prior art references, with the

addition of a new reference that was allegedly combinable with the other references and included a "stitching" component. Again here, a detailed review of the Final Office Action reveals that the particular obviousness rejections do not appear to be well grounded at least as to the combinability of the applied references. It appears as though the USPTO examiner improperly applied a level of hindsight reasoning based on the roadmap provided by applicants' disclosure of its invention in the specification of the 130 application to allege that the claims are rendered obvious over the various combinations of applied references that are otherwise likely not combinable in the manner suggested by the Final Office Action.

Regardless, applicants filed a response on December 27, 2014 that amended claim 1 to substantially include the features of claims original 4, 6 and 7, which were in turn canceled; and amended claim 10 to substantially include the features of original claims 13, 15 and 16, which were also in turn canceled. Claims 19 and 20 were also separately canceled.

A detailed review of applicants' arguments set forth in the December 27 response to the Final Office Action reveals that applicants simply argued that given the detail of the lower surface configuration now recited in each of independent claims 1 and 10, the then-pending obviousness rejections enumerated in the Final Office Action were overcome.

Importantly, nowhere in the prosecution history of the 130 application did the applicants make any arguments regarding the features enumerated in the claims that can be considered or asserted by a putative infringer to limit the ordinary and customary meaning of any of the features recited in the claims of the 917 patent. *See Phillips*, 415 F.3d at 1313.

After amendment of the claims in the December 27 response, the 130 application proceeded to allowance and issue according to normal procedures within the USPTO without further revision. In an April 3, 2015 Notice of Allowance, the USPTO stated, as Reasons for Allowance, that "the closest prior art, [in any] combinations fail to teach or suggest the limitation requiring that the 'downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes', in combination with the remaining limitations of the claims." The claims of the 917 patent, as issued, are particularly listed and reviewed below.

The 3.5 year maintenance fee for the 917 patent was timely paid on November 16, 2018. The window for paying the 7.5 year maintenance fee for the 917 patent does not open until June 2, 2022.

Applicants' two-year window for filing a broadening reissue application has long since closed.

**B. Overview of the Issued Claims of the 917 Patent**

The 917 patent issued with 10 claims, as follows:

1. A non-skid protective cloth or pad, consisting of:

   a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper <u>major surface</u> and a lower major surface;

   b) a single lower, resilient layer having an upper <u>major surface</u> and a lower major surface, said upper major surface of said single lower<u>,</u> resilient layer being disposed adjacent said lower [[layer ]]<u>major surface</u> of said single, absorbent, <u>plain</u> woven upper layer, said <u>single,</u> lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having [[the ]]<u>a</u> smaller of said at least two different circumferential sizes being greater than said height of bumps having [[said ]]<u>a</u> larger of said at least two circumferential sizes; and

   c) stitching disposed through both said single, absorbent, [[upper, ]]<u>plain</u> woven <u>upper</u> layer and said single lower<u>,</u> resilient layer;

   whereby when said lower major surface of said single lower<u>,</u> resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75.

2. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, <u>plain</u> woven[,] upper layer comprises a plain woven cotton fabric.

3. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, <u>plain</u> woven[,] upper layer comprises canvas.

4. The non-skid protective cloth or pad as recited in claim 1, wherein said downward projecting bumps comprise a shape selected from [[the ]]a group consisting of: spherical, quasi-spherical, and amorphous.

5. The non-skid protective cloth or pad as recited in claim 1, wherein said downward projecting bumps are separated one from another by an inter-bump space.

6. A non-skid protective cloth or pad, consisting of:

    a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper major surface and a lower major surface;

    b) a single lower, resilient layer having an upper major surface and a lower major surface, said upper major surface of said single lower, resilient layer being disposed adjacent said lower [[layer ]]major surface of said single, absorbent, plain woven upper layer, said lower major surface comprising said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having [[the ]]a smaller of said at least two different circumferential sizes being greater than said height of bumps having [[said ]]a larger of said at least two circumferential sizes; and

    c) stitching disposed through both said single, absorbent, [[upper, ]]plain woven upper layer and said single lower, resilient layer;

    whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°.

7. The non-skid protective cloth or pad as recited in claim 6, wherein said single, absorbent, plain woven[[,]] upper layer comprises a plain woven cotton fabric.

8. The non-skid protective cloth or pad as recited in claim 6, wherein said single, absorbent, plain woven[,] upper layer comprises canvas.

9. The non-skid protective cloth or pad as recited in claim 6, wherein said downward projecting bumps comprise a shape selected from [[the ]]a group consisting of: spherical, quasi-spherical, and amorphous.

10. The non-skid protective cloth or pad as recited in claim 6, wherein said downward projecting bumps are separated one from another by an interbump space.

The language of the claims is (1) clear on its face, (2) clear in the context of the claims; and (3) clear as supported by the specification of the 917 patent, without resort to the prosecution history that does not further inform any of the meanings of any of the claim terms beyond the primary sources. *See Phillips,* 415 F.3d at 1314 (Primary sources for interpretation of the language of the claims include "the words of the claims [and] the remainder of the specification."). We believe that, with reference to the claims and the specification, the district court could easily "give effect to the terms chosen by the patentee" in its claims. *K-2 Corp.*, 191 F.3d at 1364.

We provide marks in the claims above to highlight that there may be one or more antecedent basis issues that a putative infringer might attempt to raise in an argument that the claims are indefinite.

The patent owner's arguments in response to any such specious allegations raised by a putative infringer in claim construction in any action brought for infringement of the 917 patent include that none of these potential antecedent basis issues, of which the patent owner is aware, renders the claims indefinite as the claims are subject to clear interpretation by those of skill in the art. "[A] patent is [only] invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, *fail to inform*, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901, 134 S. Ct. 2120, 189 L. Ed. 2d 37 (2014). Replacing the previous Federal Circuit "insolubly ambiguous" standard, the Court stated "[t]he definiteness requirement, so understood, mandates clarity, while recognizing that absolute precision is unattainable. The standard [the Court adopted] accords with opinions of this Court stating that 'the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.'" *Id.* at 910 (quoting *Minerals Separation, Ltd. v. Hyde*, 242 U.S. 261, 270, 37 S. Ct. 82, 61 L. Ed. 286 (1916)).

The above "corrections," to any extent that they may be required in claim construction, are of a manner that the district court can make. "It is well-settled law that, in a patent infringement suit, a district court may correct an obvious error in a patent claim." *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353, 1358 (Fed. Cir. 2011) (citing *I.T.S. Rubber Co. v. Essex Rubber Co.*, 272 U.S. 429, 442, 47 S. Ct. 136, 71 L. Ed. 335) (1926)). A district court can correct a patent if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Id.* at 1357.[3]

## IV. Analysis

The sample non-skid drop cloth literally infringes each of independent claims 1 and 6 of the 917 patent because every limitation set forth in each claim is found in the sample non-skid drop cloth, exactly according to the analysis below. *See Southwall Techs., Inc.,* 54 F.3d at 1575.

### A. Independent Claim 1

1. A non-skid protective cloth or pad, consisting of:

    It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

    a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

    It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

    b) a single lower, resilient layer having an upper and a lower major surface,

    It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

---

[3] An alternative, although not required or even recommended here, would be to submit the 917 patent for reissue as it is long settled that correcting antecedent basis is a proper ground for reissue. *See In re Altenpohl*, 500 F.2d 1151, 1157 (CCPA 1974) ("[W]e hold that lack of antecedent basis in claim 11 is a proper ground for reissue under 35 USC 251.").

said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer,

>It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid,

>A close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

said downward projecting bumps comprising bumps having at least two different circumferential sizes,

>The same close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the sample non-skid drop cloth includes this feature of the claim, *i.e.*, "bumps having *at least two different* circumferential sizes" (emphasis added).

said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and

>The same close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the there are instances in the sample non-skid drop cloth specifically includes this feature of the claim, *i.e.*, a "height of bumps having [smaller] circumferential sizes being greater than [a] height of bumps having [] larger [] circumferential sizes." It should be noted that this "height" relationship need not exist in all circumstances, but just needs to exist in instances, which it does, so as to prove infringement.

        c) stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer;

> It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

        whereby when said lower major surface of said single lower, resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75.

> We understand that this feature/limitation is standard and easily provable, likely through an expert declaration, that the sample non-skid drop cloth includes this feature of the claim.

### B. Independent Claim 6

        6.     A non-skid protective cloth or pad, consisting of:

It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

        a)     a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

> It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

        b)     a single lower, resilient layer having an upper and a lower major surface,

It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

        said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer,

> It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

said lower major surface comprising said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid,

> A close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

said downward projecting bumps comprising bumps having at least two different circumferential sizes,

> The same close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the sample non-skid drop cloth includes this feature of the claim, *i.e.*, "bumps having *at least two different* circumferential sizes" (emphasis added).

said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and

> The same close inspection and detailed review of the sample non-skid drop cloth reveals that it is beyond dispute that the there are instances in the sample non-skid drop cloth specifically includes this feature of the claim, *i.e.*, a "height of bumps having [smaller] circumferential sizes being greater than [a] height of bumps having [] larger [] circumferential sizes." It should be noted that this "height" relationship need not exist in all circumstances, but just needs to exist in instances, which it does, so as to prove infringement.

c)  stitching disposed through both said single, absorbent, upper, woven layer and said single lower, resilient layer;

> It is beyond dispute that the sample non-skid drop cloth includes this feature of the claim.

whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°.

> We understand that this feature/limitation is standard and easily provable, likely through an expert declaration, that the sample non-skid drop cloth includes this feature of the claim.

### C. Dependent Claims

Each of dependent claims 2-5 and 7-10 of the of the 917 patent depends respectively directly or indirectly from claims 1 and 6, and inherits the features, and therefore, the shortfalls, of the respective independent claim from which each claim depends.

Claims 2 and 7 add the feature "wherein said single, absorbent, woven upper layer comprises a plain woven cotton fabric," and claims 3 and 8 add the feature "wherein said single, absorbent, woven, upper layer comprises canvas." We made no attempt to ascertain the particular material composition of the "single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface" of the sample non-skid drop cloth. Discerning this composition was not necessary to our evaluation and analysis of infringement independent claims 1 and 6. That said, our general observation is that the single, absorbent, plain woven upper layer, which is clearly present in the sample non-skid drop cloth, may be found to comprise one or more of a "plain woven cotton fabric" and a "canvas" literally. Moreover, and at an absolute minimum, to any extent that a putative infringer may attempt to argue that the "single, absorbent, plain woven upper layer" of its product does not include either of these features literally, it certainly includes this feature "equivalently." *See* the discussion of the applicability of the doctrine of equivalents in Section VI.D. below.

Claims 4 and 9 further limit the downward projecting bumps as "compris[ing] a shape selected from the group: spherical, quasi-spherical, and amorphous.

>It is beyond dispute that the sample non-skid drop cloth includes this feature of the claims, particularly since this claim feature is quite broad, albeit far from unlimited, as to a particular limiting configuration of the downward projecting bumps.[4]

Claims 5 and 10 further limit the downward projecting bumps as being "separated one from another by an inter-bump [or interbump] space.

>It is beyond dispute that the sample non-skid drop cloth includes this feature of the claims.

### D. A Brief Discussion Regarding the Doctrine of Equivalents

In instances in which a particular claim feature is not literally found to be present in an accused device, and to the extent that it may be required, infringement may nonetheless be found under what is referred to as the "doctrine of equivalents," the essence of which is that "one may not practice a fraud on a patent" by making superfluous or non-consequential changes to its commercial product to avoid infringement. *See generally Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608-09, 70 S. Ct. 854, 94 L. Ed. 1097 (1950). The doctrine is applied "'[t]o temper unsparing logic and prevent an infringer from stealing the benefit of an invention' [such that] a patentee may invoke this doctrine to proceed against the producer of a device 'if it performs *substantially the same function* in *substantially the same way* to obtain *[substantially] the same result.*'" *Id.* (citation omitted). The theory underlying the doctrine is that "if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape." *See id.* (citation omitted).

"What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case." *Id.* at 609. "Consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. An important factor is

---

[4] It would be entirely unreasonable for any putative infringer to take a position that these claims do not further limit the independent claim from which it depends. *See* 35 U.S.C. §112(d) ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify *a further limitation* of the subject matter claimed. A claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." (emphasis added)).

whether persons reasonably skilled in the art would have known of the interchangeability of an ingredient not contained in the patent with one that was." *Id.*

So, those features of dependent claims 2, 3, 7, and 8, should they be found not present literally in the sample non-skid drop cloth, and without adversely affecting the literal infringement of claims 1, 4-6, 9 and 10 for the reasons enumerated above, may be found to otherwise infringe the features of those claims as "[u]nder the doctrine of equivalents, infringement may be found (but not necessarily) if an accused device performs substantially the same overall function or work, in substantially the same way, to obtain substantially the same overall result as the claimed invention." *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934-35 (Fed. Cir. 1987) (citing *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 901-02 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 857, 105 S. Ct. 187, 83 L. Ed. 2d 120 (1984).

### V. Conclusion

For the foregoing reasons, it is our opinion that U.S. Courts and the ITC should hold that at least independent claims 1 and 6 of the 917 patent, as well as most, if not all of the dependent claims, are valid and infringed by the sample non-skid drop cloth.

After you have had the opportunity to review the foregoing analysis, please contact us with any questions or comments you may have. Please note that we will not update our opinion in this matter in the future for any reason without your further express instructions. Thus, please contact us if you wish for us to reconsider our opinion in view of any changes in the pertinent facts and/or in view of any possible developments in the law.

All the Very Best.

Very Truly Yours,
TannerIP PLLC

Daniel A. Tanner, III
Owner/Manager

# APPENDIX

1. A non-skid protective cloth or pad, consisting of:

    a)      a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

    b)      a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer; and

    c)      means for fastening said single, absorbent, upper, woven layer to said single lower resilient layer;

whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measures in accordance with TAPPI T548 specification is greater than approximately 0.75.

2. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, woven, upper layer comprises a plain woven cotton fabric.

3. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, woven, upper layer comprises canvas.

4. The non-skid protective cloth or pad as recited in claim 1, wherein said single lower, resilient layer comprises a network of downward projecting bumps interconnected one to another by a resilient grid.

5. The non-skid protective cloth or pad as recited in claim 4, wherein said downward projecting bumps comprise a shape selected from the group: spherical, quasi-spherical, and amorphous.

6. The non-skid protective cloth or pad as recited in claim 4, wherein said downward projecting bumps comprise bumps of at least two different sizes,

7. The non-skid protective cloth or pad as recited in claim 4, wherein said downward projecting bumps comprise bumps of at least two different heights.

8. The non-skid protective cloth or pad as recited in claim 4, wherein said downward projecting bumps are separated one from another by an inter-bump space.

9. The non-skid protective cloth or pad as recited in claim 1, wherein said means for fastening comprises at least one from the group: stitching, adhesive, hook-and-loop fasteners, and mechanical fasteners.

10. A non-skid protective cloth or pad, consisting of:

a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer; and

c) means for fastening said single, absorbent, upper, woven layer to said single lower resilient layer;

whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°.

11. The non-skid protective cloth or pad as recited in claim 10, wherein said single, absorbent, woven, upper layer comprises a plain woven cotton fabric.

12. The non-skid protective cloth or pad as recited in claim 10, wherein said single, absorbent, woven, upper layer comprises canvas.

13. The non-skid protective cloth or pad as recited in claim 10, wherein said single lower, resilient layer comprises a network of downward projecting bumps interconnected one to another by a resilient grid.

14. The non-skid protective cloth or pad as recited in claim 13, wherein said downward projecting bumps comprise a shape selected from the group: spherical, quasi-spherical, and amorphous.

15. The non-skid protective cloth or pad as recited in claim 4, wherein said downward projecting bumps comprise bumps of at least two different sizes.

16. The non-skid protective cloth or pad as recited in claim 13, wherein said downward projecting bumps comprise bumps having at least two different heights.

17. The non-skid protective cloth or pad as recited in claim 13, wherein said downward projecting bumps are separated one from another by an inter-bump space.

18.  The non-skid protective cloth or pad as recited in claim 1, wherein said means for fastening comprises at least one from the group: stitching, adhesive, hook-and-loop fasteners, and mechanical fasteners.

19.  The non-skid protective cloth or pad, recited in claim 1, further comprising:

d)  an impervious member interposed between said single, absorbent, plain woven upper layer and said single lower, resilient member;

e)  means for fastening said single, absorbent, upper, woven layer to said interposed impervious member and said single lower resilient layer.

20.  The non-skid protective cloth or pad, recited in claim 10, further comprising:

d)  an impervious member interposed between said single, absorbent, plain woven upper layer and said single lower, resilient member;

e)  means for fastening said single, absorbent, upper, woven layer to said interposed impervious member and said single lower resilient layer.