**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | |
|---|---|
| ROBERT TERRACINO and<br>BRADIE TERRACINO,<br><br>     Plaintiffs,<br><br>v.<br><br>TRIMACO, INC.,<br>2300 GATEWAY, LLC,<br>CHARLES COBAUGH,<br>and DAVID C. MAY,<br><br>     Defendants. | CIVIL ACTION FILE NO.<br>5:22-CV-15-FL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**TO DISMISS FIRST AMENDED COMPLAINT AND**
**MOTION FOR MORE DEFINITE STATEMENT**

John M. Moye
NC Bar No. 35463
BARNES & THORNBURG LLP
4280 Six Forks Road, Suite 1010
Raleigh, NC 27609-5738
Telephone (919) 536-6200
Facsimile (919) 536-6201
Email JMoye@btlaw.com

*Counsel for Defendants*
*Trimaco, Inc., Charles Cobaugh, and David May*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.      STATEMENT OF FACTS ..........................................................................................2

      A.      The Relationship Between the Parties and the Agreement .....................................2

      B.      The Counts at Issue .................................................................................................3

      C.      The '917 Patent .......................................................................................................4

      D.      Trimaco's '607 Patent ............................................................................................5

II.     APPLICABLE LAW ..................................................................................................5

      A.      Motion to Dismiss Standards ..................................................................................5

      B.      Choice of Law .........................................................................................................6

III.    OVERVIEW OF ARGUMENT ..................................................................................7

IV.    TRIMACO'S MOTION TO DISMISS MUST BE GRANTED FOR
      COUNTS I-IX BECAUSE THE TERRACINOS FAIL TO MEET
      THE PLEADING STANDARDS FOR EACH CAUSE OF ACTION ...........................8

      A.      Counts I and II – Fraud in the Inducement against Cobaugh
            and Trimaco .............................................................................................................8

      B.      Count III – Breach of License Agreement .............................................................12

      C.      Counts IV & V – Violations of the Federal Defend Trade Secrets
            Act against May and Trimaco ................................................................................14

      D.      Count VI – Unfair and Deceptive Trade Practices in Violation of
            N.C. Gen. Stat. § 75-1.1 against Trimaco ............................................................18

      E.      Count VII – Declaratory Judgment that the Patent License
            Agreement Is Invalid for Unconscionability in Violation of N.C.
            Gen. Stat. § 25-2-302 ...........................................................................................19

      F.      Count IX – Civil Conspiracy against All Defendants ...........................................20

      G.      Count VIII – Patent Infringement under 35 U.S.C. § 271 .....................................22

V.      TRIMACO IS ENTITLED TO A MORE DEFINITE STATEMENT
        FOR COUNT VIII BECAUSE PLAINTIFFS FAIL TO IDENTIFY
        WITH PARTICULARITY THE TRIMACO PRODUCTS ACCUSED
        OF INFRINGEMENT ....................................................................................................24

VI.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH
        PREJUDICE AND ATTORNEY FEES GRANTED........................................................26

VII.    CONCLUSION................................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACS Partners, LLC v. Americon Grp., Inc.*,
    No. 3:09CV464-RJC-DSC, 2010 WL 883663 (W.D.N.C. Mar. 5, 2010)................................6

*Ahern v. Omnicare ESC LLC*,
    No. 5:08-CV-291-FL, 2009 WL 2591320 (E.D.N.C. Aug. 19, 2009)....................................26

*Allstate Ins. Co. v. Shelby Mut. Ins. Co.*,
    269 N.C. 341, 152 S.E.2d 436 (1967)......................................................................................19

*Amalgamated Indus. Ltd. v. Tressa, Inc.*,
    69 Fed. App'x 255 (6th Cir. 2003) ...........................................................................................17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................................6, 13

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II. Inc.*,
    888 F.3d 696 (4th Cir. 2018) .....................................................................................................8

*BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*,
    No. 1:21-CV-00710, 2021 WL 5166483 (N.D. Ohio Nov. 5, 2021)........................................13

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................5, 6, 13, 14

*Boatright v. Aegis Def. Servs.*,
    LLC, 938 F. Supp. 2d 602 (E.D. Va. 2013) .............................................................................19

*Bot M8 LLC v. Sony Corp. of Am.*,
    4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................22, 23, 24, 25

*State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*,
    184 N.C. App. 613, 646 S.E.2d 790 (2007)............................................................................21

*Diop v. BMW of N. Am., LLC*,
    511 F. Supp. 3d 679 (E.D.N.C. 2021).......................................................................................5

*Elrod v. WakeMed*,
    No. 5:20-CV-413-FL, 2021 WL 4312557 (E.D.N.C. Sept. 22, 2021) ..............................18, 20

*ePlus Technology, Inc. v. Aboud*,
    313 F.3d 166 (4th Cir. 2002) ...................................................................................................21

Case 5:22-cv-00015-FL   Document 20   Filed 05/09/22   Page 4 of 35

*Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*,
527 F. Supp. 3d 790 (E.D.N.C. 2019).......................................................................8

*In re Freeway Foods of Greensboro, Inc.*,
467 B.R. 853 (Bankr. M.D.N.C. 2012).....................................................................20

*Fundingsland v. Omh Healthhedge Holdings, Inc.*,
No. 15-cv-01053-BAS(WVG), 2016 WL 3022053 (S.C. Cal. May 26, 2016) ......................13

*GE Elec. Co. v. S & S Sales Co.*,
No. 1:11-cv-00837, 2011 WL 4369045 (N.D. Ohio Sept. 19, 2011) ......................................13

*Godfredson v. JBC Legal Grp., P.C.*,
387 F. Supp. 2d 543 (E.D.N.C. 2005)......................................................................21

*Houser v. Feldman*,
No. CV 21-0676, 2021 WL 4991127 (E.D. Pa. Oct. 27, 2021)................................17

*IDX Sys. Corp. v. Epic Sys. Corp.*,
285 F.3d 581 (7th Cir. 2002) ....................................................................................16

*Intel Corp. v. Broadcom Corp.*,
173 F. Supp. 2d 201 (D. Del. 2001).........................................................................25

*Johnson v. EEOC Charlotte Dist. Off.*,
No. 315CV00148RJCDSC, 2016 WL 3514456 (W.D.N.C. June 27, 2016)..........................27

*Lord Corp. v. S&B Tech. Prod., Inc.*,
No. 5:09-CV-205-D, 2011 WL 13152459 (E.D.N.C. Jan. 5, 2011) ........................................16

*McCauley v. Home Loan Inv. Bank, F.S.B.*,
710 F.3d 551 (4th Cir. 2013) ......................................................................................8

*Norman v. Tradewinds Airlines, Inc.*,
286 F. Supp. 2d 575 (M.D.N.C. 2003) ...................................................................6, 7

*Oakwood Lab'ys LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2021)........................................................................14, 15, 16

*Ragsdale v. Kennedy*,
286 N.C. 130, 209 S.E.2d 494 (1974)......................................................................10

*Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*,
989 F. Supp. 2d 471 (E.D.N.C. 2013)..................................................................8, 9, 12

*Redox Tech, LLC v. Earthworks Sols. LLC*,
No. 5:17-CV-447-KS, 2018 WL 1733984 (E.D.N.C. Apr. 10, 2018)..................................5, 6

iv

*Rhone–Poulenc Agro S.A. v. Monsanto Co.*,
73 F. Supp. 2d 554 (M.D.N.C. 1999) ...................................................................7

*Seguro-Suarez by & through Connette v. Key Risk Ins. Co.*,
261 N.C. App. 200, 819 S.E.2d 741 (2018)......................................................20, 21

*Sensitech, Inc. v. LimeStone FZE*,
No. CV 20-11043-NMG, 2022 WL 227132 (D. Mass. Jan. 26, 2022)..................17

*Spirax Sarco, Inc. v. SSI Eng'g, Inc.*,
122 F. Supp. 3d 408 (E.D.N.C. 2015)..................................................................18

*SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co.*,
820 F. Supp. 2d 677 (M.D.N.C. 2011) .............................................................24, 25

*Tucker Auto-Mation of N.C., LLC v. Rutledge*,
No. 1:15-CV-893, 2017 WL 2930926 (M.D.N.C. July 10, 2017).........................16

*Tulowitzki v. Atl. Richfield Co.*,
396 A.2d 956 (Del. 1978) ...................................................................................19

*VLIW Tech., LLC v. Hewlett–Packard Co.*,
840 A.2d 606 (Del. 2003) ...................................................................................12

*Xia Bi v. McAuliffe*,
927 F.3d 177 (4th Cir. 2019) ..........................................................................8, 11

## Statutes

35 U.S.C. § 271...............................................................................................3, 22, 25

Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.* ......................................3, 14, 15, 17

N.C. Gen. Stat. § 25-2-302 ....................................................................................19

N.C. Gen. Stat. § 75-1.1 .........................................................................................18

North Carolina Unfair and Deceptive Trade Practices Act .....................................3, 18

## Other Authorities

Fed. R. Civ. P. 8 .......................................................................................................7

Fed. R. Civ. P. 9 .......................................................................................................7

Fed. R. Civ. P. 9(b) ..................................................................................................8

Fed. R. Civ. P. 12(b)(6) and (ii).................................................................................2

v

Fed. R. Civ. P. 12(e) ........................................................................................................2, 24

Fed. R. Civ. P. 12(b)(6)..................................................................................................5, 26

MPEP 2111.03(II)...............................................................................................................23

## INTRODUCTION

Plaintiffs Robert and Bradie Terracino ("Terracinos" or "Plaintiffs") first filed this suit – which includes, *inter alia*, allegations of breach of contract, theft of trade secrets, and patent infringement – on January 7, 2022. On February 2, 2022, counsel for the Terracinos indicated that they would be amending their Complaint. Defendants Trimaco, Charles Cobaugh, and David May ("Defendants") requested that the Terracinos amend promptly so that they could avoid investing substantial resources in preparing a response to a complaint that would be non-operative. Ex. 1. After a substantial delay, on February 25, 2022, the Plaintiffs backtracked and indicated that they would not be amending the Complaint "at this time," thus requiring the Defendants to proceed with a response to the original Complaint ("Original Complaint"). *Id.* In reliance on the Plaintiffs' notification that they would *not* be filing an amended complaint, Defendants prepared a motion to dismiss and accompanying brief, which they filed on March 28, 2022 ("Original Motion to Dismiss") (ECF 14).

In an about face, Plaintiffs filed a First Amended Complaint on April 18, 2022. Thus, Defendants *again* find themselves preparing a motion to dismiss and motion for a more definite statement ("New Motion to Dismiss"). Despite the fact the Original Motion to Dismiss clearly set forth the deficiencies in Plaintiffs' Original Complaint, however, the Plaintiffs failed to address those deficiencies. Indeed, no matter how many complaints the Plaintiffs file, they cannot escape the fact that their claims fail on their face as a matter of law.

As set forth below, in the First Amended Complaint – as in the Original Complaint – the Plaintiffs complain about the theft of trade secrets but still do not articulate what those secrets are. The Plaintiffs continue to complain that the Patent License Agreement ("Agreement") they willingly entered into with Trimaco for their patent was actually procured by fraud, is

unconscionable, and has been breached, but still rely solely on the insufficient allegation that Trimaco did not keep them informed about *Trimaco's* patent application. And, they continue to assert that Trimaco's Stay Put™ Canvas Plus product infringes their patent even though it cannot possibly do so based on the plain language of the patent claims.

Defendants therefore submit this (i) Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (ii) as to Count VIII in part, Motion for a More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e). As set forth below, the granting of this motion in its entirety and dismissal of Counts I-VII and IX with prejudice is wholly appropriate because it is abundantly clear that any amendments would be futile. Count VIII should also be dismissed with prejudice, in part, because Plaintiffs' Original Complaint and now the First Amended Complaint affirmatively establish non-infringement with respect to certain accused products. With regard to any remaining products, the Plaintiffs should be made to explain how Trimaco could owe the Plaintiffs anything for patent infringement damages whatsoever, when Plaintiffs have already received royalties pursuant to a license. In addition, the Plaintiffs should be ordered to remit to Defendants their attorneys' fees incurred in connection with the filing of this New Motion to Dismiss, because Plaintiffs have failed to cure the deficiencies they were given notice of in the Original Motion to Dismiss.

## I.     STATEMENT OF FACTS

### A.     The Relationship Between the Parties and the Agreement

The Plaintiffs allege that they approached Trimaco in 2015 to manufacture a drop cloth used in the painting industry to protect floors and prevent the drop cloth from slipping. (ECF 17 at 4-5, ¶¶ 16, 18.) In 2016, Trimaco entered into the Agreement with Plaintiffs to license U.S. Patent No. 9,044,917 ("the '917 patent"), which carries the title "Non-Skid Protective Cloth or Pad." Plaintiffs define the drop cloth disclosed in the '917 patent as "the Drop cloth." (*Id.* at 5,

2

¶ 19.) The '917 patent is owned by the Plaintiffs and names them as inventors. Trimaco entered

into the Agreement because it "desire[d] to acquire an exclusive license under the '917 patent for

potential use in the development and sale of products covered by the '917 patent, and to

otherwise explore collaborative efforts with" the Terracinos. (ECF 17-2 at 1.) Trimaco paid

royalties up until early 2021, at which point it exercised its right to terminate pursuant to Section

6(C) of the Agreement. (*Id*. at 3; *see also* ECF 17 at 9, ¶ 45 & ECF 17-4.)

### B.    The Counts at Issue

Unhappy with termination and the fact that their revenue stream was interrupted, the

Plaintiffs now challenge the Agreement and allege several causes of action against Trimaco,

Cobaugh, and May, individually and collectively, as follows:

- Count I: Fraud in the Inducement against Charles Cobaugh, Individually

- Count II: Fraud in the Inducement against Trimaco

- Count III: In the Alternative, Breach of License Agreement

- Count IV: Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, against David May, Individually

- Count V: Violations of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, against Trimaco

- Count VI: Unfair and Deceptive Trade Practices in Violation of North Carolina Unfair and Deceptive Trade Practices Act, Gen. Stat. § 75-1.1, *et seq.*, against Trimaco

- Count VII: In the Alternative, Declaratory Judgment that the Patent License Agreement Is Invalid for Unconscionability

- Count VIII: Patent Infringement under 35 U.S.C. § 271

3

- Count IX: Civil Conspiracy against All Defendants

These causes of action all rely on the Agreement and related conduct now that Trimaco has terminated it.

### C. The '917 Patent

U.S. Patent No. 10,683,607 describes "a protective cloth or pad that has a non-skid backing." (ECF 17-1 at 8, col. 1 ll. 12-15.) The '917 Patent was filed by Plaintiffs on October 2, 2013 under U.S. application number 14/044,130. (*Id.* at 1.) Plaintiffs were named as inventors. (*Id.*) The '917 Patent issued on June 2, 2015 with two independent claims. (*Id.*) Independent claim 1 recites:

1. A non-skid protective cloth or pad, ***consisting of***:

a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and

c) stitching disposed through both said single, absorbent, upper, woven layer and

   said single lower resilient layer;

   whereby when said lower major surface of said single lower resilient layer is

   placed on a support surface, a Sliding Coefficient of Friction measured in

   accordance with TAPPI T548 specification is greater than approximately 0.75.

(*Id.* at 11, col. 8 ll. 34-57 (emphasis added).) Notably, the preamble to claim 1 includes the

language "consisting of" which, as explained below, indicates that the patent claim is "closed,"

i.e., it cannot as a matter of patent law cover a product that includes any element in addition to

those recited in the claims.

### D.     Trimaco's '607 Patent

The '607 Patent relates to "a method of coating a drop cloth with an adhesive coating

material to prevent the drop cloth from slipping." (ECF 17-6 at 7, col. 1 ll. 18-20.)  The '607

Patent was filed by Trimaco on November 2, 2015 under U.S. provisional patent application

number 62/249,806. (*Id.* at 1.) May was named as one of the inventors. (*Id.*) The '607 Patent

issued on June 16, 2020 with one independent claim, which describes a "method for applying an

adhesive coating material on a canvas." (*Id.* at 12, col. 11 ll. 20-47.)

## II.     APPLICABLE LAW

### A.     Motion to Dismiss Standards

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

Procedure, the district court "must determine whether the complaint is legally and factually

sufficient." *Diop v. BMW of N. Am., LLC*, 511 F. Supp. 3d 679, 683 (E.D.N.C. 2021). In other

words, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In a complaint, a claim "must

contain 'more than labels and conclusions.'" *Redox Tech, LLC v. Earthworks Sols. LLC*, No.

5

5:17-CV-447-KS, 2018 WL 1733984, at *2 (E.D.N.C. Apr. 10, 2018) (quoting *Twombly*, 550 U.S. at 555). More importantly, a claim "must give a defendant fair notice of the claim and the grounds upon which it rests." *Id*. (quotations omitted). Where one cannot infer from the pleadings "more than the mere possibility of misconduct," the plaintiff has failed to show it is entitled to relief and the claims should be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "In other words, if after taking the complaint's well-pleaded factual allegations as true, a lawful alternative explanation appears a 'more likely' cause of the complained of behavior, the claim for relief is not plausible." *ACS Partners, LLC v. Americon Grp., Inc.*, No. 3:09CV464-RJC-DSC, 2010 WL 883663, at *4 (W.D.N.C. Mar. 5, 2010) (citing *Iqbal*, 556 U.S. at 680-82).

## B.    Choice of Law

Plaintiffs' choice of law analysis is lacking in their First Amended Complaint, just as it was in the Original Complaint. Plaintiffs have not asserted the applicable state law for their claims of Fraud in the Inducement against Cobaugh and Trimaco (Counts I and II), Breach of the License Agreement (Count III), or in their request for a Declaratory Judgment that the Agreement is Invalid for Unconscionability (Count VII). This comes despite the fact that Plaintiffs agreed that the Agreement would be interpreted under the laws of Delaware, (ECF 17-2, at § 10), and then later agreed that the laws of Ohio would apply. (ECF 17-3, at § 8.) Regardless of which state's laws apply to the fraud claims (Counts I and II) and the contract claims (Counts III and VII), the outcome is the same – Plaintiffs have not sufficiently pleaded "a claim to relief that is plausible on its face" for any of its claims, despite their second bite at the apple. *Twombly*, 550 U.S. at 570.[1]

---

[1] Under North Carolina's choice of law rules, "[f]or actions sounding in tort law, such as fraud, the law of the 'place of the wrong' controls." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 584 (M.D.N.C. 2003) (quoting *Rhone–Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 554, 556 (M.D.N.C. 1999)). "In a fraud claim, the place of the wrong is the locale in which the injury to the plaintiff occurs, i.e., where the loss is *sustained*, not where alleged

6

## III.    OVERVIEW OF ARGUMENT

Despite the liberal pleading standards of federal district court, *none* of the claims remotely passes muster under the Fed. R. Civ. P. 8, let alone the stricter rules of Fed. R. Civ. P. 9 in the case of the Plaintiffs' allegations of fraud. Trimaco, Cobaugh, and May move to dismiss Plaintiffs' First Amended Complaint with respect to Counts I-VII, IX, and VIII (in part), because Plaintiffs have failed to meet the required pleading standards for *each* cause of action. By way of example only, with respect to Counts I and II, the Plaintiffs fail to plead the elements of fraud with specificity as required. The only statement allegedly constituting fraudulent inducement by Cobaugh and Trimaco, by and through Cobaugh, relates to a matter of opinion regarding Trimaco's filing of its own patent application, and not to the subject matter of the Agreement. With regard to their breach of contract claim, the Terracinos fail to allege how any particular provision was breached, despite that being an express pleading requirement. With regard to their theft of trade secrets claims, the Terracinos fail to articulate what trade secrets have been taken. And the list continues, with claim after claim failing to articulate a cause of action. These flaws remain even though Plaintiffs were given a roadmap of the Original Complaint's deficiencies in the Original Motion to Dismiss, along with case law setting forth the pleading requirements.

In addition, Trimaco, also seeks to dismiss Claim VIII in part, because their First Amended Complaint expressly *disproves* the existence of liability for patent infringement by Trimaco's current Stay Put™ Canvas Plus drop cloth. For the remainder of Claim VIII, Trimaco

---

fraudulent representations are made." *Id*. (emphasis added). Plaintiffs state that they currently reside in Virginia. (ECF 17 at 2, ¶¶ 7-8.) Plaintiffs do not provide facts about when the loss was sustained, the type of damage they suffered as a result of the alleged fraud, or where they resided when this alleged loss was sustained. Therefore, either Virginia or North Carolina law could apply to Counts I and II. With respect to the interpretation of a contract, "the law of the place where the contract was made" governs under the choice of law rules of North Carolina except "if the parties to the contract have agreed that a given jurisdiction's substantive law will govern the interpretation of the contract." *Rhone–Poulenc*, 73 F. Supp. 2d at 556. Therefore, Delaware, Ohio, or North Carolina law could apply to Counts III and VII. Defendants have not identified any substantive difference as between the different jurisdictions that would be material as it relates to the Terracinos' claims.

seeks a more definite statement because the First Amended Complaint and the Exhibits do not identify what remaining products manufactured by Trimaco would allegedly infringe the '917 patent that were not already subject to royalty payments. Trimaco knows of none.

## IV. TRIMACO'S MOTION TO DISMISS MUST BE GRANTED FOR COUNTS I-IX BECAUSE THE TERRACINOS FAIL TO MEET THE PLEADING STANDARDS FOR EACH CAUSE OF ACTION

### A. Counts I and II – Fraud in the Inducement against Cobaugh and Trimaco

The pleading standards for claims of fraud are assessed under Federal Rule of Civil Procedure 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is "to provide defendants with fair notice of claims against them and the factual ground upon which they are based." *McCauley v. Home Loan Inv. Bank, F.S.B*., 710 F.3d 551, 559 (4th Cir. 2013). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II. Inc*., 888 F.3d 696, 705 (4th Cir. 2018) (quotations omitted). Under North Carolina law, fraud requires a plaintiff to plead five elements concerning the alleged misstatement: "(1) false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party." *Fitzgerald Fruit Farms LLC v. Aseptia, Inc*., 527 F. Supp. 3d 790, 798 (E.D.N.C. 2019) (citations omitted); *see also Xia Bi v. McAuliffe*, 927 F.3d 177, 183 (4th Cir. 2019), as amended (July 9, 2019) (Virginia "law require[s] that each defendant made a material misstatement.").

In addition, when pleading fraud by omission, a plaintiff "must plausibly allege," among other factors, "the relationship or situation giving rise to the duty to speak" and "why [plaintiff's] reliance on the omission was both reasonable and detrimental." *Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc*., 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013). When

8

identifying the relationship, "[t]he party that allegedly failed to speak must have had a duty to disclose the information such as when there is a relationship of trust and confidence between the parties." *Id.* (internal citations omitted). "*Contracting parties in a commercial transaction* are *not* in a relationship of trust and confidence." *Id.* (emphasis added).

Plaintiffs do not come close to satisfying this pleading standard. In their First Amended Complaint, the Plaintiffs state generally that Trimaco and Cobaugh have "misstat[ed] and conceal[ed] material facts as detailed above," but then state specifically only that Cobaugh and Trimaco, through Cobaugh, withheld "the material fact that Trimaco intended to and had filed a patent application . . . claiming the Terracinos' invention that had been revealed to Cobaugh during the discussions leading up to the Terracinos entering into the Agreement, and as revealed in the Terracinos's patent." (ECF 17 at 13, ¶ 65.) Plaintiffs allege that, "[t]hese misstatements and concealment of material facts were intended to and did in fact deceive the Terracinos into entering into the Agreement and into disclosing their inventions and trade secrets." (ECF 17 at 13-14, ¶¶ 65, 71.)[2]

This bare bones statement – which essentially states only that Trimaco and Cobaugh did not tell the Plaintiffs about Trimaco's patent application – fails each element of the requisite pleading standards.

- It does not state any facts outlining how Defendant Cobaugh actually "concealed" anything;

---

[2] Plaintiffs' pleading of fraud is also unintelligible and internally inconsistent. Specifically, the Plaintiffs allege both that Trimaco (through Cobaugh) concealed the fact that Trimaco failed to disclose to the Terracinos that it "intended" to file a patent application "claiming the Terracinos's invention" and "then did file" a patent application "claiming the Terracinos's invention." (*See* ECF 17 at 13-14, ¶¶ 65, 71.)

9

- It does not state a "fact" as a misrepresentation at all, but rather the Terracinos' opinion that Trimaco filed a patent application "claiming" the Terracinos' invention;

- It does not explain why the filing of a patent application by *Trimaco* is material to the Terracinos' decision to enter into an agreement licensing their patent;

- It does not state how or why such a concealment could or would have been calculated to deceive or could have been made with intent to deceive;

- It does not state how the Terracinos were deceived;

- It does not state how the Terracinos, Cobaugh and Trimaco, through Cobaugh, were in a relationship of trust and confidence giving rise to a duty to disclose;

- Nor does it state why the Terracinos would have justifiably relied on this omission to enter into an Agreement pursuant to which they were paid royalties, and forego other opportunities.

Several aspects are worthy of additional comment. *First*, the alleged fraudulent "fact" does not appear to be a "fact" at all. With regard to fraud, "[a] subsisting or ascertainable fact, as distinguished from a matter of opinion or misrepresentation relating to future prospects, must be represented." *Ragsdale v. Kennedy*, 286 N.C. 130, 139, 209 S.E.2d 494, 500 (1974) (citing *Berwer v. Insurance Co.*, 214 N.C. 554, 200 S.E. 1 (1938)). It may be the Terracinos' opinion that Trimaco filed a patent application that covered subject matter belonging to them, but it is not a fact.

*Second*, this alleged omission cannot be a material misrepresentation with respect to the Agreement because the subject of the Agreement, as opposed to the purportedly concealed "fact," was to license Plaintiffs' patent. The Agreement is silent with regard to ownership of

10

future innovations, or the existence or non-existence of Trimaco's own patent applications. (ECF 17-2.) Thus, even if Defendant Cobaugh had "concealed" the filing of Trimaco's patent application, the Terracinos do not explain why this concealment would be material to an agreement to license their intellectual property. Relatedly, the Terracinos do not explain why they would have been justified in relying on this omission when the Agreement does not allocate intellectual property rights as between the two parties. If the Terracinos had desired certain representations, as in *Xia Bi*, Plaintiffs were in possession of the Agreement before it was signed and could have asked. *See e.g., Xia Bi*, 927 F.3d at 184-87; (ECF 17 at 6-7, ¶ 30.) Plaintiffs clearly read the Agreement and had the ability to raise any concerns yet chose not to.

*Third*, the Terracinos do not explain why this supposed "concealment" would have deceived them "into entering the Agreement and into disclosing their inventions and trade secrets." (ECF 17 at 13-14, ¶¶ 65, 71.) This allegation is circular in the extreme. The Terracinos make the strange assertion that the "fact" that Trimaco concealed it had already filed a patent application covering the Terracinos' invention induced the Terracinos to enter into an agreement pursuant to which they would then reveal their invention. But if the revealing of the "invention" came after the Agreement, then how can the application covering the invention already have been filed? The Terracinos flip-flop between past and present tense within the same sentence – "intended to [file] and then did file" – makes their allegations difficult, if not impossible, to understand. (*Id.*) Despite having the opportunity to replead, the only new allegation is that the Terracinos claim they revealed their "invention" during discussions leading up to the Agreement. This merely underscores the fact that whatever they told Trimaco or Cobaugh during this period was not confidential.

*Fourth,* the Terracinos do not explain why they were entitled to know about Trimaco's filing of the '806 application. The parties were engaged in a commercial transaction for Trimaco to license the '917 patent, which the Terracinos initiated. (ECF 17 at 5, ¶ 18.) Thus, there was no relationship of trust and confidence that would create a duty for Trimaco to disclose business operations to the Terracinos that are beyond the scope of the license agreement. *See Rahamankhan Tobacco,* 989 F. Supp. 2d at 477 (concluding that defendant had no duty disclose other business relationships in connection with commercial transaction). The Agreement has no provision requiring Trimaco to refrain from filing patent applications or to assign any ownership of rights within the drop cloth space to the Terracinos. (ECF 17-2.) Assuming *arguendo* that Trimaco did in fact take the Terracinos' "invention" – and it did not – the Terracinos could bring a separate action, including by asserting inventorship. Notably, however, their First Amended Complaint omits the inventorship claim that was asserted in the Original Complaint. This was the one unsupported claim Plaintiffs actually acted reasonably with regard to and did not refile.

In sum, Plaintiffs have failed to plead fraud in the inducement against Cobaugh and Trimaco coherently, legally consequentially, or with any specificity – despite having had a renewed opportunity to do so. They have still failed to articulate a supposed fraudulent "fact," or articulate why Trimaco had any duty to speak up about its own filing of a patent application. Ultimately, Plaintiffs were represented by counsel, read the agreement before signing, could have renegotiated, or questioned the terms of the Agreement, but chose to sign. Counts I and II should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

### B.    Count III – Breach of License Agreement

A breach of contract claim requires plaintiffs to "demonstrate: first, the existence of a contract . . .; second, *the breach of an obligation imposed by that contract*; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett–Packard Co.*, 840 A.2d 606, 612

12

(Del. 2003) (emphasis added); *see also BCG Masonic Cleveland, LLC v. Live Nation Ent., Inc.*, No. 1:21-CV-00710, 2021 WL 5166483, at \*5 (N.D. Ohio Nov. 5, 2021). Importantly, "it is insufficient for a claimant to allege generally that a contract was breached without identifying the factual basis for that allegation." *GE Elec. Co. v. S & S Sales Co.*, No. 1:11-cv-00837, 2011 WL 4369045, at \*2 (N.D. Ohio Sept. 19, 2011). Additionally, "[t]he plaintiff must identify an express contract provision that the defendant breached in order for the complaint to survive a motion to dismiss." *Fundingsland v. Omh Healthhedge Holdings, Inc.*, No. 15-cv-01053-BAS(WVG), 2016 WL 3022053, at \*5 (S.C. Cal. May 26, 2016) (applying Delaware law).

In their Original Complaint, Plaintiffs failed to name *any* specific provision of the Agreement that had allegedly been breached. Even now, Plaintiffs still complain that Trimaco failed to give notice that it had filed a patent application without saying what provision of the License is supposedly breached by this alleged failure. Thus, this allegation goes nowhere toward articulating a breach. In *BCG*, for example, the failure to cite specific language made it "unclear what specific contractual provision [the plaintiff] contend[ed] [the defendant] breached." *Id.* at \*6. Therefore, the court concluded, the plaintiff failed "to plausibly allege a breach of contract claim." *Id.*

Reciting a provision of a contract without explaining the *how* is equally insufficient. A breach of contract claim must "contain sufficient factual matter, [which when] accepted as true . . . ,  state[s] a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 662, 678. Mere "recitation of a cause of action's elements" is insufficient to withstand a motion to dismiss. *Twombly,* 550 U.S. 544, 545. Here, Plaintiffs have done nothing more than add a passing reference to "¶¶ 3, 7" without articulating how these provisions were allegedly breached. (ECF 17 at 15, ¶¶ 77-82.) They allege only generally that Trimaco failed "to make the complete

13

royalty payments to the Terracinos as required under the Agreement under ¶ 3," (*id.* at ¶ 81), but do not provide *any* facts of how Trimaco's royalty payments were incomplete. The Terracinos agreed to "a royalty of 2% on net sales in the United States." (ECF 17-2 at § 3(A).) The Terracinos do not allege that Trimaco failed to make these royalty payments pursuant to the Agreement. Nor do the Plaintiffs provide facts to support the allegation that Trimaco allegedly "misus[ed] the Terracinos's trade secrets and other proprietary information to file Trimaco's own patent application directed to the same in violation of the Agreement ¶¶ 3, 7." (ECF 17 at 15, ¶ 81).

Indeed, according to Plaintiffs' allegations, both the disclosure of the supposed trade secret information as well as the alleged misappropriation in Trimaco's patent filing on November 2, 2015 occurred well before the Agreement was executed on February 10, 2016. Thus, any alleged use of trade secrets by Defendants would not have been subject to any obligation pursuant to the Agreement, *which had not yet been inked*. (ECF 17 at 5-9, ¶¶ 21, 43, 49.) Finally, Plaintiffs do not provide facts, nor provide a specific contractual provision, to support the allegation that Trimaco was bound to "give notice to the Terracinos regarding Trimaco's patent applications directed to the Terracino's invention." (*Id.*).

Accordingly, Plaintiffs have failed to plead adequately a breach of contract claim. They have alleged no facts as to *how* Trimaco allegedly breached any contractual provision. Thus, Count III fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

C.    **Counts IV & V – Violations of the Federal Defend Trade Secrets Act against May and Trimaco**

The Federal Defend Trade Secrets Act ("DTSA") "requires a plaintiff to demonstrate (1) the existence of a trade secret . . .; and (3) the misappropriation of that trade secret." *Oakwood*

14

*Lab'ys LLC v. Thanoo,* 999 F.3d 892, 905 (3d Cir. 2021). A plaintiff "must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such." *Id.* This means that a plaintiff must allege that the alleged trade secret qualifies as a trade secret and that a plaintiff has taken reasonable steps to protect it. *Id.*

Here, Plaintiffs have failed to set forth any trade secret with specificity and have utterly failed to show that they have taken any steps to protect anything as a trade secret, much less reasonable steps. In their Original Complaint, they identified no trade secrets at all. Now they state that the trade secrets are "related to the construction and use of the invention as described in the Terracinos's patent . . . and as described and claimed by May and Trimaco in the '806 provisional application." (ECF 17 at 15-17 ⁋ 84, ⁋ 91.) But by stating that the "trade secrets" are contained in either the Terracinos' patent or Trimaco's '806 provisional application, the Terracinos have pleaded themselves out of court. Whatever was contained publicly in the Terracinos' patent cannot be secret. Moreover, whatever Trimaco disclosed in the provisional application would have been disclosed *before* the Agreement was entered and, as a result, before Trimaco was bound to maintain information as confidential.

Ignoring the Terracinos' manifest inconsistencies for a moment, the Terracinos' DTSA claims also fail because it is still utterly lacking in detail. Other than using the phrase "trade secrets," Plaintiffs provide no information whatsoever regarding the trade secrets the Defendants allegedly misappropriated. They simply allege that Defendants May and Trimaco "misappropriated the Terracinos' trade secrets and used them to manufacture and sell the Drop Cloth Product," (ECF 17 at 16, ¶ 87), and that the trade secret comprises "knowledge. . . related to the construction and use of the invention as described in the Terracinos' patent as well as

improvements thereto described and claimed by May and Trimaco in the '806 provisional application." (*Id.* at 16-17, ¶¶ 84, 91.) This allegation forms the entire basis of Counts IV and V of the Terracinos' First Amended Complaint. But the Terracinos do not provide any particulars on what knowledge they imparted on the Defendants that allegedly constitutes a trade secret; they do not describe how that knowledge relates to the construction and use of the invention; nor do they specify how that knowledge, which they admit relates to matters in a public filing, is entitled to the highest level of protection from disclosure under the law.

The courts have found far more detailed complaints than that of Plaintiffs to be deficient. In *IDX*, for example, the court determined that the plaintiffs generally referring to "a 43-page description of the methods and processes" of the technology was not specific enough because the plaintiffs had failed to "separate the trade secrets from the other information" and identify "[w]hich aspects are known to the trade, and which are not." *IDX Sys. Corp. v. Epic Sys. Corp.,* 285 F.3d 581, 583-584 (7th Cir. 2002). For example, "many of the items that appear[ed] in the 43-page description . . . are exceedingly hard to call trade secrets [because they are] . . . readily ascertainable by proper means." *Id.* (internal quotations omitted).

While "[a] plaintiff is not required to plead a trade secret . . . with specificity," *Lord Corp. v. S&B Tech. Prod., Inc*., No. 5:09-CV-205-D, 2011 WL 13152459, at *7 (E.D.N.C. Jan. 5, 2011), the alleged "trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it." *Oakwood*, 999 F. 3d at 906; *see also Tucker Auto-Mation of N.C., LLC v. Rutledge*, No. 1:15-CV-893, 2017 WL 2930926, at *4 (M.D.N.C. July 10, 2017) ("[T]he complaint must identify the trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." (quotations

omitted)). In brief, the First Amended Complaint does not remotely inform Trimaco and May of "that which [they are] accused of misappropriating."

Moreover, the Terracinos have failed to articulate, as is required, the reasonable steps they took to protect whatever it is they deem to be their trade secrets. *Sensitech, Inc. v. LimeStone FZE*, No. CV 20-11043-NMG, 2022 WL 227132 at *4-5 (D. Mass. Jan. 26, 2022). In *Sensitech*, the plaintiff had asserted that it "took reasonable measures to safeguard its confidential information by preventing third parties from accessing it but fail[ed] to elaborate upon what those measures were." *Id*. The claim did not, for example, "allege any facts about how the confidential information was stored, whether those individuals and entities to whom it was disclosed (including [the defendant]) were subject to confidentiality agreements and what portion, if any, of the information was publicly known." *Id.*

The Terracinos have failed to highlight any reasonable steps they took to protect their trade secrets, such as by use of a confidentiality agreement, or to identify what the trade secrets could even consist of.[3] In fact, the First Amended Complaint proves the opposite. It is replete with allegations that the Terracinos provided the Defendants with allegedly confidential information *before the Agreement was executed – i.e. before any confidentiality agreement was in place.* (ECF 17 at 5 ¶¶ 18-21, ¶ 43.) Thus, Counts IV and V should be dismissed, with prejudice, for failure to state a claim upon which relief can be granted.

---

[3] It is also important to note that the DTSA "provides that private civil actions may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered." *Houser v. Feldman*, No. CV 21-0676, 2021 WL 4991127, at *4 (E.D. Pa. Oct. 27, 2021) (quoting 18 U.S.C. § 1836(d)). Thus, "a claim for misappropriation arises only once . . at the time of the initial misappropriation." *Amalgamated Indus. Ltd. v. Tressa, Inc.*, 69 Fed. App'x 255, 261 (6th Cir. 2003). "[A] complaint may be dismissed on statute of limitations grounds when it is apparent on its face that the claim lies outside of the limitations period." *Houser*, 2021 WL 4991127, at *5. Therefore, regardless of the fact that Plaintiffs have failed to articulate what their supposed trade secrets are, Counts IV and V should be dismissed because the statute of limitations have passed for the Plaintiffs to assert a claim of trade secret misappropriation under the DTSA. If there was misappropriation relating to the Drop Cloth, the initial misappropriation by the Plaintiffs' own allegations occurred well before January 2019 (three years before the filing of the Complaint).

**D.    Count VI – Unfair and Deceptive Trade Practices in Violation of N.C. Gen. Stat. § 75-1.1 against Trimaco**

Under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), a plaintiff wishing to state a claim "must plausibly allege that: (1) the defendant committed an unfair or deceptive act or practice; (2) the act or practice was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." *Spirax Sarco, Inc. v. SSI Eng'g, Inc*., 122 F. Supp. 3d 408, 422 (E.D.N.C. 2015). A court will find "[a]n act [as] unfair when it offends established public policy, is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers or amounts to an inequitable assertion of power or position," while a court will find "[a]n act [as] deceptive if it has a tendency to deceive." *Id.* at 423 (quotations omitted).

Importantly, though "*where a valid contract governs the relationship between plaintiffs and defendant . . . the rights and remedies of the parties lie in contract law and not in unfair and deceptive trade practices*." *Elrod v. WakeMed*, No. 5:20-CV-413-FL, 2021 WL 4312557, at *14 (E.D.N.C. Sept. 22, 2021) (emphasis added). Likewise, "where plaintiffs' claims based in fraud and contract invalidity claims fail as a matter of law, plaintiffs['] unfair and deceptive trade practices asserted based upon the same underlying conduct also must be dismissed." *Id.*

Here, a valid contract governs the relationship between Plaintiffs and Trimaco. Thus, the Plaintiffs can bring no cause of action pursuant to the UDTPA, and any dispute over remedies to which the Plaintiffs allege they are entitled would lie in contract law rather than the UDTPA.  As discussed in the next section, Plaintiffs do not sufficiently plead contract invalidity due to unconscionability.  But even if the contract between Plaintiffs and Trimaco were invalid, the Plaintiffs fail to sufficiently plead fraudulent inducement in Counts I and II as discussed above in Section IVA. The Plaintiffs had an opportunity to cure these deficiencies in their First Amended

Complaint, but they failed to do so. Indeed, Count VI is identical to Count VI from the Original

Complaint. Count VI should therefore be dismissed, with prejudice, for failure to state a claim

upon which relief can be granted.

    **E.**     **Count VII – Declaratory Judgment that the Patent License Agreement Is Invalid for Unconscionability in Violation of N.C. Gen. Stat. § 25-2-302**

    The Terracinos received royalties under the Agreement for five years. They never

challenged its validity although, throughout the duration of the Agreement, they were fully aware

of the facts on which they now claim invalidity. The only thing that is different is that Trimaco

terminated the Agreement. But the Agreement is not suddenly rendered invalid as

unconscionable because Trimaco terminated it. Yet, there is no other explanation for the

Terracinos bringing this claim now. In addition, despite being put on notice that this Count was

deficient in the Original Complaint, Plaintiffs took no steps to address those deficiencies.

    "Freedom of contract, unless contrary to public policy or prohibited by statute, is a

fundamental right included in our constitutional guarantees." *Allstate Ins. Co. v. Shelby Mut. Ins.*

*Co.*, 269 N.C. 341, 345-46, 152 S.E.2d 436 (1967). With regard to a claim of contract invalidity

for unconscionability, a court will find "a contract is unconscionable if there is an absence of

meaningful choice and if the contract terms are unreasonably favorable to one of the parties, that

is, there is procedural unconscionability or substantive unconscionability." *Boatright v. Aegis*

*Def. Servs.*, LLC, 938 F. Supp. 2d 602, 609 (E.D. Va. 2013) (citing *Tulowitzki v. Atl. Richfield*

*Co.*, 396 A.2d 956, 960 (Del. 1978)) (applying Delaware law). In other words, "a contract is

unconscionable if it is such as no man in his senses and not under delusion would make on the

one hand, and as no honest or fair man would accept, on the other." *Tulowitzki*, 396 A.2d at 960.

"Superior bargaining power alone without the element of unreasonableness does not permit a

finding of unconscionability or unfairness." *Id.*

Plaintiffs fail to plead sufficiently their claim that the Agreement is unconscionable. Indeed, Plaintiffs do nothing more than nitpick a contract they signed, with the advice of counsel, and under which they accepted royalties for five years without complaint. Plaintiffs state only that they had unfair bargaining power, that Trimaco exerted undue influence, and that the Terracinos lacked meaningful choice. (ECF 17 at 18-19, ¶¶ 102-108.) To the extent they complain about any provision in the contract – after the fact – any one of those provisions could have been negotiated in a timely manner in 2016.

Plaintiffs have not come remotely close to pleading with sufficiency that the Agreement or any provision of it is unconscionable such that "no honest or fair man would accept it." Even if they had, the only remedy from the Court would be to refuse to enforce it. *See, e.g.*, *Elrod*, 2021 WL 4312557, at *9. The Agreement, however, has already been terminated. Thus, it is of no further moment to the parties' legal relationship, and this claim is a waste of this Court's resources. Count VII should therefore be dismissed, with prejudice, for failure to state a claim upon which relief can be granted.

### F.     Count IX – Civil Conspiracy against All Defendants

North Carolina law establishes that, "[i]n order to sufficiently plead a claim for civil conspiracy . . . , a plaintiff must allege (1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *In re Freeway Foods of Greensboro, Inc.,* 467 B.R. 853, 867 (Bankr. M.D.N.C. 2012) (quotations omitted). "A claim for civil conspiracy essentially associates the defendants together so that the acts and conduct of one defendant may be admissible against all." *Id.* However, courts also apply the intra-corporate immunity rule to civil conspiracy claims. *Seguro-Suarez by & through Connette v. Key Risk Ins. Co*., 261 N.C. App. 200, 218, 819 S.E.2d 741, 754 (2018). This

20

"doctrine provides that, because at least two persons must be present to form a conspiracy, a corporation cannot conspire with itself, just as an individual cannot conspire with himself." *Id.* (quotations omitted). Necessarily, "an allegation that a corporation is conspiring with its agents, officers, or employees is tantamount to accusing a corporation of conspiring with itself." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 625, 646 S.E.2d 790, 799 (2007). Therefore, such an allegation is "insufficient to establish a claim for civil conspiracy." *Seguro-Suarez,* 261 N.C. App. at 218.

The personal stake exception to the intra-corporate immunity rule "has been limited, such that it applies only where a co-conspirator possesses a personal stake independent of his relationship to the corporation." *ePlus Technology, Inc. v. Aboud*, 313 F.3d 166, 179 (4th Cir. 2002). Courts recognize that "the employees and officers of a corporation generally have a financial stake in that corporation" and thus, "[s]omething more is required to invoke the exception to the" intra-corporate immunity rule. *Godfredson v. JBC Legal Grp., P.C.*, 387 F. Supp. 2d 543, 550 (E.D.N.C. 2005). "That something more is a financial stake in the outcome of the alleged conspiracy, separate from and *independent of* the financial stake in the corporation." *Id.* (emphasis added).

Here, Cobaugh and May are officers of and employed by Trimaco. (ECF 17 at 3, ¶¶ 10-11.) The intra-corporate immunity doctrine therefore applies, because Trimaco "cannot conspire with itself." The personal stake exception does not apply because plaintiffs provide no allegations that Cobaugh and May had any *financial* stake independent of their financial stake in Trimaco. In their First Amended Complaint, Plaintiffs have added the allegation that May "had independent personal stakes in achieving the corporation's illegal objective [including] obtaining a patent for the invention in May's name alone," without acknowledging that May assigned any

21

rights he had in the '607 patent to Trimaco. (ECF 17 at 20, ¶ 121.) This allegation cures nothing. Plaintiffs have failed to sufficiently plead that the personal stake exception applies here because Cobaugh and May had no independent financial stake in the outcome of the alleged conspiracy, and therefore the intra-corporate immunity doctrine clearly applies. Thus, the Court should dismiss Count IX, with prejudice, for failure to state a claim upon which relief can be granted.

### G.    Count VIII – Patent Infringement under 35 U.S.C. § 271

Plaintiffs' pleading does not meet the standard of demonstrating factual allegations which, if true, articulate a plausible patent infringement claim. As set forth, Plaintiffs accuse one of Trimaco's drop cloth products that has a liquid barrier component of infringing the claims of the Terracinos' patent, even though having a liquid barrier layer – or "component" in the words of the First Amended Complaint – means that it cannot possibly infringe the Terracinos' patent based on the plain language of the Terracinos' patent claims.

In the context of a patent infringement claim, "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal/Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021). The pleading standard requires "some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* Thus, "[w]here . . . the factual allegations are actually *inconsistent* with and contradict infringement, they are . . . insufficient to state a plausible claim." *Id.* at 1354.

In *Bot M8*, the plaintiff accused the defendant of infringing a patent in which "Claim 1 . . . require[d] 'a board including a memory in which a game program . . .and an authentication program . . . are stored' separate from a 'motherboard.'" *Id.* at 1353. However, the plaintiff alleged in its complaint "that the authentication program is located on the [accused product's]

22

motherboard itself." *Id.* at 1354. Thus, the pleading itself established that the patent claim required a memory separately from the motherboard, while the allegedly infringing product did not have that separate memory. This assertion by the plaintiff "render[ed] [its] infringement claim *not even possible*, much less plausible." *Id.* (emphasis added). On appeal, the Federal Circuit agreed that the plaintiff "ha[d] essentially pleaded itself out of court" because of the assertions contradicting the claim language. *Id.*

Here, Plaintiffs also contradict the language of Claim 1 of their '917 patent with respect to at least the Stay Put™ Canvas Plus product. Plaintiffs specifically state that "the Stay Put Canvas [includes] a canvas layer and a surface grip layer, and the Stay Put Canvas Plus drop cloth further incorporat[es] a liquid barrier component." (ECF 17 at 11, ¶ 61.) However, Claim 1's preamble states: "A non-skid protective cloth or pad *consisting of*: a) a single . . .upper layer . . . ; b) a single lower . . . layer . . .; and c) stitching." (ECF 17-1 at col. 8, ll. 34-57 (emphasis added).)

It is well settled that when "consisting of" is used in the preamble of a patent claim, it signals to the public that the patentee means to "*exclude*[ ] any element, step, or ingredient not specified in the claim." MPEP 2111.03(II) (emphasis added). Therefore, the scope of Claim 1 *excludes* anything other than the three elements recited above and their respective sub-components. Because by the Plaintiffs' own allegations, the Stay Put™ Canvas Plus product contains an element not recited in the patent claims, i.e., "a liquid barrier component," the Plaintiffs have contradicted the requirement of Claim 1 of the '917 patent that it be a closed grouping.

Like *Bot M8*, Plaintiffs have "essentially pleaded [themselves] out of court" by acknowledging that the Stay Put™ Canvas Plus product has a liquid barrier component.

Changing the word "layer" from the Original Complaint, to "component" in the First Amended Complaint does not save the Plaintiffs' claim. If anything, it reinforces the point that Plaintiffs understand the predicament they face. Because "consisting of" in the preamble of the claim means that the claim "excludes any element . . . not specified in the claim," the Stay Put™ Canvas Plus product, which has a liquid barrier layer (or component), cannot possibly, much less plausibly, infringe Claim 1 of the '917 patent. The fact that Plaintiffs persist despite being informed that the language "consisting of" dooms their patent infringement claim with respect to the Stay Put™ Canvas Plus product underscores their bad faith pursuit of this claim. Thus, Count IX should be dismissed, with prejudice, with respect to the Stay Put™ Canvas Plus product for failure to state a claim upon which relief can be granted.

## V. TRIMACO IS ENTITLED TO A MORE DEFINITE STATEMENT FOR COUNT VIII BECAUSE PLAINTIFFS FAIL TO IDENTIFY WITH PARTICULARITY THE TRIMACO PRODUCTS ACCUSED OF INFRINGEMENT

In its pleading, the Terracinos appear to accuse two set of products of infringement, the "Stay Put [Canvas] and the Stay Put [Canvas] Plus drop cloth products." (ECF 17 at 19, ¶ 112.) As to the "Stay Put Canvas Plus," as set forth above, Plaintiffs' claim of infringement against products with a liquid barrier layer (or now "component") should be dismissed. As to the "Stay Put Canvas" products, Trimaco requires a more definite statement.

A motion for a more definite statement is proper where, as here, the claims are so "vague or ambiguous that [a] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e); *see also SV Int'l, Inc. v. Fu Jian Quanyu Indus. Co*., 820 F. Supp. 2d 677, 693 (M.D.N.C. 2011). To grant a motion for a more definite statement, "the pleading must be incomprehensible." *SV Int'l*, 820 F. Supp. 2d at 693. In the context of a patent infringement claim, "a complaint may not simply allege that products for sale [ ] infringe a particular patent." *Id.* (quoting *Agilent Techs.,*

*Inc. v. Micromuse*, Inc., No. 04 Civ. 3090, 2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004));

*see also Bot M8*, 4 F.4th at 1355 ("[M]ere recitation of claim elements and corresponding

conclusions, without supporting factual allegations, is insufficient to satisfy the Iqbal/Twombly

standard.").

Here, Trimaco "cannot reasonably prepare a response" to Plaintiffs' patent infringement

claim under 35 U.S.C. § 271 because Plaintiffs fail to articulate which products they allege were

sold outside of the scope of the Agreement. Trimaco entered into a license for the '917 patent

and paid royalties for five years under it. While Trimaco believes that none of its products are

covered by the '917 patent, which is exceedingly narrow, should this Court find that a Trimaco

product is covered by the '917 patent, Trimaco has a strong defense in view of the existence of

the Agreement. *See Intel Corp. v. Broadcom Corp.,* 173 F. Supp. 2d 201, 228 (D. Del. 2001) ("A

patent license is essentially a waiver of the patent owner's right to sue; the parties agree that the

patent owner will allow the licensee either to make, to use, to sell (or some combination of, or

derivative of, these three rights) without subjecting the licensee to an infringement suit. *It is thus

well settled that a valid license is a complete defense to infringement*.") (emphasis added).

In short, for the Stay Put™ Canvas Plus products there can be no infringement. And,

even though they do not infringe the '917 patent, Trimaco still "honor[ed] the 2% royalty for 5

years" under the License, including for non-Stay Put™ Canvas Plus products. (ECF 17-2, §

3(A), ¶ 31.) Therefore, Trimaco is unable to understand the infringement allegations against it.[4]

The Plaintiffs should be required to state affirmatively which products it contends have infringed

and/or were unlicensed because Trimaco does not know.

---

[4] It should be noted that, although the Terracinos have appended an infringement opinion, nowhere does the opinion
name what product was examined. (ECF 17-7.) Nor are there photos from which one could discern what products
were investigated.

25

In sum, Plaintiffs' claim for patent infringement of the '917 patent is so "vague" and "ambiguous" that Trimaco "cannot reasonably prepare a response." Trimaco does not see how the Terracinos can avoid the fact that (1) Trimaco's current products with a third layer cannot infringe; and (2) Trimaco's past products have already been subject to royalty payments. Thus, the Plaintiffs must provide a more definite statement with respect to Count IX, and, specifically, they should be required to explain what sale of products the Defendants could possibly be called to account for.

## VI. PLAINTIFFS' CLAIMS SHOULD BE DISMISSED WITH PREJUDICE AND ATTORNEY FEES GRANTED

In it well-established that a "court has the discretion to grant a motion to dismiss under Rule 12(b)(6) with or without prejudice." *Ahern v. Omnicare ESC LLC*, No. 5:08-CV-291-FL, 2009 WL 2591320, at *9 (E.D.N.C. Aug. 19, 2009). "Where . . . a plaintiff has been provided the opportunity to amend and the amendments do not cure the defects, dismissal with prejudice may be appropriate." *Id.* In *Ahern*, the court dismissed the plaintiff's amended complaint with prejudice because despite having "the opportunity to amend her complaint and to do so after having the benefit of defendant's initial dismissal motion and supporting memoranda detailing numerous deficiencies in it[,] [t]he amendments made by plaintiff were not sufficient . . . and the deficiencies [did] not appear to be curable." *Id.* Here, as in *Ahern*, the Plaintiffs have had ample opportunity to redress the deficiencies of their Original Complaint. Even before the Defendants filed their Original Motion to Dismiss, they informed the Plaintiffs that their claims were deficient. Plaintiffs chose not to amend their Original Complaint, knowing about these deficiencies. Then, once the Defendants filed the Original Motion to Dismiss, the Plaintiffs filed their First Amended Complaint in which they made halfhearted attempts to address some of the

deficiencies and, with respect to other claims, made no changes at all. Given the clear posture of the First Amended Complaint, there is no point in permitting any further amendments.

In addition, given the Plaintiffs' role in necessitating this New Motion to Dismiss, the Defendants should be awarded attorneys' fees in connection therewith. A district court "possesses statutory and inherent power to fashion an appropriate sanction for conduct which abuses the judicial process." *Johnson v. EEOC Charlotte Dist. Off.*, No. 315CV00148RJCDSC, 2016 WL 3514456, at *2 (W.D.N.C. June 27, 2016) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44–45 (1991)) (internal quotations omitted). A sanction "may consist of the outright dismissal of a lawsuit and the assessment of attorney's fees." *Id.* Here, where Plaintiffs have wasted the Defendants' resources, they should be called to account.

## VII.    CONCLUSION

For all the reasons set forth in Trimaco's New Motion to Dismiss and Motion for a More Definite Statement, as detailed in this Brief, Trimaco submits that its Motions should be granted in its entirety.

 Respectfully submitted this 9th day of May, 2022.

<div style="margin-left:40%">

*/s/ John M. Moye*
John M. Moye (NC State Bar No. 35463)
BARNES & THORNBURG LLP
4280 Six Forks Road, Suite 1010
Raleigh, NC 27609-5738
Tel. (919) 536-6200
Email: JMoye@btlaw.com

BARNES & THORNBURG LLP
3475 Piedmont Road N.E., Suite 1700
Atlanta, Georgia 30305
Tel. (404) 264-4006

*Counsel for Defendants Trimaco, Inc.,*
*Charles Cobaugh, and David May*

</div>

## CERTIFICATE OF SERVICE

This is to certify that on the 9th day of May, 2022, I electronically filed the foregoing *Memorandum of Law in Support of Motion to Dismiss First Amended Complaint and Motion for More Definite Statement* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Robert C. Van Arnam (N.C. Bar No. 28838)
Andrew R. Shores (N.C. Bar No. 4600)
WILLIAMS MULLEN
P.O. Box 1000
Raleigh, NC 27602-1000
Telephone: (919) 981-4000
Fax: (919) 981-4300
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

*Of Counsel*

Duncan G. Byers, Esq.
Va. Bar ID #48146
PATTEN, WORNOM, HATTEN & DIAMONSTEIN
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Fax: (757) 249-1627
dbyers@pwhd.com

*Counsel for Plaintiffs*

This 9th day of May, 2022.

/s/ John M. Moye
John M. Moye (NC State Bar No. 35463)
BARNES & THORNBURG LLP
4280 Six Forks Road, Suite 1010
Raleigh, NC 27609-5738
Tel. (919) 536-6200
Email: JMoye@btlaw.com

*Counsel for Defendants Trimaco, Inc.,
Charles Cobaugh, and David May*