IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-015-FL

| | |
|---|---|
| ROBERT TERRACINO and BRADIE TERRACINO; | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) ORDER<br>)<br>) |
| TRIMACO, INC., f/k/a/ TRIMACO, LLC; CHARLES COBAUGH; and DAVID C. MAY; | )<br>)<br>)<br>) |
| Defendants.[1] | )<br>)<br>)<br>) |

This matter comes before the court on defendants' motion to dismiss. Where the motion has been briefed fully, the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiffs commenced this action January 7, 2022, asserting claims for fraudulent inducement, breach of contract, unconscionability, patent infringement, and violations of the Federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.*, and the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. §§ 75-1.1, *et seq.* Plaintiffs seek compensatory damages, relief that they term "enhanced and exemplary damages," treble damages under N.C.G.S. § 75-

---

[1] Former defendant 2300 Gateway, LLC voluntarily was dismissed from this action March 3, 2022.

1.1, and attorneys' fees. Defendants filed an initial motion to dismiss pursuant to Rule 12(b)(6), arguing inter alia that plaintiffs did not reference any contractual provision defendants allegedly breached, did not articulate the trade secrets plaintiffs sought to protect, did not identify any assertedly unconscionable conduct by defendants, and failed to articulate their contributions to certain patents. Thereafter, plaintiffs filed an amended complaint, relying on two United States patents, a license agreement, an assignment agreement, a letter terminating the agreements, a patent cooperation treaty, and a legal opinion by counsel. The court terminated defendants' original motion to dismiss as moot where plaintiffs' amended complaint superseded the original, and the instant motion to dismiss followed.

## STATEMENT OF THE FACTS

The relevant facts stated in the complaint may be summarized as follows. Plaintiffs developed a layered, high-friction drop cloth ("drop cloth") that protects a floor or other surface without slipping or harming the surface. (See Compl. ¶¶ 15-16). Plaintiffs filed a patent application and obtained U.S. Patent No. 9,044,917 (the "'917 patent"), which covers the drop cloth.

Thereafter, plaintiffs and defendant Charles Cobaugh, ("Cobaugh,"), owner of defendant Trimaco, LLC, ("Trimaco"), negotiated a licensing agreement which allowed Trimaco to manufacture, market, and sell the drop cloth. During these negotiations, Cobaugh represented that:

1) "[t]he Trimaco product would technically not infringe the Terracino's patent, and therefore no royalty payment was actually required," (Compl. ¶ 27);

2) plaintiffs' "patent doesn't apply to [Trimaco] since it has to do with sewing the backing on to the cloth (which [Trimaco is] not doing)."

3) plaintiffs' "royalty rate would be a percentage of Trimaco's net sales, which he defined as 'gross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale,'" (Compl. ¶28); and

2

4) plaintiffs' "royalty would be 2% of Trimaco's 'net' which he defined as follows: 'gross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale. If we sell something for $1 and we pay the freight carrier 8 cents and the customer deducts 8 cents for coop and rebates and warehouse allowances, then we net 80 cents out of that sale transaction.'"

(Compl. ¶ 39). Also during negotiations, plaintiffs disclosed proprietary information with the understanding that it would be confidential. (Compl. ¶ 47). Plaintiffs signed the licensing agreement February 10, 2016. (DE 17-2 at 5). Defendant Trimaco informed plaintiffs of its intent to terminate the licensing agreement February 10, 2021.

Defendant David C. May ("May") a co-owner of Trimaco, is listed as first inventor on a patent application for a slip-resistant protective mat, U.S. Provisional Pat. App. No. 62/249,806, which allegedly "captur[es] the inventive material [plaintiffs] provided to [defendants]." (Compl. ¶ 49). Defendants filed additional patent applications in the United States, the United Kingdom, and China. (See Compl. ¶¶ 54-57). At present, defendant Trimaco makes and sells two products that allegedly infringe the '917 patent: a "Stay Put Canvas" including a canvas later, a surface grip layer, and stitching, (see compl. ¶¶ 58, 61), and a "Stay Put Canvas Plus" including these elements and a liquid barrier component. (See Compl. ¶ 61).

## COURT'S DISCUSSION

A.      Standard of Review

To survive a motion to dismiss under Rule 12(b)(6),[2] "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level."

---

[2] The court does not rely upon Rule 9(b), which provides a more stringent pleading standard for claims sounding in fraud, where plaintiffs' fraud claims fail to state a claim under Rule 12(b)(6).

Twombly, 550 U.S. at 555.  In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.   Analysis

   1.   Choice of Law

"A federal court sitting in diversity ordinarily must follow the choice of law rules of the State in which it sits."  Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas, 571, U.S. 49, 65 (2013).  North Carolina uses the *lex loci* test for tort actions, applying the law of the state in which a plaintiff suffered the injury alleged.  See SciGrip, Inc v. Osae, 373 N.C. 409, 420 (2020).  In contract actions, "the interpretation . . . is governed by the law of the place where the contract was made."  Tanglewood Land Co. v. Byrd, 299 N.C. 260, 262 (1980); see also Szymczyk v. Signs Now Corp., 168 N.C. App. 182, 187 (finding that a contract is made where "the last act of signing" occurs).

As explained below, the complaint omits certain key facts, including the state in which the alleged harm occurred and the place where the contracts were made.  The court therefore applies Delaware law to claims sounding in contract and North Carolina law to all other state law claims, as proposed by defendants, the moving party, where plaintiffs do not advance any argument that some alternative state law should apply.

   2.   Fraudulent Inducement

Defendants move to dismiss plaintiffs' fraudulent inducement claims directed against

---

[3]   Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

Cobaugh and Trimaco for failure to state with particularity the circumstances constituting fraud under Fed. R. Civ. P. 9(b). Under North Carolina law, "[t]he essential elements of fraud are: 1) false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, 5) resulting in damage to the injured party." Rowan County Board of Education v. Gypsum Co., 332 N.C. 1, 17 (1992).[4] In addition to these five elements, "any reliance on the allegedly false representations must be reasonable." Forbis v. Neal, 361 N.C. 519, 527 (2007). "The mere failure to carry out a promise in contract . . does not support a tort action for fraud." Strum v. Exxon Co., 15 F.3d 327, 331 (4th Cir. 1994) (interpreting North Carolina law).

        a.        Statements Regarding Patent Infringement

Plaintiffs contend that defendant Cobaugh's statements regarding patent infringement were false statements of material fact intended to deceive. In order to be actionable, a misrepresentation must "be in respect of an ascertainable fact, as distinguished from a mere matter of opinion." Berwer v. Union Central Life Insurance. Co., 214 N.C. 554 (1938). Additionally, "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555. Where courts have "the power and obligation to construe as a matter of law the meaning of language used in [a] patent claim" before a finder of fact may determine whether infringement has occurred, whether a given product infringes a patent is not a purely factual question. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995).

Plaintiffs advance the following specific representations:

1) "[T]he Trimaco product would technically not infringe the Terracino's patent, and therefore no royalty payment was actually required," (Compl. ¶ 27); and
2) "'your patent doesn't apply to us since it has to do with sewing the backing on to the cloth (which we are not doing)."

---

[4] Where plaintiffs do not assert *lex loci*, and both parties brief as though North Carolina law applies to plaintiffs' claims sounding in tort, the court applies North Carolina law.

5

(Compl. ¶ 31). Where these statements advance a theory that the accused product did not infringe plaintiffs' patent, they are legal conclusions, not factual statements. That defendant Cobaugh's statements are a matter of opinion is evidenced additionally by plaintiffs' reliance on a legal memorandum by outside counsel. (See DE 17-7 at 2) ("This letter confirms our opinion that U.S. Courts and the International Trade Commission (ITC) should hold . . the 917 patent . . . valid and infringed by the sample non-skid drop cloth."). Accordingly, these statements do not satisfy the first element of fraud.

b. Definition of Net Sales

Plaintiffs allege additional grounds for fraudulent inducement based on defendant Cobaugh's statements regarding the definition of net sales in the agreement. Although, under North Carolina law, oral representations "may sometimes be used to explain a written contract, [they] cannot be offered to alter or contradict any of its provisions." Bost v. Bost, 234 N.C. 554, 558 (1951).

Plaintiffs assert that the following representations made by Cobaugh were false statements of material fact that fraudulently induced them to sign the agreement:

> 1) "that [plaintiffs'] royalty rate would be a percentage of Trimaco's net sales, which he defined as 'gross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale," (Compl. ¶28); and
>
> 2) "that [plaintiffs'] royalty would be 2% of Trimaco's 'net' which he defined as follows: 'gross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale. If we sell something for $1 and we pay the freight carrier 8 cents and the customer deducts 8 cents for coop and rebates and warehouse allowances, then we net 80 cents out of that sale transaction."

(Compl. ¶ 39). Plaintiffs assert that Cobaugh's failure to disclose that sales commissions would also be excluded from net revenue constitutes actionable fraud. However, the agreement, which is six pages long, contains the language "'Net Sales' shall mean LICENSEE's gross sales less

6

outbound freight, sales commissions, and other customer givebacks." (DE 17-2 at 2) (emphasis added). Plaintiffs, who signed the agreement, do not allege that they were not given an opportunity to read it. Plaintiffs therefore should have discovered any inconsistencies between Cobaugh's statements and the terms of the agreement before it was signed, and their alleged reliance on Cobaugh's oral representations in the face of contradicting contractual terms is not reasonable.

Accordingly, plaintiffs' first and second claims for fraud in the inducement must be dismissed.

### 3. Unconscionability

Defendants argue that the complaint fails to state facts sufficient to state a claim for declaratory judgment on the grounds that the license agreement was unconscionable. Under Delaware law, a contract is unconscionable if there is both "an absence of meaningful choice and contract terms unreasonably favorable to one of the parties." Tulowitzki v. Atlantic Richfield Co., 396 A.2d 956, 960 (Del. 1978).[5] "[A] contract is unconscionable if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." Id. "Mere disparity between the bargaining powers of parties to a contract will not support a finding of unconscionability." Ketler v. PFPA, LLC, 132 A.3d 746, 748 (Del. 2016). Additionally, a "party to a contract cannot silently accept its benefits and then object to its perceived disadvantages, nor can a party's failure to read a contract justify its avoidance." Kaufman v. C.L. McCabe & Sons, Inc., 603 A.2d 831, 834 (Del. 1992).

Plaintiffs claim that the licensing agreement is unconscionable where it "leaves the

---

[5] North Carolina law articulates a similar standard. See Brenner v. Little Red School House, Ltd., 302 N.C. 207, 213 (1981). ("[A] court will generally refuse to enforce a contract on the ground of unconscionability only when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other.")

7

[plaintiffs] with no way to determine . . . what the royalty paid to them was based upon, (compl. ¶ 38), citing the licensing agreement's provision denying plaintiffs any right "to examine information with respect to [defendant's] costs, pricing formulas, or percentages of markup." (Compl. ¶ 37). The licensing agreement relied on by plaintiffs, however, also provides that:

> [Plaintiffs] shall have the right, upon reasonable notice, to inspect [defendant's] books and records and other documents and material in [defendant's] possession or control with respect to the subject matter of this [a]greement. [Plaintiffs] shall have free and full access thereto for such purposes and may make copies thereof.

(DE 17-2 at 2). Where the contract provides plaintiffs the right to inspect records that relate to the agreement, and plaintiffs do not allege any information that they were denied that had any effect on royalty payments, the agreement gave plaintiffs a fair opportunity for audit. Contrary to plaintiffs' assertion that they had no "ability to monitor how the royalty was being calculated," (DE 24 at 15), plaintiffs had "free and full access" to relevant records. (DE 17-2 at 2). Thus, the terms were not so unreasonably favorable to defendants that no fair person would accept them.

Plaintiffs assert additionally that the royalty rate, method of calculating the rate, and power differential between the parties could support a finding of unconscionability. They cite in support Tillman, in which the North Carolina Supreme Court found that an arbitration agreement included in loan documents was unconscionable where it imposed prohibitively high costs of about $1225 per day on the losing party, allowed defendants to bring claims in court while denying plaintiffs the same opportunity, and prohibited joinder of co-parties. See Tillman v. Commercial Credit Loans, Inc., 362 N.C. 93, 104-08 (2008). Unlike the plaintiffs in Tillman, however, plaintiffs here had an opportunity to read and negotiate the contract. (Compl. ¶¶ 23-31). Tillman is unpersuasive in addition where plaintiffs do not identify any factual similarities between it and the case at bar.

Accordingly, plaintiffs' seventh claim for declaratory judgment holding the license agreement unconscionable must be dismissed.

8

4. Breach of Contract

Plaintiffs' third claim for relief alleges that defendants breached the license agreement. "Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) resulting damage to the plaintiffs." Connelly v. State Farm Automobile Insurance Co., 135 A.3d 1271, 1279 n.28 (Del. 2016). Plaintiffs allege that defendants breached the license agreement by "failing to make the complete royalty payments to the Terracinos . . . misusing the Terracinos' trade secrets . . . and failing to give notice to the Terracinos regarding Trimaco's patent applications." (Compl. ¶ 15).

a. Royalty Payments

As relevant here, the agreement provides that "LICENSEE agrees to pay to LICENSORS a royalty of 2% on net sales in the United States of License's Stay Put™ Canvas products . . . for the term of this License." (DE 17-2 at 2); see also (Compl. ¶ 29). Accordingly, plaintiffs have properly pleaded the existence of a contractual obligation with regard to defendant Terracino's responsibility to pay royalties. Plaintiffs allege no facts, however, regarding the amounts to which plaintiffs believe themselves entitled, how much defendants paid, or any shortfall between what plaintiffs were owed and what they received. As such, plaintiffs have not pled facts sufficient to give rise to a plausible inference that defendants breached the license agreement on this ground.

Plaintiffs' attempt to blame defendants for these omissions in their opposition brief is unconvincing. As detailed above, plaintiffs had a right to "inspect [defendant's] books and records and other documents." (DE 17-2 at 2). This is thus not a case where plaintiffs have no way to allege that a breach occurred. For example, plaintiffs do not allege that defendants breached the agreement by wrongfully withholding records. In the absence of facts to support an allegation that defendants failed to pay royalties, the claim must be dismissed.

9

### b. Trade Secrets

The section of the agreement which governs confidentiality provides, at least, that

> "trade secrets . . shall be marked by the disclosing party as "Confidential" or "Proprietary." If such information is disclosed orally, or through demonstration, in order to be deemed Confidential Information, it must be specifically designated as being of a confidential nature at the time of disclosure and reduced in writing and delivered to the receiving party within (30) thirty days of such disclosure."

(DE 17-2 at 3). Where the confidentiality section begins at the bottom of page three and contains only one paragraph, additional language relating to trade secrets likely appears on page 4. However, because the copy of the agreement that plaintiffs provided to the court omits page 4, it is impossible to determine what defendants' responsibilities may have been. Additionally, plaintiffs' complaint does not contain any factual allegations outlining defendants' obligations with regard to plaintiffs' trade secrets. As such, plaintiffs have failed to demonstrate the existence of any contractual obligation regarding trade secrets and failed to plead that defendants breached the license agreement on this ground.

### c. Notice of Patent Applications

Though plaintiffs contend that defendant Trimaco's "fail[ure] to give notice to the Terracinos regarding Trimaco's patent applications directed to the Terracinos' invention" constitutes a breach of the licensing agreement, they do not assert that the agreement compelled Trimaco to give any such notice. Nor do any facts alleged in the complaint support such assertion. The court likewise can identify no provision requiring Trimaco to notify the Terracinos of patent applications it filed. Accordingly, plaintiffs have not sufficiently pled that Trimaco breached the agreement on this ground.

In sum, where plaintiffs do not plead facts that, if true, would be sufficient to show that defendants breached the license agreement, plaintiffs' third claim for breach of contract must be

10

dismissed.

5.  UDTPA

Defendants argue that the complaint fails to state a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). See N.C. Gen. Stat. § 75-1.1. In order to state a claim under the UDTPA, "a plaintiff must show 1) [that the] defendant committed an unfair or deceptive act or practice, 2) the action in question was in or affecting commerce, and 3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001). "A practice is unfair if it is unethical or unscrupulous." Id. "To prevail on an UDTPA claim, plaintiffs must demonstrate some type of egregious or aggravating circumstances." Champion Pro Consulting Group, Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016). A trade practice "is deceptive if it has a tendency to deceive." Dalton, 353 N.C. at 656.

Plaintiffs' UDTPA claim stands in large part on the shoulders of its fraudulent inducement claim, (see DE 17 ¶ 98), and plaintiffs argue in their opposition brief that substantial aggravating circumstances, including deception in the formation in the contract, attended defendants' asserted breach. (See DE 24 at 13). Where the court dismisses plaintiffs' fraudulent inducement and breach of contract claims, however, the derivative UDTPA claims also fail and are dismissed.

Plaintiffs state additionally that they have pleaded a "UDTPA claim based on separate, underlying torts and false and deceptive actions that are independent of any breach of contract claim," but they do not state what these separate torts and actions are. Id. While plaintiffs imply that Trimaco engaged in "an inequitable assertion of its power or position," the case they rely upon for the principle that such inequitable assertion can violate the UDTPA found that the misrepresentations alleged in that case "simply [did] not rise to the level of oppressive, unscrupulous, or deceptive conduct which would constitute an unfair or deceptive act or practice."

Warfield v. Hicks, 91 N.C. App. 1, 8-9 (1988). Accordingly, plaintiffs' sixth claim for violation of the UDTPA must be dismissed.

6. The Defend Trade Secrets Act

Defendants move to dismiss plaintiffs' claims that defendants May and Trimaco misappropriated trade secrets in violation of federal law. The Defend Trade Secrets Act provides that "an owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce," 18 U.S.C. §§ 1836(b)(1), provided that "the owner thereof has taken reasonable measures to keep such information secret; and the information derives independent economic value . . . from not being generally known." 18 U.S.C. § 1839(a)-(b). A trade secret "must not be of public knowledge or of a general knowledge in the trade or business." Steves and Sons, Inc. v. JELD-WEN, Inc., 988 F.3d 690, 726 (4th Cir. 2021).

Plaintiffs allege that defendants May and Trimaco misappropriated "proprietary information related to the design, structure, and manufacture of the Drop Cloths," (compl. ¶ 47), and a "follow-on invention of providing a middle, impervious layer to the Drop Cloth." (Compl. ¶ 48). Contrary to plaintiffs' conclusory assertion that this information was "not generally known to, and not . . . readily ascertainable through proper means by others who would exploit that disclosure for economic gain, (compl. ¶¶ 84, 91); see also 18 U.S.C. § 1839(b), all the information allegedly misappropriated by Trimaco is disclosed in the '917 patent. (See generally DE 17-1). The patent describes the design and structure of the drop cloth through diagrams, (DE 17-1 at 1-5), and details some manufacturing processes, including a process by which "[a] lower resilient layer is bonded to woven upper layer, typically by stitching. [M]ethods and materials other than stitching may be utilized . . . includ[ing] adhesive fastening, hook-and-loop fasteners, mechanical

12

fasteners, etc." (DE 17-1 at 10). The abstract describes the follow-on invention in the following terms: "[i]n alternate embodiments, an impervious member may be inserted between the upper and lower members" (DE 17-1 at 1). Where all the proprietary information plaintiffs have alleged is publicly available in their patent, their claim under the Defend Trade Secrets Act fails.

Plaintiffs' cited cases do not alter this conclusion. Lord Corporation and Redox Tech both interpret the North Carolina Trade Secrets Protection Act, N.C.G.S. § 66-152(3)(a)-(b), which, though similar to the federal Defend Trade Secrets Act, cannot affect interpretations of federal law. In any event, in neither case did a plaintiff file publicly its asserted trade secrets with the Patent and Trade Office. See Redox Tech, LLC v. Earthworks Solutions, LLC, No. 5:17-CV-447, 2018 WL 1733984 at *3 (E.D.N.C. Apr. 10, 2018) (noting in a case where a former employee had allegedly formed a new company using plaintiffs' trade secrets that the "complaint [] alleges the confidential nature of this information); Lord Corporation v. S&B Technical Products, Inc., No. 5:09-cv-205, 2011 WL 13152459 (E.D.N.C. Jan. 5, 2011). While the court in Yeiser Research found that the "existence of [a confidentiality] agreement is relevant to whether a party took reasonable steps to ensure secrecy of its alleged trade secrets," the plaintiff in that case had not disclosed any of the "various attributes of its concept" to anyone except the defendant, nor had it described its alleged trade secrets in detail to an agency of the United States government. Yeiser Research & Development LLC v. Teknor Apex Co., 281 F.Supp.3d 1021, 1044-45 (S.D. Cal. 2017). In this case, conversely, plaintiffs disclosed the information by putting it in the public record. Accordingly, plaintiffs' fourth and fifth claims for violation of the Defend Trade Secrets Act must be dismissed.

7. Civil Conspiracy

Defendants argue that plaintiffs' civil conspiracy claim fails due to the intracorporate

13

immunity doctrine, which provides that "corporate employees cannot conspire with each other or the corporation." ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 179 (4th Cir. 2002). Plaintiffs argue in turn that where defendant "May wanted to be recognized as an inventor on a patent," (DE 24 at 16), he meets an exception which "applies where a co-conspirator possesses a personal stake independent of his relationship to the corporation." ePlus Technology Inc., 313 F. 3d at 179. Though the United States Court of Appeals for the Fourth Circuit has not definitively ruled that the personal stake must be financial in nature, this court has ruled previously that to invoke the exception to the intracorporate conspiracy doctrine, the alleged conspirator must have "a financial stake in the outcome of the alleged conspiracy, separate from and independent of the financial stake in the corporation." Godfredson v. JBC Legal Group, P.C., 387 F.Supp. 543, 550 (E.D.N.C. 2005); see also Oksanen v. Page Memorial Hospital, 945 F.2d 696, 705 (4th Cir. 1991) ("we decline to extend the personal stake exception beyond the rationale underlying the Greenville decision); Greenville Publishing Co., Inc. v. Daily Reflector, Inc., 496 F.2d 391, 399-400 (4th Cir. 1974) (reasoning that an individual defendant could possess an independent personal stake where he received a percentage of advertising revenues). Thus, the personal stake exception does not apply to defendant May where plaintiffs have not alleged that he stood to benefit financially from a conspiracy.

Plainitiff's citation to Painter's Mill Grille is unavailing where the operative language quotes dicta from the Seventh Circuit, which is not controlling in this court. See Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 353 (4th Cir. 2013) (quoting a Seventh Circuit case speculating that the intracorporate conspiracy doctrine "probably would not apply here corporate employees are shown to have been motivated solely by personal bias, because in that case . . . , the corporation would have played no part in the employees' collective action."). Leaving aside the

14

non-binding nature of the case and speculative language, plaintiffs do not allege that defendant May was solely motivated by non-financial desires. The conspiracy claim therefore fails where defendants are covered by the intracorporate immunity doctrine. Accordingly, plaintiffs' ninth claim for civil conspiracy must be dismissed.

    8.    Patent Infringement

        a.    Motion to dismiss

Defendants argue that plaintiffs have failed to state a claim where the '917 patent's use of the transitional phrase "consisting of" excludes from the patent's coverage any product, including the alleged infringing product, that includes components not specifically described in the patent. "A patentee need only plead facts sufficient to place the alleged infringer on notice as to what he must defend . . . a plaintiff in a patent infringement suit is not required to specifically include each element of the claims of the asserted patent." McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357 (Fed. Cir. 2007); see also Bot M8 LLC v. Sony Corporation of America, 4 F.4th 1342, 1353 (Fed. Cir. 2021) ("there must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim."). Additionally, local patent rules mandate a detailed process for claim construction, which allows the court to define disputed claim terms. See E.D.N.C. Patent Rs. 304.1-.6. "Claim construction at the pleading stage – with no claim construction processes undertaken – [is] inappropriate." In re Bill of Lading Transmission and Processing System Patent Litigation, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012); see also Nalco Company v. Chem-Mod, LLC, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (finding that where "[d]efendants' arguments boil down to objections to [plaintiff's] proposed claim construction . . . [the] dispute [was] not suitable for resolution on a motion to dismiss").

The complaint alleges, at a minimum, that where "the Stay Put Canvas . . and the Stay Put

15

Canvas Plus drop cloth[s]" (DE 17 ¶ 61) are "manufactured and sold with stitching," (DE 17 at ¶ 58), they infringe the '917 patent. Plaintiffs have placed defendants on notice of what products are accused of infringing on their patent and how the infringement is occurring. At this early stage of litigation, plaintiffs have done all that is required, and adjudication of disputed claim terms is premature.

Defendants' argument that the court should adopt its definition of the phrase "consisting of" without the benefit of a claim construction process falls short. Defendants urge the court to adopt the definition set out in the Manual of Patent Examining Procedure ("MPEP"), in which "consisting of" "excludes any element, step, or ingredient not specified in the claim," MPEP 2111.03.II, and to hold that plaintiffs have pleaded themselves out of court where one of the accused products contains a liquid barrier component not described in the patent. Defendants ignore, however, the MPEP's admonition that "[t]he determination of what is or is not excluded by a transitional phrase must be made on a case-by-case basis in light of the facts of each case." Id. at 2111.03. While it is possible that the court will adopt defendants' definition eventually, the Federal Circuit has made clear that it should not do so on the basis of the pleadings alone. See In re Bill of Lading Transmission, 681 F.3d at 1343 n.13. In addition and in the alternative, even if the court adopted defendants' definition of the transitional term, it would still need to decide "what is limited by the 'consisting of' phrase," Norian Corp. v. Stryker Corp., 363 F.3d 1321, 1331 (Fed. Cir. 2004), that is, whether the components defendants argue they have added are "part of the invention that is described." Id. at 1332. This question should be deferred for a stage in the litigation when the parties have had an opportunity to conduct discovery.

b. Motion for More Definite Statement

Defendant Trimaco asserts it "is unable to understand the infringement allegations against

it," (DE 20 at 25), where it abided by the terms of the license agreement and "a valid license is a complete defense to infringement." Id. (citing Intel Corp. v. Broadcom Corp., 173 F. Supp. 2d 201, 228 (D. Del. 2001). "When the complaint . . . is neither so vague nor so ambiguous that the defendant cannot reasonably be required to answer, the district court should deny a motion for a more definite statement." Hodgson v. Virginia Baptist Hospital, Inc., 482 F.2d 821, 824 (4th Cir. 1973). The complaint in this case alleges that Trimaco sells two products, "both of which infringe the '917 Patent[:] the Stay Put Canvas with a canvas layer and a surface grip layer, and the Stay Put Canvas Plus drop cloth further incorporating a liquid barrier component," (DE 17 ¶ 61), that Trimaco sent notice of its intent to terminate the agreement February 10, 2021, (See DE 17 ¶ 45), and that "the infringing drop cloth . . . continues to be manufactured and sold." (DE 17 ¶ 58). Plaintiffs have therefore clearly identified two products which allegedly infringe, and have further stated that defendant Trimaco sold these products while no licensing agreement was in effect. No more definite statement of the claim is required. Accordingly, defendants' motion to dismiss plaintiffs' eighth claim for patent infringement is denied.[6]

---

[6] Defendants request attorneys' fees on the basis of plaintiffs' alleged delay in filing the amended complaint and misrepresentations to defendants' counsel. Where plaintiffs timely amended the complaint as a matter of right, the court declines in its discretion to award attorneys' fees to defendants.

17

## CONCLUSION

Based on the foregoing, defendants' motion to dismiss (DE 19) is GRANTED IN PART and DENIED IN PART as set forth herein. Plaintiffs' patent infringement claim is allowed to proceed. Plaintiffs' remaining claims are DISMISSED for failure to state a claim for which relief can be granted, under Rule 12(b)(6). In accordance with Federal Rule of Civil Procedure 12(a)(4), defendants must serve a responsive pleading to the amended complaint within 14 days of entry of this order.

SO ORDERED, this the 27th day of March, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge