**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROBERT TERRACINO and BRADIE TERRACINO, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CIVIL ACTION FILE NO. |
| v. | ) | 5:22-CV-15-FL |
| | ) | |
| TRIMACO, INC., | ) | |
| 2300 GATEWAY, LLC, | ) | |
| CHARLES COBAUGH, | ) | |
| and DAVID C. MAY, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWER AND DEFENSES TO PLAINTIFFS' COMPLAINT AND COUNTERCLAIMS AGAINST PLAINTIFFS

Defendants Trimaco, Inc. f/k/a Trimaco, LLC ("Trimaco"), Charles Cobaugh ("Cobaugh"), and David C. May ("May," and each of Trimaco, Cobaugh, and May a "Defendant," and collectively the "Defendants"),[1] hereby submit (i) Defendants' Answer and Defenses to the First Amended Complaint (Dkt. No. 17) and (ii) Trimaco's Counterclaims against Plaintiffs Robert and Bradie Terracino ("Plaintiffs" or "Terracinos"), stating and alleging as follows:

## ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT

## NATURE OF THE ACTION

1.     This is a civil action for violations of the federal Defend Trade Secrets Act (18 U.S.C. § 1831 et seq.), patent infringement under 35 U.S.C. § 271, violations of North Carolina's

---

[1] Pursuant to the Court's Order (Dkt. 28), Defendants do not believe that there are any remaining claims against Messrs. Cobaugh and May. Out of an abundance of caution, however, Defendants respond collectively to the allegations contained in the First Amended Complaint.

Unfair and Deceptive Trade Practices Act, breach of contract, fraud in the inducement, and civil conspiracy.

**ANSWER**: Defendants admit that this is a civil action for patent infringement under 35 U.S.C. § 271. Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants' deny that this is a civil action for violations of the federal Defend Trade Secrets Act (18 U.S.C. § 1831 et seq.), violations of North Carolina's Unfair and Deceptive Trade Practices Act, breach of contract, fraud in the inducement, or civil conspiracy.

2.     Plaintiffs' claims arise out of actions wherein Defendants engaged in a scheme to steal the business and intellectual property from a small growing company. Specifically, the Defendants fraudulently induced the Terracinos to enter an unconscionable patent license agreement (the "Agreement"), while knowingly paying far below market royalty rates solely to gain their trust and to learn their intellectual property.

**ANSWER**: Defendants deny the allegations contained in paragraph 2.

3.     Defendants also copied the Terracinos's patented invention, filed a separate U.S. patent application claiming the Terracinos's invention, and terminated the license with the Terracinos once Trimaco received a separate U.S. Patent for a manufacturing method also invented by the Terracinos.

**ANSWER**: Defendant's admit that they filed and were granted a U.S. Patent for a manufacturing method. Defendants deny the remaining allegations contained in paragraph 3.

4.     Defendants further wronged the Terracinos by filing for patent protection for the Terracinos's invention without their knowledge and without naming the Terracinos as inventors.

**ANSWER**: Defendants deny the allegations contained in paragraph 4.

5.     By and through the manufacture and sales of, at least, Trimaco's "Stay Put" canvas drop cloths, Trimaco has breached the Agreement with the Terracinos and is infringing upon the Terracinos' patent.

**ANSWER**: Defendants deny the allegations contained in paragraph 5.

6.     The Terracinos are seeking injunctive and monetary relief.

**ANSWER**: Defendants admit that the Terracinos purport to seek injunctive and monetary relief.

## PARTIES

7.     Plaintiff Robert Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 7 and therefore deny the same.

8.     Plaintiff Bradie Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 8 and therefore deny the same.

9.     Defendant Trimaco Inc. ("Trimaco"), formerly known as 2300 Gateway, Inc., is an Ohio Corporation with its Principal Office located at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina, 27560. In addition to its Principle Office, Trimaco has offices located in St. Louis, Missouri and Surprise, Arizona. It also owns and operates manufacturing plants in Surprise, Arizona; Manning, South Carolina; Ridgefield, Washington; and Elk Grove Village,

Illinois. Trimaco has additional affiliated entities that may also be liable and will be added if necessary.

**ANSWER**: Defendants admit that Trimaco is formerly known as 2300 Gateway, Inc. and is an Ohio Corporation with its Principal Office located at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560. Defendants admit that Trimaco has offices located in St. Louis, Missouri and Surprise, Arizona and that Trimaco also operates manufacturing plants in Surprise, Arizona; Manning, South Carolina; Ridgefield, Washington; and Elk Grove Village, Illinois. Defendants deny the remaining allegations contained in paragraph 9.

10. Defendant Charles Cobaugh is an individual, and the owner of Trimaco, Inc. as well as other related entities. Cobaugh in his individual capacity has availed himself of the jurisdiction of this Court as some or all of the actions taken by him to fraudulently induce the Terracinos to enter into the License Agreement were made in this jurisdiction.

**ANSWER**: Pursuant to and in light of this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants deny the allegations contained in paragraph 10.

11. Defendant David C. May is an individual residing in North Carolina, a co-owner and the Vice President and Southeast Regional Sales Manager of Trimaco. May is a named inventor on the patent application filed by Trimaco claiming the Terracinos's invention.

**ANSWER**: Pursuant to and in light of this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants deny the allegations contained in paragraph 11.

## JURISDICTION AND VENUE

12. The Court has jurisdiction to hear this matter as the claims herein arise from Trimaco transacting business in and infringing Terracinos' patent in this jurisdiction. This Court

also has personal jurisdiction over Trimaco as Trimaco's corporate headquarters and Principle Office are located in Wake County at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560. Trimaco is also a foreign corporation registered with the North Carolina Secretary of State to do business in this jurisdiction, and has therefore availed itself to the laws and protections of the State of North Carolina. Accordingly, this Court has jurisdiction over Trimaco, and venue in this District is proper under 28 U.S.C. § 1400(b).

**ANSWER**: Defendants admit that Trimaco conducts business in this jurisdiction. Defendants admit that Trimaco's corporate headquarters and principal offices are located in Wake County at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560. Defendants admit that Trimaco is also a foreign corporation registered with the North Carolina Secretary of State. Defendants admit that venue in this District is proper under 28 U.S.C. § 1400(b). Defendants deny the remaining allegations contained in paragraph 12.

13.    Jurisdiction and venue are also proper in this jurisdiction as to Trimaco as the misrepresentations inducing the Terracinos to enter into the Agreement at issue were made by a corporate officer located in the Trimaco corporate headquarters in this District. The trade secrets were misappropriated by Trimaco in North Carolina, were communicated to that same corporate officer located at the Trimaco corporate headquarters, and the trade secrets were appropriated by Trimaco in this District for a patent application that matured into an issued patent.

**ANSWER**: Pursuant to and in light of this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants deny the allegations contained in paragraph 13.

14.    By and through those same actions taking place in the Eastern District of North Carolina, the Agreement was breached, and the civil conspiracy was enacted. This Court has pendant jurisdiction over the North Carolina claims for violations of the North Carolina Trade

5

Secrets Protection Act (N.C. Gen. Stat. § 66-152 *et seq.*), the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 *et seq.*), and the North Carolina common law claim for civil conspiracy.

**ANSWER**: Pursuant to and in light of this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants deny the allegations contained in paragraph 14.

## FACTUAL BACKGROUND

### The Terracinos's Patent and Formation of the License Agreement

15.     Plaintiffs Robert and Bradie Terracino (the "Terracinos") are a couple living in Virginia Beach, Virginia. Robert Terracino retired from a painting business.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 15 and therefore deny the same.

16.     As a result of their experience with painting and painting related technology, the Terracinos developed a layered drop cloth that in addition to providing protection for floors and other surfaces also provides a bottom surface creating high friction allowing the drop cloth to protect a floor or other surface without slipping and without harming the surface on which the drop cloth is utilized.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 16 and therefore deny the same.

17.     The Terracinos filed a patent application directed to this first invention, and were ultimately issued U.S. Patent No. 9,044,917 on June 2, 2015 directed to their "Non-Skid Protective Cloth or Pad" ("the '917 patent"). The '917 Patent is valid and enforceable. A true and correct copy of the '917 patent is attached as Exhibit 1.

**ANSWER**: Defendants admit that U.S. Patent No. 9,044,917 issued on June 2, 2015 and that a copy of the '917 patent is attached as Exhibit 1 to the First Amended Complaint. Defendants otherwise deny the remaining allegations contained in paragraph 17.

18.     Seeking to monetize their invention, the Terracinos began confidential discussions with Cobaugh, the owner of Trimaco, regarding their patented invention and the possibility of Trimaco manufacturing and selling their invention.

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that the Parties entered into a License Agreement following those discussions. Defendants deny the remaining allegations contained in paragraph 18.

19.     After speaking with Cobaugh on June 18, 2015, the Terracinos sent images, video, and a sample of the invention to Cobaugh demonstrating their patented drop cloth (the "Drop cloth").

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that the Parties entered into a License Agreement following those discussions. Defendants deny the remaining allegations contained in paragraph 19.

20.     At least one element of the invention, the non-skid bottom layer, was a new concept to Cobaugh and he admitted to the Terracinos that he had no idea where he would obtain the material.

**ANSWER**: Defendants deny the allegations contained in paragraph 20.

21.     The Terracinos, with the understanding that doing so would be confidential and subject to the formation and execution of the Agreement being negotiated, provided Cobaugh with the information needed to obtain the material to create the non-skid bottom layer.

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that the Parties entered into a License Agreement following those discussions. Defendants deny the remaining allegations contained in paragraph 21.

22.     Cobaugh indicated to the Terracinos that he would manufacture numerous sizes of versions of the Drop Cloth on the Terracinos's behalf, and that he would market it globally.

**ANSWER**: Defendants deny the allegations contained in paragraph 22.

23.     From June through October, 2015, the Terracinos continued conversations with Cobaugh related to their invention for the purpose of, among other things, licensing their invention to Trimaco.

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that the Parties entered into a License Agreement following those discussions. Defendants deny the remaining allegations contained in paragraph 23.

24.     Cobaugh enticed the Terracinos to enter into the Agreement by telling them, on October 26, 2015 in an email that "I think we could sell at least $1 million dollars by the end of 1½ - 2 years and then double that in 4-5 years." In that same email, Cobaugh advised that Trimaco would have its attorney draft the Agreement and did, in fact, provide the Agreement to the Terracinos.

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that Cobaugh provided the Agreement to the Terracinos. Defendants deny the remaining allegations contained in paragraph 24.

25.     Cobaugh also represented to the Terracinos that the royalties would include sales outside of the United States.

8

**Answer**: Defendants deny the allegations contained in paragraph 25.

26.     Cobaugh proposed a 5-year license to the Terracinos with a 2% royalty rate.

**Answer**: Defendants admit the allegations contained in paragraph 26.

27.     A 2% royalty rate was far below what the industry norms would provide for and less than the royalty rates that he told the Terracinos Trimaco typically paid (3-5%). Cobaugh represented that the lower rate was justified because the Trimaco product would technically not infringe the Terracinos's patent, and therefore no royalty payment was actually required at all. Cobaugh made this representation knowing it was false.

**ANSWER**: Defendants admit Trimaco's products do not infringe the Terracinos' patent and that they were so advised. Defendants deny the remaining allegations contained in paragraph 27.

28.     Cobaugh also advised the Terracinos that their royalty rate would be a percentage of Trimaco's net sales, which he defined as "[g]ross sales less all customer givebacks and prepaid freight i.e. what we net out of the sale."

**ANSWER**: Defendants admit that the Parties entered into a License Agreement that defines net sales. Defendants deny the remaining allegations contained in paragraph 28.

29.     Despite Cobaugh's assertions of what the "net sales" were, the Agreement itself, however, states that net sales are "[Trimaco's] gross sales less outbound freight, sales commissions, and other customer givebacks such as COOP, rebates, and other allowances and, further, less any *bona fide* returns (net of all returns actually made or allowed as supported by credit memoranda actually issued to the customers) up to the amount of the actual sales of Royalty-Bearing Products during the Royalty Period." Because the Terracinos's royalty is based upon "net

9

sales," Cobaugh's misrepresentations as to net sales were directed at a material term of the Agreement.

**ANSWER**: Defendants admit that the Parties entered into a License Agreement that defines net sales as set forth above, less the words "during the Royalty Period." Defendants deny the remaining allegations contained in paragraph 29.

30.     Upon receiving the Agreement from Trimaco, the Terracinos reminded Cobaugh that the proposed royalty rate was lower than what he had indicated as typical royalty rates paid by Trimaco. Cobaugh responded by offering two options: first, the 2% royalty on net sales for 5 years; or two, a $10,000.00 up front fee plus the 2% royalty over 5 years but Trimaco would own the Terracinos's Patent.

**ANSWER**: Defendants admit that the Terracinos engaged in discussions with the Defendants and that Cobaugh offered different options for payment. Defendants deny the remaining allegations contained in paragraph 30.

31.     Despite that, Cobaugh followed up on October 29, 2015, claiming that "your patent doesn't apply to us since it has to do with sewing the backing on to the cloth (which we are not doing). Therefore, we do not want the patent so option 2 is not a good offer. In good faith, however, we will still agree to honor the 2% royalty for 5 years, and I hope we sell millions of $'s of these so that your royalty will be a big number." That was a false statement of material fact as the Stay Put drop cloth manufactured, imported, and sold by Trimaco within the United States and worldwide does, in fact, infringe the Terracinos's patent.

**ANSWER**: Defendants admit that Cobaugh advised the Terracinos that Trimaco's products would not infringe the patent. Defendants deny the remaining allegations contained in paragraph 31.

32. The Terracinos do not own a large business and are unsophisticated when it comes to patent license agreements; they did not understand that the proposed royalty rate was significantly lower than market rates for similar technologies and that they were entitled to more. They relied on the false material representations from one or more Defendants.

**ANSWER**: Defendants deny that the proposed royalty rate was significantly lower than market rates for similar technologies or that they were entitled to more. Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 32 and therefore deny the same.

33. Market rates for similar technologies are two to four times the royalty rate offered to the Terracinos.

**ANSWER**: Defendants deny the allegations contained in paragraph 33.

34. By enticing the Terracinos with the threat of Trimaco manufacturing and selling Drop Cloths that as a matter of material fact infringe upon the Terracinos's '917 patent but convincing them otherwise, Trimaco and Cobaugh fraudulently induced the Terracinos into entering into the Agreement. The statement by Cobaugh was a false statement of a present material fact.

**ANSWER**: Defendants deny the allegations contained in paragraph 34.

35. A true and correct copy of the Agreement as ratified by the Terracinos is attached as Exhibit 2.

**ANSWER**: The Defendants admit that a copy of the Agreement is attached as Exhibit 2. Defendants deny the remaining allegations contained in paragraph 35.

36.     Although the Agreement provides that the Terracinos are entitled to a royalty based upon net sales of the invention, the Agreement provides them with no ability to meaningfully audit or monitor the royalty payments.

**ANSWER**: Defendants deny the allegations contained in paragraph 36.

37.     Section 4.A. of the Agreement provides, in part, that "[i]n no event shall [the Terracinos] have the right to examine information with respect to [Trimaco's] costs, pricing formulas, or percentages of markup."

**ANSWER**: Defendants admit the allegations contained in paragraph 37.

38.     Section 4.A. is unconscionable as it leaves the Terracinos with no way to determine, even upon inspection of what information § 4.A. of the Agreement provides, what the royalty paid to them was based upon.

**ANSWER**: Defendants deny the allegations contained in paragraph 38.

39.     Cobaugh told the Terracinos in October of 2015 that their royalty would be 2% of Trimaco's "net" which he defined as follows: "[g]ross sales less all customer givebacks and prepaid freight ie what we net out of the sale. If we sell something for $1 and we pay the freight carrier 8 cents and the customer deducts 12 cents for coop and rebates and warehouse allowances, then we net 80 cents out of that sale transaction."

**ANSWER**: Defendants admit that the License Agreement defines net sales as set forth above. Defendants deny the remaining allegations contained in paragraph 39.

40.     The Terracinos relied upon that representation when entering into the Agreement.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 40 and therefore deny the same.

41.     Despite that reassurance, the Agreement provided that "sales commissions" would also be deducted from the gross sales.

**ANSWER**: Defendants admit that the Agreement provided that "sales commissions" would be deducted from gross sales. Defendants deny the remaining allegations in Paragraph 41.

42.     Trimaco further provided in the Agreement that Trimaco had the unilateral power to terminate the Agreement at any time. Agreement, § 6.C.

**ANSWER**: Defendants admit the allegations contained in paragraph 42.

43.     The Terracinos ratified the Agreement on February 10, 2016.

**ANSWER**: Defendants admit that the Terracinos' signatures are dated February 10, 2016. Defendants deny the remaining allegations in paragraph 43.

44.     On June 25, 2018, the Agreement was assigned to 2300 Gateway, Inc. *See* Assignment and Assumption Agreement attached as Exhibit 3.

**ANSWER**: Defendants admit the allegations contained in paragraph 44.

45.     Trimaco gave notice on February 10, 2021 of its intent to terminate the Agreement. *See* Termination Letter attached as Exhibit 4.

**ANSWER**: Defendants admit the allegations contained in paragraph 45.

46.     Until the termination letter was sent, the Terracinos were entirely dependent upon the licensing royalties for income.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 46 and therefore deny the same.

**Defendants Misappropriated the Terracinos's Intellectual Property and
Filed for US and Foreign Patent Protection of the Terracinos's Invention Without Naming
the Terracinos**

47.     During discussions leading up to the formation of the Agreement, the Terracinos provided Cobaugh with proprietary information related to the design, structure, and manufacture of the Drop Cloths, understanding that doing so was part of and subject to the formation of the Agreement and done so confidentially.

**ANSWER**: Defendants deny the allegations contained in paragraph 47.

48.     Cobaugh promised that, as part of their agreement, he and Trimaco would prepare and file a patent application naming the Terracinos as co-inventors that would include the Terracinos's follow-on invention of providing a middle, impervious layer to the Drop Cloth.

**ANSWER**: Defendants deny the allegations contained in paragraph 48.

49.     Without the Terracinos's knowledge, however, Cobaugh and Trimaco had been working behind the scenes to file their own patent application capturing, in whole or in part, the inventive material the Terracinos provided to Trimaco, Cobaugh, and David May ("May"). That patent application, U.S. Provisional Pat. App. No. 62/249,806 for "Slip-Resistant Protective Mat" was filed on November 2, 2015 ("the '806 application"), just four days after Cobaugh told the Terracinos that the Stay Put drop cloths did not infringe the 917 Patent. The '806 application did not name the Terracinos as inventors or co-inventors.

**ANSWER**: Defendants admit U.S. Provisional Pat. App. No. 62/249,806 for "Slip-Resistant Protective Mat" was filed on November 2, 2015 and does not name the Terracinos as inventors or co-inventors. Defendants deny the remaining allegations contained in paragraph 39.

50.    The '806 application and the subsequent applications and patents enumerated below all list David May as the first named inventor.

**ANSWER**: Defendants admit the allegations contained in paragraph 50.

51.    Despite having already filed the '806 application claiming the elements of what was actually the Terracinos's invention, in a conversation on November 3, 2015 between the Terracinos and Cobaugh, Cobaugh again discussed filing a patent application naming the Terracinos as inventors with claims that had already been filed in the '806 application, withholding the material fact that Trimaco had already filed the '806 application.

**ANSWER**: Defendants deny the allegations contained in paragraph 51.

52.    The Terracinos did not discover the filing of the '806 application until they received notice from Trimaco that it was terminating the Agreement.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 52 and therefore deny the same.

53.    Had the defendants not fraudulently concealed their scheme to file their own patents and not name the Terracinos as inventors, the Terracinos would not have entered the Agreement.

**ANSWER**: The Defendants deny that they "fraudulently concealed [a] scheme," for which this Court has held no cause of action has been articulated. Defendants are without knowledge or information to form a belief as to the truth of the remaining allegations of paragraph 53 and therefore deny the same.

54.    Trimaco subsequently filed Patent Cooperation Treaty (PCT) Application No. PCT/US2016/060109 (the "PCT Application") on November 2, 2016, claiming the benefit of the '806 application but again failing to name the Terracinos as inventors or co-inventors and without

providing notice to the Terracinos. The PCT Application was subsequently nationalized in the United States as U.S. Pat. App. No. 15/770,913, filed on April 25, 2018 ("the '913" Application"). A true and correct copy of the file wrapper for the PCT application is attached as Exhibit 5.

**ANSWER**: The Defendants admit that the PCT Application was filed on November 2, 2016 and that this application claimed the benefit of the '806 application. The Defendants deny the remaining allegations of paragraph 54.

55.     The '913 Application subsequently issued as U.S. Pat. No. 10,683,607 on June 16, 2020, a true and correct copy of which is attached as Exhibit 6.

**ANSWER**: Defendants admit the allegations contained in paragraph 55.

56.     Trimaco also extended the PCT Application into Great Britain (App. No. GB2557836, currently pending) and China (App. No. CN108698359, currently pending).

**ANSWER**: Defendants admit the allegations contained in paragraph 56.

57.     The claims as filed in the PCT Application and the '913 Application included the elements described and claimed in the Terracinos's patent. Specifically, the '913 Application and the issued '607 patent specifically state in the specification that "in some embodiments, the first layer, the second layer, and the third layer are connected through a first process and a second process that is different from the first process. In some embodiments, the first process is lamination and the second process is stitching."

**ANSWER**: Defendants admit that the '913 Application and the issued '607 patent specifically state in the specification that "in some embodiments, the first layer, the second layer, and the third layer are connected through a first process and a second process that is different from

the first process. In some embodiments, the first process is lamination and the second process is stitching." Defendants deny the remaining allegations contained in paragraph 57.

58.     In addition, the claims as filed with the '806 provisional application include the use of stitching in fastening the layers of the Terracino Drop Cloth despite Cobaugh's claim that Trimaco's product (embodied in the application) did not infringe because it did not include stitching. *See* Exhibit 5, p. 36 claim 11. The infringing drop cloth has been and continues to be manufactured and sold with stitching.

**ANSWER**: Defendants admit that the '806 provisional application included claim 11, which uses the word "stitching." Defendants deny the remaining allegations contained in paragraph 58.

59.     Rather than properly marking the Drop Cloth with the Terracinos's patent, Trimaco marked the Drop Cloth packaging with "Patent Pending," referencing the pending application(s) filed by Trimaco.

**ANSWER**: Defendants admit that they have marked at least some mats with "Patent Pending." Defendants deny the remaining allegations contained in paragraph 59.

60.     To this day, the Stay-Put drop cloth as manufactured, imported, and sold by Trimaco infringes each and every element of at least one claim of the '917 Patent. *See* Opinion Regarding Infringement of U.S. Patent No. 9,044,917 B1, attached as Exhibit 7. Trimaco continues to manufacture, cause to be manufactured, import, export, and sell the infringing Stay Put drop cloths not only in the United States but globally as well.

**ANSWER**: Defendants admit that their mats are manufactured, imported, and/or sold in the United States and/or internationally. Defendants deny the remaining allegations contained in paragraph 60.

61.     Trimaco makes and sells the Stay Put drop cloths in two versions-both of which infringe the '917 Patent; the Stay Put Canvas with a canvas layer and a surface grip layer, and the Stay Put Canvas Plus drop cloth further incorporating a liquid barrier component.

**ANSWER**: Defendants admit that they have made and sold Stay Put drop cloths in a version without a third layer and with a third layer. Defendants deny the remaining allegations contained in paragraph 61.

62.     Trimaco's infringing Stay Put products are ubiquitous and are sold, in part, by Amazon.com, Home Depot, Lowe's, Blain's Farm and Fleet, MyTarp.com, Harbor Freight Tools, Mutual Screw & Supply, W.W. Grainger, Inc. (Grainger Industrial Supply), Ace Hardware, and Sherwin-Williams, among others.

**ANSWER**: Defendants admit that their mats are sold by Amazon.com, Home Depot, Lowe's, Blain's Farm and Fleet, MyTarp.com, Harbor Freight Tools, Mutual Screw & Supply, W.W. Grainger, Inc. (Grainger Industrial Supply), Ace Hardware, and Sherwin-Williams. Defendants deny the remaining allegations contained in paragraph 62.

63.     The Trimaco Stay Put drop cloths include each and every element of Claim 1 of the Terracinos's '917 Patent, specifically: a. A non-skid protective cloth or pad;

b. a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface;

c. a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being

d. greater than said height of bumps having said larger of said at least two circumferential sizes; and

e. stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer; whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75.

     **ANSWER**: Defendants deny the allegations contained in paragraph 63.

## COUNT I

### FRAUD IN THE INDUCEMENT AGAINST
### CHARLES COBAUGH, INDIVIDUALLY

     64.    Plaintiffs hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

     **ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 64 is now no longer relevant to this action because Count I was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 64.

65.    Cobaugh, individually, induced the Terracinos to enter into the Agreement by intentionally misrepresenting and concealing material facts as detailed above, including among other things withholding the material fact that Trimaco intended to and then did file a patent application (the '806 application and its progeny) claiming the Terracinos's invention that had been revealed to Cobaugh during the discussions leading up to the Terracinos entering into the Agreement, and as revealed in the Terracinos's patent. These misstatements and concealment of material facts were intended to and did in fact deceive the Terracinos into entering the Agreement and into disclosing their inventions and trade secrets.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 65 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 65.

66.    Cobaugh intended the Terracinos to rely on his false representations and omissions. Plaintiffs relied on the material false representations and intentional omissions made by Cobaugh and in particular the intentional withholding by Cobaugh of the material fact that a patent application claiming the Terracinos's invention and without naming the Terracinos as inventors had been filed a full two months prior to the Terracinos entering into the Agreement.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 66 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 66.

67.    As a direct and proximate cause of the false representations and intentional omissions made to them by Cobaugh, and their reliance on same, the Terracinos have been damaged by being coerced into entering into the Agreement, the Agreement failing to provide the Terracinos with a reasonable royalty and also locking the Terracinos into the Agreement

exclusively with Trimaco, depriving them of the ability to monetize their invention with others in the marketplace.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 67 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 67.

68.     The Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 68 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 68.

69.     The Terracinos have no adequate remedy at law for the Cobaugh's foregoing wrongful conduct.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 69 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 69.

## COUNT II

## FRAUD IN THE INDUCEMENT AGAINST TRIMACO

70.     The Terracinos hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 70 is now no longer relevant to this action because Count II was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 70.

71. Trimaco, by and through Cobaugh, induced the Terracinos to enter into the Agreement by intentionally misrepresenting and concealing material facts as detailed above, including among other things withholding the material fact that Trimaco intended to and then did file a patent application (the '806 application and its progeny) claiming the Terracinos's invention. These misstatements and concealment of material facts were intended to and did in fact deceive the Terracinos into entering the Agreement and into disclosing their inventions and trades secrets.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 71 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 71.

72. Trimaco intended the Terracinos to rely on its false representations and omissions.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 72 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 72.

73. Plaintiffs relied on the false representations and intentional omissions made by Trimaco and in particular the intentional withholding by Cobaugh of the material fact that a patent application claiming the Terracinos's invention and without naming the Terracinos as inventors had been filed a full two months prior to the Terracinos entering into the Agreement.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 73 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 73.

74. As a direct and proximate cause of the false representations and intentional omissions made to them by Trimaco, and the Terracinos's reliance on the same, the Terracinos

have been damaged by being coerced into entering into the Agreement, the Agreement failing to provide the Terracinos with a reasonable royalty and also locking the Terracinos into the Agreement exclusively with Trimaco, depriving them of the ability to monetize their invention with others in the marketplace.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 74 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 74.

75.     As a result, the Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 75 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 75.

76.     The Terracinos have no adequate remedy at law for the Defendants' foregoing wrongful conduct.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 76 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 76.

## COUNT III

## IN THE ALTERNATIVE BREACH OF LICENSE AGREEMENT

77.     The Terracinos hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 77 is now no longer relevant to this action because

Count III was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 77.

78. The Terracinos and Defendants entered into the Patent License Agreement attached as Exhibit 2 in 2016.

**ANSWER**: Defendants admit the allegations contained in paragraph 78.

79. The Patent License Agreement is valid and legally binding.

**ANSWER**: Defendants admit the allegations contained in paragraph 79.

80. Trimaco assigned its obligations under the Patent License Agreement to 2300 Gateway (see Ex. 3) on June 25, 2018.

**ANSWER**: Defendants admit the allegations contained in paragraph 80.

81. Trimaco and/or 2300 Gateway breached the Agreement by, among other things, failing to make the complete royalty payments to the Terracinos as required by the Agreement under ¶ 3, misusing the Terracinos's trade secrets and other proprietary information to file Trimaco's own patent application directed to the same in violation of the Agreement ¶¶ 3, 7, and failing to give notice to the Terracinos regarding Trimaco's patent applications directed to the Terracinos's invention.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 81 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 81.

82. As a direct result and proximate cause of Defendants' breach, the Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 82 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 82.

## COUNT IV

### VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831 *et seq.*, AGAINST DAVID MAY, INDIVIDUALLY

83.     The Terracinos hereby reallege and incorporate by reference the allegations of preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 83 is now no longer relevant to this action because Count IV was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 83.

84.     The Terracinos had knowledge and information as detailed above that was unknown to others, including May and Trimaco, that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, others who would exploit that disclosure for economic gain. That knowledge was related to the construction and use of the invention as described in the Terracinos's patent as well as improvements thereto and as described and claimed by May and Trimaco in the '806 provisional application.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 84 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 84.

85.     At all relevant times, the Terracinos took reasonable steps to maintain the secrecy of such information.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 85 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 85.

86.     Understanding that May and Trimaco had a duty to maintain the secrecy of such information and not exploit such information for their own gain, the Terracinos disclosed the information to May and Trimaco.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 86 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 86.

87.     May misappropriated the Terracinos' trade secrets and used them to manufacture and sell the Drop Cloth product in interstate commerce. The misappropriation was the direct and proximate cause of harm to the Terracinos.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 87 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 87.

88.     The misappropriation was not discovered and could not have been reasonably discovered by the Terracinos until 2021.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 88 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 88.

89.     The Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 84 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 84.

**COUNT V**

**VIOLATIONS OF THE FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1831** ***et seq.*, AGAINST TRIMACO**

90.     Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 90 is now no longer relevant to this action because Count V was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 90.

91.     The Terracinos had knowledge and information as detailed above that was unknown to others, including May and Trimaco, that derived independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, others who would exploit that disclosure for economic gain. That knowledge was related to the construction and use of the invention as described in the Terracinos's patent as well as improvements thereof and as described and claimed by May and Trimaco in the '806 provisional application.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 91 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 91.

92. At all relevant times, the Terracinos took reasonable steps to maintain the secrecy of such information.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 92 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 92.

93. Understanding that May and Trimaco had a duty to maintain the secrecy of such information and not exploit such information for their own gain, the Terracinos disclosed the information to May and Trimaco.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 93 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 93.

94. Trimaco misappropriated the Terracinos' trade secrets and used them to manufacture and sell the Drop Cloth product in interstate commerce. The misappropriation was the direct and proximate cause of harm to the Terracinos.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 94 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 94.

95. The Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 95 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 95.

**COUNT VI**

**UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, N.C. Gen. Stat. § 75-1.1, *et seq.*, AGAINST TRIMACO**

96.     Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 96 is now no longer relevant to this action because Count VI was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 96.

97.     At all relevant times, Trimaco is and was engaged in commerce in North Carolina as defined by chapter 75 of the North Carolina General Statutes.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 97 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 97.

98.     The wrongful conduct of Trimaco in commerce in at least North Carolina, as alleged above and including at least its fraudulent inducement of the License Agreement and intentional failure to properly mark its Drop Cloths with the Terracinos's patent information, affects the Terracinos rights in North Carolina and constitutes unfair and deceptive acts and practices.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 98 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 98.

99. Trimaco's actions and false statements were deceptive and designed to intentionally and unfairly compete with the Terracinos. Such wrongful acts which have injured and will continue to injure the Terracinos have resulted in, and will continue to result in damages to the Terracinos in North Carolina and beyond.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 99 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 99.

100. As a direct and proximate result of this unfair and deceptive conduct, the Terracinos have been damages and are entitled to a judgment against Trimaco for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 100 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 100.

101. The Terracinos are also entitled to an award of attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 101 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 101.

## COUNT VII

### IN THE ALTERNATIVE, DECLARATORY JUDGMENT THAT THE PATENT LICENSE AGREEMENT IS INVALID FOR UNCONSCIONABILITY.

102. Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 102 is now no longer relevant to this action because Count VII was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 102.

103.    Defendants have been exercising and continue to exercise purported rights afforded to them from the Patent License Agreement that is unconscionable and unenforceable.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 103 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 103.

104.    By and through the actions and inactions of both Trimaco and Cobaugh, the Terracinos are the victims of unfair bargaining in negotiating that caused them to enter into the License Agreement without a meaningful choice and with terms that are unreasonably favorable to Trimaco.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 104 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 104.

105.    By and through the actions and inactions of both Trimaco and Cobaugh, the Terracinos are subject to have unfair substantive terms contained within the License Agreement.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 105 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 105.

106.    Trimaco exerted undue influence on the Terracinos and leveraged its unequal bargaining power to induce the Terracinos to accept the unconscionable terms of the License Agreement.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 106 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 106.

107.    The Terracinos, as a result of the unfair bargaining and the unfair substantive terms were left without a real, meaningful choice regarding both the existence of and the terms of the License Agreement.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 107 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 107.

108.    As a result, the License Agreement is unconscionable and should be found to be invalid and unenforceable.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 108 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 108.

## COUNT VIII

## PATENT INFRINGEMENT UNDER 35 U.S.C. § 271

109.    Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Defendants incorporate by reference their answers to the preceding paragraphs, as if fully set forth herein.

110. The Terracinos own all right, title, and interest in U.S. Patent No. 9,044,917.

**ANSWER**: Defendants are without knowledge or information to form a belief as to the truth of the allegations of paragraph 110 and therefore deny the same.

111. The '917 Patent is valid and enforceable.

**ANSWER**: Defendants deny the allegations contained in paragraph 111.

112. By and through their actions above, Trimaco has been and continues to infringe the '917 Patent by making, using, and selling its drop cloths, in particular its Stay Put and Stay Put Plus drop cloth products, that meet each and every element of at least one claim of the '917 Patent, including at least each and every element of claim 1.

**ANSWER**: Defendants deny the allegations contained in paragraph 112.

113. Trimaco has at all relevant times had actual knowledge of the '917 Patent.

**ANSWER**: Trimaco admits that it has had knowledge of the '917 Patent at least since the negotiations that led to the License Agreement. Defendants deny the remaining allegations of paragraph 113.

114. Trimaco's infringement has at all relevant times been and continues to be willful, and done with the intention to illegally profit from its infringement of the Terracinos patent.

**ANSWER**: Defendants deny the allegations contained in paragraph 114.

115. The Terracinos have sustained injury and damage caused by Defendants' conduct.

**ANSWER**: Defendants deny the allegations contained in paragraph 115.

116. The Terracinos have suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

**ANSWER**: Defendants deny the allegations contained in paragraph 116.

117. The Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Defendants deny the allegations contained in paragraph 117.

118. By virtue of Defendants' actual knowledge of the 917 Patent at all relevant times, the Terracinos are entitled to pre-suit damages.

**ANSWER**: Defendants deny the allegations contained in paragraph 118.

## COUNT IX

### CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

119. Plaintiffs hereby reallege and incorporate by reference the allegations of the preceding paragraphs as if fully set forth herein.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 119 is now no longer relevant to this action because Count IX was dismissed. To the extent an answer is required, Defendants deny the allegations contained in paragraph 119.

120. The Defendants colluded and agreed to commit the wrongful acts identified herein, and in particular agreed, among other things, to fraudulently induce the Terracinos to enter into the Agreement as well as inducing the Terracinos to provide confidential information to Defendants.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 120 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 120.

121.    Defendants May and Cobaugh each had independent personal stakes in achieving the corporation's illegal objective—namely, among other things, obtaining a patent for the invention in May's name alone, and preventing the Terracinos from directing the patent rights stemming from the PCT Application, including the '607 Patent.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 121 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 121.

122.    The Defendants fraudulently convinced the Terracinos to enter into the Agreement and provide the confidential information to the Defendants, thereby acting in furtherance of the unlawful acts agreed to among the Defendants.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 122 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 122.

123.    The Terracinos have sustained injury and damage caused by Defendants' conduct.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 123 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 123.

124.    The Terracinos have suffered, and will continue to suffer, irreparable harm from Defendants' acts and conduct complained of herein, unless restrained by law.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 124 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 124.

125.    The Terracinos have been damaged in an amount to be proven at trial.

**ANSWER**: Pursuant to this Court's order granting in part Defendants' Motion to Dismiss (Dkt. No. 28), Defendants assert that paragraph 125 is now no longer relevant to this action. To the extent an answer is required, Defendants deny the allegations contained in paragraph 125.

## ANSWER TO PRAYER FOR RELIEF

Defendants deny that Plaintiffs, individually and collectively, are entitled to any of the relief requested, and further deny that Plaintiffs, individually and collectively, are entitled to any relief whatsoever. To the extent that this Prayer for Relief requires a response, the allegations contained therein are denied.

## FIRST AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

Defendant Trimaco does not make, use, sell, offer for sale, or import into the United States, and has not made, used, sold, offered for sale, or imported into the United States any products or methods that infringe any valid or enforceable claim of the '917 asserted patent.

## SECOND AFFIRMATIVE DEFENSE – INVALIDITY

The '917 patent claims are invalid subject to one or more of the following of 35 U.S.C. §§ 101, 103, and/or 112.

## THIRD AFFIRMATIVE DEFENSE – CAUSE OF ACTION BARRED BY LICENSE AGREEMENT

Plaintiffs are barred from pursuing patent infringement claims and/or seeking any damages from Trimaco in connection therewith on the basis that the License Agreement permitted Trimaco

full use of Plaintiffs' purported inventions and that all royalties due and owed in connection therewith have been paid.

### FOURTH AFFIRMATIVE DEFENSE – WAIVER/ESTOPPEL/ACQUIESCENCE

Plaintiffs are barred and/or estopped from seeking any damages for patent infringement from Trimaco on the basis that by entering into and acquiescing in the License Agreement and accepting payment thereunder, Plaintiffs waived other means for recovery for any purported use of Plaintiffs' inventions.

### TRIMACO'S COUNTERCLAIMS

For its counterclaims against Robert and Brady Terracino, Defendant-Counterclaimant Trimaco, Inc. ("Trimaco") alleges as follows:

### I.      THE PARTIES

1.      Trimaco is an Ohio Corporation located at 2300 Gateway Centre Blvd., Suite 200, Morrisville, North Carolina 27560.

2.      Based on Plaintiffs' representations, Robert Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

3.      Based on Plaintiffs' representations, Bradie Terracino is an individual who is currently a resident of Virginia Beach, Virginia.

### II.      JURISDICTION AND VENUE

4.      These claims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and under the patent laws of the United States, 35 U.S.C. §§ 100 et seq.

5.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 2201, and 2202, because Plaintiffs have accused Trimaco of infringing U.S. Patent No. 9,044,917 (the '917 Patent).

6.     This Court has personal jurisdiction over Plaintiffs including at least because Plaintiffs jointly filed their Complaint in this judicial district.

7.     Venue is proper under at least 28 U.S.C. §§ 1391(b).

## III.     FACTUAL BACKGROUND

8.     Plaintiffs-Counterclaim Defendants are the purported owners of the '917 patent.

9.     Plaintiffs-Counterclaim Defendants have alleged that Trimaco's "Stay Put" products infringe the '917 patent. Trimaco denies these allegations.

10.     As a result of Plaintiffs-Counterclaim Defendants' actions and statements, including the filing of the Complaint and First Amended Complaint, a substantial, immediate, and real controversy exists between the parties concerning whether Trimaco's "Stay Put" products infringe the '917 Patent. A judicial declaration is necessary to determine the parties' respective rights concerning whether the products infringe the '917 Patent.

## COUNT I
## DECLARATORY JUDGMENT FOR DECLARATION OF
## NONINFRINGEMENT OF THE '917 PATENT

11.     Trimaco hereby realleges and incorporates by reference the allegations of paragraphs 1-10 as if fully set forth herein.

12.     Plaintiffs-Counterclaim Defendants allege ownership, title, and/or interest to the '917 patent and have brought claims against Trimaco alleging infringement of the '917 patent.

13. Trimaco has offered two products relevant to Plaintiffs-Counterclaim Defendants' claims of patent infringement, a Stay Put® canvas drop cloth and a Stay Put® Plus canvas drop cloth (collectively Trimaco's "Stay Put Canvas" products).

14. The manufacture, use, offer for sale, or sale of Trimaco's Stay Put Canvas products does not infringe any valid or enforceable claim of the '917 patent.

15. A present, genuine, and justiciable controversy exists between Plaintiffs-Counterclaim defendants and Defendant-Counterclaimant Trimaco regarding, inter alia, whether the manufacture, use, offer for sale, or sale of Trimaco's Stay Put Canvas products infringes any valid or enforceable claim of the '917 patent.

16. Defendant-Counterclaimant Trimaco is entitled to a declaration that the manufacture, use, offer for sale, or sale of Trimaco's Stay Put Canvas products does not infringe any valid or enforceable claim of the '917 patent.

## COUNT II
## DECLARATORY JUDGMENT FOR DECLARATION THAT THIS CASE IS EXCEPTIONAL UNDER 35 U.S.C. § 285

17. Trimaco hereby realleges and incorporates by reference the allegations of paragraphs 1-16 as if fully set forth herein.

18. The '917 Patent issued on June 2, 2015.

19. Plaintiffs-Counterclaim Defendants were aware from negotiations with Trimaco leading up to the License Agreement that the claimed invention in the '917 patent did not cover Trimaco's Stay Put Canvas products.

20. Plaintiffs-Counterclaim defendants nevertheless entered into the License Agreement with Trimaco, dated February 10, 2016 (Dkt. No 1, Exhibit 2), voluntarily and with representation of counsel.

21.     Trimaco paid Plaintiffs-Counterclaim Defendants all royalties due for Trimaco's Stay Put Canvas products during the term of the License Agreement, through February 10, 2021, when Trimaco notified Plaintiffs-Counterclaim Defendants of termination, and when the five-year term of the Agreement expired.

22.     Plaintiffs-Counterclaim Defendants filed this lawsuit knowing both that all license fees had been paid pursuant to the Agreement, and that there was and is no infringement of the '917 patent.

23.     To wit, Trimaco has paid license fees for all, or virtually all, Stay Put® canvas drop cloths ever manufactured.

24.     In addition, non-infringement of the Stay Put Canvas products is clear based at least on the claim limitation (1(b)) that requires the downward facing bumps of the cloth that are smaller in circumference to be greater in height than the downward facing bumps that are larger in circumference. The Stay Put Canvas products do not include this limitation.

25.     Furthermore, there can be no infringement of the '917 patent by the Stay Put ® Plus canvas product because these products include a third layer. Claim 1 recites the phrase "consisting of" in connection with specifying two layers of cloth, thereby limiting the patent claim to a cloth with two layers only.

26.     Plaintiffs-Counterclaim Defendants have been advised of this flaw that is fatal to their infringement claims, yet persist in bad faith.

27.     Plaintiffs-Counterclaim Defendants have been advised that their opinion of counsel is deficient in failing to account for this basic aspect of patent law.

28.      Plaintiffs-Counterclaim Defendants are thus fully aware both that all license fees have been paid for Trimaco's Stay Put Canvas products and that none of Trimaco's Stay Put Canvas products can infringe or do infringe any of the claims of the '917 patent.

29.      Upon information and belief, Plaintiffs-Counterclaim Defendants knew or should have known that their claim for patent infringement against Trimaco was meritless prior to filing this lawsuit.

30.      Plaintiffs-Counterclaim defendants have been advised on more than one occasion since commencement of this litigation of the frivolous nature of this patent infringement lawsuit and have nevertheless persisted in bringing objectively baseless claims against Defendant-Counterclaimant Trimaco.

31.      Defendant-Counterclaimant was required to engage in voluminous motion to dismiss briefing to resolve the other numerous, frivolous claims brought against it and the other Defendants. Here, too, Plaintiffs-Counterclaim Defendants were advised of the futility of their claims and nevertheless persisted in asserting them thereby causing Defendant-Counterclaimant to incur undue and unreasonable expense.

32.      As such, this case is an exceptional one, and Trimaco is entitled to an award of its reasonable attorneys' fees under 35 U.S.C. § 285.

## TRIMACO'S PRAYER FOR RELIEF

WHEREFORE, Trimaco respectfully requests that the Court:

1.      Enter judgment in favor of Defendant-Counterclaimant Trimaco on all claims brought by Plaintiffs-Counterclaim Defendants, dismissing their claims for relief in their entirety, with prejudice, and with costs and fees awarded to Defendant-Counterclaimant;

2.      Deny any and all relief sought by Plaintiffs-Counterclaim Defendants;

3.     Declare that Defendant-Counterclaimant Trimaco does not infringe any claim of the '917 Patent;

4.     Declare this case exceptional and award to Defendant-Counterclaimant Trimaco its attorneys' fees and all recoverable costs and expenses pursuant to 35 U.S.C. § 285; and

5.     Provide Defendant-Counterclaimant Trimaco any further relief that this Court deems to be just.

## **JURY DEMAND**

Trimaco hereby demands a trial by jury on all issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted, this 10th day of April, 2023.

*/s/ John M. Moye*
John M. Moye (NC State Bar No. 35463)
BARNES & THORNBURG LLP
4280 Six Forks Road, Suite 1010
Raleigh, NC 27609-5738
Tel. (919) 536-6200
Email: JMoye@btlaw.com

Deborah Pollack-Milgate*
Indiana Bar No. 22475-49
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Tel.: (317) 231-7339
Email: deborah.pollackmilgate@btlaw.com

*by special appearance*

*Counsel for Defendants Trimaco, Inc.,*
*Charles Cobaugh, and David May*

## CERTIFICATE OF SERVICE

This is to certify that on the 10th day of April, 2023, I electronically filed the foregoing

*Defendants' Answer to Plaintiffs' First Amended Complaint and Counterclaims Against Plaintiffs*

with the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following counsel of record:

>Robert C. Van Arnam
>Andrew R. Shores
>WILLIAMS MULLEN
>P.O. Box 1000
>Raleigh, NC 27602-1000
>
>Duncan G. Byers
>PATTEN, WORNOM, HATTEN & DIAMONSTEIN
>12350 Jefferson Avenue, Suite 300
>Newport News, VA 23602

>*/s/ John M. Moye*
>John M. Moye (NC State Bar No. 35463)
>BARNES & THORNBURG LLP
>4280 Six Forks Road, Suite 1010
>Raleigh, NC 27609-5738
>Tel. (919) 536-6200
>Email: JMoye@btlaw.com
>
>*Counsel for Defendants Trimaco, Inc.,*
>*Charles Cobaugh, and David May*