IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-cv-15

| | |
|---|---|
| ROBERT TERRACINO and BRADIE TERRACINO, Individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRIMACO, INC.,<br><br>Defendant. | **PLAINTIFFS' CORRECTED OPENING CLAIM CONSTRUCTION BRIEF** |

COME NOW the Plaintiffs, Robert and Bradie Terracino (the "Terracinos"), and for their

Opening Claim Construction Brief state as follows.

**TABLE OF CONTENTS**

I. BACKGROUND AND STATEMENT OF FACTS……………………………...1

II. APPLICABLE LAW…………………………………………………………...2

III. CONSTRUCTION OF "A NON-SKID PROTECTIVE CLOTH
OR PAD, CONSISTING OF"………………………………………….…….4

IV. CONSTRUCTION OF "ADJACENT"……………………………………….7

V. CONSTRUCTION OF "SAID DOWNWARD PROJECTING
BUMPS COMPRISING BUMPS HAVING AT LEAST
TWO DIFFERENT CIRCUMFERENTIAL SIZES"……………………….....8

VI. CONSTRUCTION OF "SAID HEIGHT OF BUMPS HAVING
THE SMALLER OF SAID AT LEAST TWO DIFFERENT
CIRCUMFERENTIAL SIZES BEING GREATER THAN
SAID HEIGHT OF BUMPS HAVING SAID LARGER
OF SAID AT LEAST TWO CIRCUMFERENTIAL SIZES"……………….9

VII. CONSTRUCTION OF "WHEREBY WHEN SAID LOWER MAJOR
SURFACE OF SAID SINGLE RESILIENT LAYER IS PLACED
ON A SUPPPORT SURFACE, A SLIDING COEFFICIENT OF
FRICTION MEASURE IN ACCORDANCE WITH TAPPI
T548 SPECIFICATION IS GREATER THAN APPROXIMATELY 0.75"..…..10

VIII. CONSTRUCTION OF "AMORPHOUS"……………………………….....11

IX. CONSTRUCTION OF "WHEREBY WHEN TESTED IN ACCORDANCE
WITH TAPPI T548 SPECIFICATION, AN AVERAGE SLIDE ANGLE
IS NO LESS THAN APPROXIMATELY 40°"……………………………….12

X. CONCLUSION…………………………………………………………...…12

CERTIFICATE OF SERVICE…………………………………………………...13

I.  **BACKGROUND AND STATEMENT OF FACTS**

The details of case at bar are described in the Terracinos' Complaint, and those allegations are relied upon and incorporated herein, but a brief summary of the background of the case at bar is as follows.

The Terracinos are the sole owners of United States Patent No. 9,044,917 for a "Non-Skid Protective Cloth or Pad," issued on June 2, 2015 (the "'917 Patent") (Exhibit 1).  The '917 Patent application was filed on October 2, 2013, expires on October 3, 2033, and is a continuation-in-part of U.S. Patent Application No. 12/460,763 (the "'763 Application") (Exhibit 2).  The invention taught in in the '917 Patent (the "Invention") provides for a layered non-skid protective cloth or pad that is an improvement over existing drop cloths or pads commonly used to protect surfaces during painting and other work.

Trimaco manufactures and sells products to various industries, including the residential and commercial painting industry.  Trimaco sells both directly to consumers and through various retail and wholesale outlets.  Among the items sold by Trimaco are drop cloths and other protective coverings used in the painting and related industries.

The Terracinos invented an improved drop cloth that included a bottom layer that is designed to preclude the drop cloth from sliding or moving on a surface while the drop cloth is being used.  The Terracinos' invention is embodied in the '917 patent and the '763 application.  The Terracinos have claimed that drop cloths manufactured and sold by Trimaco infringe on the '917 patent.

The parties, pursuant to this Court's Case Management Order dated June 9, 2023 have exchanged preliminary claim constructions and extrinsic evidence.  *See* Plaintiff's Claim

Construction and Extrinsic Evidence attached as Exhibit 3, and Defendant's Claim Construction and Extrinsic Evidence attached as Exhibit 4.

II.     APPLICABLE LAW

The first step in the analysis of patent infringement is "'determining the meaning and scope of the patent claims asserted to be infringed.'" *Dynatemp Int'l, Inc. v. R421A, LLC*, 560 F.Supp.3d 969, 975 (E.D.N.C. 2021), *citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*). As noted above, that first step is the issue before the Court at this stage in the proceedings. And construction of patent claims, including terms of art within the claims, is exclusively within the province of a court and not a jury. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

In construing the construction of patent claims the Court is to "analyze the text of the patent and its associated public record and apply the established rules of construction, and in that way arrive at the true and consistent scope of the patent owner's rights to be given legal effect." *Markman*, 52 F.3d 967 at 979. "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005); claim construction determines the meaning of the claims. *Phillips*, 415 F.3d at 1312. "[T]he words of a claim are generally given their ordinary and customary meaning." *Id*. (internal quotations omitted). And "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313. The claims must also "be read in view of the specification, of which they are a part." *Id*. at 1315 (quotations omitted). In doing so, the specification is usually "dispositive [as] it is the single best guide to the meaning of a disputed term." *Id*. And "although the specification often describes very specific embodiments of the

invention, [the Federal Circuit has] repeatedly warned against confining the claims to those embodiments." *Id.* at 1323.

The Court may also consider relevant prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "The prosecution history ... consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the [Patent and Trademark Office] and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citation omitted.) However, the court cannot "rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." *3M Innovative Props. v. Tredegar Corp.*, 725 F.3d 1315, 1322 (Fed. Cir. 2013). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (*citing Vitronics*, 90 F.3d at 1580).

Finally, "[a]lthough [the Federal Circuit has] emphasized the importance of intrinsic evidence in claim construction, [the court has] also authorized district courts to rely on extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.' " *Phillips*, 415 F.3d at 1317 (*quoting Markman*, 52 F.3d at 980).

## III. CONSTRUCTION OF "A NON-SKID PROTECTIVE CLOTH OR PAD, CONSISTING OF"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| a non-skid protective cloth or pad, consisting of | A protective cloth or pad which does not slip or slide relative to a surface upon which it is placed, having at least a first protective layer and at least a second non-skid layer | a non-skid protective cloth or pad, limited to only two layers (a) and (b) and stitching (c) |

Defendants contend that the language "consisting of" in the claim language should require the result that the invention as claimed cannot be infringed if the alleged infringing article - in this case, Defendant's "Stay-Put Plus" drop cloth - cannot infringe on Claims 1 and 6 of the '917 patent because the "Stay-Put Plus" drop cloth includes an additional, impervious layer.

The term "consisting of" however does not limit Claims 1 and 6 to the "only two layers (a) and (b) and stitching (c)" as asserted by Defendant for several reasons.

The Federal Circuit has been clear that "'consisting of' does not exclude additional components or steps that are unrelated to the invention." *Conoco, Inc. v. Energy & Environmental Intern., L.C.*, 460 F.3d 1349, 1360 (Fed. Cir. 2006), *citing Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1331–32 (Fed. Cir. 2004). As the *Norian* court explained, "'[c]onsisting of' is a term of patent convention meaning that the claimed invention contains only what is expressly set forth in the claim. However, while 'consisting of' limits the claimed invention, it does not limit aspects unrelated to the invention. It is thus necessary to determine what is limited by the 'consisting of' phrase." *Norian,* 363 F.3d at 1331-32.

The invention disclosed by the '917 patent relies upon two elements for function: a first upper layer, and a second bottom layer (as well as means to connect the layers). Ex. 1, col. 5 lines 24-25. A "woven upper layer" and a "lower, resilient layer." *Id.* The upper layer is necessary for the invention to "absorb paint or other material," Ex. 1, col. 5 lines 31-32. The lower layer provides the "non-skid" or gripping function of the invention. Ex. 1, col. 6 lines 5-8.

The history of the '917 patent shows that the Plaintiffs have never considered that the imposition of an additional layer was related to the invention as claimed based upon its functionality and purpose and that the invention was limited solely to two, and only two layers. The '917 patent specifically considers that "[i]n an alternate embodiment, a third layer . . . may be interposed between the woven upper layer 102 and resilient layer 104." Ex. 1, Col. 6 lines 59-61, FIG. 3. The same is true of the history in the '763 patent application: "[i]n an alternate embodiment, a third layer . . . may be interposed between woven upper layer 102 and resilient layer 104." Ex. 2 [0038], FIG. 3. And the imposition of a third layer – an "impervious layer" as contemplated by the Plaintiffs, does nothing to alter the invention and its functionality.

In addition, the patent office acknowledged that the "consisting of" language did not foreclose the addition of additional layers and relied upon prior art containing more than two layers in interpreting and issuing rejections of the claims reciting "consisting of" by Plaintiffs.

"The prosecution history . . . consists of the complete record of the proceedings before the PTO and includes the prior art cited during the examination of the patent. Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

Here, the patent office clearly understood that the "consisting of" language did not foreclose additional layers in the claims. "Applicant has amended the preamble language of the

claim by closing up the recitation and making it a two layered structure." Ex. 6, p. 0122 (Application No. 12/406,763 final rejection dated Sept. 14, 2010). The examiner then rejected the application in light of U.S. Pat. No. 6,946,183 to Manpass *et al*. (the "'183 patent") and stated that the layers in the '183 patent "may be made of different materials and can comprise an [sic] intermediate layers . . . [and] [t]he Examiner is equating the intermediate layer to be equivalent either the impervious layer or it could act as the attachment layer between the upper fabric and the lower resilient rubber layer." Ex. 6, p. 0124.

Plaintiffs overcame the rejections in the Sept. 14, 2010 final rejection and the rejections based upon the '183 patent were withdraw. Ex. 6, p. 0082. In the non-final office action wherein the rejections based upon the '183 patent were withdrawn, the examiner again interpreted the claims as not foreclosing additional layers, relying upon U.S. Patent No. 5,567,497 to Zegler et al. (the "'497 patent"). The '497 patent contained more than two layers – specifically a floor covering layer, a thermoplastic contact layer, and a lower backing layer. Ex. 6, p. 0083. The examiner then stated that the "lower backing layer 34 and contact layer 40 after they have been fused together may be considered a 'single lower' resilient layer, which the Examiner equates to the single lower layer [in the '763 patent claims]." *Id*.

The prosecution history of the '917 patent therefore clearly demonstrates that both Plaintiffs and the PTO understood the "consisting of" language to not foreclose the addition of an intervening layer between the two layers as claimed in the '917 patent.

## IV. CONSTRUCTION OF "ADJACENT"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| adjacent | Lying near or close to, but not necessarily touching | The upper major surface of the single lower resilient layer is disposed directly next to or adjoins the lower major surface of the single, absorbent, woven upper layer |

Plaintiffs proposed construction of the term "adjacent" is reliant upon the standard commonly-understood definition of "adjacent." *See* Ex.7, definition of "adjacent" from Black's Law Dictionary (11th ed. 2019) as "Lying near or close to, but not necessarily touching." Nothing in the '917 patent serves to amend or modify this definition, but specifically supports that the definition proposed by Plaintiffs is how the term is to be understood in the patent. First, the '917 patent specifically considers that although it "typically lacks an impermeable membrane," Ex. 1, Col. 6 lines 55-6, "[i]n an alternate embodiment, a third layer . . . may be interposed between the woven upper layer 102 and resilient layer 104." Ex. 1, Col. 6 lines 59-61, FIG. 3.

Defendant's proposed construction impermissibly limits the language of the claim as understood in light of the specification, and would have the Court determine that the first and second layers would be disposed "directly next to or adjoin[ing]" in a manner that would contradict the commonly understood meaning of the term "adjacent." There is nothing in the specification or the prosecution history to suggest that Plaintiffs intended to change or modify the common definition of "adjacent."

V.  **CONSTRUCTION OF "SAID DOWNWARD PROJECTING BUMPS COMPRISING BUMPS HAVING AT LEAST TWO DIFFERENT CIRCUMFERENTIAL SIZES"**

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| said downward projecting bumps comprising bumps having at least two different circumferential sizes | Downward projecting bumps where each of the bumps has one of two or more different circumferences | The downward projecting bumps have a measurable boundary or perimeter of two or more sizes |

Defendant's proposed construction is clearly inconsistent with both the language of the claims, the patent, and the prosecution history of the '917 patent. First, "circumference" is not a term of art that requires anything other than the application of the commonly-understood definition of the term. Nothing in the patent proposes lexicography that differs from the definition of "circumference" as different from the definition proposed by Defendant itself, which proposed relying upon Merriam-Webster's Collegiate Dictionary, Tenth Ed. The definition of "circumference" given by Merriam-Webster's online dictionary is "1: the perimeter of a circle or 2: the external boundary or surface of a figure or object." *See* https://www.merriam-webster.com/dictionary/circumference, last accessed on 10.11.2023. It is clear from the specification that the downward projecting bumps each has a circumference, and that the circumference is one of two or more different circumferences, as demonstrated in the patent at FIG. 2. Ex. 1, FIG. 2. And as it is further clear from FIG. 2, the circumferences are not specifically circles, Plaintiffs state that the better construction of circumference is "the external boundary or

surface of a figure or object" or more specifically for this claim construction, that the circumference of the bumps is the "external boundary" of each of the bumps.

Further, Defendant's proposed construction attempts to have the Court add the limiting term "measurable" when there is no precedence for it either in the common definition of circumference, in the specification, or in the prosecution history of the patent.

## VI. CONSTRUCTION OF "SAID HEIGHT OF BUMPS HAVING THE SMALLER OF SAID AT LEAST TWO DIFFERENT CIRCUMFERENTIAL SIZES BEING GREATER THAN SAID HEIGHT OF BUMPS HAVING SAID LARGER OF SAID AT LEAST TWO CIRCUMFERENTIAL SIZES"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes | a first bump of a smaller circumference relative to a second bump of greater circumference has a height that is greater than the height of the second bump | Each of the circumferentially smaller bumps must have a greater height than that of the circumferentially larger bumps |

Plaintiffs submit that Defendant's proposed construction does more to confuse than clarify. It contains no relational language suggesting what is taught by the language of the claim and the specification: that where two of the bumps are compared, the one with a smaller circumference will have a greater height than the bump it is compared to with a larger circumference. Further, neither the claims nor the specification foreclose, when comparing any two particular bumps, some

9

bumps of smaller circumference in comparison to another bump with a larger circumference having a smaller height than the bump with the larger circumference. The specification teaches exactly the opposite in fact; "[i]n alternate embodiments, larger and smaller bumps 106a and 106b, respectively, may have a substantially identical height. In still other embodiments, smaller bumps 106b may have a height larger than larger bumps 106a." Ex. 1, col. 5 lines 58-62. And the claim language at issue does not have the narrowing language proposed by Defendant where each smaller circumference bump must have a greater height than larger circumference bumps.

## VII. CONSTRUCTION OF "WHEREBY WHEN SAID LOWER MAJOR SURFACE OF SAID SINGLE RESILIENT LAYER IS PLACED ON A SUPPPORT SURFACE, A SLIDING COEFFICIENT OF FRICTION MEASURE IN ACCORDANCE WITH TAPPI T548 SPECIFICATION IS GREATER THAN APPROXIMATELY 0.75"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| whereby when said lower major surface of said single resilient layer is placed on a support surface, a Sliding Coefficient of friction measure in accordance with TAPPI T548 specification is greater than approximately 0.75 | when tested in accordance with TAPPI T548, the claimed non-skid protective cloth or pad has a sliding coefficient of greater than approximately 0.75. | Indefinite |

This limitation is self-explanatory in light of TAPPI T548, attached as Exhibit 8, which describes the testing method used to determine the scope of the claim language at issue. *See also*

10

the '917 patent, wherein the method and results of the testing were described in the specification. Ex. 1, col. 6 line 63 – col. 8 line 22.

## VIII. CONSTRUCTION OF "AMORPHOUS"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| amorphous | Irregularly shaped. | Having an indefinite shape, but a measurable boundary or perimeter |

"Amorphous" is a commonly-understood term that was not amended or modified by Plaintiffs in their patent or the prosecution of the same, and it should therefore be given its commonly-understood definition.

According to the Oxford English Dictionary, it is defined as "[h]aving no definite shape or form, shapeless; unshaped. Also: irregularly shaped, misshapen." *See* https://www.oed.com/search/dictionary/?scope=Entries&q=amorphous, last accessed on October 11, 2023. The use of "irregularly shaped" as the construction of this term in the patent claims is consistent with the patent specification. In particular, a review of Ex. 1, FIG. 2 shows clearly that "irregularly shaped" describes perfectly the bumps as claimed in the patent.

Defendant's proposed construction does not appear to be based upon any reference, either intrinsic or extrinsic. Furthermore, Defendant's proposed construction would impermissibly inject limitations into the claim language that is not there and unsupported in the specification. The term "indefinite" does not appear in any claim or the specification and is thus, itself, indefinite. The same is true of "measurable" to the extent that it does not appear in any claim or the specification. Were the Court to adopt Defendant's proposed construction, it would further have to construe the term "measurable."

11

## IX. CONSTRUCTION OF "WHEREBY WHEN TESTED IN ACCORDANCE WITH TAPPI T548 SPECIFICATION, AN AVERAGE SLIDE ANGLE IS NO LESS THAN APPROXIMATELY 40º"

| Claim Language | Plaintiffs' Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- |
| Whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40º | when tested in accordance with TAPPI T548, the claimed non-skid protective cloth or pad has an average slide angle of no less than approximately 40 degrees. | Indefinite |

This limitation is self-explanatory in light of TAPPI T548, attached as Exhibit 8, which describes the testing method used to determine the scope of the claim language at issue. See also the '917 patent, wherein the method and results of the testing were described in the specification. Ex. 1, col. 6 line 63 – col. 8 line 22.

## X. CONCLUSION

For the reasons stated herein, Plaintiffs respectfully submit that the Court should construe the terms at issue in the manner proposed by Plaintiffs.

This 31st day of October, 2023

/s/ Duncan G. Byers
Duncan G. Byers
Byers Law
1769 Jamestown Road, Suite 120
Williamsburg, Virginia 23185
(757) 317-2779
Fax (757) 231-3797
dbyers@dbyerslaw.com
Va. Bar ID No. 48146

Special Appearance Counsel for Plaintiffs
Robert and Bradie Terracino

/s/ Samuel Aaron Forehand
Samuel Aaron Forehand
LAW OFFICE OF SAMUEL A. FOREHAND, P.A.
418 Elm Street
Raleigh, North Carolina 27604-1932
Tel: (919) 755-0500
Fax: (919) 755-1000
SAF@ForehandLaw.com
N.C. State Bar No. 35284
Local Civil Rule 83.1(d) Counsel for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Duncan G. Byers
Duncan G. Byers
Byers Law
1769 Jamestown Road, Suite 120
Williamsburg, Virginia 23185
(757) 317-2779
Fax (757) 231-3797
dbyers@dbyerslaw.com
Va. Bar ID No. 48146
Special Appearance Counsel for Plaintiffs
Robert and Bradie Terracino