IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH
CAROLINA WESTERN DIVISION
No. 5:22-CV-00015-FL

ROBERT TERRACINO and
BRADIE TERRACINO,

    Plaintiffs,

v.

TRIMACO, INC.,

    Defendant.

**PLAINTIFFS' REPLY TO DEFENDANT'S
<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................1

III. REPLY TO TRIMACO'S PROPOSED CLAIM CONSTRUCTION............................2

    A. *A non-skid protective cloth or pad, consisting of (claims 1 and 6)* .....................2

    B. *Adjacent (claims 1 and 6)*........................................................................................6

    C. *Said downward projecting bumps comprising bumps having at least two different circumferential sizes (claims 1 and 6)* .....................................................7

    D. *Said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes (claims 1 and 6)* ......................8

    E. *Whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPT T548 specification is greater than approximately 0.75 (claim 1)* ..................................................................................................................9

    F. *Amorphous (claims 4 and 9)* ................................................................................10

    G. *Whereby when tested in accordance with TAPPT T548 specification, an average slide angle is no less than approximately 40° (claim 6)* ......................10

IV. CONCLUSION ...................................................................................................................10

V. CERTIFICATE OF SERVICE………………………………………………………...11

Plaintiffs Robert and Bradie Terracino (the "Terracinos") hereby submit this Reply to Defendant Trimaco, Inc's ("Trimaco's") Opening Claim Construction Brief concerning the construction of certain claim terms of U.S. Patent No. 9,044,917 (the "'917 patent").

I. **INTRODUCTION**

Defendant's proposed claim constructions deviate from the plain language of the claim terms in the '917 patent, and propose claim constructions that seek to add language to the claims that not only do not exist within the claims themselves, but also do not exist within the specification of the '917 patent nor within the prosecution history of the '917 patent. Further, Defendant's proposed claim construction ignores the clear history of the meaning and construction of the claims at issue as understood both by Plaintiffs and the U.S. Patent Office in that both Plaintiffs and the U.S. Patent Office clearly understood that the term "consisting of" is not limiting in the manner argued by Defendant.

Defendant also asserts that the claims at issue are indefinite pursuant to 35 U.S.C. § 112 because no Person of Ordinary Skill in the Art ("POSITA") could understand their metes and bounds. However, Defendant has failed to provide anything other than the argument of counsel in support of its position in this regard. It has not defined a POSITA, what skills and background such a person might have, and has not provided any evidence – intrinsic or extrinsic – to support its position.

For the reasons stated herein, Plaintiffs respectfully submit that the Court should reject Defendant's proposed claim constructions.

II. **BACKGROUND**

To summarize, the invention described in the '917 Patent provides an improvement to existing drop cloths used to protect surfaces during painting, repairs (auto and otherwise) and the

1

like – any application that requires the use of materials, generally liquids, that can harm a surface and/or generally create a mess. Drop cloths made of canvas and other materials have been used historically in painting and other professions. Plaintiffs improved on the state of the art by adding a feature not found in prior drop cloths, specifically a layer that prevents a drop cloth from moving and/or sliding on a surface. The fundamental nature of the invention is thus a drop cloth with at least one additional layer providing a non-slip bottom layer and means for connecting the additional non-slip bottom layer to the top, protective layer. Dkt. 43-2, column 1, 19-38. Those three features are the fundamental basis for the invention described and claimed in the '917 Patent. Dkt. 43-2, column 8, 34-57.

Defendant's proposed claim construction attempts to ignore the fundamental nature of the '917 Patent as disclosed in the patent specification and claims, as well as to mischaracterize the prosecution history of the '917 Patent.

Plaintiffs' refutation of Defendant's proposed claim construction is as follows.

### III. REPLY TO TRIMACO'S PROPOSED CLAIM CONSTRUCTION.

#### A. *A non-skid protective cloth or pad, consisting of (claims 1 and 6)*

Defendant's proposed construction of the phrase "consisting of" refers to a non-skid protective cloth or pad that is limited to only two layers, which are stitched together, and that Plaintiffs' proposed construction violates the rule that the term "consisting of" is closed, and further that the prosecution history shows that Plaintiffs' amending of claims 1 and 6 to "consisting of" from "comprising" was necessary to overcome the prior art showing multilayer non-skid materials.

In support of that position, Defendant argues that the Federal Circuit noted in *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1358-59, n.3 (Fed.

Cir. 2016) that it was "unaware of any case that has construed a patent claim's use of 'consisting of' to have the same meaning as 'comprising,'" and that "[t]his legal principle alone should be the beginning and end of the dispute between the parties." Dkt. 40, p. 12.

Defendant's argument, however, is contrary to the law on the issue, the language of the claims, and the prosecution history of the '917 patent. "Claim language, standing alone" is not the correct standard of law and is contrary to uniform precedent. Patent claims are viewed and understood in light of the specification, the prosecution history, and other relevant evidence, as "would have allowed a skilled artisan to know the scope of the claimed invention with reasonable certainty." *Nature Simulation Systems, Inc. v. Autodesk, Inc.*, 50 F.4th 1358, 1364 (Fed. Cir. 2022) (internal citations omitted).

Here, the '917 specification specifically contemplates an additional layer Dkt. 43-2, column 6, 59-63, disposed between the two layers. The additional layer is unrelated to the invention. "[W]hile 'consisting of' limits the claimed invention, it does not limit aspects unrelated to the invention." *Conoco, Inc. v. Energy & Entl. Int'l, L.C.*, 460 F.3d 1349, 1360 (Fed. Cir. 2006).

The language of the claims, the specification, and the prosecution history supports the interpretation that an additional impervious layer is unrelated to the invention. First, as noted above, the claims at issue recite in particular: a) a single, *absorbent*, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface; b) a single, lower, *resilient layer*. (emphasis added)

So, the critical elements of the invention as claimed are the absorbent upper layer and the resilient, lower layer. The specification itself notes that the upper layer "may be treated with a waterproofing material . . . [s]uch a treatment, however, renders the upper woven layer 102

3

non-absorbent which may impair the function . . . to absorb paint or other material spilled thereupon. Dkt. 43-2, column 5, 29-33. The structure and function of the invention as claimed therefore require the upper, absorbent layer and the lower (non-skid) lower layer. While the inclusion of a third, impermeable layer is disclosed as an alternate embodiment, the inclusion of such a layer does not "structurally and functionally relate[ ] to the invention." *Shire Development, LLC v. Watson Pharmaceuticals, Inc.*, 848 F.3d 981, 986 (Fed. Cir. 2017).

Further the prosecution history shows that the amendment of claims 1 and 6 were not made to limit the invention solely to two layers. To the contrary, Plaintiffs' amendment was made in light of rejections for prior art having a multi-layer upper layer and not, as argued by Defendant, in light of rejections for the invention as a whole having multiple layers.

The first rejection by the examiner in '763 application stated that claims 1-13 were rejected "as being unpatentable over US 6296919 issued to Rockwell Jr. et al. in view of US 6610382 issued to Kobe et al. Rockwell et al teach the multilayered composite structure n [sic] layer *and then additional [sic] provide a non-slip, cushioned, anti-fatigue carpeted floor covering article* which permits cleaning of a pedestrian's footwear." Dkt. 43-7, 0153 (emphasis added). In response, Plaintiffs argued in regards solely to the upper layer that "as may be seen in ROCKWELL FIGURE 4, a carpet pile component 20 is formed from a carrier fabric 30 and cut pile fabric 32. The carpet pile component is vulcanized to a first rubber sheet 16 having rubber strips 18 placed adjacent the perimeter of the floor mat." *Id*. at 0145. Plaintiffs further distinguished the prior art by noting that the "ROCKWELL upper component . . . consist[s] of cut carpet piles supported on a carrier fabric." *Id*. at 0146. The upper component of the Rockwell art therefore consisted of more than one layer, and Plaintiffs amended claim 1 to distinguish the single layer of the claimed upper layer in their invention from Rockwell. "Applicants have

4

amended claim 1 to change from an open claiming form (i.e., comprising) to a closed claim form (i.e., consisting of). Further, Applicants have amended claim 1 to recite that the upper component of their two layer structure consists of "a single, absorbent, plain woven upper layer free from any protecting cut pile and having an upper and a lower major surface." *Id*. The amendment from "comprising" to "consisting of" therefore distinguished *only* the upper layer of their claimed invention as being a single layer rather than the multiple layers of the prior art upper layer cited by the examiner. Nothing in that amendment disclaimed further layers in the invention as a whole.

On September 14, 2010, a final rejection was issued (Dkt. 43-7, 0120-0127) relying upon new prior art, showing that the examiner also understood that Plaintiffs' amendment was in response to the multi-layer upper layer of the previously cited prior art and not the invention as a whole. The examiner stated, in part, that the structure of the cited prior art (US Patent No. 6,946,183 to Malpass et al.) "comprises one or more layers laminated to the base layer . . . [t]hese layers . . . can comprise an [sic] intermediate layers. *The Examiner is equating the intermediate layer to be equivalent either the impervious layer or it could act as the attachment layer between the upper fabric and the lower resilient rubber layer. The Examiner is equating the rubber layer to be equivalent to the lower resilient layer.*" *Id*. at 0124. (Emphasis added).

The USPTO maintained this interpretation of the invention as described and claimed. In a non-final rejection issued on August 2, 2012 (Dkt. 43-7, 80-87), the examiner rejected the claims of the '763 application on the basis of prior art (US Patent No. 5,567,497 to Zegler et al.) comprising three layers. *Id*. at 83. Plaintiffs noted in their response that Zegler comprises, in part, a "face layer" which itself is comprised of two layers: a backing layer and tufted yarns secured through and to the backing layer, *Id*. at 0069, and distinguished the two-layer "face

layer" of Zegler from the upper layer of the claimed invention comprised itself of a single layer. *Id*. at 69-71. Thus while the USPTO continued to reject Plaintiffs' application on the basis of multiple layers within a single (upper) layer, Plaintiff continued to distinguish the claimed invention as having limited the upper layer, and only the upper layer, to a single layer.

The '763 application was abandoned on February 26, 2014 with the application for the '917 patent having been filed on October 2, 2013. Neither in the '763 application nor in the application maturing into the '917 patent did Plaintiffs amend or otherwise disclaim any portion of an embodiment wherein a third layer may be interposed between the upper layer and the resilient (lower) layer. The use of the term "consisting of" clearly limits the upper layer, and only the upper layer, to a single layer does not limit the invention as claimed to only two total layers.

### B. *Adjacent (claims 1 and 6)*

Defendant proposes that "adjacent" in the context of "said upper major surface of said single lower resilient layer being disposed adjacent said lower layer" means directly next to or adjoining, and argues that "it is clear that "adjacent" means "next to" because the claim uses a closed transitional phrase "consisting of." Thus, adjacent cannot have a broader meaning that would leave room for a third layer, or another structure interposed in between the upper and lower layers." Dkt. 40, p. 13.

This proposed construction is without support either in the intrinsic evidence before the Court or in any extrinsic evidence provided by Defendant. The claims as originally presented in the '763 application included the term "adjacent" (Dkt. 43-7, 0173) while the specification in the '763 application and the subsequent application and issued '917 patent included the additional, alternate embodiment of an impermeable layer between the upper layer and the

6

(lower) resilient layer. Dkt. 43-2, column 6, 59-62; Dkt. 43-7, 0188; Dkt. 43-6, 0167.

Plaintiffs never amended the '763 application claims nor the '917 patent claims to remove or amend the term "adjacent." Nor does the common law definition of "adjacent" preclude an additional layer between two adjacent surfaces. Dkt. 43-7, Dkt. 43-6. *See also* '917 patent at Fig. 3 (Dkt. 43-2) including the additional impermeable layer 114 interposed between the adjacent upper layer and lower layer.

Thus, Plaintiffs always understood that having the two layers "adjacent" did not preclude a third, impervious layer between them, and the common law definition does not preclude it either. Nor does Defendant provide a definition of "adjacent" that precludes an additional third layer. Plaintiffs have been consistent in their use of the term "adjacent" and "[c]onsistent use of a term in a particular way in the specification can inform the proper construction of that term." *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1382 (Fed. Cir. 2016), *citing Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1318 (Fed. Cir. 2014).

### C. *Said downward projecting bumps comprising bumps having at least two different circumferential sizes (claims 1 and 6)*

Defendant's proposed construction of the term "said downward projecting bumps comprising bumps having at least two different circumferential sizes" is at best strained and is inconsistent with both the intrinsic evidence and the plain meaning of the term "circumference." In particular, Defendant is attempting to insert into the plain claim language a limitation that is not to be found there, nor to be found in the specification (if, indeed, it could be read into the claims at all). As noted in Plaintiffs' Corrected Opening Claim Construction Brief, the commonly understood definition of "circumference" is "1: the perimeter of a circle or 2: the external boundary or surface of a figure or object." Dkt. 43, p. 8.

7

### D. *Said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes (claims 1 and 6)*

Defendant's construction of this claim language attempts, as with its construction of the "circumference" of the bumps, to insert limitations into the claims that simply are not there and have no support either in the specification or in the prosecution histories of the '917 patent and the '763 patent application. Defendant argues directly in contrast to the language of the specification that there is not a "first bump" or a "second bump" to compare based upon circumferences. As noted in Plaintiffs' Corrected Opening Claim Construction Brief, the specification teaches clearly that a comparison is made between any two bumps. Dkt. 43, p. 9. Further, that "[i]n alternate embodiments, larger and smaller bumps 106a and 106b, respectively, may have a substantially identical height. In still other embodiments, smaller bumps 106b may have a height larger than larger bumps 106a." *Id*. at 10; Dkt. 43-2, column 5, 58-62. And Defendant provides no authority – intrinsic or otherwise - for its assertion that the claim language that "said downward projecting bumps comprising" means "all bumps" and that somehow the downward projecting bumps cannot be compared each other.

The majority of Defendant's argument rests on a comparison to the prior art; i.e., the Zegler patent. *See* Dkt. 40, pps. 17-19. While prior art references, whether or not cited in the specification or the file history, may be considered by a court in determining how a disputed term is used by those skilled in the art, it cannot be used "to vary claim terms from how they are defined, even implicitly, in the specification or file history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584-85 (Fed. Cir. 1996). Here, Defendant is seeking to have the Court violate that restriction on the use of Zegler by using it to attempt to vary the terms of the claims as they are defined. The Court should decline to do so.

> **E.     *Whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75 (claim 1)***

Defendant asserts that because the testing claimed under the TAPPI T548 cannot be performed by a person of ordinary skill in the art (POSITA) that limitation of claim 1 fails for indefiniteness. Defendant's argument rests solely on assertions that the claimed testing and results are unobtainable and does so with no support at all for its position. Defendant has provided nothing other than the argument of counsel for its position, and no authority at all for the position that because it does not think that the cited testing standard could be performed on the invention, that the claim at issue is therefore indefinite.

Further, Defendant has provided no definition for or evidence in support of what exactly the qualifications of its asserted POSITA would be. The Court cannot possibly make a determination as to what a POSITA's position would be as to the claimed testing with nothing more than Defendant arguing that the testing clearly is indefinite because it does not understand how it could be performed.

Even assuming that the arguments put forth in its claim construction could count as testimony, the testimony would be inadmissible for any purpose – whether claim construction, validity, or infringement. *Kyocera Senco Industrial Tools Inc. v. International Trade Commission*, 22 F.4th 1369, 1376-77 (Fed. Cir. 2022). "To offer expert testimony from the perspective of a skilled artisan in a patent case—like for claim construction, validity, or infringement—a witness must at least have ordinary skill in the art. Without that skill, the witness' opinions are neither relevant nor reliable. The opinions would not be based on any specialized knowledge, training, or experience that would be helpful to the factfinder. In fact, '[a]dmitting testimony from a person ... with no skill in the pertinent art serves only to cause mischief and confuse the factfinder. That

9

testimony would "amount[ ] to nothing more than advocacy from the witness stand.'" *Kyocera*, 22 F.4th at 1376-77 (Fed. Cir. 2022), *citing Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362, 64-65 (Fed. Cir. 2008). Or, as in this case, advocacy attempting to substitute for testimony.

Without any such support for its position interpreting the testing procedures, and with no evidence before the Court as to what a POSITA would or would not understand from the claim and the specification, the Court should reject Defendant's proposed claim construction.

### F. *Amorphous (claims 4 and 9)*

As with Defendant's position attempting to insert limitations into the claim language "circumference," the Court should decline to accept Defendant's attempt to insert limitations into the claim term "amorphous." There is simply no need for the Court, in light of the plain language of claims 4 and 9, to apply anything other than the common definition of "amorphous." *See* Plaintiffs' Corrected Opening Claim Construction Brief, Dkt. 43, p. 11.

### G. *Whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40° (claim 6)*

As with Defendant's attempt to have the Court find the testing language of claim 1 to be indefinite, the Court should decline to accept Defendant's claim interpretation of the testing language in claim 6. Defendant's argument here fails for the same reasons that it fails for claim 1.

## IV. CONCLUSION

For the reasons set forth above, the Court should construe the terms the parties dispute as proposed by Plaintiffs.

This 1st day of November, 2023

/s/ Duncan G. Byers
Duncan G. Byers

10

Case 5:22-cv-00015-FL   Document 44   Filed 11/01/23   Page 12 of 13

BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, Virginia 23185
(757) 317-2779
Fax (757) 231-3797
dbyers@dbyerslaw.com
Va. Bar ID No. 48146
Special Appearance Counsel for Plaintiffs
Robert and Bradie Terracino

/s/ Samuel Aaron Forehand
Samuel Aaron Forehand
LAW OFFICE OF SAMUEL A. FOREHAND, P.A.
418 Elm Street
Raleigh, North Carolina  27604-1932
Tel: (919) 755-0500
Fax: (919) 755-1000
SAF@ForehandLaw.com
N.C. State Bar No. 35284
Local Civil Rule 83.1(d) Counsel for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2023 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.

/s/ Duncan G. Byers
Duncan G. Byers
BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, Virginia 23185
(757) 317-2779
Fax (757) 231-3797
dbyers@dbyerslaw.com
Va. Bar ID No. 48146
Special Appearance Counsel for Plaintiffs
Robert and Bradie Terracino

11