```
 1              UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NORTH CAROLINA
 2                    WESTERN DIVISION

 3

 4   ROBERT TERRACINO,     -    Docket No. 5:22-cv-015-FL
     et al.,               -
 5                         -
        Plaintiff,         -    New Bern, North Carolina
 6                         -    February 1, 2024
           v.              -    Claim Construction Hearing
 7                         -
     TRIMACO, INC.,        -
 8                         -
        Defendant.         -
 9   ------------------------------

10         TRANSCRIPT OF CLAIM CONSTRUCTION HEARING
          BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
11             UNITED STATES DISTRICT JUDGE.

12   APPEARANCES:

13   For the Plaintiffs:  Byers Law
                          By: Duncan G. Byers
14                        1769 Jamestown Road
                          Suite 120
15                        Williamsburg, VA 23185
                          (757) 317-2779
16
                          Ward and Smith, P.A.
17                        By:  W. Ellis Boyle
                          PO Box 33009
18                        Raleigh, NC 27636
                          (919) 277-9100
19
     For the Defendant:   Barnes & Thornburg LLP
20                        By: Deborah E. Pollack-Milgate
                          11 S. Meridian Street
21                        Indianapolis, IN 46204
                          (317) 231-7339
22
                          Barnes & Thornburg LLP
23                        By:  John M. Moye
                          3340 Peachtree Road NE
24                        Suite 2900
                          Atlanta, GA 30326
25                        (404) 264-4006
```

```
1    Court Reporter:        Tracy L. McGurk, RMR, CRR
                            413 Middle St.
2                           New Bern, NC 28560
                            (419) 392-6626
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23
     Proceedings recorded by mechanical stenography,
24   transcript produced by notereading.

25
```

1                        I N D E X

2

3

4    <u>No.</u>            <u>Description</u>                    <u>Page</u>

5

6      Whereupon Plaintiff's Exhibit 1 is admitted      60

7      into evidence

8      Whereupon Plaintiff's Exhibit 2 is admitted      72

9      into evidence

10

11                              - - -

12

13

14

15

16

17

18

19

20

21

22

23

24

25

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | (Commenced at 10:14 a.m.)                                    |
|       | 2  | THE COURT:  Good morning.  We have the                       |
| 00:00:04 | 3  | matter of claim construction in this case to take up      |
| 00:00:08 | 4  | today, Terracino v. Trimaco.                               |
| 00:00:17 | 5  | We'll start with introductions. I'd invite                |
| 00:00:19 | 6  | the plaintiffs to put their identities on the record.     |
| 00:00:24 | 7  | MR. BOYLE:  Good morning, Your Honor.                      |
| 00:00:25 | 8  | Ellis Boyle from the Wake County Bar.  And I'm local       |
| 00:00:28 | 9  | counsel.  And if I can introduce to the Court, please,    |
| 00:00:31 | 10 | from the Virginia Bar and the Patent Trade Bar Mr.        |
| 00:00:36 | 11 | Duncan Byers.                                              |
| 00:00:38 | 12 | MR. BYERS:  Good morning, Your Honor.  It's               |
| 00:00:39 | 13 | a pleasure to be here.                                     |
| 00:00:42 | 14 | THE COURT:  For the defendant?                             |
| 00:00:43 | 15 | MR. MOYE:  Good morning, Your Honor.  John                |
| 00:00:45 | 16 | Moye with the North Carolina Bar with Barnes & Thornburg  |
| 00:00:49 | 17 | on behalf of the defendant.  With me is my colleague      |
| 00:00:52 | 18 | from Barnes & Thornburg, Deborah Pollack-Milgate.         |
| 00:00:56 | 19 | THE COURT:  Welcome to you all.                            |
| 00:00:57 | 20 | Would you like to make an opening statement?              |
| 00:01:00 | 21 | I'll start with the plaintiff.                             |
| 00:01:02 | 22 | MR. BYERS:  I would, just a short one, Your               |
| 00:01:05 | 23 | Honor, just to provide the Court with a little bit of     |
| 00:01:08 | 24 | background.                                                |
| 00:01:10 | 25 | Unlike a number of patent infringement cases              |

00:01:14   1    that I'm aware the Court has dealt with, this one is

00:01:17   2    fairly straightforward. We're not talking about a

00:01:20   3    patent or an invention that includes many items that

00:01:25   4    need to be interpreted by people of skill in the art or

00:01:30   5    the like. It's fairly straightforward.

00:01:33   6             And in order to perhaps help the Court a

00:01:36   7    little bit, I have demonstrative exhibits so that the

00:01:40   8    Court can look at them while we're going through the

00:01:42   9    discussions. I have two of the drop cloths at issue.

00:01:51  10    One of them is one that has been examined and a corner

00:01:56  11    of it opened so that the Court can actually look at it

00:01:58  12    and see what we're talking about in terms of the layers

00:02:01  13    and the like. And just for clarity's sake, to make

00:02:07  14    sure that the defendants understand that I'm not

00:02:11  15    bringing in somebody else's drop cloth or the like, I

00:02:14  16    have one of theirs that is unopened so the Court can

00:02:17  17    compare both of them. Do you want to take a look at

00:02:20  18    it?

00:02:20  19             MS. POLLACK-MILGATE: Your Honor, may I just

00:02:22  20    ask a question? The drop cloth that you have, the lower

00:02:25  21    one, are you saying that's a Trimaco drop cloth?

00:02:30  22             MR. BYERS: Yes.

00:02:30  23             To be clear, Your Honor, at a certain point

00:02:33  24    Trimaco started adding orange stitching to their drop

00:02:39  25    cloths. This is a drop cloth that was manufactured by

00:02:42  1  Trimaco before they started actually adding the orange

00:02:47  2  stitching to it.  But it's the same manufacturing

00:02:50  3  process; it's the same drop cloth.  I'd invite you to

00:02:53  4  take a look at it.

00:02:54  5          THE COURT:  So what you've got in your hands

00:02:56  6  are two versions of what Trimaco makes?

00:03:00  7          MR. BYERS:  The only difference between

00:03:02  8  them --

00:03:02  9          THE COURT:  The stitching?

00:03:03  10          MR. BYERS:  The color of the stitching, Your

00:03:06  11  Honor.

00:03:06  12          THE COURT:  So the unpackaged one is pre

00:03:07  13  orange stitching?

00:03:10  14          MR. BYERS:  That's right.

00:03:11  15          THE COURT:  And the packaged one is the way

00:03:12  16  it's being produced now?

00:03:14  17          MR. BYERS:  That's correct, Your Honor.

00:03:16  18  Those are the only discernable differences between the

00:03:19  19  two of them.

00:03:19  20          THE COURT:  Okay.

00:03:21  21          MR. BYERS:  Again --

00:03:27  22          MS. POLLACK-MILGATE:  I want to confirm for

00:03:28  23  the record.  The product, I believe, that counsel has

00:03:30  24  is the Stay Put Plus.  So there have been two different

00:03:34  25  products, one of which has two layers, and another one

00:03:38 1    that has three layers.  So I want to make sure that the

00:03:41 2    record is clear that we are talking about a

00:03:43 3    three-layered embodiment; is that correct?

00:03:47 4           MR. BYERS:  Well, that's part of what we'll

00:03:50 5    be discussing today.

00:03:51 6           THE COURT:  I asked for an opening

00:03:52 7    statement, and I don't think that's what I got.

00:03:55 8           MR. BYERS:  I'm sorry.  I'm sorry, Your

00:03:58 9    Honor.

00:03:59 10           THE COURT:  So can we sort this out as we go

00:04:01 11    along.

00:04:02 12           MR. BYERS:  We can, Your Honor.  To be

00:04:03 13    clear, they're exactly the same in terms of the layers.

00:04:07 14    Again, the only reason that I have these is so that Your

00:04:09 15    Honor can actually look.

00:04:10 16           THE COURT:  Do you want to hand them up?

00:04:12 17           MR. BYERS:  I would.

00:04:13 18           MS. POLLACK-MILGATE:  Your Honor, I hate to

00:04:15 19    do this, but I'm going to throw one more objection out

00:04:19 20    there, because aside from some fairly limited

00:04:21 21    circumstances, the allegedly infringing product is not

00:04:24 22    all that relevant to claim construction.  So it's

00:04:28 23    inappropriate to be reading these claims in light of

00:04:31 24    examining the product which is alleged to be infringed.

00:04:35 25           THE COURT:  And you say there's a two-ply

| | | |
|---|---|---|
| 00:04:37 | 1 | and a three-ply.   And this is the two-ply? |
| 00:04:40 | 2 | MS. POLLACK-MILGATE:  I believe this is a |
| 00:04:41 | 3 | three-ply. |
| 00:04:43 | 4 | MR. BYERS:  Both of them are the structure |
| 00:04:45 | 5 | of the alleged infringing products, Your Honor.   And |
| 00:04:49 | 6 | again, I'm not relying on them in order to do anything |
| 00:04:56 | 7 | other than educate the Court as to exactly what it is |
| 00:04:59 | 8 | that we're talking about.  And for some background on |
| 00:05:05 | 9 | that, Your Honor, these drop cloths were originally |
| 00:05:07 | 10 | manufactured under license based on my client's patent |
| 00:05:12 | 11 | by Trimaco.   And so these are -- these read directly on |
| 00:05:18 | 12 | my client's patent, which is the patent at issue. |
| 00:05:22 | 13 | I'm not asking the Court to look at them in |
| 00:05:25 | 14 | terms of whether or not there's actual infringement or |
| 00:05:29 | 15 | the like.   That's not the purpose behind this, just to |
| 00:05:32 | 16 | be clear.   So if the Court would like to look at them. |
| 00:05:35 | 17 | THE COURT:  Sure. |
| 00:05:36 | 18 | MS. POLLACK-MILGATE:  Your Honor, I'm going |
| 00:05:37 | 19 | to beg your indulgence one more time, because counsel |
| 00:05:40 | 20 | has suggested that these products were made under a |
| 00:05:44 | 21 | license because there's infringement.  And again, these |
| 00:05:50 | 22 | are not infringing products.   So if counsel is going to |
| 00:05:53 | 23 | discuss these as infringing, these are embodiments of |
| 00:05:56 | 24 | the invention, and so on, that's improper. |
| 00:05:58 | 25 | MR. BYERS:  I understood, Your Honor, we're |

00:06:00  1   here on a claim construction argument.

00:06:01  2               THE COURT:  Let me just look at them.   Then

00:06:03  3   I'm going to give them right back to you, and I'm going

00:06:05  4   to hear your opening statement.   If you'd approach the

00:06:10  5   clerk.

00:06:10  6               (Items are given to the Court.)

00:06:27  7               THE COURT:  What's this?

00:06:28  8               MR. BYERS:  It's a corner cut off, Your

00:06:31  9   Honor, so that the Court can see what we're talking

00:06:33  10  about when we talk about layers of structures on these.

00:06:35  11  It's purely for edification for the Court so you can see

00:06:46  12  what we're talking about in terms of the drop cloths,

00:06:47  13  how they're constructed, and the functionality.   That's

00:06:48  14  it.

00:06:49  15              Again, to be clear, I'm not attempting to

00:06:51  16  ask the Court to make any determinations as to

00:06:54  17  infringement.

00:06:54  18              THE COURT:  So you say this is a three-ply?

00:06:57  19              MR. BYERS:  That's the way they're

00:07:00  20  constructed, according to the plaintiffs.

00:07:03  21              And there is -- the patent at issue has an

00:07:13  22  embodiment that discusses an impervious layer.   There

00:07:16  23  is a layer in there that they're claiming is impervious.

00:07:20  24              THE COURT:  Okay.  The impervious layer is

00:07:23  25  underneath this?

00:07:24  1              MR. BYERS:  In between the two.  That's

00:07:27  2    correct, Your Honor.

00:07:31  3              THE COURT:  And a two-ply, what's the

00:07:33  4    difference?

00:07:34  5              MR. BYERS:  The difference would be, Your

00:07:35  6    Honor, that top layer would be the canvas, and the

00:07:39  7    bottom layer would be the bumpy sticky surface that you

00:07:43  8    feel, and without the plastic in between them.

00:07:45  9              THE COURT:  So, in other words, the paint

00:07:46  10   could go through?

00:07:48  11             MR. BYERS:  Possibly.

00:08:12  12             THE COURT:  Okay.

00:08:17  13             Mr. Byers, you're from Williamsburg?

00:08:20  14             MR. BYERS:  That's correct, Your Honor.

00:08:23  15             THE COURT:  That's where I grew up.

00:08:25  16             MR. BYERS:  Really?  We moved there two and

00:08:29  17   a half years ago.  We were actually in Virginia Beach

00:08:33  18   and Chic's Beach.  But we have a little one, and it got

00:08:38  19   a little bit too problematic with a small child.  But

00:08:41  20   we love it there.

00:08:43  21             Your Honor, the case, as you're aware,

00:08:46  22   revolves around a fairly straightforward invention.  My

00:08:49  23   client's patent covers the construction of a drop cloth

00:08:56  24   for painting and other purposes that's intended to

00:08:59  25   provide two functions.  The first one being to protect

00:09:09  1  the surface, which an ordinary drop cloth does.  And it
00:09:12  2  does that through the use of a surface top layer that is
00:09:18  3  an absorbent material.  And then the real "gee whiz" of
00:09:22  4  the invention is the addition of the bottom of it, which
00:09:25  5  is a material that has a grid of a rubber material that
00:09:36  6  includes bumps of various sizes and heights in it.
00:09:42  7  That's essentially it.
00:09:47  8          It's our contention that we have an
00:09:53  9  infringement issue because the prosecution history and
00:09:55 10  the claims of this patent would cover the drop cloth
00:10:01 11  that Trimaco is manufacturing and selling, even with the
00:10:05 12  addition of that intermediate layer.
00:10:11 13          Now, with regards to the claim construction,
00:10:16 14  the first claim does say "A non-skid protective cloth or
00:10:22 15  pad consisting of."  And the term "consisting of" in
00:10:26 16  the scope of this invention has been interpreted by the
00:10:28 17  defendants to mean that it's limited to and can only
00:10:32 18  have the two layers that are in the claim itself, the
00:10:38 19  absorbent top layer and the non-slip bottom layer.
00:10:43 20  Then once you add something else in between them,
00:10:46 21  regardless of what it is, that that takes their drop
00:10:51 22  cloth out of the scope of the claim.
00:10:54 23          However, as we've argued, a review of the
00:10:59 24  prosecution history and of the claims shows that not
00:11:04 25  only was one of the embodiments contemplated by the

00:11:08 1  inventors and the Patent Office to include additional

00:11:12 2  layers, including an impervious layer, but even after

00:11:17 3  the language of Claim 1 was changed to "consisting of,"

00:11:23 4  that the Patent Office and the inventors continued to

00:11:29 5  treat the invention as one that could have more than

00:11:34 6  just the two layers.

00:11:36 7        The prosecution history that the defendants

00:11:39 8  are relying on with regards to the rejections based upon

00:11:43 9  multiple layers and the like.  As we've pointed out both

00:11:48 10  in our claim construction brief and in our reply to

00:11:52 11  their opening claim construction brief, it is limited to

00:11:56 12  rejections based upon the top layer having multiple

00:12:01 13  layers, not the invention as a whole having multiple

00:12:05 14  layers.

00:12:07 15        And so when the Court's looking at the claim

00:12:12 16  construction here and what the defendants are claiming

00:12:15 17  my clients gave up during the prosecution of the patent,

00:12:21 18  they're two different interpretations of what happened.

00:12:24 19  And we believe based upon the prosecution history, it's

00:12:27 20  very clear that the discussion that was going on between

00:12:31 21  my clients and the Patent Office with regards to the

00:12:34 22  multiple layer issue was limited to the top layer and

00:12:40 23  not the layers of the invention as a whole.  And that's

00:12:45 24  borne out by the prosecution history, by the arguments

00:12:48 25  made by the patent examiner in issuing rejections for

00:12:54   1   the claims, and in the arguments made in response to

00:12:57   2   them.

00:12:58   3           And obviously the question of what

00:13:02   4   "consisting of" means in the scope of this patent is

00:13:07   5   going to be dispositive here. It's probably, frankly,

00:13:10   6   the single most dispositive question before the Court in

00:13:13   7   terms of interpreting the claims in this patent.

00:13:16   8           So if we move on to -- yes, Your Honor.

00:13:20   9           THE COURT: I said okay.

00:13:25   10           MR. BYERS: The second issue before the

00:13:31   11   Court is the question of what the term "adjacent" means.

00:13:38   12   And I believe that we can dispose of that fairly

00:13:41   13   quickly. As the Court is aware, unless there's a

00:13:46   14   reason not to give claim terms their ordinary and

00:13:51   15   customary meaning, every claim term should be given its

00:13:54   16   ordinary and customary meaning.

00:13:56   17           "Adjacent" means what "adjacent" means.

00:13:59   18   Our proposed construction is "lying near or close to,

00:14:02   19   but not necessarily touching." For example, I have a

00:14:08   20   house. My neighbor's house is adjacent to it. But we

00:14:13   21   have a yard and fence in between them, but they're still

00:14:16   22   considered adjacent.

00:14:17   23           The defendants are interpreting "adjacent"

00:14:20   24   to mean that they must necessarily be touching.

00:14:23   25           So in laymen's terms it would be the

00:14:25  1   difference between saying that the two houses, in order

00:14:29  2   to be adjacent, would have to be townhouses and directly

00:14:33  3   attached to each other.

00:14:35  4        We dispute that.  We think that the ordinary

00:14:40  5   and customary meaning of adjacent does not mean attached

00:14:43  6   to, does not mean adhered to, does not mean fused with.

00:14:47  7   It just means close by or near to it.  And we believe

00:14:51  8   that the ordinary and customary meaning supports that.

00:14:56  9        The next issue that the Court has to address

00:15:01  10  is the claim language that says "Said downward

00:15:06  11  projecting bumps comprising bumps having at least two

00:15:09  12  different circumferential sizes."

00:15:15  13       It's our contention that that claim

00:15:18  14  language, as supported by the specification, means that

00:15:24  15  you can have in the structure, which is the bottom

00:15:29  16  sticky non-skid structure that keeps the canvas cover

00:15:35  17  from sliding around while you're using it, the way it's

00:15:39  18  constructed and the way it's claimed in the patent means

00:15:42  19  that you can have these bumps having multiple different

00:15:49  20  circumferential sizes and that they're not limited to a

00:15:56  21  measurable perimeter as claimed by -- as argued by the

00:16:00  22  defendants.  There's nothing in the patent itself,

00:16:04  23  there's nothing in the specification, and there's

00:16:09  24  nothing in the prosecution history that includes the

00:16:11  25  "measurable" limitation in it.

00:16:18  1    Our proposed construction is simply that the

00:16:23  2  downward projecting bumps where each of the bumps has

00:16:26  3  one of two or more different circumferences.

00:16:32  4    And again, circumference is an ordinary and

00:16:35  5  customary term that's well known.  So we believe that

00:16:38  6  adding a measurable boundary or perimeter to it

00:16:44  7  impermissibly narrows the scope of the claim because in

00:16:48  8  part -- and this is one of the reasons why I wish the

00:16:52  9  Court to look at the drop cloths in addition to the

00:16:56 10  record, is that it's readily apparent that you don't

00:16:59 11  need to measure these bumps.  An ordinary person can

00:17:04 12  look at them and see this one has a bigger circumference

00:17:06 13  than this one does.

00:17:07 14    And so we think that the defendant's

00:17:10 15  construction impermissibly narrows it to being boundary

00:17:15 16  or measurable -- "a measurable boundary or perimeter."

00:17:21 17    The next issue that the Court is addressing

00:17:24 18  here is the claim language that says "Said height of

00:17:27 19  bumps having a smaller of said at least two different

00:17:31 20  circumferential sizes being greater than said height of

00:17:36 21  bumps having said larger of said at least two

00:17:39 22  circumferential sizes."

00:17:43 23    I apologize, Your Honor.  I'm a patent

00:17:45 24  attorney, but I also trip over claim language sometimes.

00:17:50 25    Our proposed construction for this, as

00:17:53  1  supported by the claims of the patent and the

00:17:56  2  specification, is that there's a comparison when you

00:18:03  3  have one bump that you look at that has a smaller

00:18:08  4  circumference in comparison to another bump that has a

00:18:12  5  larger circumference, that that first bump may have a

00:18:19  6  height that is greater than the height of the second

00:18:22  7  bump.

00:18:24  8          The defendant's interpretation is that each

00:18:27  9  of the circumferentially smaller bumps must have a

00:18:32  10  greater height than that of the circumferentially larger

00:18:35  11  bumps.

00:18:35  12          But there's nothing in the claim and there's

00:18:37  13  nothing in the specification and there's certainly

00:18:41  14  nothing in the prosecution history that limits the claim

00:18:44  15  such that each of the smaller bumps must have a greater

00:18:50  16  height than that of a circumferentially larger bump, the

00:18:56  17  bumps with the larger circumference.

00:19:00  18          And the specification in this patent

00:19:03  19  actually teaches the exact opposite and says in

00:19:08  20  alternate embodiments:  Larger and smaller bumps

00:19:12  21  respectively may have a substantially identical height.

00:19:18  22  In still other embodiments:  Smaller bumps may have a

00:19:19  23  height larger than larger bumps.

00:19:21  24          So defendants are attempting to limit the

00:19:24  25  claim so that each smaller bump that you find on the

| | |
|---|---|
| 00:19:27 | 1 |
| 00:19:33 | 2 |
| 00:19:37 | 3 |
| 00:19:39 | 4 |
| 00:19:43 | 5 |
| 00:19:47 | 6 |
| 00:19:50 | 7 |
| 00:19:55 | 8 |
| 00:19:57 | 9 |
| 00:19:59 | 10 |
| 00:20:08 | 11 |
| 00:20:11 | 12 |
| 00:20:16 | 13 |
| 00:20:20 | 14 |
| 00:20:20 | 15 |
| 00:20:23 | 16 |
| 00:20:24 | 17 |
| 00:20:28 | 18 |
| 00:20:34 | 19 |
| 00:20:40 | 20 |
| 00:20:43 | 21 |
| 00:20:48 | 22 |
| 00:20:50 | 23 |
| 00:20:54 | 24 |
| 00:21:00 | 25 |

back of the constructed drop cloth must have a higher height than any bump that has a larger circumference.

THE COURT: Could you say that again?

MR. BYERS: The defendant's position is that when you compare any two bumps -- there's only two sizes of bumps; you have smaller bumps and larger bumps in terms of the circumference, the base of the -- the circumference around the base.

Their position is, the way I read it, is that in order to construe the claim properly, any two bumps that you would pick on the bottom of this, on the non-slip surface, the one with the smaller circumference must have a height greater than a bump that you compare it to that has a larger circumference.

THE COURT: Okay.

MR. BYERS: That's not how the claim reads, and that's not how the specification reads. The specification specifically contemplates that you do have two different sized bumps relative to each other, one with a smaller circumference compared to one with a larger circumference. And in some cases that bump with the smaller circumference has a greater height than the one with the circumference that's larger. But specifically says that -- and this is tied directly into manufacturing processes and the like -- that they can

| | | |
|---|---|---|
| 00:21:03 | 1 | have the same height, and they can have different |
| 00:21:06 | 2 | heights where the one with the larger circumference has |
| 00:21:09 | 3 | a height greater than the smaller one, but there are |
| 00:21:12 | 4 | bumps on this surface where bumps of smaller |
| 00:21:18 | 5 | circumference have a height that's higher than ones that |
| 00:21:22 | 6 | have a larger circumference. |
| 00:21:24 | 7 | And so we believe that the defendants are |
| 00:21:26 | 8 | attempting to impermissibly narrow the scope of the |
| 00:21:30 | 9 | claim, especially when read in light of the |
| 00:21:32 | 10 | specification, to saying that any comparison of two |
| 00:21:36 | 11 | bumps, the one with the smaller circumference must have |
| 00:21:38 | 12 | a higher -- must have a greater height than the one that |
| 00:21:43 | 13 | has the larger circumference.   And that's not the way |
| 00:21:45 | 14 | the claim reads, and that's not the way the |
| 00:21:48 | 15 | specification reads. |
| 00:21:51 | 16 | The next issue is a testing procedure, and |
| 00:22:01 | 17 | the claim language says "Whereby when said lower major |
| 00:22:04 | 18 | surface of said resilient" -- "single resilient layer is |
| 00:22:07 | 19 | placed on a support surface, a slide of coefficient of |
| 00:22:10 | 20 | friction measure in accordance with TAPPI T548 |
| 00:22:14 | 21 | specification is greater than approximately 0.75." |
| 00:22:19 | 22 | Now, our interpretation is exactly what the |
| 00:22:27 | 23 | specification says and exactly what the claim says. |
| 00:22:29 | 24 | There is a testing procedure.   The testing procedure |
| 00:22:33 | 25 | was used and is clearly defined and is publicly |

00:22:39  1    available.   And so the claim is:  We applied this

00:22:43  2    testing procedure; this is the result we got.

00:22:49  3              The defendant's position is that proposed

00:22:51  4    construction is indefinite.

00:22:54  5              And I will admit to some uncertainty as to

00:23:01  6    exactly what it is the defendants are trying to say,

00:23:06  7    because it appears that -- I'm sure my colleagues will

00:23:12  8    clarify this for me.  It seems that their position is

00:23:15  9    that: Well, this testing procedure wasn't intended to be

00:23:19  10   tested on this particular type of product; and so

00:23:22  11   therefore, it's indefinite.

00:23:30  12             That, in my interpretation, seems to be a

00:23:35  13   functionality argument rather than an argument that it's

00:23:40  14   indefinite.   For example, if I had a claim where I was

00:23:45  15   testing the brakes on a new car, and I claimed that I

00:23:52  16   tested it by locking the brakes and sliding it down a

00:23:56  17   ski jump slope.  That saying that:  Well, that's not a

00:24:02  18   proper test to test the brakes, that may well be an

00:24:05  19   argument farther down the road, but it's certainly not

00:24:09  20   an indefinite argument.   And that's how I interpret

00:24:11  21   this.   And I welcome some clarification on that.   But

00:24:13  22   that's the best I can make of it.

00:24:20  23             The next issue is the single term

00:24:24  24   "amorphous."

00:24:25  25             Again, going back to the legal standard that

00:24:27 1  a term that has an ordinary and customary meaning should
00:24:30 2  be given its ordinary and customary meaning.  We have
00:24:35 3  provided the Court with the definition of what
00:24:38 4  "amorphous" means.   And so our proposed construction
00:24:42 5  for that term is "irregularly shaped," which is
00:24:46 6  supported by the dictionary definition that we provided
00:24:50 7  to the Court.
00:24:51 8          The defendants have proposed that that term
00:24:55 9  should be construed as meaning "having an indefinite
00:24:59 10 shape but a measurable boundary or perimeter."   Again,
00:25:02 11 as before, it's our position the defendants are
00:25:05 12 impermissibly attempting to read limitations into the
00:25:10 13 claims that are not there.   There's nothing in the
00:25:14 14 claim or the specification that says that an amorphous
00:25:18 15 shape must be measurable in order to be covered in our
00:25:23 16 claim.   And there's certainly nothing in it that limits
00:25:28 17 it to a measurable boundary or perimeter.   An amorphous
00:25:33 18 shape is simply irregularly shaped.
00:25:38 19          The final issue, Your Honor, is, again, the
00:25:42 20 testing issue.   Where the claim language says "Whereby
00:25:45 21 when tested in accordance with TAPPI T548 specification,
00:25:50 22 an average slide angle is no less than approximately 40
00:25:55 23 degrees."
00:25:55 24          Again, defendant's position is that that's
00:25:57 25 indefinite.

00:25:58  1          Our position is the claim language is

00:26:02  2  absolutely specific, and the specification supports it

00:26:05  3  and gives the testing procedure and the results, and so

00:26:08  4  an indefinite -- saying a claim is indefinite is

00:26:14  5  improper.   There may be other arguments that they could

00:26:17  6  make, as I mentioned, but I don't think that

00:26:19  7  indefiniteness is one of them.

00:26:22  8          THE COURT:  Okay.

00:26:23  9          MR. BYERS:  Unless the Court has any

00:26:24  10  questions on that, Your Honor.

00:26:25  11          THE COURT:  I've got questions, but let me

00:26:31  12  hear your arguments.

00:26:35  13          MS. POLLACK-MILGATE:  Thank you, Your Honor.

00:26:37  14  We have a presentation here that we'll be referring to

00:26:41  15  in the course of today, if I could approach.

00:26:44  16          THE COURT:  All right.   Is this the first

00:26:50  17  time plaintiff is seeing your book?

00:26:53  18          MS. POLLACK-MILGATE:  This is the first time

00:26:54  19  we have shown this to anybody.

00:26:57  20          THE COURT:  Okay.  Are you using

00:27:06  21  electronics, or are we going to flip the pages here?

00:27:09  22          MS. POLLACK-MILGATE:  We're going to flip

00:27:11  23  the pages, but I will try not to flip us through every

00:27:14  24  page.

00:27:14  25          What I am thinking is counsel and I had

00:27:16  1    discussed -- first of all, I'll give you an opening

00:27:19  2    statement.

00:27:19  3              Counsel and I then had discussed that

00:27:21  4    potentially it might make sense to deal with the terms

00:27:24  5    on an individual basis.  So what I would like to do,

00:27:26  6    Your Honor, if it's okay, is when we get to that point,

00:27:28  7    refer you to certain pages along with argument.

00:27:33  8              THE COURT:  All right.

00:27:35  9              MS. POLLACK-MILGATE:  I'd like to start off

00:27:42  10   with what plaintiffs began with, which was they said

00:27:45  11   that the invention was straightforward.  And counsel

00:27:48  12   mentioned that there was an absorbent top layer, and

00:27:52  13   then there was a resilient grid underneath.  And then I

00:27:57  14   believe he said that's it, that's our invention.  It's

00:28:01  15   essentially these two elements.

00:28:04  16             The problem with that is that those were not

00:28:07  17   the claims that were actually allowed by the Patent

00:28:09  18   Office.

00:28:13  19             So if we look at the claims that were

00:28:15  20   actually first sought to be patented, and then what was

00:28:19  21   actually allowed, with respect to the initial claim, the

00:28:24  22   very first application that was filed, plaintiffs sought

00:28:28  23   claims that were directed to a non-skid protective cloth

00:28:32  24   or pad comprising -- and you'll hear a lot today about

00:28:37  25   "comprising" versus "consisting of."  There was a woven

00:28:43 1  upper layer.

00:28:44 2          And if you want to follow along, I didn't

00:28:47 3  intend for you to follow along on this one, but it's

00:28:50 4  slide 3.   There's the woven upper layer, then there's a

00:28:53 5  lower resilient layer, having an upper and lower major

00:28:58 6  surface that's adjacent to the upper layer.   Then you

00:29:04 7  have a means for fastening said upper woven layer.

00:29:08 8          So it was very broad.   It really only had

00:29:11 9  these three elements, a top, a bottom, and something to

00:29:15 10 fasten the two together.

00:29:17 11         However, during the course of prosecution,

00:29:21 12 the plaintiff narrowed this claim again and again and

00:29:24 13 again.   And that's because they wanted to get a patent,

00:29:27 14 and they wanted to get patent claims.   And in order to

00:29:31 15 do that, they had to broker a deal with the Patent

00:29:32 16 Office to get something that the Patent Office would be

00:29:36 17 assured was actually patentable.

00:29:39 18         So they changed "comprising" to "consisting

00:29:44 19 of" -- which you'll hear a lot about today, Your

00:29:47 20 Honor -- closing the claim up.

00:29:50 21         And at the same time they changed the

00:29:52 22 language from "comprising" to "consisting of," they also

00:29:57 23 specified that there was a "single lower layer," and a

00:30:02 24 "single upper layer."

00:30:05 25         They also had to specify the specific means

00:30:09   1   for attachment.   So it couldn't be any attachment.

00:30:12   2   The attachment had to be by stitching.

00:30:15   3                   That wasn't enough.

00:30:17   4                   They added TAPPI limitations.   I'll call

00:30:22   5   those the TAPPI limitations.   So they had to add some

00:30:24   6   clarification with respect to what parameters, what

00:30:29   7   specific parameters the drop cloth that they chose to

00:30:33   8   claim would meet.   Those were the TAPPI limitations.

00:30:35   9                   And then they also had to specify -- and

00:30:38  10   this was critical.   This was actually the last thing

00:30:41  11   that happened.   They had to specify the bumps.

00:30:44  12                   So I chuckled a little bit, Your Honor, when

00:30:47  13   Your Honor asked a question about:   Could you say that

00:30:49  14   again?  Because this is a mouthful to try to get this

00:30:52  15   out.   But in order to get this patent claim allowed,

00:30:56  16   they had to specify that the bumps smaller

00:31:01  17   circumferentially would have a taller height than the

00:31:07  18   larger bumps circumferentially.   That's what they had

00:31:12  19   to do.   And that, Your Honor, the patent examiner was

00:31:17  20   confident was not in the prior art.

00:31:20  21                   So that is the bargain.   As we walk through

00:31:23  22   today, Your Honor will see how at each point in time

00:31:27  23   plaintiffs were required to narrow their invention to

00:31:30  24   get something patentable.   That's the story here.

00:31:34  25                   One small point -- and then I will sit down,

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
| 00:31:38 | 1  | and we can go through the claims one by one, if that's           |
| 00:31:40 | 2  | okay with the Court -- is that this construction of              |
| 00:31:48 | 3  | "consisting of" versus "comprising," counsel talked very         |
| 00:31:52 | 4  | much about how he has a different interpretation based           |
| 00:31:56 | 5  | on looking at the prosecution history.  That                     |
| 00:31:59 | 6  | interpretation is contrary to the plain language of the          |
| 00:32:03 | 7  | claim.  It is black letter law that "consisting of" is           |
| 00:32:07 | 8  | closed.  This is one of the most settled propositions            |
| 00:32:11 | 9  | of patent law that exist.  It's about the first thing            |
| 00:32:15 | 10 | you learn in the law when you learn how to read patent           |
| 00:32:19 | 11 | claims.                                                           |
| 00:32:21 | 12 | Counsel's construction, the Terracinos',                         |
| 00:32:25 | 13 | plaintiffs' construction is contrary to patent law.              |
| 00:32:27 | 14 | It's contrary to the plain language of the claim.  It            |
| 00:32:31 | 15 | would be hard to imagine putting the world on notice             |
| 00:32:35 | 16 | that this is a -- when a person of ordinary skill in the         |
| 00:32:43 | 17 | art reads the claim, understands it's closed, to ask             |
| 00:32:46 | 18 | them to then go to the prosecution history and figure            |
| 00:32:49 | 19 | out if there's some interpretation under which it's              |
| 00:32:52 | 20 | actually opened, that cannot be the law.  It's not the           |
| 00:32:55 | 21 | law.  And as counsel has stated, it is dispositive to            |
| 00:33:00 | 22 | this matter.  Thank you.                                         |
| 00:33:03 | 23 | THE COURT:  Do you have any case that                            |
| 00:33:07 | 24 | decides what's covered by the term "consisting of" at            |
| 00:33:15 | 25 | claim construction?                                              |

00:33:18  1                    MS. POLLACK-MILGATE:  Yes, Your Honor.
00:33:19  2    There is.  On slide 8 --
00:33:30  3                    THE COURT:  Now, you're using numbers.
00:33:32  4                    MS. POLLACK-MILGATE:  I'm sorry.  They are
00:33:34  5    very small.
00:33:35  6                    THE COURT:  Where are they?
00:33:38  7                    MS. POLLACK-MILGATE:  They are at the bottom
00:33:39  8    right.
00:33:39  9                    THE COURT:  Okay.
00:33:39  10                   MS. POLLACK-MILGATE:  They're very
00:33:41  11   unintrusive.
00:33:41  12                   MR. BYERS:  They're inside the blue.
00:33:43  13                   THE COURT:  I've of got it now.   Thanks.
00:33:48  14                   MS. POLLACK-MILGATE:  That's on slide 8.
00:33:50  15   It's also in our briefing.
00:33:54  16                   There is also another case that is in our
00:33:57  17   briefing, which is the case that counsel referred to.
00:34:00  18   This will come up later.  I'm trying to remember where
00:34:06  19   I have it in my notes.  I will find that for you.
00:34:09  20                   But the other case is this is a factual
00:34:12  21   scenario.  And it's the one instance that counsel
00:34:14  22   identified where "consisting of" was found -- well, if
00:34:23  23   there is something that's unrelated to the invention
00:34:26  24   entirely, then it cannot be a way to avoid infringement.
00:34:33  25                   So in this other case -- and again, I will

00:34:37  1   get Your Honor the citation -- it was a chemical kit.

00:34:41  2   And then the defendant said:  Well, I'd like to avoid

00:34:44  3   infringement because I have a spatula that goes along

00:34:47  4   with the chemical kit.   That is the instance in which

00:34:51  5   "consisting of" and "comprising," that's where

00:34:54  6   "consisting" finds its limits.   But otherwise the

00:34:57  7   language is entirely closed.

00:35:02  8              THE COURT:  What do you think, Mr. Byers?

00:35:05  9              MR. BYERS:  Your Honor, I agree that at

00:35:09  10  first cut in interpreting patent claims that "consisting

00:35:13  11  of" signals closed language.

00:35:17  12             However, the case law from the Federal

00:35:24  13  Circuit has made it abundantly clear that that's only

00:35:28  14  true if that's how the Patent Office and the inventors

00:35:38  15  understood the term, and only if you're talking about

00:35:42  16  elements that are related to the invention.

00:35:46  17             And I believe the case that my colleague was

00:35:54  18  referring to is the *Nature Simulation Systems* case.

00:36:02  19  And that is --

00:36:10  20             No, I'm sorry, Your Honor. I misspoke.   I

00:36:20  21  will get that citation.

00:36:22  22             MS. POLLACK-MILGATE:  I have it.   It's

00:36:23  23  *Norian*, N-o-r-i-a-n.   The citation is 363 F.3d 1321.

00:36:38  24             MR. BYERS:  So as the Federal Circuit

00:36:41  25  explained in that case, Your Honor, it is not the

00:36:45 1  beginning and the end of the conversation when the

00:36:49 2  signaling language "consisting of" shows up in a claim.

00:36:54 3  If you have a potentially infringing article, and that

00:36:59 4  article includes something that is not essentially part

00:37:08 5  of the functionality of the invention being claimed,

00:37:14 6  then that does not get you around the presumably closed

00:37:19 7  language of "consisting of."

00:37:21 8          And in that case counsel is correct, it was

00:37:23 9  a case where it was essentially a chemical kit.  And

00:37:29 10 the infringing device included a spoon to stir the

00:37:34 11 materials with.  The defendants in that case claimed

00:37:38 12 that the spoon got them outside of the scope of the

00:37:40 13 claims of the patent because of the "consisting of"

00:37:44 14 language.

00:37:44 15         The Federal Circuit was very clear and said:

00:37:47 16 No, no, no.  That's in addition to and cannot get you

00:37:52 17 outside the scope of the claims.

00:37:56 18         In what we're talking about, we're talking

00:37:58 19 about "consisting of an absorbent layer and a non-skid

00:38:04 20 layer."  Adding something to it that's not covered by

00:38:13 21 the scope of or included as part of the invention

00:38:18 22 doesn't take it out of the scope of the patent claims.

00:38:24 23         This is the way I've been thinking of it,

00:38:26 24 Your Honor:  If I patented a wall, it then has two

00:38:31 25 surfaces; one of them is a sound proofing surface on one

| | | |
|---|---|---|
| 00:38:36 | 1 | side, and the other side is a solid metal structure to |
| 00:38:41 | 2 | avoid damage from impact.  So you have a wall; one side |
| 00:38:46 | 3 | is soundproof, and one side is indestructible material. |
| 00:38:51 | 4 | And in the specification it says you can do other things |
| 00:38:54 | 5 | inside the wall you wanted to, like you could spray the |
| 00:38:57 | 6 | inside of the soundproofing wall with something to keep |
| 00:39:00 | 7 | it waterproof.  Right?  But those aren't the |
| 00:39:05 | 8 | functional elements of the invention itself.  It |
| 00:39:07 | 9 | doesn't add to the functionality; it doesn't decrease |
| 00:39:12 | 10 | the functionality.  It's something that you could do to |
| 00:39:15 | 11 | it, like adding streamers to bicycle handles. |
| 00:39:19 | 12 | Now, if you added something that increased |
| 00:39:22 | 13 | the non-skid characteristics or the absorption by the |
| 00:39:27 | 14 | woven top, but that's not what we're talking about. |
| 00:39:30 | 15 | What we're talking about is looking at the claim, and |
| 00:39:34 | 16 | deciding whether or not it's limited only to those two |
| 00:39:39 | 17 | layers with nothing else in between them.  And in order |
| 00:39:43 | 18 | for defendant's interpretation to be correct, you could |
| 00:39:47 | 19 | have somebody that made one of the drop cloths and put |
| 00:39:52 | 20 | in a layer of bubble wrap, and now they're not |
| 00:39:57 | 21 | infringing -- right -- even though it has nothing to do |
| 00:39:58 | 22 | with the functionality or the intent of the invention. |
| 00:40:01 | 23 | And that's the distinction that the Federal |
| 00:40:04 | 24 | Circuit made in the *Norian* case, is that, yes, |
| 00:40:09 | 25 | "consisting of" limits it, but it limits it essentially |

00:40:15  1    to the functionality of what it is that the invention

00:40:18  2    does.    That spoon didn't change the functionality of

00:40:21  3    the chemical process at all.

00:40:26  4              And again, to go back to one of the things

00:40:30  5    that I pointed out earlier, when you look at the

00:40:33  6    prosecution history, it's clear from the prosecution

00:40:37  7    history that the examiner and the inventors during the

00:40:43  8    prosecution were not talking about limiting layers of

00:40:48  9    the product as a whole.    All of the objections and all

00:40:52  10   of the responses to it with regards to the multiple

00:40:56  11   layers were multiple layers of the top layer.    So

00:41:04  12   there's no other place to add an additional layer to it

00:41:11  13   without -- add an additional layer to it that would take

00:41:15  14   it outside of the scope of the claims unless you added

00:41:18  15   something else that was a new top layer or something

00:41:20  16   else that was a new bottom layer.    You add something in

00:41:25  17   between; you've still got the top layer, and you've

00:41:28  18   still got the bottom layer, whether it's bubble wrap,

00:41:31  19   whether it's streamers added to bicycle handles, or

00:41:35  20   whether it's spraying the back side of a wall to make it

00:41:38  21   waterproof.  You're not changing the fundamental

00:41:41  22   characteristics of the invention, and you're not

00:41:45  23   changing the scope of the claims.    And that was what

00:41:48  24   the *Norian* case was essentially all about.

00:41:51  25              THE COURT:  So if I'm following you,

00:41:53 1 anything between the two, anything inserted between the

00:41:59 2 two, you would make the same argument?

00:42:05 3 　　　　MR. BYERS:  No, Your Honor, I would not.  I

00:42:07 4 would not.  If it deals with the functionality -- in

00:42:14 5 the *Norian* case, if the additional element had been an

00:42:19 6 additional reagent in the chemical reaction, now you've

00:42:23 7 got something that would get it outside of the scope of

00:42:26 8 the claims, because it would change the functionality or

00:42:29 9 change how it functions.  Right?

00:42:32 10 　　　　But in this case, again, I go back to my

00:42:35 11 opening statement, Your Honor.  This is fairly

00:42:37 12 straightforward.  We're talking about a top layer that

00:42:41 13 absorbs and a bottom layer that keeps the thing from

00:42:44 14 sliding anywhere.  Right?  Adding a layer of plastic

00:42:49 15 in there doesn't change the absorption of the top layer,

00:42:53 16 and it doesn't change the non-skid properties.  As I

00:42:57 17 said, it might as well be bubble wrap.  It might as

00:43:00 18 well be anything you can think of except for -- and I

00:43:05 19 know it sounds like I'm making it very narrow, and I'm

00:43:09 20 not trying to suggest that.  But what I am saying is

00:43:11 21 that if the Court were to countenance their argument in

00:43:18 22 light of *Norian* and in light of the Federal Circuit's

00:43:21 23 clear understanding that, yeah, "consisting of" is

00:43:24 24 closed, but you need to be careful with it because that

00:43:27 25 doesn't mean that anything you add to it takes it

00:43:30 1 outside of the scope of the claims. It has to be

00:43:35 2 something that's related to what the invention does and

00:43:37 3 the functionality of the invention. Okay? Adding

00:43:40 4 training wheels to a bicycle, that has to do with the

00:43:43 5 functionality of the bicycle. Adding streamers to it

00:43:48 6 has nothing to do with the bicycle functioning to get

00:43:51 7 down the street.

00:43:52 8 THE COURT: What do you see this middle

00:43:54 9 layer doing here?

00:43:57 10 MR. BYERS: It's simply a layer of plastic

00:43:59 11 that they put in there that they are saying makes it

00:44:02 12 impervious.

00:44:05 13 But again, my clients have that in the

00:44:11 14 specification. They say you could add that, but it

00:44:13 15 doesn't change the functionality of it. It has two

00:44:18 16 functions: it's got an absorbing top surface, and it's

00:44:21 17 got a bottom surface that keeps it from sliding.

00:44:25 18 So, I mean, if you follow the defendant's

00:44:31 19 argument without considering what the Federal Circuit

00:44:38 20 has said about it, you could add in glow lights so you

00:44:45 21 can see it when the lights are out, and it's an

00:44:49 22 additional layer. It's a sheet that has lighting

00:44:51 23 properties; and so therefore, we don't infringe. And

00:44:55 24 that's what the Federal Circuit in *Norian* warned

00:44:55 25 against.

| | | |
|---|---|---|
| 00:45:00 | 1 | And so in this case claiming that we can |
| 00:45:05 | 2 | basically add anything we want to in between the layers, |
| 00:45:09 | 3 | and it takes it outside the scope of the claims because |
| 00:45:12 | 4 | you said "consisting of," fails -- our position is that |
| 00:45:17 | 5 | it fails, and it fails for two reasons.  It fails |
| 00:45:20 | 6 | because of the *Norian* analysis, and it fails because |
| 00:45:24 | 7 | their claim that the "consisting of" language narrows it |
| 00:45:31 | 8 | to only two layers to the entire invention is not |
| 00:45:35 | 9 | supported either by the specification or by the |
| 00:45:39 | 10 | prosecution history.  The prosecution history makes it |
| 00:45:42 | 11 | clear that what they are talking about and the |
| 00:45:44 | 12 | rejections and the responses to the rejections were |
| 00:45:47 | 13 | focused solely on the top layer. |
| 00:45:50 | 14 | THE COURT:  Is this a fair question for the |
| 00:45:52 | 15 | Judge to ask the plaintiff: Can you give me an example |
| 00:45:57 | 16 | of an additional layer that in your opinion would not |
| 00:46:01 | 17 | infringe? |
| 00:46:03 | 18 | MR. BYERS:  An additional layer that would |
| 00:46:05 | 19 | not infringe?  I mean, if there was an additional layer |
| 00:46:15 | 20 | that enhanced the non-skid properties.  For example, if |
| 00:46:18 | 21 | you added a layer of adhesive that filled in some of the |
| 00:46:26 | 22 | spaces in the non-slip lower surface, absolutely.  That |
| 00:46:32 | 23 | would be an additional layer that would read directly on |
| 00:46:37 | 24 | the functionality of the invention. |
| 00:46:42 | 25 | If you added something like that, then yes, |

00:46:47  1  because I think that falls squarely within the Federal

00:46:51  2  Circuit's interpretation of what the "consisting of"

00:46:54  3  language means.

00:46:56  4          THE COURT:  Let me ask you this.  It might

00:46:59  5  be a very stupid question.  But does that middle layer

00:47:05  6  that the defendant added change the TAPPI T548?

00:47:21  7          MR. BYERS:  It does not, Your Honor.  That

00:47:23  8  testing procedure merely tests how the bottom surface

00:47:32  9  adheres to a surface under certain circumstances,

00:47:36  10  sliding down a gradient and things like that.  If you

00:47:41  11  have this layer in there, it doesn't reach down between

00:47:43  12  the gaps.

00:47:45  13          THE COURT:  But it keeps the paint or

00:47:48  14  whatever it is that fell on the top layer from soaking

00:47:55  15  through to the grippy bumpy layer?

00:48:00  16          MR. BYERS:  I don't know that it does, Your

00:48:02  17  Honor.  That's not part of the record, number one.

00:48:04  18          And number two, there is no limitation in

00:48:06  19  here that says that:  Well, you can only pour a gallon

00:48:10  20  of paint on it.  It says it's an absorbent top

00:48:15  21  material.

00:48:15  22          THE COURT:  So the TAPPI T548, it's done

00:48:20  23  with a clean cloth is what you're saying?

00:48:24  24          MR. BYERS:  That's my understanding, Your

00:48:26  25  Honor, yes.  I've never seen any indication from the

00:48:29  1   record or from any of the testing that somebody soaked

00:48:34  2   it in gallons of paint and then tested it.

00:48:37  3              THE COURT:  Gotcha.

00:48:40  4              MR. BYERS:  But again, it doesn't impact the

00:48:43  5   absorptive properties of the woven material that are the

00:48:48  6   top surface, and it doesn't impact the bottom surface.

00:48:52  7              THE COURT:  You came up with an example that

00:48:54  8   changed the grippy surface by making it stickier, right?

00:49:01  9   That was your example when the Judge asked perhaps the

00:49:03  10  unfair question: Can you tell me what would be a layer

00:49:06  11  that wouldn't infringe?  And what you focused on was

00:49:11  12  giving me an example, as I recall, of something that

00:49:13  13  changed the grippiness functionality of that bottom

00:49:20  14  layer.  Right?

00:49:22  15             MR. BYERS:  If you had some adhesive that --

00:49:24  16  if you had a material that, say, had greater tackiness

00:49:29  17  than the underlying rubber layer for specific purposes,

00:49:33  18  say you're working on sheet metal and you need it to be

00:49:36  19  tackier, so you have a material -- I don't know; I'm

00:49:40  20  trying to think of something.  I have a five-year-old,

00:49:42  21  and she likes things that you slap against the wall and

00:49:45  22  they stick.  So a material like that that perhaps had

00:49:48  23  greater tackiness so that it would actually enhance by

00:49:54  24  contacting a surface through the gaps in the bottom,

00:49:59  25  then -- and obviously that's not a specific element of

00:50:04 1 this case, but I would imagine you'd have a pretty good

00:50:07 2 argument that that would take it out of the scope of the

00:50:10 3 claims.

00:50:12 4 But again, the federal circuit has made it

00:50:14 5 clear that even though "consisting of" is traditionally

00:50:19 6 closed language and has to be considered that way, it's

00:50:21 7 got to be considered that way in the scope of the

00:50:25 8 invention and what it does and not what it doesn't do.

00:50:28 9 THE COURT: Okay.

00:50:34 10 Did you want to respond to that?

00:50:36 11 MS. POLLACK-MILGATE: I do, Your Honor, if I

00:50:37 12 may.

00:50:38 13 So what I think we've heard is a new test

00:50:43 14 for determining whether or not "consisting of" actually

00:50:48 15 means what it says, that is with respect to

00:50:53 16 functionality and whether the functionality is changed

00:50:57 17 by the additional element. That is not a test I am

00:51:02 18 aware of under the case law. So it is a legal

00:51:07 19 proposition that does not exist.

00:51:12 20 This is not a hard question.

00:51:14 21 I want to back up again to the *Multilayer*

00:51:18 22 case and just read from that. "The presumption that a

00:51:22 23 claim term set off by the transitional phrase

00:51:26 24 'consisting of' is closed to unrecited elements is at

00:51:31 25 least a century old and has been reaffirmed by our court

| | | |
|---|---|---|
| 00:51:34 | 1 | and other courts."  And that's 831 F.3d 1350. |
| 00:51:41 | 2 | THE COURT:  Remind me.  That holding was in |
| 00:51:43 | 3 | the context of what? |
| 00:51:48 | 4 | MS. POLLACK-MILGATE:  That holding is in the |
| 00:51:49 | 5 | context of exactly the argument that we have right now, |
| 00:51:54 | 6 | which is that actually the claim should be construed to |
| 00:51:58 | 7 | be open-ended. |
| 00:52:00 | 8 | THE COURT:  So claim construction is going |
| 00:52:02 | 9 | on in that case? |
| 00:52:03 | 10 | MS. POLLACK-MILGATE:  Your Honor, I'm going |
| 00:52:04 | 11 | to check that for you 100 percent, because I want to |
| 00:52:06 | 12 | make absolutely sure. |
| 00:52:07 | 13 | However, the claim construction process is |
| 00:52:09 | 14 | the process of determining of what these words mean as a |
| 00:52:13 | 15 | matter of law.  And so if I need to provide some backup |
| 00:52:19 | 16 | support "consisting of" versus "comprising" is an issue |
| 00:52:24 | 17 | for claim construction, and I will make sure that we |
| 00:52:26 | 18 | nail that down. |
| 00:52:27 | 19 | THE COURT:  Okay. |
| 00:52:28 | 20 | MS. POLLACK-MILGATE:  So it's easy when we |
| 00:52:31 | 21 | take a look at this to see, as I stated already in just |
| 00:52:35 | 22 | the opening statement that basically our plain reading |
| 00:52:40 | 23 | of this claim is we have Elements A, B, and we have C, |
| 00:52:46 | 24 | and that's it.  Those are the three elements. |
| 00:52:50 | 25 | And Claim 1 was amended from "comprising" to |

00:52:55 1  "consisting of," indicating that I am not entitled to an

00:52:59 2  embodiment that is open ended. It is only going to

00:53:03 3  consist of Elements A, B, and C.

00:53:06 4          And this was also reaffirmed in addition of

00:53:10 5  the language "a single absorbent upper layer and a

00:53:15 6  single lower resilient layer."

00:53:17 7          This is also consistent with the

00:53:21 8  specification which describes an embodiment that has two

00:53:25 9  layers, and that's Figure 1. And if you want to follow

00:53:30 10 along, I'm on slide 17.

00:53:34 11         And at slide 17 we've also quoted from the

00:53:38 12 language of the patent as well, "The non-skid protective

00:53:43 13 cloth or pad 100 has two layers - a woven upper layer

00:53:48 14 102 and a lower, resilient layer 104."

00:53:56 15         Now, what's really interesting about this

00:53:59 16 issue is the prosecution history. And we've outlined a

00:54:03 17 couple of key points on slide 18. The Terracinos

00:54:10 18 narrowed their claims. We already talked about the

00:54:13 19 fact that they started off with "comprising." That was

00:54:15 20 their language. The claim was rejected.

00:54:19 21         And on the next slide you can see again

00:54:22 22 exactly what they did. They changed it to "consisting

00:54:27 23 of," and they added this language "single."

00:54:31 24         But here's the real point too, in addition

00:54:34 25 to closing it up.

| | | |
|---|---|---|
| 00:54:35 | 1 | And let me back up a second. First of all, |
| 00:54:39 | 2 | the plain and ordinary language is it's consisting of. |
| 00:54:42 | 3 | To the extent there was any doubt on that, you take a |
| 00:54:44 | 4 | look at the prosecution history. You see that the |
| 00:54:48 | 5 | plaintiffs narrowed their claims. And not only that, |
| 00:54:50 | 6 | the examiner understood exactly that, that they had |
| 00:54:55 | 7 | narrowed their claims. |
| 00:54:56 | 8 | So this is on Slide 19. This is the |
| 00:54:59 | 9 | language from the prosecution history. This is what |
| 00:55:02 | 10 | the examiner stated. The examiner stated: "Applicant |
| 00:55:07 | 11 | has amended the preamble language of the claim by |
| 00:55:10 | 12 | closing up the recitation and making it a two-layered |
| 00:55:16 | 13 | structure." It could not be more clear than that. |
| 00:55:22 | 14 | So whatever plaintiffs want to say about: |
| 00:55:24 | 15 | It really means this and the understanding of the |
| 00:55:27 | 16 | examiner, the actual prosecution history, when you read |
| 00:55:32 | 17 | it, it shows the precise opposite. The examiner |
| 00:55:37 | 18 | understood that they had narrowed the language of the |
| 00:55:41 | 19 | claim, closed it up, and made it a two-layered |
| 00:55:44 | 20 | structure. |
| 00:55:47 | 21 | The plaintiffs' argument is really they're |
| 00:55:51 | 22 | trying to construe the language "consisting of" to mean |
| 00:55:54 | 23 | "at least." And that is absolutely not what happened |
| 00:55:58 | 24 | here. |
| 00:56:00 | 25 | And the last point that I'll make in |

relation to this that I think is really important is
that not only was it clear from the prosecution history
and the examiner's statement that this was a two-layered
product, but when they first filed the patent
application, they actually had patent claims that were
directed to an embodiment that would have a third layer,
and they were forced to abandon those.  So not only did
they narrow Claim 1, they actually abandoned dependent
claims that would have claimed a third impervious layer.
It makes no sense to argue, as the plaintiffs are doing,
that this impervious third layer is both not related to
the invention and in the specification.

        THE COURT:  So we're talking about what you
call a Stay Put Plus canvas?

        MS. POLLACK-MILGATE:  Correct.  Yes.

        THE COURT:  Don't you make a Stay Put with
two layers that plaintiff claims is infringing?

        MS. POLLACK-MILGATE:  Yes, Your Honor, there
is also is a two-layer product that Trimaco has made in
the past.  Trimaco has paid license fees for all or
substantially all of those products.  That's why -- and
counsel can speak for the Terracinos as well.  But
that's why I understand the focus to be obviously so
heavily on Stay Put Plus, because that's the only
product that is really substantively --

|  |  |  |
|---|---|---|
| 00:57:39 | 1 | THE COURT:  Do you still make and sell Stay Put canvas? |
| 00:57:42 | 2 |  |
| 00:57:44 | 3 | MS. POLLACK-MILGATE:  No, Your Honor. |
| 00:57:44 | 4 | THE COURT:  When did you stop, if you recall? |
| 00:57:48 | 5 |  |
| 00:57:49 | 6 | MS. POLLACK-MILGATE:  About two years ago. |
| 00:57:52 | 7 | THE COURT:  Is that when you all had your falling out? |
| 00:57:53 | 8 |  |
| 00:57:54 | 9 | MS. POLLACK-MILGATE:  There was a -- so my understanding is that those are not related, that there was a decision that the Stay Put Plus is a superior product. |
| 00:57:58 | 10 |  |
| 00:58:02 | 11 |  |
| 00:58:05 | 12 |  |
| 00:58:06 | 13 | THE COURT:  When did you fall out?  When was the falling out? |
| 00:58:10 | 14 |  |
| 00:58:11 | 15 | MS. POLLACK-MILGATE:  I don't know if I would call it a falling out, but the licensing agreement was canceled -- was terminated, according to the terms of it, at -- I'll have to double check.  I believe it was the beginning of 2021. |
| 00:58:12 | 16 |  |
| 00:58:18 | 17 |  |
| 00:58:23 | 18 |  |
| 00:58:31 | 19 |  |
| 00:58:38 | 20 | MR. BYERS:  That sounds correct, Your Honor.  I can add some additional color to it. |
| 00:58:40 | 21 |  |
| 00:58:43 | 22 | THE COURT:  So kind of around about when you stopped selling the Stay Put canvas? |
| 00:58:45 | 23 |  |
| 00:58:49 | 24 | MS. POLLACK-MILGATE:  It was around the same time, yes.  Yes, Your Honor. |
| 00:58:50 | 25 |  |

| | | |
|---|---|---|
| 00:58:52 | 1 | MR. BYERS: If I may, Your Honor. |
| 00:58:52 | 2 | THE COURT: Okay. |
| 00:58:54 | 3 | MR. BYERS: It was at the time that Trimaco |
| 00:58:58 | 4 | got themselves a patent issued that included the almost |
| 00:59:03 | 5 | verbatim language of the specification from my client's |
| 00:59:07 | 6 | patent for the manufacture of the product -- not the |
| 00:59:11 | 7 | product itself; they tried to add claims claiming the |
| 00:59:14 | 8 | product that was included in my client's patent and was |
| 00:59:19 | 9 | summarily rejected by the Patent Office. And so they |
| 00:59:23 | 10 | have an issued patent for the manufacture of these drop |
| 00:59:28 | 11 | cloths, a method for the manufacture of them. And once |
| 00:59:30 | 12 | they got that, that's when they terminated the licensing |
| 00:59:37 | 13 | agreement. |
| 00:59:38 | 14 | And to be clear, I do not have any reason |
| 00:59:41 | 15 | to -- I don't have any reason to dispute that Trimaco or |
| 00:59:45 | 16 | Trimaco's counsel is misrepresenting to the Court what |
| 00:59:50 | 17 | they're doing with regards to the Stay Put as opposed to |
| 00:59:53 | 18 | the Stay Put Plus. I do know that Stay Put canvas drop |
| 00:59:57 | 19 | cloths are still available on the market. Now, whether |
| 01:00:01 | 20 | that's backlog sitting in warehouses or the like, |
| 01:00:03 | 21 | whether or not Trimaco has manufactured a pile of them |
| 01:00:07 | 22 | and sold them off to middlemen, I do not know the answer |
| 01:00:11 | 23 | to that. |
| 01:00:11 | 24 | THE COURT: Is there a claim in this case |
| 01:00:13 | 25 | related to the Stay Put canvas? |

01:00:16  1          MR. BYERS:  There is, Your Honor.

01:00:16  2          THE COURT:  And remind me what it is.

01:00:19  3          MR. BYERS:  That it infringes the same

01:00:24  4  patent.

01:00:24  5          THE COURT:  That has to be decided in this

01:00:26  6  case?

01:00:27  7          MR. BYERS:  That's correct, Your Honor.  So

01:00:29  8  even if the Court were to decide that the "consisting

01:00:36  9  of" language takes the Stay Put Plus out completely,

01:00:40  10  there's still the outstanding question of what exactly

01:00:43  11  happened with the sales and the termination of the

01:00:45  12  licensing agreement and the like.  So there still would

01:00:48  13  be issues to be resolved.

01:00:49  14          THE COURT:  And that would be the next phase

01:00:52  15  of discovery?

01:00:53  16          MR. BYERS:  Yes, I think we'd end up getting

01:00:55  17  into that in the next phase.

01:00:57  18          I do have a citation reference for the

01:00:59  19  Court, but I'll wait until --

01:01:01  20          THE COURT:  Okay.

01:01:01  21          MS. POLLACK-MILGATE:  Your Honor, a couple

01:01:02  22  points to clarify.  So there are other claim

01:01:06  23  construction terms before the Court that would also

01:01:08  24  eliminate the other product, the Stay Put.  So

01:01:13  25  Trimaco's allegation is also that the Stay Put, all by

01:01:16   1   itself, would not infringe.  That was the one point

01:01:20   2   that I wanted to make.

01:01:21   3             But the second point --

01:01:23   4             THE COURT:  So you're putting all your eggs

01:01:26   5   in the basket of a three-tiered product; but the other

01:01:33   6   product that is a two-tiered product, you're saying you

01:01:39   7   have defenses to infringement?

01:01:44   8             MS. POLLACK-MILGATE:  Your Honor, the

01:01:45   9   *Markman* process, our contention is that under a proper

01:01:49   10   construction of the terms that we've put before Your

01:01:52   11   Honor there would be no infringement under either

01:01:55   12   product.

01:01:55   13             THE COURT:  Could you just briefly give me

01:01:57   14   your opening statement on why that would be true with

01:02:00   15   regard to the two-tiered product?

01:02:04   16             MS. POLLACK-MILGATE:  Yes.  Absolutely,

01:02:06   17   Your Honor.  Because -- and let me get my limitations.

01:02:11   18             With respect to the claim limitation

01:02:17   19   requiring that the "height of bumps having the smaller

01:02:20   20   of said at least two different circumferential sizes

01:02:24   21   being greater than said height of bumps having said

01:02:27   22   larger of said at least two circumferential sizes," our

01:02:34   23   view is that what that states is that, in the way it's

01:02:40   24   drafted and also in connection with the overall language

01:02:42   25   of that claim limitation, that refers back to a grid of

01:02:49  1  bumps, plural, the height of the bumps having these two

01:02:56  2  different sizes, wherein the bumps that are smaller

01:03:02  3  circumferentially have a taller height than the ones

01:03:07  4  that are larger circumferentially.  And that is not

01:03:14  5  true of the Stay Put products.  Again, that was a

01:03:22  6  limitation that the examiner was required to add.

01:03:27  7          And what's one of the largest problems with

01:03:34  8  the plaintiffs' construction on this term -- and if I

01:03:39  9  could refer Your Honor to slide 32, this is another

01:03:58  10 instance in which the Terracinos were required to narrow

01:04:03  11 their invention.  So while they started off in their

01:04:07  12 specification with a couple of different embodiments for

01:04:10  13 the sizes and the shapes of the bumps, they were

01:04:14  14 required to narrow it on the basis of Zegler, which you

01:04:18  15 can see has a number of different bumps and sizes that

01:04:23  16 were connected by a resilient grid.  And that's exactly

01:04:26  17 what the patent examiner found.

01:04:30  18         In response to that, in response to this

01:04:33  19 rejection over Zegler, then they were required to

01:04:37  20 actually narrow their invention.

01:04:40  21         And on the previous slide, and this is in

01:04:43  22 our briefing as well, slide 31, we've shown just -- and

01:04:49  23 I think this is very helpful, again, because this

01:04:53  24 language is very easy to trip over.  This is really the

01:04:56  25 embodiment that's on page 31 at the bottom that they

01:04:59 1   ended up with, which is an instance in which you can

01:05:03 2   see, Your Honor, that "in other embodiments, smaller

01:05:08 3   bumps 106b may have a height larger than the larger

01:05:13 4   bumps."  And we've drawn that out so you can see what

01:05:17 5   it would look like.  That's what the Patent Office said

01:05:22 6   was allowable in view of the prior art, including

01:05:30 7   Zegler.

01:05:31 8           And just briefly on 33, this is where -- and

01:05:34 9   again, this is in our briefing as well.  But on slide

01:05:37 10  33 we have the precise language from the patent examiner

01:05:42 11  himself.  He names all sorts of prior art.  We have

01:05:47 12  Zegler and Stichter and Bell and Tresino and Harrison.

01:05:53 13  And he states:  "These combinations fail to teach or

01:05:57 14  suggest the limitation requiring that the 'downward

01:06:05 15  projecting bumps each having a height, said height of

01:06:07 16  bumps having the smaller of said at least two different

01:06:11 17  circumferential sizes being, greater than said height of

01:06:15 18  bumps having said larger of said at least two

01:06:18 19  circumferential sizes.'"

01:06:21 20          And this is the crux of the matter, along

01:06:26 21  with the TAPPI specification issue, which we have

01:06:30 22  contended is indefinite.  That would be the second

01:06:34 23  issue.

01:06:34 24          But with respect to the language that is

01:06:37 25  clearly -- puts the Trimaco product outside the scope of

01:06:44  1  the claim, this would be what I would draw your

01:06:46  2  attention to, Your Honor.

01:06:48  3          THE COURT:  Okay.  Let me ask a question of

01:06:54  4  you.

01:06:58  5          Let's look at Figure 1 that you pointed the

01:07:09  6  Court to.  How do you align Figure 1, which shows these

01:07:32  7  half spherical bumps, with that part of the patent at

01:07:42  8  556-62, which describes a number of different

01:07:52  9  relationships between the bumps?

01:07:56  10         MS. POLLACK-MILGATE:  Your Honor,

01:07:57  11  embodiments other than the one in which the taller

01:08:03  12  circumferentially larger bumps are shorter than the ones

01:08:14  13  that are circumferentially smaller, those were

01:08:17  14  disclaimed during prosecution.  So those are

01:08:23  15  embodiments that the Terracinos very much tried to

01:08:26  16  obtain patent claims to.  They were unable to do that

01:08:31  17  on the basis of Zegler.  They were not able to have

01:08:35  18  those claims allowed because they were not patentable in

01:08:39  19  view of the prior art.

01:08:52  20         THE COURT:  Okay.

01:08:53  21         MS. POLLACK-MILGATE:  Your Honor, may I make

01:08:54  22  one other comment that goes back to something -- a

01:08:57  23  comment counsel made before, just for purposes of

01:09:02  24  clarification?

01:09:02  25         I do believe we have substantial agreement

01:09:04   1   on the fact that if only, for some reason, the Stay Put
01:09:14   2   Plus products were eliminated by virtue of the Court's
01:09:18   3   claim construction, I do believe that we would very
01:09:21   4   quickly reach some sort of resolution.  So I would not
01:09:24   5   foresee that we would bother this Court for that much
01:09:28   6   longer if that were the result.
01:09:34   7           THE COURT:  On the two-tier product?
01:09:37   8           MS. POLLACK-MILGATE:  Correct.  If the
01:09:39   9   two-tier product were to remain in the case, I believe
01:09:42  10   that counsel and their clients would probably reach a
01:09:45  11   quick resolution.
01:09:46  12           THE COURT:  Let me ask you one more question
01:09:48  13   about the bumps before you sit down.
01:09:53  14           So we've got said downward projecting bumps
01:09:56  15   comprising bumps having at least two different
01:09:59  16   circumferential sizes.
01:10:04  17           And your view is that should be defined as
01:10:15  18   the downward projecting bumps having a measurable
01:10:20  19   boundary or perimeter of two or more sizes, right?
01:10:24  20           MS. POLLACK-MILGATE:  Yes, Your Honor.
01:10:26  21           THE COURT:  So the issue is whether the
01:10:27  22   bumps have to be measurable?
01:10:30  23           MS. POLLACK-MILGATE:  Yes, Your Honor.  I
01:10:32  24   think that that's a fair assessment of the difference of
01:10:37  25   the two opinions or of the two constructions, that

01:10:42  1   really the argument does focus on measurable or not.

01:10:46  2         THE COURT:  All right.  So having said

01:10:48  3   that, let's look at plaintiffs' construction.

01:10:55  4         Downward projecting bumps where each of the

01:10:58  5   bumps has one of two or more different circumferences.

01:11:04  6         So my question to you is:  Is there such a

01:11:06  7   thing as a circumference that is not measurable?

01:11:11  8         MS. POLLACK-MILGATE:  Well, that's why we

01:11:12  9   put "measurable" in, to confirm that it's measurable.

01:11:17  10        THE COURT:  Isn't it always measurable?

01:11:20  11        MS. POLLACK-MILGATE:  That's our position.

01:11:22  12   But that does seem to be a point of contention between

01:11:28  13   the parties.  Counsel earlier stated something to the

01:11:33  14   effect that the bumps didn't need to be measured; you

01:11:40  15   could just eyeball them effectively and know which one

01:11:44  16   was larger or not.

01:11:45  17        But, yes, it is Trimaco's contention that

01:11:48  18   they do have to be measurable so that one of ordinary

01:11:54  19   skill in the art can determine whether or not something

01:11:55  20   falls within the scope of the claims.

01:11:57  21        THE COURT:  What's an immeasurable example?

01:12:02  22        MS. POLLACK-MILGATE:  A shape where you

01:12:04  23   can't -- and this goes to the construction of amorphous

01:12:06  24   as well.  So if something were amorphous in the sense

01:12:09  25   of being undefined, and the bumps are flat enough to

01:12:15 1  sort of morph with the resilient grid below them, you

01:12:19 2  might not actually be able to tell where a bump begins

01:12:22 3  or a bump ends.  They are just not discernible unless

01:12:28 4  you potentially are under a microscope.  But even then

01:12:31 5  you have a grid that sort of flows in, if you will, to

01:12:35 6  the bump; and you may not be able to actually state

01:12:38 7  exactly what the bump is.

01:12:41 8              THE COURT:  Well, would you agree to a

01:12:43 9  construction along the lines of, with regard to

01:12:46 10 amorphous, "Having an irregular shape but a measurable

01:12:54 11 boundary"?

01:12:55 12             MS. POLLACK-MILGATE:  Yes, Your Honor.

01:12:57 13             THE COURT:  Okay.  Would plaintiff -- I

01:13:01 14 guess I should say you might want me to add, "a

01:13:07 15 measurable boundary or perimeter."  Do you think

01:13:11 16 that --

01:13:11 17             MR. BYERS:  Your Honor, I don't think that's

01:13:13 18 supported either by the claim or the specification,

01:13:16 19 because the specification makes it clear that it's the

01:13:18 20 height of the bumps above the grid that these are

01:13:22 21 constructed from.  Right?  So, number one, you know

01:13:28 22 where the bump starts and where the bump stops because

01:13:31 23 there's a grid in between them.  And so where you have

01:13:36 24 a bump that runs into the grid and is attached to the

01:13:42 25 grid, that's where the bump starts.

01:13:46  1          So the other problem that I foresee with

01:13:48  2   that is that, again, adding "measurable" to it adds

01:13:55  3   limitation to it that is nowhere in the claims, nowhere

01:13:59  4   in the specification, and nowhere in the prosecution

01:14:04  5   history.   So the Court would have to decide:  Okay,

01:14:08  6   they're measurable.   Well, what does measurable mean?

01:14:11  7          THE COURT:  Okay.  You want to stay away

01:14:13  8   from measuring?

01:14:15  9          MR. BYERS:  I think the specification is

01:14:18  10  clear enough.   A circumference of the bump above the

01:14:22  11  grid is described in the specification.   And I don't

01:14:25  12  see any reason to go beyond that.

01:14:27  13          I will also point out -- and I'm not trying

01:14:31  14  to be -- I am not trying to be pithy, Your Honor, but an

01:14:38  15  amorphous solid and an amorphous shape is measurable.

01:14:41  16  I know I did it in calculus.  So again, I think that --

01:14:48  17  again, I think it's an argument to try to narrow the

01:14:51  18  claims, and it severely complicates the issue.

01:14:56  19          I did want to go back to one item really

01:14:59  20  quickly, Your Honor, and make a correction.   On the

01:15:05  21  question of "consisting of," I think I was misspeaking,

01:15:11  22  and perhaps opposing counsel was too.  The *Conoco* case

01:15:16  23  from the Federal Circuit, which I think was the one that

01:15:19  24  I was actually referring to, that's 460 F.3d 1349,

01:15:28  25  speaking directly to claim construction, and in that --

01:15:38  1  the citation in that would be at 1360, so it would be

01:15:47  2  460 F.3d 1349 at 1360.  The Federal Circuit goes into a

01:15:51  3  detailed discussion of the term "consisting of."  And

01:15:54  4  the Federal Circuit makes it explicit that "Although

01:16:01  5  'consisting of' is a term of restriction, the

01:16:03  6  restriction is not absolute.  The Patent Board of

01:16:06  7  Appeals has interpreted 'consisting of' to close the

01:16:09  8  claim to the inclusion of materials other than those

01:16:12  9  recited except for impurities ordinarily associated

01:16:16  10  therewith."  And that was specifically the facts of

01:16:19  11  impurities in the case that the PTAB was interpreting.

01:16:23  12  But I apologize, Your Honor.  That was the citation I

01:16:25  13  was going to.

01:16:26  14          THE COURT:  As opposed to what?  What was

01:16:31  15  the one that you did cite?

01:16:34  16          MR. BYERS:  That was the *Norian* case, Your

01:16:36  17  Honor.  And that was also discussing -- that was the

01:16:48  18  dental repair kit using the "consisting of" language

01:16:52  19  with the spoon.  And that was 363 F.3d 1321.  So it's

01:16:57  20  the *Norian* case and the *Conoco* case.  My apologies.

01:17:06  21          THE COURT:  No problem.

01:17:13  22          Let's see.  What else do you want me to

01:17:19  23  know?

01:17:21  24          I want to know why you can't settle this

01:17:24  25  case.

01:17:27    1            MR. BYERS:  Your Honor, I don't think

01:17:28    2    that -- and I apologize if I missed it.  I don't think

01:17:35    3    that defendant has spoken to the issue of their

01:17:39    4    construction of the testing as being indefinite.  And I

01:17:44    5    think that absolutely needs to be addressed.  Because,

01:17:47    6    again, I'm not quite sure what they mean by "indefinite"

01:17:52    7    in that context.

01:17:53    8            THE COURT:  What do you mean by

01:17:54    9    "indefinite"?  That's a good point.

01:17:56   10            MS. POLLACK-MILGATE:  I am happy to talk

01:17:59   11    about what Trimaco means by "indefinite" when we talk

01:18:01   12    about TAPPI.

01:18:05   13            So it starts, first of all, with the fact

01:18:13   14    that the test method -- and counsel did understand this

01:18:17   15    part of it, which is that the test method itself is

01:18:23   16    talking about friction as between two pieces of paper.

01:18:28   17    So if you look at the TAPPI specification without any

01:18:34   18    further knowledge, it's not clear how to apply it to a

01:18:38   19    different material.  So that is the first problem that

01:18:42   20    renders it indefinite.

01:18:45   21            THE COURT:  Just because we're not talking

01:18:46   22    about paper?

01:18:47   23            MS. POLLACK-MILGATE:  Yes.  Because the

01:18:48   24    test method goes into great detail about cutting the

01:18:52   25    material, placing it on the inclined plane, and the rest

01:19:02   1   of it.   So it actually has a very detailed

01:19:05   2   specification that's associated with that.

01:19:06   3            THE COURT:  Well, a drop cloth can be cut

01:19:09   4   too.   Why can't you just cut a piece of the cloth and

01:19:15   5   go to it under that specification?

01:19:19   6            MS. POLLACK-MILGATE:  Well, there's a little

01:19:21   7   bit more to it than that.   It's not just about cutting

01:19:25   8   it.   There were some other parameters there.   But

01:19:28   9   there are some other issues as well.

01:19:31  10            And I'm talking about -- at the moment right

01:19:33  11   now I'm focused on Claim 1, which has that TAPPI

01:19:38  12   limitation, because we have a couple of different ones

01:19:40  13   or different iterations of this issue.

01:19:43  14            The other thing that we do not know from the

01:19:46  15   claim is what the support surface is.   So in the TAPPI

01:19:51  16   specification the support surface is paper.   So one of

01:19:56  17   ordinary skill in the art doesn't immediately know:

01:19:59  18   What surface am I testing against?   That's the second

01:20:02  19   problem.

01:20:02  20            The third problem is we don't know the

01:20:04  21   process for using the inclined plane.   And we don't

01:20:09  22   know whether there's a sled or not.   So there's a

01:20:12  23   discrepancy between the TAPPI specification and also the

01:20:15  24   plaintiffs' patent.   This is shown on slide 38.

01:20:23  25            So on slide 38 on the left-hand side there

01:20:27　1　is a picture from the TAPPI specification which shows

01:20:32　2　that there is a sled with a specimen, so the specimen

01:20:37　3　goes underneath.　And then there's a 200-gram sled

01:20:41　4　that's placed on top.

01:20:44　5　　　　　Figure 4 from the Terracinos's patent does

01:20:48　6　not show a sled at all.

01:20:51　7　　　　　So it's not clear whether the test method

01:20:55　8　for TAPPI that's supposed to be followed is going to use

01:20:59　9　a sled or not.　And, in fact, it's not mentioned

01:21:02　10　anywhere in the specification.

01:21:05　11　　　　　And we don't know the rate.　We don't have

01:21:07　12　any details for the rate of -- at what rate the

01:21:12　13　apparatus is going to be inclined.　So we don't know

01:21:18　14　that as well.

01:21:20　15　　　　　And all of this is an issue again.　And it

01:21:24　16　really does -- it does, or at least to some degree this

01:21:27　17　comes of the issue of having a test method that applies

01:21:32　18　to paper and doesn't apply -- applies to the materials.

01:21:36　19　　　　　But there's another issue as well, and the

01:21:38　20　other issue too is that there's an inconsistency in the

01:21:43　21　patent.　So the claim talks about a sliding coefficient

01:21:49　22　of friction.　However, TAPPI measures a static

01:21:54　23　coefficient of friction.

01:21:55　24　　　　　And not only that.　Those are two different

01:21:59　25　measurements.　And you can see this actually on slide

01:22:02 1  40.   There are some excerpts that are directly from the

01:22:06 2  TAPPI specification.   The method describes the scope,

01:22:11 3  so from TAPPI directly.   This method describes a

01:22:14 4  procedure for the determination of the coefficient of

01:22:18 5  static friction of paper.  So that's what the test

01:22:24 6  method is described as measuring.

01:22:25 7       But then if you look at the definitions

01:22:27 8  below, you will see there is a different definition for

01:22:31 9  what the static friction is, how to determine that

01:22:35 10  versus how to determine the sliding friction.

01:22:41 11       And Claim 1 uses the term "sliding

01:22:45 12  coefficient of friction."   And, Your Honor,

01:22:47 13  unfortunately, or maybe fortunately, it is not this

01:22:51 14  Court's job to rewrite claim language to make sense.

01:22:56 15       So there's no way to determine, based on

01:22:59 16  reading the TAPPI specification, how to mimic the

01:23:03 17  results so as to figure out whether one of ordinary

01:23:08 18  skill in the art fits within the claim or not, and the

01:23:10 19  specification is also not enlightening on this point,

01:23:13 20  nor are we to read the specification into the claim.

01:23:17 21  We're just to read it in light.  We're to read the

01:23:20 22  claims in light of the specification.

01:23:23 23       THE COURT:  Well, does the case the Federal

01:23:29 24  Circuit decided in 2017, *Presidio Components v. American*

01:23:35 25  *Technical Ceramics Corporation*, 875 F.3d 1369, is that

01:23:41 1  case instructive, at least as to whether you can say

01:23:46 2  indefinite, given the holding when there are disputes

01:23:50 3  between the parties as to the proper application of the

01:23:53 4  test methodology in the circumstances of an individual

01:23:57 5  case, those disputes are about whether there is

01:24:02 6  infringement.  Those disputes are not about whether the

01:24:06 7  patent claims are indefinite.

01:24:11 8          So is that really what we're talking about,

01:24:13 9  not indefinite?

01:24:15 10         MS. POLLACK-MILGATE:  We are talking about

01:24:16 11 indefiniteness.  And indefiniteness, the Federal

01:24:20 12 Circuit has said, is an issue; it is an issue for claim

01:24:23 13 construction.  In fact, when you don't raise your

01:24:25 14 indefiniteness issues as part of the claim construction

01:24:29 15 process as a defendant, sometimes you will be held to

01:24:32 16 have waived those arguments.

01:24:34 17         THE COURT:  Correct me if I'm wrong, but

01:24:37 18 haven't I just referred to a case where the Federal

01:24:40 19 Circuit said: This kind of a dispute, this is a dispute,

01:24:45 20 as I understand it, about the proper application of the

01:24:48 21 test methodology in the circumstances of an individual

01:24:53 22 case.  And the Federal Circuit has said those disputes

01:24:57 23 are about whether there is infringement, not about

01:25:00 24 whether the patent claims are indefinite.

01:25:03 25         Am I misreading that case?  Do you want to

01:25:10  1  look at it?

01:25:11  2          MS. POLLACK-MILGATE:  I would love to look

01:25:13  3  at the case.   My short answer, based on the language

01:25:15  4  that Your Honor has read which talks about the

01:25:16  5  application of the test methodology, I don't see that

01:25:19  6  there is here is a dispute over the application of the

01:25:22  7  test methodology and whether the application would be

01:25:29  8  met or would not be met.   The problem here is one of

01:25:35  9  ordinary skill in the art can't determine what

01:25:37  10  methodology to follow.   And that then renders the

01:25:41  11  claims indefinite because one of ordinary skill in the

01:25:43  12  art is unable to determine -- and this is the language

01:25:46  13  from *Nautilus* -- with reasonable certainty what the

01:25:52  14  claim terms mean, in this case the TAPPI specification.

01:25:56  15          So hard to know whether you're going to meet

01:25:58  16  that claim limitation or not if you don't have a test

01:26:01  17  specification that's specific enough, or that -- or

01:26:04  18  you've pulled a test methodology doesn't ordinarily

01:26:08  19  apply to figure out whether the scope of the claim is

01:26:11  20  met or not.

01:26:12  21          We have cited in our brief -- and this is

01:26:15  22  specifically in our sur-reply -- or our reply, pardon --

01:26:20  23  cases in which the Courts have held that indefiniteness

01:26:25  24  is an issue for claim construction and it's also an

01:26:29  25  issue that Your Honor can resolve without expert

01:26:31 1 testimony.

01:26:33 2 The last point I would like to raise is that
01:26:38 3 curiously plaintiffs really haven't responded to this at
01:26:41 4 all. They haven't made any argument about what that
01:26:45 5 test method is, what the patent teaches. In the
01:26:50 6 opening claim construction brief plaintiff said: It's
01:26:55 7 clear, read the test specification.

01:26:59 8 So, strangely, we haven't received a
01:27:03 9 response to the points that we have raised with respect
01:27:05 10 to what one of ordinary skill in the art would not
01:27:10 11 understand.

01:27:10 12 THE COURT: For example, how do you deal
01:27:12 13 with the fact that the test measures a static
01:27:15 14 coefficient of friction?

01:27:17 15 MS. POLLACK-MILGATE: Yes, Your Honor.

01:27:21 16 THE COURT: So what's your answer to all
01:27:22 17 that.

01:27:22 18 MR. BYERS: Well, first off, I think the
01:27:25 19 Court is absolutely correct, and I think, if I didn't
01:27:31 20 say it specifically, I think I alluded to it in my
01:27:34 21 opening that this is not a question for claim
01:27:38 22 construction. We made the test. We cite the test.
01:27:40 23 The test is publicly available. And so it's not a
01:27:45 24 proper question for the Court to sit and say that was
01:27:48 25 the right test or the wrong test, or it was done

| | | |
|---|---|---|
| 01:27:50 | 1 | incorrectly, Number 1. |
| 01:27:53 | 2 | Number 2, I would -- one of the reasons why |
| 01:27:58 | 3 | I was -- why I really wasn't sure what to make of this |
| 01:28:01 | 4 | is that if there's anybody that's a person of ordinary |
| 01:28:07 | 5 | skill in the art, it's Trimaco.  Trimaco has been |
| 01:28:09 | 6 | manufacturing and making these for a long time.  They |
| 01:28:14 | 7 | licensed the ability to make the drop cloths on the |
| 01:28:19 | 8 | basis of my client's patent, including the recitation of |
| 01:28:24 | 9 | the testing and the coefficients and the like, even |
| 01:28:28 | 10 | though, to be clear, Trimaco said that they were giving |
| 01:28:31 | 11 | the licensing agreement out of the goodness of their |
| 01:28:35 | 12 | heart, that they didn't think that their product |
| 01:28:37 | 13 | infringed. |
| 01:28:40 | 14 | And finally, I'm going to bring the Court to |
| 01:28:43 | 15 | the -- it's been mentioned before; Trimaco has a patent |
| 01:28:46 | 16 | that was issued for the production and testing of these |
| 01:28:50 | 17 | products by a method. |
| 01:28:51 | 18 | And if I may approach, Your Honor. |
| 01:28:57 | 19 | THE COURT:  Yes. |
| 01:28:59 | 20 | MR. BYERS:  I'll also point out that -- |
| 01:29:04 | 21 | THE COURT:  Are you offering this as |
| 01:29:07 | 22 | Plaintiff's Exhibit 1? |
| 01:29:09 | 23 | MR. BYERS:  I would, Your Honor. |
| 03:58:21 | 24 | (Whereupon Plaintiff's Exhibit 1 is admitted |
| 03:58:24 | 25 | into evidence.) |

01:29:11  1          MR. BYERS:  And as the Court is aware, it is

01:29:13  2   allowed to consider extrinsic evidence under certain

01:29:20  3   circumstances in claim construction.  And I think this

01:29:22  4   speaks directly to their argument that, number one,

01:29:24  5   TAPPI doesn't apply and therefore makes the claim

01:29:26  6   indefinite.  And, number two, what a person of ordinary

01:29:32  7   skill in the art would understand.

01:29:33  8          The reason I say that is because this is a

01:29:36  9   patent that was issued on a prosecution that was handled

01:29:40 10   by opposing counsel's firm on behalf of the defendants.

01:29:45 11   And at the tab that's marked in Column 6, beginning at

01:29:49 12   line 12 -- and again, this is the patent that they got

01:29:54 13   for the manufacture of these non-skid surfaces where

01:29:58 14   they incorporate by reference "the TAPPI T548 standard

01:30:06 15   test procedures are incorporated herein."  So as a

01:30:08 16   minimum, as a minimum, as a Person of Ordinary Skill in

01:30:12 17   the Art, they know that it can be applied to things

01:30:15 18   other than paper.

01:30:16 19          THE COURT:  Well, that is kind of

01:30:17 20   interesting.  What do you think?

01:30:19 21          MS. POLLACK-MILGATE:  Your Honor, I haven't

01:30:21 22   had a chance to consider this at all because we were

01:30:24 23   bound under this Court's claim construction process to

01:30:27 24   identify extrinsic evidence, which we did on November

01:30:32 25   7th, 2023.  And this was not identified.  So counsel

01:30:37 1 is not prepared to respond today without understanding

01:30:40 2 exactly what this says and what the scope of it is.

01:30:43 3           THE COURT:  It's your patent though, right?

01:30:44 4           MS. POLLACK-MILGATE:  Yes, Your Honor.  But

01:30:45 5 our patent -- and I would concede -- I will concede that

01:30:51 6 that potentially would be something for the Court to

01:30:54 7 consider on claim construction.  However, it was

01:30:56 8 supposed to be raised at the proper time.

01:30:58 9           Trimaco's patent does not have anything to

01:31:00 10 do with this dispute.

01:31:02 11           Yes, you can look to other documents to see

01:31:04 12 what one of ordinary skill in the art would consider.

01:31:07 13           This has not been briefed ever.  So I just

01:31:10 14 frankly don't understand why, if counsel wanted to bring

01:31:14 15 this to our attention, this is the mode and the time of

01:31:17 16 doing so.

01:31:18 17           THE COURT:  Okay.  So did you miss a date

01:31:22 18 for disclosure of this?

01:31:24 19           MR. BYERS:  I don't think so, Your Honor.

01:31:26 20 It's simply -- it's simply an exhibit that was in their

01:31:30 21 possession.  And I did not -- to be clear, and I made

01:31:33 22 this very clear at the beginning, I did not know where

01:31:36 23 they were going with their argument that it was

01:31:38 24 indefinite.  As I said, my interpretation of what they

01:31:42 25 were saying was that it likely fell in the structure of

01:31:48 1 failed to -- failure to serve its essential purpose.

01:31:57 2 But again, I mean, it's their patent. And it was

01:32:01 3 prosecuted on behalf of the defendant by their law firm.

01:32:04 4 And so to say that we don't know what TAPPI means, I

01:32:08 5 don't need to tell them what their license plate number

01:32:11 6 is, Your Honor; they know what that is.

01:32:13 7          THE COURT:  Okay.

01:32:17 8          MS. POLLACK-MILGATE:  I'll sit down.

01:32:22 9          THE COURT:  If you feel that it's necessary

01:32:24 10 to have an opportunity to digest this after the hearing

01:32:29 11 and perhaps submit a short little addendum to a brief,

01:32:33 12 I'll give you that opportunity.

01:32:36 13          MS. POLLACK-MILGATE:  Thank you, Your Honor.

01:32:37 14 I would appreciate that.

01:32:41 15          THE COURT:  All right.

01:33:11 16          So what's the schedule that I've carved out

01:33:15 17 going forward here?  Does anybody have command of the

01:33:18 18 docket?

01:33:21 19          MR. BYERS:  Your Honor, I'm sorry, I'm

01:33:23 20 shooting from the hip, but I did review the Court's

01:33:26 21 order.  And my colleague can correct me if I miss some

01:33:33 22 of the points, but it was my understanding that the

01:33:35 23 Court was going to withhold any further scheduling until

01:33:38 24 the Court made a decision on the claim construction.

01:33:41 25          I do have a couple of really quick

01:33:43  1  additional points that I'd like to make before we shut

01:33:46  2  this down.

01:33:47  3          THE COURT:  Go ahead.

01:33:51  4          MR. BYERS:  The first one was *Conoco*, which

01:33:54  5  I believe I've covered.

01:33:56  6          And the last point -- two, really quickly,

01:34:01  7  and I think these are two issues that the defendants

01:34:04  8  have focused on very hard.

01:34:06  9          Of course, the issue of the "consisting of"

01:34:08  10  language and how it applies to the layers here.  As I

01:34:11  11  pointed out to the Court, the dispute that the examiner

01:34:14  12  and all of the amendments were made in light of the

01:34:18  13  examiner interpreting the top layer as having multiple

01:34:23  14  layers.

01:34:24  15          And in plaintiffs' corrected opening claim

01:34:28  16  construction brief at page 6, that's pointed out very

01:34:33  17  quickly -- very clearly and with pincite, pinpoint cites

01:34:40  18  to the prosecution history where the examiner, yes,

01:34:44  19  said:  Applicant has amended the preamble language of

01:34:48  20  the claim by closing up the recitation and making it a

01:34:50  21  two-layered structure.

01:34:52  22          The examiner then rejected the application

01:34:54  23  in light of U.S. Patent 6,946,183 the Malpass, et al.,

01:35:01  24  and stated that the layers in the '183 patent may be

01:35:04  25  made of different materials and can comprise

01:35:07  1    intermediate layers.

01:35:10  2           And the examiner is equating the

01:35:14  3    intermediate layer to be equivalent, either the

01:35:15  4    impervious layer, or it could act as the attachment

01:35:19  5    layer between the upper fabric and the lower resilient

01:35:22  6    rubber layer.

01:35:24  7           So again, there's nothing in the prosecution

01:35:26  8    history and there's nothing in the patent itself that

01:35:29  9    shows that my client gave up having multiple layers in

01:35:34  10   the product as a whole.  This was all focused on the

01:35:39  11   upper layer and whether or not the upper layer had

01:35:42  12   multiple layers.

01:35:45  13          I will leave that at that.  I think the

01:35:49  14   Court has heard all we want to say on that.

01:35:50  15          And the last thing is with regard to the

01:35:52  16   bump issue and the Zegler issue.  The defendants are

01:35:55  17   trying to have the Court interpret the claims with

01:35:58  18   regards to those bumps as saying that all smaller bumps

01:36:04  19   must have a height bigger than all bigger bumps.  But

01:36:08  20   not only is that unsupported, but it also makes no sense

01:36:13  21   whatsoever in terms of the prosecution history, the

01:36:17  22   claim as written, the figures, and the description of

01:36:21  23   how these bumps occur in the grid.  It would require a

01:36:26  24   grid that has only two sized bumps, because the minute

01:36:33  25   you throw another bump in there with a different

01:36:36  1  circumference, what height does it have?  The only way

01:36:40  2  to determine that is by comparing two bumps.  And the

01:36:43  3  specification is clear, and the claim doesn't say

01:36:45  4  "only" --

01:36:47  5          THE COURT:  What's the defendant's response

01:36:49  6  to that particular argument?

01:36:52  7          MS. POLLACK-MILGATE:  I'm trying to make

01:36:58  8  sure I understand the argument.  Is the argument that if

01:37:04  9  there are three different sizes of bumps?  Is that the

01:37:08  10  argument we're going for?

01:37:09  11          THE COURT:  Well, more than two sizes, as I

01:37:12  12  understand it.  Right?  Because you're saying

01:37:16  13  defendant's construction depends on there just being

01:37:18  14  just two different sizes?

01:37:19  15          MR. BYERS:  That's correct, Your Honor.

01:37:20  16          THE COURT:  And the little one is taller and

01:37:23  17  the fat one is shorter?

01:37:24  18          MR. BYERS:  That's correct, Your Honor.

01:37:25  19  That's what the defendant is trying to get the Court

01:37:27  20  essentially to say, when that's not what the

01:37:30  21  specification says, and that's not what the claim says.

01:37:33  22  The claim is not that narrow.

01:37:36  23          MS. POLLACK-MILGATE:  So first of all, I

01:37:37  24  want to go back to the specification point, because

01:37:40  25  again, there are several embodiments in the Terracinos's

01:37:47  1  patent.  They disclaimed all except the embodiments in

01:37:51  2  which the smaller bumps -- sorry, the smaller,

01:37:56  3  circumferentially smaller bumps would have a height

01:38:02  4  larger than the circumferentially larger bumps.  They

01:38:07  5  disclaimed everything else.

01:38:09  6        I would agree with counsel, frankly, that

01:38:14  7  there is an issue in terms of what if you have multiple

01:38:19  8  bumps, and how are you going to measure those?  That, in

01:38:24  9  our view, again, is an indefiniteness problem because

01:38:29  10  you aren't actually sure how to measure something in one

01:38:35  11  proportion or not.

01:38:36  12        However, it's clear from the prosecution

01:38:40  13  history that what was intended by that claim language

01:38:43  14  was that third embodiment that is set forth in the

01:38:47  15  specification, that's not what's in the prior art, and

01:38:52  16  that is exactly what the examiner granted.

01:38:58  17        If there's any other construction, if it can

01:39:00  18  be construed then to just require that you can pick one

01:39:03  19  random bump, and you've got one bump that is smaller

01:39:07  20  circumferentially and taller than another one, it's

01:39:12  21  about meaningless in the context of a resilient grid.

01:39:18  22        THE COURT:  Okay.

01:39:22  23        MR. BYERS:  Your Honor, that's how the claim

01:39:24  24  in the specification reads.

01:39:25  25        THE COURT:  I have a lot of work to do here.

01:39:28  1   This has been helpful.

01:39:30  2              And I'll give you, say, five days if there's

01:39:35  3   something you want to add into the arguments based on

01:39:38  4   the Court's acceptance as Plaintiff's Exhibit 1 United

01:39:43  5   States Patent Number 10,683,607B2 dated June 16, 2020,

01:39:57  6   where on some part of it there is a reference made to

01:40:03  7   the TAPPI T548 standard test procedures, you can.  All

01:40:15  8   right.

01:40:15  9              MR. BYERS:  Your Honor, if they choose to do

01:40:17  10  so --

01:40:18  11             THE COURT:  You want a chance to have the

01:40:20  12  last word?

01:40:22  13             MR. BYERS:  If Your Honor would allow me to.

01:40:24  14  I'm not saying I will.

01:40:25  15             THE COURT:  You've got five days to chew on

01:40:27  16  it and write me back.

01:40:29  17             MR. BYERS:  Thank you, Your Honor.

01:40:34  18             THE COURT:  So everything has kind of ground

01:40:37  19  to a halt, hasn't it, until the Court decides these

01:40:42  20  issues.  So I'm sure you've got lots of other things

01:40:45  21  you want to be working on.  And I've got about 700 or

01:40:52  22  so cases, give or take.  But I'm focused on this, and I

01:40:58  23  want to respond as soon as I can.

01:41:00  24             And if the Court's order suggests to you it

01:41:05  25  would be beneficial to carve some time out to try to

01:41:09  1  come to terms with a resolution that you can put your

01:41:12  2  hands on that each side can live with, and you would

01:41:15  3  like to suggest to the Court an opportunity to do that,

01:41:20  4  either through a magistrate judge or a third-party

01:41:23  5  mediator, let me know.

01:41:27  6          But I think in December you gave me a bit of

01:41:30  7  a report about settlement.  Can you remind me what you

01:41:34  8  said in that?

01:41:35  9          MS. POLLACK-MILGATE:  I don't know exactly

01:41:38  10  what was said, but I can certainly tell you what the

01:41:41  11  status is.  So there were discussions early on after

01:41:44  12  this case was filed.  Those were not successful.  We

01:41:47  13  have subsequently been in touch with the mediator that

01:41:51  14  Your Honor appointed.

01:41:52  15          THE COURT:  Who are you using?  It was

01:41:56  16  probably someone you proposed to me.

01:41:58  17          MR. BYERS:  To be clear, Your Honor, we had

01:42:01  18  discussed it, and given defendant's position that they

01:42:07  19  didn't think it would be fruitful until we got a claim

01:42:11  20  construction ruling from the Court --

01:42:12  21          THE COURT:  That's probably what you wrote

01:42:13  22  in December.

01:42:14  23          MR. BYERS:  That's basically the essentials

01:42:16  24  of it, Your Honor.  My client's always willing to

01:42:19  25  discuss it, but under the circumstances, not going to

01:42:23  1   waste anybody's time and money.

01:42:24  2          THE COURT:  Right.  Okay.  Have you had

01:42:26  3   one -- you've had one crack in front of this mediator?

01:42:30  4          MS. POLLACK-MILGATE:  No, Your Honor,

01:42:31  5   because of what counsel just explained.  Early on we

01:42:37  6   spoke potentially, but that was right after the case was

01:42:39  7   filed.

01:42:40  8          I do think we could say that certainly this

01:42:43  9   mediator seems like he'll be good at his job.  And so I

01:42:47  10  do think if we get somewhere close to where we're ready

01:42:50  11  that that would be well received.

01:42:52  12         THE COURT:  Well, I'll probably, in the

01:42:56  13  conclusion of the order to come, will give you some

01:43:00  14  direction on making proposals to the Court about the

01:43:04  15  next stage of the case.  And I won't forget, but if I

01:43:11  16  do, to put in there a sentence about including

01:43:15  17  mediation, just feel free to focus primarily on that if

01:43:21  18  you think this is the point to do that, and ask the

01:43:23  19  Court to push off any other dates unless some, for

01:43:28  20  example, really limited discovery you think might be

01:43:32  21  necessary to undertake before mediation.  You know, just

01:43:37  22  think it through.

01:43:38  23         You all know this case so much better than I

01:43:41  24  could ever know it.  You know your clients; I'll never

01:43:46  25  know them.  But I'll make decisions, and I'll work very

01:43:51  1  hard to do that and take into consideration all of what

01:43:55  2  you've given me and the law.  But I'm very respectful

01:44:00  3  of that process that could unfold here and save your

01:44:04  4  clients a lot of money.  Because I know how expensive

01:44:08  5  these cases are.  And there's a lot in this case that's

01:44:11  6  going to keep on rolling before trial.  It's going to

01:44:16  7  cost a lot of money.  So I feel it would be remiss if I

01:44:22  8  didn't reflect on Rule 1, which counsels all of us to

01:44:28  9  look for the just, speedy, and inexpensive determination

01:44:31  10  of every action.  And I always use a time like this

01:44:35  11  when everybody is together to say I'll help you

01:44:38  12  facilitate it.  I'll do my job; I'll decide the issues

01:44:42  13  presented.  But if I can be of help, let me know.

01:44:47  14        And towards that end, if you get to that

01:44:50  15  point where you think you need to talk to me, and I

01:44:52  16  don't think it -- it's not going to happen until this

01:44:56  17  case gets further down the road, but if there's an issue

01:44:59  18  that comes up, be it in discovery or maybe in

01:45:05  19  structuring something, and you think a telephone

01:45:09  20  conversation with the Court to get some informal

01:45:12  21  direction or formal direction, I make myself available,

01:45:17  22  because I think that's a good use of my time.  It's

01:45:19  23  just best if you give Sandra two or three alternative

01:45:23  24  dates of availability for a telephone call, and you're

01:45:26  25  more likely to get one of those times.

|          |    |                                                                  |
|----------|----|------------------------------------------------------------------|
| 01:45:29 | 1  | So is there anything else before we close up                     |
| 01:45:33 | 2  | for the day that plaintiff wants to bring to my                  |
| 01:45:37 | 3  | attention?                                                       |
| 01:45:38 | 4  | MR. BYERS:  I have nothing further, Your                         |
| 01:45:39 | 5  | Honor.  Thank you.                                               |
| 01:45:40 | 6  | THE COURT:  Give me the little triangle as                       |
| 01:45:45 | 7  | Plaintiff's Exhibit 2, the little cutout piece.                  |
| 01:45:49 | 8  | MR. BYERS:  Yes, Your Honor.                                      |
| 03:58:21 | 9  | (Whereupon Plaintiff's Exhibit 2 is admitted                     |
| 03:58:24 | 10 | into evidence.)                                                  |
| 01:45:51 | 11 | THE COURT:  I just want to perhaps reflect                       |
| 01:45:53 | 12 | on that.  And I'll just get the clerk to put a sticker           |
| 01:45:57 | 13 | on it.  We'll mark that Plaintiff's Exhibit 2.                   |
| 01:46:03 | 14 | MR. BYERS:  Keep that as a memento.                              |
| 01:46:07 | 15 | MR. BOYLE: Don't bribe the Judge in court.                       |
| 01:46:11 | 16 | THE COURT:  My law clerks have a tradition                       |
| 01:46:13 | 17 | which I've inflicted on them that every Christmas they           |
| 01:46:17 | 18 | make an ornament of the year's most memorable case in            |
| 01:46:21 | 19 | which they were involved.  So if I see hanging on the            |
| 01:46:24 | 20 | tree this Christmas as Liz has left me this little               |
| 01:46:28 | 21 | triangle -- except Sandra rightfully so would not allow          |
| 01:46:32 | 22 | that because it's now come into the clerk's custody and          |
| 01:46:35 | 23 | control.                                                         |
| 01:46:36 | 24 | Anything from the defendant?                                     |
| 01:46:38 | 25 | MS. POLLACK-MILGATE:  Your Honor, we do have                     |

01:46:39  1   an outstanding motion to compel, but I'm assuming that's

01:46:43  2   not within your jurisdiction.

01:46:44  3            THE COURT:  I know you do.  You're getting

01:46:46  4   in front of Judge Jones down in Wilmington on that.

01:46:52  5   You want all documents constituting or concerning any

01:46:57  6   opinion or draft opinions, assessments, or evaluations

01:47:01  7   made by plaintiff or on plaintiffs' behalf, whether

01:47:06  8   written or oral, relating to the scope, claim -- and it

01:47:09  9   goes on and on.

01:47:13  10           What is it you're really looking for?

01:47:15  11           MS. POLLACK-MILGATE:  Your Honor, what we're

01:47:16  12  looking for specifically is that in the complaint in

01:47:19  13  this matter the Terracinos attached an opinion of

01:47:22  14  counsel related to infringement and thereby waiving

01:47:25  15  privilege.  And so what we are seeking are documents

01:47:28  16  that are related to that opinion.  And even more

01:47:31  17  specifically, the issue of "comprising" and "consisting

01:47:36  18  of" was not discussed in that opinion.  And we're

01:47:38  19  entitled to know why that is now that this opinion of

01:47:43  20  counsel has been disclosed and was obviously relied on

01:47:49  21  to establish infringement.

01:47:51  22           THE COURT:  Well, because it was extrinsic

01:47:56  23  evidence that you were seeking, I really didn't think it

01:47:59  24  was necessary that that be decided for me to do my job.

01:48:03  25  Would you agree on that?

01:48:04  1        MS. POLLACK-MILGATE:  Well, obviously

01:48:04  2   depending on where Your Honor -- so the first point

01:48:05  3   would be it is certainly Trimaco's position that

01:48:10  4   "consisting of" is a very well-established proposition

01:48:12  5   of law.  However, if Your Honor were inclined to go the

01:48:16  6   other direction, we certainly would want the opportunity

01:48:18  7   to provide evidence to this Court that the Terracinos

01:48:22  8   knew it too, and yet brought this case anyway.

01:48:26  9        THE COURT:  I don't see how that factors

01:48:28  10   into claim construction, though.  Do you?

01:48:31  11        MS. POLLACK-MILGATE:  It would factor in in

01:48:34  12   terms of the ordinary legal understanding of the term

01:48:39  13   and that it was their understanding as well.  So I

01:48:42  14   think in terms of the positions that they're putting

01:48:44  15   forward to the Court, it would very much undermine their

01:48:48  16   position on claim construction.

01:48:51  17        THE COURT:  What do you think?

01:48:53  18        MR. BYERS:  Your Honor, number one, it's

01:48:56  19   extrinsic evidence.

01:48:57  20        Number two, any communications that I have

01:49:01  21   that are -- are potentially discoverable with a

01:49:04  22   testifying expert who's been disclosed as a testifying

01:49:07  23   expert.

01:49:08  24        And number three, all the parties agreed

01:49:10  25   going into this that there would be no expert testimony

01:49:12  1   and it was not necessary for claim construction.

01:49:15  2         And so there is absolutely nothing out there

01:49:18  3   that was properly discoverable or disclosable, number

01:49:23  4   one.

01:49:24  5         And number two, there is nothing.  And I

01:49:27  6   made that clear.  And I went through it carefully.   And

01:49:30  7   to be clear, my testifying expert, Mr. Tanner, is a

01:49:36  8   practicing patent attorney and litigation counsel, and

01:49:42  9   he and I went carefully through everything.  I went

01:49:45  10  through it independently.  He went through it

01:49:47  11  independently.  There is nothing responsive.  And I

01:49:50  12  made that absolutely clear to defendants.

01:49:52  13        THE COURT:  Well, I'm doing what I'm doing.

01:49:54  14  I don't think I need to stop for the magistrate judge,

01:49:59  15  given the issue that has been referred to him, the

01:50:02  16  nature of it.  But if either side is dissatisfied with

01:50:07  17  the ruling that he makes tomorrow or in the future, you

01:50:13  18  can bring it to my attention.

01:50:18  19        And if you think something that he did needs

01:50:20  20  to be brought to my attention, I'm sure you will.

01:50:23  21        Can I leave it at that?

01:50:25  22        MS. POLLACK-MILGATE:  Yes, you may leave it

01:50:27  23  there.  I will not respond.

01:50:28  24        MR. BYERS:  Thank you, Your Honor.

01:50:28  25        THE COURT:  I just want to say I just got

| | | |
|---|---|---|
| 01:50:31 | 1 | back from Williamsburg.  What do you think of the Fat |
| 01:50:33 | 2 | Canary?  Isn't that a great restaurant?  I didn't get |
| 01:50:38 | 3 | in. |
| 01:50:39 | 4 | MR. BYERS:  It is.  I will say this:  We |
| 01:50:41 | 5 | live on Jamestown Road in the very last neighborhood |
| 01:50:46 | 6 | before you get to Jamestown proper and the ferry. |
| 01:50:50 | 7 | THE COURT:  You're way out there. |
| 01:50:52 | 8 | MR. BYERS:  It's called The Point. |
| 01:50:53 | 9 | THE COURT:  It's probably something that has |
| 01:50:55 | 10 | been created long after I left. |
| 01:50:58 | 11 | MR. BYERS:  Our house was built in 2002. |
| 01:51:03 | 12 | THE COURT:  I thought you were going to say |
| 01:51:06 | 13 | 18-something.  That was going to totally undermine. |
| 01:51:09 | 14 | MR. BYERS:  I've done the antique house |
| 01:51:11 | 15 | thing.  I don't do antique houses anymore. |
| 01:51:14 | 16 | But I will say this, that if you like beer, |
| 01:51:19 | 17 | the brewery down there -- |
| 01:51:21 | 18 | THE COURT:  Is there a brewery? |
| 01:51:22 | 19 | MR. BYERS:  There is.  It's Billsburg |
| 01:51:24 | 20 | Brewery.  It's right there at the turnoff to Jamestown |
| 01:51:28 | 21 | proper.  They have great beer. |
| 01:51:30 | 22 | THE COURT:  You need to be writing this |
| 01:51:32 | 23 | down.  It's a nice place to visit. |
| 01:51:34 | 24 | MR. BYERS:  There's a food truck called the |
| 01:51:37 | 25 | Hungry Pug. |

01:51:39  1          THE COURT:  You're getting a little too

01:51:41  2  specific for me.   When I go to see my mother, I'm not

01:51:45  3  going to be looking for a food truck.   But I might take

01:51:48  4  her to the brewery.

01:51:49  5          MR. BYERS:  If you're looking for pizza,

01:51:50  6  Jamestown Pie Company.

01:51:53  7          THE COURT:  My husband gets stuck about

01:51:56  8  halfway down at the Spanish market on the right, La

01:51:59  9  Tienda.  That's about as far as we get.

01:52:02  10         MR. BYERS:  There's a reason why the

01:52:04  11  Virginia State Bar holds the annual winter meeting there

01:52:07  12  every January.

01:52:10  13         THE COURT:  Interesting.

01:52:12  14         Well, again, where are you all from?

01:52:16  15         MS. POLLACK-MILGATE:  Indianapolis, Indiana.

01:52:19  16         THE COURT:  You've got a plane to catch,

01:52:21  17  don't you?

01:52:21  18         MS. POLLACK-MILGATE:  I'm meeting an old

01:52:25  19  friend, so not until tomorrow.

01:52:27  20         THE COURT:  How about you?

01:52:27  21         MR. MOYE:  I'm based in Atlanta.   Practiced

01:52:29  22  in Raleigh about 12 years now.

01:52:31  23         THE COURT:  How are you getting back to

01:52:32  24  Atlanta?

01:52:33  25         MR. MOYE:  I'm going to be in Raleigh

01:52:35 1    tonight.

01:52:36 2                    THE COURT:  Mr. Boyle, you need to be

01:52:38 3    telling them where to eat in Raleigh.   What are your

01:52:41 4    suggestions?

01:52:42 5                    MR. BOYLE:  We have a few Wendy's.   I'm

01:52:46 6    partial to McDonald's.

01:52:49 7                    THE COURT:  You need to be better than that.

01:52:51 8    Can't you come up with something better than that?

01:52:54 9                    MS. POLLACK-MILGATE:  How about this, where

01:52:56 10   to eat here?

01:53:02 11                   MR. BYERS:  This looks like a very cool

01:53:04 12   downtown.

01:53:05 13                   THE COURT:  It is a cool downtown.

01:53:07 14                   MR. BOYLE: I'd say stay here.

01:53:10 15                   THE COURT:  I'll tell you where I think the

01:53:13 16   food is the best right now, and I don't know if it's

01:53:15 17   open, is a place called Cork on the street that's Broad,

01:53:20 18   and go down about one block on the left.

01:53:37 19                   This is a restaurant owner in front of me.

01:53:39 20   I should be asking you where to eat.   She's good for

01:53:43 21   breakfast, right?

01:53:46 22                   THE CLERK:  Yes, ma'am.

01:53:47 23                   THE COURT:  She'll probably get in trouble

01:53:50 24   if I start marketing her.

01:53:53 25                   This is probably when the judge needs to

01:53:58   1    leave the bench.

01:53:58   2          My law clerk, I'm sure, knows everything.

01:54:07   3          All right.  Well, hard issues.  I

01:54:10   4    definitely want to think deeply.  I've learned a lot

01:54:14   5    today.  I just want to thank you, and safe travels

01:54:17   6    back.

  7         (Concluded at 12:09 p.m.)

  8             - - -

  9

  10          **C E R T I F I C A T E**

  11

  12     I certify that the foregoing is a correct transcript

  13    from the record of proceedings in the above-entitled

  14    matter.

  15

  16    /s/ Tracy L. McGurk_____          ___2/22/2024___

  17    Tracy L. McGurk, RMR, CRR          Date

  18

  19

  20

  21

  22

  23

  24

  25

## '

**'183** [1] - 64:24
**'consisting** [3] - 36:24, 52:5, 52:7
**'downward** [1] - 46:14

## 0

**0.75** [1] - 18:21

## 1

**1** [15] - 1:6, 3:6, 12:3, 37:25, 38:9, 40:8, 47:5, 47:6, 54:11, 56:11, 56:11, 60:1, 60:22, 60:24, 68:4, 71:8
**10,683,607B2** [1] - 68:5
**100** [2] - 37:11, 38:13
**102** [1] - 38:14
**104** [1] - 38:14
**106b** [1] - 46:3
**10:14** [1] - 4:1
**11** [1] - 1:20
**12** [2] - 61:12, 77:22
**120** [1] - 1:14
**12:09** [1] - 79:7
**1321** [1] - 27:23, 52:19
**1349** [2] - 51:24, 52:2
**1350** [1] - 37:1
**1360** [2] - 52:1, 52:2
**1369** [1] - 56:25
**16** [1] - 68:5
**17** [2] - 38:10, 38:11
**1769** [1] - 1:14
**18** [1] - 38:17
**18-something** [1] - 76:13
**19** [1] - 39:8

## 2

**2** [5] - 3:8, 60:2, 72:7, 72:9, 72:13
**200-gram** [1] - 55:3
**2002** [1] - 76:11
**2017** [1] - 56:24
**2020** [1] - 68:5
**2021** [1] - 41:19
**2023** [1] - 61:25
**2024** [1] - 1:6
**231-7339** [1] - 1:21
**23185** [1] - 1:15
**264-4006** [1] - 1:25
**27636** [1] - 1:18
**277-9100** [1] - 1:18
**28560** [1] - 2:2
**2900** [1] - 1:24

## 3

**3** [1] - 23:4
**30326** [1] - 1:24
**31** [2] - 45:22, 45:25
**317** [1] - 1:21
**317-2779** [1] - 1:15
**32** [1] - 45:9
**33** [2] - 46:8, 46:10
**33009** [1] - 1:17
**3340** [1] - 1:23
**363** [2] - 27:23, 52:19
**38** [2] - 54:24, 54:25
**392-6626** [1] - 2:2

## 4

**4** [1] - 55:5
**40** [2] - 20:22, 56:1
**404** [1] - 1:25
**413** [1] - 2:1
**419** [1] - 2:2
**460** [2] - 51:24, 52:2
**46204** [1] - 1:21

## 5

**556-62** [1] - 47:8
**5:22-cv-015-FL** [1] - 1:4

## 6

**6** [2] - 61:11, 64:16
**6,946,183** [1] - 64:23
**60** [1] - 3:6

## 7

**700** [1] - 68:21
**72** [1] - 3:8
**757** [1] - 1:15
**7th** [1] - 61:25

## 8

**8** [2] - 26:2, 26:14
**831** [1] - 37:1
**875** [1] - 56:25

## 9

**919** [1] - 1:18

## A

**a.m** [1] - 4:1
**abandon** [1] - 40:7
**abandoned** [1] - 40:8
**ability** [1] - 60:7
**able** [3] - 47:17, 50:2, 50:6
**absolute** [1] - 52:6
**absolutely** [9] - 21:2, 33:22, 37:12, 39:23, 44:16, 53:5, 59:19, 75:2, 75:12
**absorbent** [6] - 11:3, 11:19, 22:12, 28:19, 34:20, 38:5
**absorbing** [1] - 32:16
**absorbs** [1] - 31:13
**absorption** [2] - 29:13, 31:15
**absorptive** [1] - 35:5
**abundantly** [1] - 27:13
**acceptance** [1] - 68:4
**accordance** [2] - 18:20, 20:21
**according** [2] - 9:20, 41:17
**act** [1] - 65:4
**action** [1] - 71:10
**actual** [2] - 8:14, 39:16
**add** [15] - 11:20, 24:5, 29:9, 30:12, 30:13, 30:16, 31:25, 32:14, 32:20, 33:2, 41:21, 42:7, 45:6, 50:14, 68:3
**added** [8] - 24:4, 29:12, 30:14, 30:19, 33:21, 33:25, 34:6, 38:23
**addendum** [1] - 63:11
**adding** [9] - 5:24, 6:1, 15:6, 28:20, 29:11, 31:14, 32:3, 32:5, 51:2
**addition** [6] - 11:4, 11:12, 15:9, 28:16, 38:4, 38:24
**additional** [3] - 12:1, 30:12, 30:13, 31:5, 31:6, 32:22, 33:16, 33:18, 33:19, 33:23, 36:17, 41:21, 64:1
**address** [1] - 14:9
**addressed** [1] - 53:5
**addressing** [1] - 15:17
**adds** [1] - 51:2
**adhered** [1] - 14:6
**adheres** [1] - 34:9
**adhesive** [2] - 33:21, 35:15
**adjacent** [9] - 13:11, 13:17, 13:20, 13:22, 13:23, 14:2, 14:5, 23:6
**admit** [1] - 19:5
**admitted** [3] - 3:6, 3:8, 60:24, 72:9
**ago** [2] - 10:17, 41:6
**agree** [4] - 27:9, 50:8, 67:6, 73:25

**agreed** [1] - 74:24
**agreement** [5] - 41:16, 42:13, 43:12, 47:25, 60:11
**ahead** [1] - 64:3
**al** [2] - 1:4, 64:23
**align** [1] - 47:6
**allegation** [1] - 43:25
**alleged** [2] - 7:24, 8:5
**allegedly** [1] - 7:21
**allow** [2] - 68:13, 72:21
**allowable** [1] - 46:6
**allowed** [5] - 22:17, 22:21, 24:15, 47:18, 61:2
**alluded** [1] - 59:20
**almost** [1] - 42:4
**alternate** [1] - 16:20
**alternative** [1] - 71:23
**amended** [3] - 37:25, 39:11, 64:19
**amendments** [1] - 64:12
**American** [1] - 56:24
**amorphous** [9] - 19:24, 20:4, 20:14, 20:17, 49:23, 49:24, 50:10, 51:15
**analysis** [1] - 33:6
**angle** [1] - 20:22
**annual** [1] - 77:11
**answer** [3] - 42:22, 58:3, 59:16
**antique** [2] - 76:14, 76:15
**anyway** [1] - 74:8
**apologies** [1] - 52:20
**apologize** [3] - 15:23, 52:12, 53:2
**apparatus** [1] - 55:13
**apparent** [1] - 15:10
**Appeals** [1] - 52:7
**APPEARANCES** [1] - 1:12
**applicant** [1] - 64:19
**Applicant** [1] - 39:10
**application** [8] - 22:22, 40:5, 57:3, 57:20, 58:5, 58:6, 58:7, 64:22
**applied** [2] - 19:1, 61:17
**applies** [3] - 55:17, 55:18, 64:10
**apply** [4] - 53:18, 55:18, 58:19, 61:5
**appointed** [1] - 69:14
**appreciate** [1] - 63:14
**approach** [3] - 9:4, 21:15, 60:18
**argue** [1] - 40:10
**argued** [2] - 11:23, 14:21
**argument** [21] - 9:1, 19:13, 19:19, 19:20, 22:7, 31:2, 31:21, 32:19, 36:2, 37:5, 39:21, 49:1, 51:17, 59:4, 61:4, 62:23, 66:6, 66:8,

66:10
**arguments** [6] - 12:24, 13:1, 21:5, 21:12, 57:16, 68:3
**Art** [1] - 61:17
**art** [16] - 5:4, 24:20, 25:17, 46:6, 46:11, 47:19, 49:19, 54:17, 56:18, 58:9, 58:12, 59:10, 60:5, 61:7, 62:12, 67:15
**article** [2] - 28:3, 28:4
**aside** [1] - 7:20
**assessment** [1] - 48:24
**assessments** [1] - 73:6
**associated** [2] - 52:9, 54:2
**assuming** [1] - 73:1
**assured** [1] - 23:17
**Atlanta** [3] - 1:24, 77:21, 77:24
**attached** [4] - 14:3, 14:5, 50:24, 73:13
**attachment** [4] - 24:1, 24:2, 65:4
**attempting** [4] - 9:15, 16:24, 18:8, 20:12
**attention** [5] - 47:2, 62:15, 72:3, 75:18, 75:20
**attorney** [2] - 15:24, 75:8
**availability** [1] - 71:24
**available** [4] - 19:1, 42:19, 59:23, 71:21
**average** [1] - 20:22
**avoid** [3] - 26:24, 27:2, 29:2
**aware** [5] - 5:1, 10:21, 13:13, 36:18, 61:1

## B

**background** [2] - 4:24, 8:8
**backlog** [1] - 42:20
**backup** [1] - 37:15
**Bar** [5] - 4:8, 4:10, 4:16, 77:11
**bargain** [1] - 24:21
**Barnes** [4] - 1:19, 1:22, 4:16, 4:18
**base** [2] - 17:7, 17:8
**based** [9] - 8:10, 12:8, 12:12, 12:19, 25:4, 56:15, 58:3, 68:3, 77:21
**basis** [4] - 22:5, 45:14, 47:17, 60:8
**basket** [1] - 44:5
**Beach** [2] - 10:17, 10:18
**beer** [2] - 76:16, 76:21
**BEFORE** [1] - 1:10
**beg** [1] - 8:19
**began** [1] - 22:10
**beginning** [4] - 28:1, 41:19,

61:11, 62:22
**begins** [1] - 50:2
**behalf** [4] - 4:17, 61:10, 63:3, 73:7
**behind** [1] - 8:15
**Bell** [1] - 46:12
**below** [2] - 50:1, 56:8
**bench** [1] - 79:1
**beneficial** [1] - 68:25
**Bern** [2] - 1:5, 2:2
**best** [3] - 19:22, 71:23, 78:16
**better** [3] - 70:23, 78:7, 78:8
**between** [21] - 6:7, 6:18, 10:1, 10:8, 11:20, 12:20, 13:21, 14:1, 29:17, 30:17, 31:1, 33:2, 34:11, 47:9, 49:12, 50:23, 53:16, 54:23, 57:3, 65:5
**beyond** [1] - 51:12
**bicycle** [5] - 29:11, 30:19, 32:4, 32:5, 32:6
**bigger** [3] - 15:12, 65:19
**Billsburg** [1] - 76:19
**bit** [6] - 4:23, 5:7, 10:19, 24:12, 54:7, 69:6
**black** [1] - 25:7
**block** [1] - 78:18
**blue** [1] - 26:12
**Board** [1] - 52:6
**book** [1] - 21:17
**borne** [1] - 12:24
**bother** [1] - 48:5
**bottom** [16] - 10:7, 11:4, 11:19, 14:15, 17:11, 23:9, 26:7, 30:16, 30:18, 31:13, 32:17, 34:8, 35:6, 35:13, 35:24, 45:25
**bound** [1] - 61:23
**boundary** [8] - 15:6, 15:15, 15:16, 20:10, 20:17, 48:19, 50:11, 50:15
**Box** [1] - 1:17
**BOYLE** [4] - 4:7, 72:15, 78:5, 78:14
**Boyle** [3] - 1:17, 4:8, 78:2
**brakes** [3] - 19:15, 19:16, 19:18
**breakfast** [1] - 78:21
**brewery** [3] - 76:17, 76:18, 77:4
**Brewery** [1] - 76:20
**bribe** [1] - 72:15
**brief** [6] - 12:10, 12:11, 58:21, 59:6, 63:11, 64:16
**briefed** [1] - 62:13
**briefing** [4] - 26:15, 26:17, 45:22, 46:9
**briefly** [2] - 44:13, 46:8

**bring** [4] - 60:14, 62:14, 72:2, 75:18
**bringing** [1] - 5:15
**Broad** [1] - 78:17
**broad** [1] - 23:8
**broker** [1] - 23:15
**brought** [2] - 74:8, 75:20
**bubble** [3] - 29:20, 30:18, 31:17
**built** [1] - 76:11
**bump** [22] - 16:3, 16:4, 16:5, 16:7, 16:16, 16:25, 17:2, 17:13, 17:21, 50:2, 50:3, 50:6, 50:7, 50:22, 50:24, 50:25, 51:10, 65:16, 65:25, 67:19
**bumps** [64] - 11:6, 14:11, 14:19, 15:2, 15:11, 15:19, 15:21, 16:9, 16:11, 16:15, 16:17, 16:20, 16:22, 16:23, 17:5, 17:6, 17:11, 17:19, 18:4, 18:11, 24:11, 24:16, 24:18, 44:19, 44:21, 45:1, 45:2, 45:13, 45:15, 46:3, 46:4, 46:15, 46:16, 46:18, 47:7, 47:9, 47:12, 48:13, 48:14, 48:15, 48:18, 48:22, 49:4, 49:5, 49:14, 49:25, 50:20, 65:18, 65:19, 65:23, 65:24, 66:2, 66:9, 67:2, 67:3, 67:4, 67:8
**bumpy** [2] - 10:7, 34:15
**Byers** [5] - 1:13, 1:13, 4:11, 10:13, 27:8
**BYERS** [76] - 4:12, 4:22, 5:22, 6:7, 6:10, 6:14, 6:17, 6:21, 7:4, 7:8, 7:12, 7:17, 8:4, 8:25, 9:8, 9:19, 10:1, 10:5, 10:11, 10:14, 10:16, 13:10, 17:4, 17:16, 21:9, 26:12, 27:9, 27:24, 31:3, 32:10, 33:18, 34:7, 34:16, 34:24, 35:4, 35:15, 41:20, 42:1, 42:3, 43:1, 43:3, 43:7, 43:16, 50:17, 51:9, 52:16, 53:1, 59:18, 60:20, 60:23, 61:1, 62:19, 63:19, 64:4, 66:15, 66:18, 67:23, 68:9, 68:13, 68:17, 69:17, 69:23, 72:4, 72:8, 72:14, 74:18, 75:24, 76:4, 76:8, 76:11, 76:14, 76:19, 76:24, 77:5, 77:10, 78:11

## C

**calculus** [1] - 51:16
**Canary** [1] - 76:2
**canceled** [1] - 41:17

**cannot** [3] - 25:20, 26:24, 28:16
**canvas** [4] - 10:6, 14:16, 40:14, 41:2, 41:23, 42:18, 42:25
**car** [1] - 19:15
**careful** [1] - 31:24
**carefully** [2] - 75:6, 75:9
**CAROLINA** [1] - 1:1
**Carolina** [2] - 1:5, 4:16
**carve** [1] - 68:25
**carved** [1] - 63:16
**case** [48] - 4:3, 10:21, 25:23, 26:16, 26:17, 26:20, 26:25, 27:12, 27:17, 27:18, 27:25, 28:8, 28:9, 28:11, 29:24, 30:24, 31:5, 31:10, 33:1, 36:1, 36:18, 36:22, 37:9, 42:24, 43:6, 48:9, 51:22, 52:11, 52:16, 52:20, 52:25, 56:23, 57:1, 57:5, 57:18, 57:22, 57:25, 58:3, 58:14, 69:12, 70:6, 70:15, 70:23, 71:5, 71:17, 72:18, 74:8
**cases** [5] - 4:25, 17:21, 58:23, 68:22, 71:5
**catch** [1] - 77:16
**century** [1] - 36:25
**Ceramics** [1] - 56:25
**certain** [4] - 5:23, 22:7, 34:9, 61:2
**certainly** [7] - 16:13, 19:19, 20:16, 69:10, 70:8, 74:3, 74:6
**certainty** [1] - 58:13
**chance** [2] - 61:22, 68:11
**change** [7] - 30:2, 31:8, 31:9, 31:15, 31:16, 32:15, 34:6
**changed** [7] - 12:3, 23:18, 23:21, 35:8, 35:13, 36:16, 38:22
**changing** [2] - 30:21, 30:23
**characteristics** [2] - 29:13, 30:22
**check** [2] - 37:11, 41:18
**chemical** [5] - 27:1, 27:4, 28:9, 30:3, 31:6
**chew** [1] - 68:15
**Chic's** [1] - 10:18
**child** [1] - 10:19
**choose** [1] - 68:9
**chose** [1] - 24:7
**Christmas** [2] - 72:17, 72:20
**chuckled** [1] - 24:12
**circuit** [1] - 36:4
**Circuit** [2] - 27:13, 27:24, 28:15, 29:24, 32:19, 32:24,

51:23, 52:2, 52:4, 56:24, 57:12, 57:19, 57:22
**Circuit's** [2] - 31:22, 34:2
**circumference** [22] - 15:4, 15:12, 16:4, 16:5, 16:17, 17:2, 17:7, 17:8, 17:12, 17:14, 17:20, 17:21, 17:22, 17:23, 18:2, 18:5, 18:6, 18:11, 18:13, 49:7, 51:10, 66:1
**circumferences** [2] - 15:3, 49:5
**circumferential** [9] - 14:12, 14:20, 15:20, 15:22, 44:20, 44:22, 46:17, 46:19, 48:16
**circumferentially** [12] - 16:9, 16:10, 16:16, 24:17, 24:18, 45:3, 45:4, 47:12, 47:13, 67:3, 67:4, 67:20
**circumstances** [6] - 7:21, 34:9, 57:4, 57:21, 61:3, 69:25
**citation** [6] - 27:1, 27:21, 27:23, 43:18, 52:1, 52:12
**cite** [2] - 52:15, 59:22
**cited** [1] - 58:21
**cites** [1] - 64:17
**Claim** [6] - 1:6, 12:3, 37:25, 40:8, 54:11, 56:11
**claim** [94] - 4:3, 7:22, 9:1, 11:13, 11:14, 11:18, 11:22, 12:10, 12:11, 12:15, 13:14, 13:15, 14:10, 14:13, 15:7, 15:18, 15:24, 16:12, 16:14, 16:25, 17:10, 17:16, 18:9, 18:14, 18:17, 18:23, 19:1, 19:14, 20:14, 20:16, 20:20, 21:1, 21:4, 22:21, 23:12, 23:20, 24:8, 24:15, 25:7, 25:14, 25:17, 25:25, 28:2, 29:15, 33:7, 36:23, 37:6, 37:8, 37:13, 37:17, 37:23, 38:20, 39:11, 39:19, 42:24, 43:22, 44:18, 44:25, 47:1, 48:3, 50:18, 51:25, 52:8, 54:15, 55:21, 56:14, 56:18, 56:20, 57:12, 57:14, 58:14, 58:16, 58:19, 58:24, 59:6, 59:21, 61:3, 61:5, 61:23, 62:7, 63:24, 64:15, 64:20, 65:22, 66:3, 66:21, 66:22, 67:13, 67:23, 69:19, 73:8, 74:10, 74:16, 75:1
**CLAIM** [1] - 1:10
**claimed** [6] - 14:18, 14:21, 19:15, 28:5, 28:11, 40:9
**claiming** [4] - 9:23, 12:16, 33:1, 42:7
**claims** [40] - 7:23, 11:10, 11:24, 13:1, 13:7, 16:1,

20:13, 22:17, 22:19, 22:23, 23:14, 25:1, 25:11, 27:10, 28:13, 28:17, 28:22, 30:14, 30:23, 31:8, 32:1, 33:3, 36:3, 38:18, 39:5, 39:7, 40:5, 40:9, 40:17, 42:7, 47:16, 47:18, 49:20, 51:3, 51:18, 56:22, 57:7, 57:24, 58:11, 65:17
**clarification** [3] - 19:21, 24:6, 47:24
**clarify** [2] - 19:8, 43:22
**clarity's** [1] - 5:13
**clean** [1] - 34:23
**clear** [29] - 5:23, 7:2, 7:13, 8:16, 9:15, 12:20, 27:13, 28:15, 30:6, 31:23, 33:11, 36:5, 39:13, 40:2, 42:14, 50:19, 51:10, 53:18, 55:7, 59:7, 60:10, 62:21, 62:22, 66:3, 67:12, 69:17, 75:6, 75:7, 75:12
**clearly** [3] - 18:25, 46:25, 64:17
**clerk** [3] - 9:5, 72:12, 79:2
**CLERK** [1] - 78:22
**clerk's** [1] - 72:22
**clerks** [1] - 72:16
**client** [1] - 65:9
**client's** [7] - 8:10, 8:12, 10:23, 42:5, 42:8, 60:8, 69:24
**clients** [6] - 12:17, 12:21, 32:13, 48:10, 70:24, 71:4
**close** [5] - 13:18, 14:7, 52:7, 70:10, 72:1
**closed** [9] - 25:8, 25:17, 27:7, 27:11, 28:6, 31:24, 36:6, 36:24, 39:19
**closing** [4] - 23:20, 38:25, 39:12, 64:20
**cloth** [17] - 5:15, 5:20, 5:21, 5:25, 6:3, 10:23, 11:1, 11:10, 11:14, 11:22, 17:1, 22:23, 24:7, 34:23, 38:13, 54:3, 54:4
**cloths** [9] - 5:9, 5:25, 8:9, 9:12, 15:9, 29:19, 42:11, 42:19, 60:7
**coefficient** [6] - 18:19, 55:21, 55:23, 56:4, 56:12, 59:14
**coefficients** [1] - 60:9
**colleague** [3] - 4:17, 27:17, 63:21
**colleagues** [1] - 19:7
**color** [2] - 6:10, 41:21
**Column** [1] - 61:11
**combinations** [1] - 46:13
**command** [1] - 63:17
**Commenced** [1] - 4:1

**comment** [2] - 47:22, 47:23
**communications** [1] - 74:20
**Company** [1] - 77:6
**compare** [3] - 5:17, 17:5, 17:13
**compared** [1] - 17:20
**comparing** [1] - 66:2
**comparison** [3] - 16:2, 16:4, 18:10
**compel** [1] - 73:1
**complaint** [1] - 73:12
**completely** [1] - 43:9
**complicates** [1] - 51:18
**Components** [1] - 56:24
**comprise** [1] - 64:25
**comprising** [12] - 14:11, 22:24, 22:25, 23:18, 23:22, 25:3, 27:5, 37:16, 37:25, 38:19, 48:15, 73:17
**concede** [2] - 62:5
**concerning** [1] - 73:5
**Concluded** [1] - 79:7
**conclusion** [1] - 70:13
**confident** [1] - 24:20
**confirm** [2] - 6:22, 49:9
**connected** [1] - 45:16
**connection** [1] - 44:24
**Conoco** [3] - 51:22, 52:20, 64:4
**consider** [4] - 61:2, 61:22, 62:7, 62:12
**consideration** [1] - 71:1
**considered** [3] - 13:22, 36:6, 36:7
**considering** [1] - 32:19
**consist** [1] - 38:3
**consistent** [1] - 38:7
**consisting** [37] - 11:15, 12:3, 13:4, 22:25, 23:18, 23:22, 25:3, 25:7, 25:24, 26:22, 27:5, 27:6, 27:10, 28:2, 28:7, 28:13, 28:19, 29:25, 31:23, 33:4, 33:7, 34:2, 36:5, 36:14, 37:16, 38:1, 38:22, 39:2, 39:22, 43:8, 51:21, 52:3, 52:18, 64:9, 73:17, 74:4
**constituting** [1] - 73:5
**constructed** [5] - 9:13, 9:20, 14:18, 17:1, 50:21
**construction** [46] - 4:3, 7:22, 9:1, 10:23, 11:13, 12:10, 12:11, 12:16, 13:18, 15:1, 15:15, 15:25, 19:4, 20:4, 25:2, 25:12, 25:13, 25:25, 37:8, 37:13, 37:17, 43:23, 44:10, 45:8, 48:3, 49:3, 49:23, 50:9, 51:25, 53:4, 57:13, 57:14, 58:24,

59:6, 59:22, 61:3, 61:23, 62:7, 63:24, 64:16, 66:13, 67:17, 69:20, 74:10, 74:16, 75:1
**Construction** [1] - 1:6
**CONSTRUCTION** [1] - 1:10
**constructions** [1] - 48:25
**construe** [2] - 17:10, 39:22
**construed** [3] - 20:9, 37:6, 67:18
**contacting** [1] - 35:24
**contemplated** [1] - 11:25
**contemplates** [1] - 17:18
**contended** [1] - 46:22
**contention** [5] - 11:8, 14:13, 44:9, 49:12, 49:17
**context** [4] - 37:3, 37:5, 53:7, 67:21
**continued** [1] - 12:4
**contrary** [3] - 25:6, 25:13, 25:14
**control** [1] - 72:23
**conversation** [2] - 28:1, 71:20
**cool** [2] - 78:11, 78:13
**Cork** [1] - 78:17
**corner** [2] - 5:10, 9:8
**Corporation** [1] - 56:25
**Correct** [1] - 40:15
**correct** [14] - 6:17, 7:3, 10:2, 10:14, 28:8, 29:18, 41:20, 43:7, 48:8, 57:17, 59:19, 63:21, 66:15, 66:18
**corrected** [1] - 64:15
**correction** [1] - 51:20
**cost** [1] - 71:7
**counsel** [26] - 4:9, 6:23, 8:19, 8:22, 21:25, 22:3, 22:11, 25:3, 25:21, 26:17, 26:21, 28:8, 40:22, 42:16, 47:23, 48:10, 49:13, 51:22, 53:14, 61:25, 62:14, 67:6, 70:5, 73:14, 73:20, 75:8
**counsel's** [2] - 25:12, 61:10
**counsels** [1] - 71:8
**countenance** [1] - 31:21
**County** [1] - 4:8
**couple** [5] - 38:17, 43:21, 45:12, 54:12, 63:25
**course** [3] - 21:15, 23:11, 64:9
**COURT** [129] - 1:1, 4:2, 4:14, 4:19, 6:5, 6:9, 6:12, 6:15, 6:20, 7:6, 7:10, 7:16, 7:25, 8:17, 9:2, 9:7, 9:18, 9:24, 10:3, 10:9, 10:12, 10:15, 13:9, 17:3, 17:15, 21:8, 21:11, 21:16, 21:20, 22:8, 25:23, 26:3, 26:6, 26:9, 26:13, 27:8, 30:25, 32:8,

33:14, 34:4, 34:13, 34:22, 35:3, 35:7, 36:9, 37:2, 37:8, 37:19, 40:13, 40:16, 41:1, 41:4, 41:7, 41:13, 41:22, 42:2, 42:24, 43:2, 43:5, 43:14, 43:20, 44:4, 44:13, 47:3, 47:20, 48:7, 48:12, 48:21, 49:2, 49:10, 49:21, 50:8, 50:13, 51:7, 52:14, 52:21, 53:8, 53:21, 54:3, 56:23, 57:17, 59:12, 59:16, 60:19, 60:21, 61:19, 62:3, 62:17, 63:7, 63:9, 63:15, 64:3, 66:5, 66:11, 66:16, 67:22, 67:25, 68:11, 68:15, 68:18, 69:15, 69:21, 70:2, 70:12, 72:6, 72:11, 72:16, 73:3, 73:22, 74:9, 74:17, 75:13, 75:25, 76:7, 76:9, 76:12, 76:18, 76:22, 77:1, 77:7, 77:13, 77:16, 77:20, 77:23, 78:2, 78:7, 78:13, 78:15, 78:23

**Court** [52] - 2:1, 4:9, 4:23, 5:1, 5:6, 5:8, 5:11, 5:16, 8:7, 8:13, 8:16, 9:6, 9:9, 9:11, 9:16, 13:6, 13:11, 13:13, 14:9, 15:9, 15:17, 20:3, 20:7, 21:9, 25:2, 31:21, 42:16, 43:8, 43:19, 43:23, 47:6, 48:5, 51:5, 59:19, 59:24, 60:14, 61:1, 62:6, 63:23, 63:24, 64:11, 65:14, 65:17, 66:19, 68:19, 69:3, 69:20, 70:14, 70:19, 71:20, 74:7, 74:15

**court** [2] - 36:25, 72:15
**Court's** [7] - 12:15, 48:2, 56:14, 61:23, 63:20, 68:4, 68:24

**Courts** [1] - 58:23
**courts** [1] - 37:1
**cover** [2] - 11:10, 14:16
**covered** [4] - 20:15, 25:24, 28:20, 64:5
**covers** [1] - 10:23
**crack** [1] - 70:3
**created** [1] - 76:10
**critical** [1] - 24:10
**CRR** [1] - 2:1
**crux** [1] - 46:20
**curiously** [1] - 59:3
**custody** [1] - 72:22
**customary** [7] - 13:15, 13:16, 14:5, 14:8, 15:5, 20:1, 20:2
**cut** [4] - 9:8, 27:10, 54:3, 54:4
**cutout** [1] - 72:7
**cutting** [2] - 53:24, 54:7

**D**

**damage** [1] - 29:2
**date** [1] - 62:17
**dated** [1] - 68:5
**dates** [2] - 70:19, 71:24
**days** [2] - 68:2, 68:15
**deal** [3] - 22:4, 23:15, 59:12
**deals** [1] - 31:4
**dealt** [1] - 5:1
**Deborah** [2] - 1:20, 4:18
**December** [2] - 69:6, 69:22
**decide** [3] - 43:8, 51:5, 71:12
**decided** [3] - 43:5, 56:24, 73:24
**decides** [2] - 25:24, 68:19
**deciding** [1] - 29:16
**decision** [2] - 41:11, 63:24
**decisions** [1] - 70:25
**decrease** [1] - 29:9
**deeply** [1] - 79:4
**Defendant** [2] - 1:8, 1:19
**defendant** [9] - 4:14, 4:17, 27:2, 34:6, 53:3, 57:15, 63:3, 66:19, 72:24
**defendant's** [5] - 11:14, 16:8, 17:4, 19:3, 20:24, 29:18, 32:18, 66:5, 66:13, 69:18
**defendants** [16] - 5:14, 11:17, 12:7, 12:16, 13:23, 14:22, 16:24, 18:7, 19:6, 20:8, 20:11, 28:11, 61:10, 64:7, 65:16, 75:12
**defenses** [1] - 44:7
**defined** [2] - 18:25, 48:17
**definitely** [1] - 79:4
**definition** [3] - 20:3, 20:6, 56:8
**definitions** [1] - 56:7
**degree** [1] - 55:16
**degrees** [1] - 20:23
**demonstrative** [1] - 5:7
**dental** [1] - 52:18
**dependent** [1] - 40:8
**described** [2] - 51:11, 56:6
**describes** [4] - 38:8, 47:8, 56:2, 56:3
**Description** [1] - 3:4
**description** [1] - 65:22
**detail** [1] - 53:24
**detailed** [2] - 52:3, 54:1
**details** [1] - 55:12
**determination** [2] - 56:4, 71:9
**determinations** [1] - 9:16
**determine** [7] - 49:19, 56:9, 56:10, 56:15, 58:9, 58:12,

66:2
**determining** [2] - 36:14, 37:14
**device** [1] - 28:10
**dictionary** [1] - 20:6
**difference** [5] - 6:7, 10:4, 10:5, 14:1, 48:24
**differences** [1] - 6:18
**different** [26] - 6:24, 12:18, 14:12, 14:19, 15:3, 15:19, 17:19, 18:1, 25:4, 44:20, 45:2, 45:12, 45:15, 46:16, 47:8, 48:15, 49:5, 53:19, 54:12, 54:13, 55:24, 56:8, 64:25, 65:25, 66:9, 66:14
**digest** [1] - 63:10
**directed** [2] - 22:23, 40:6
**direction** [4] - 70:14, 71:21, 74:6
**directly** [8] - 8:11, 14:2, 17:24, 33:23, 51:25, 56:1, 56:3, 61:4
**discernable** [1] - 6:18
**discernible** [1] - 50:3
**disclaimed** [3] - 47:14, 67:1, 67:5
**disclosable** [1] - 75:3
**disclosed** [2] - 73:20, 74:22
**disclosure** [1] - 62:18
**discoverable** [2] - 74:21, 75:3
**discovery** [3] - 43:15, 70:20, 71:18
**discrepancy** [1] - 54:23
**discuss** [2] - 8:23, 69:25
**discussed** [4] - 22:1, 22:3, 69:18, 73:18
**discusses** [1] - 9:22
**discussing** [2] - 7:5, 52:17
**discussion** [2] - 12:20, 52:3
**discussions** [2] - 5:9, 69:11
**dispose** [1] - 13:12
**dispositive** [3] - 13:5, 13:6, 25:21
**dispute** [7] - 14:4, 42:15, 57:19, 58:6, 62:10, 64:11
**disputes** [4] - 57:2, 57:5, 57:6, 57:22
**dissatisfied** [1] - 75:16
**distinction** [1] - 29:23
**DISTRICT** [3] - 1:1, 1:1, 1:11
**DIVISION** [1] - 1:2
**docket** [1] - 63:18
**Docket** [1] - 1:4
**documents** [3] - 62:11, 73:5, 73:15
**done** [3] - 34:22, 59:25, 76:14
**double** [1] - 41:18

**doubt** [1] - 39:3
**down** [16] - 19:16, 19:19, 24:25, 32:7, 34:10, 34:11, 37:18, 48:13, 63:8, 64:2, 71:17, 73:4, 76:17, 76:23, 77:8, 78:18
**downtown** [2] - 78:12, 78:13
**downward** [5] - 14:10, 15:2, 48:14, 48:18, 49:4
**draft** [1] - 73:6
**drafted** [1] - 44:24
**draw** [1] - 47:1
**drawn** [1] - 46:4
**drop** [21] - 5:9, 5:15, 5:20, 5:21, 5:24, 5:25, 6:3, 8:9, 9:12, 10:23, 11:1, 11:10, 11:21, 15:9, 17:1, 24:7, 29:19, 42:10, 42:18, 54:3, 60:7
**Duncan** [2] - 1:13, 4:11
**during** [4] - 12:17, 23:11, 30:7, 47:14

**E**

**early** [2] - 69:11, 70:5
**EASTERN** [1] - 1:1
**easy** [2] - 37:20, 45:24
**eat** [3] - 78:3, 78:10, 78:20
**edification** [1] - 9:11
**educate** [1] - 8:7
**effect** [1] - 49:14
**effectively** [1] - 49:15
**eggs** [1] - 44:4
**either** [6] - 33:9, 44:11, 50:18, 65:3, 69:4, 75:16
**electronics** [1] - 21:21
**element** [3] - 31:5, 35:25, 36:17
**Elements** [1] - 37:23, 38:3
**elements** [6] - 22:15, 23:9, 27:16, 29:8, 36:24, 37:24
**eliminate** [1] - 43:24
**eliminated** [1] - 48:2
**Ellis** [2] - 1:17, 4:8
**embodiment** [7] - 7:3, 9:22, 38:2, 38:8, 40:6, 45:25, 67:14
**embodiments** [10] - 8:23, 11:25, 16:20, 16:22, 45:12, 46:2, 47:11, 47:15, 66:25, 67:1
**end** [3] - 28:1, 43:16, 71:14
**ended** [3] - 37:7, 38:2, 46:1
**ends** [1] - 50:3
**enhance** [1] - 35:23
**enhanced** [1] - 33:20
**enlightening** [1] - 56:19

entire [1] - 33:8
entirely [2] - 26:24, 27:7
entitled [2] - 38:1, 73:19
equating [1] - 65:2
equivalent [1] - 65:3
especially [1] - 18:9
essential [1] - 63:1
essentially [7] - 11:7, 22:15, 28:4, 28:9, 29:25, 30:24, 66:20
essentials [1] - 69:23
establish [1] - 73:21
established [1] - 74:4
et [2] - 1:4, 64:23
evaluations [1] - 73:6
evidence [9] - 3:7, 3:9, 60:25, 61:2, 61:24, 72:10, 73:23, 74:7, 74:19
exact [1] - 16:19
exactly [14] - 7:13, 8:7, 18:22, 18:23, 19:6, 37:5, 38:22, 39:6, 43:10, 45:16, 50:7, 62:2, 67:16, 69:9
examined [1] - 5:10
examiner [17] - 12:25, 24:19, 30:7, 39:6, 39:10, 39:16, 39:17, 45:6, 45:17, 46:10, 64:11, 64:13, 64:18, 64:22, 65:2, 67:16
examiner's [1] - 40:3
examing [1] - 7:24
example [10] - 13:19, 19:14, 33:15, 33:20, 35:7, 35:9, 35:12, 49:21, 59:12, 70:20
except [4] - 31:18, 52:9, 67:1, 72:21
excerpts [1] - 56:1
exhibit [1] - 62:20
Exhibit [8] - 3:6, 3:8, 60:22, 60:24, 68:4, 72:7, 72:9, 72:13
exhibits [1] - 5:7
exist [2] - 25:9, 36:19
expensive [1] - 71:4
expert [5] - 58:25, 74:22, 74:23, 74:25, 75:7
explained [2] - 27:25, 70:5
explicit [1] - 52:4
extent [1] - 39:3
extrinsic [4] - 61:2, 61:24, 73:22, 74:19
eyeball [1] - 49:15

**F**

F.3d [6] - 27:23, 37:1, 51:24, 52:2, 52:19, 56:25
fabric [1] - 65:5
facilitate [1] - 71:12

fact [6] - 38:19, 48:1, 53:13, 55:9, 57:13, 59:13
factor [1] - 74:11
factors [1] - 74:9
facts [1] - 52:10
factual [1] - 26:20
fail [1] - 46:13
failed [1] - 63:1
fails [5] - 33:4, 33:5, 33:6
failure [1] - 63:1
fair [2] - 33:14, 48:24
fairly [6] - 5:2, 5:5, 7:20, 10:22, 13:12, 31:11
fall [1] - 41:13
falling [3] - 41:8, 41:14, 41:16
falls [2] - 34:1, 49:20
far [1] - 77:9
fasten [1] - 23:10
fastening [1] - 23:7
Fat [1] - 76:1
fat [1] - 66:17
February [1] - 1:6
Federal [15] - 27:12, 27:24, 28:15, 29:23, 31:22, 32:19, 32:24, 34:1, 51:23, 52:2, 52:4, 56:23, 57:11, 57:18, 57:22
federal [1] - 36:4
fees [1] - 40:20
fell [2] - 34:14, 62:25
fence [1] - 13:21
ferry [1] - 76:6
few [1] - 78:5
Figure [4] - 38:9, 47:5, 47:6, 55:5
figure [3] - 25:18, 56:17, 58:19
figures [1] - 65:22
filed [4] - 22:22, 40:4, 69:12, 70:7
filled [1] - 33:21
final [1] - 20:19
finally [1] - 60:14
firm [2] - 61:10, 63:3
first [18] - 10:25, 11:14, 16:5, 21:16, 21:18, 22:1, 22:20, 22:22, 25:9, 27:10, 39:1, 40:4, 53:13, 53:19, 59:18, 64:4, 66:23, 74:2
fits [1] - 56:18
five [3] - 35:20, 68:2, 68:15
five-year-old [1] - 35:20
FLANAGAN [1] - 1:10
flat [1] - 49:25
flip [3] - 21:21, 21:22, 21:23
flows [1] - 50:5
focus [3] - 40:23, 49:1, 70:17

focused [6] - 33:13, 35:11, 54:11, 64:8, 65:10, 68:22
follow [5] - 23:2, 23:3, 32:18, 38:9, 58:10
followed [1] - 55:8
following [1] - 30:25
food [3] - 76:24, 77:3, 78:16
forced [1] - 40:7
foresee [2] - 48:5, 51:1
forget [1] - 70:15
formal [1] - 71:21
forth [1] - 67:14
fortunately [1] - 56:13
forward [2] - 63:17, 74:15
frankly [3] - 13:5, 62:14, 67:6
free [1] - 70:17
friction [9] - 18:20, 53:16, 55:22, 55:23, 56:5, 56:9, 56:10, 56:12, 59:14
friend [1] - 77:19
front [3] - 70:3, 73:4, 78:19
fruitful [1] - 69:19
functional [1] - 29:8
functionality [17] - 9:13, 19:13, 28:5, 29:9, 29:10, 29:22, 30:1, 30:2, 31:4, 31:8, 32:3, 32:5, 32:15, 33:24, 35:13, 36:16
functioning [1] - 32:6
functions [3] - 10:25, 31:9, 32:16
fundamental [1] - 30:21
fused [1] - 14:6
future [1] - 75:17

**G**

GA [1] - 1:24
gallon [1] - 34:19
gallons [1] - 35:2
gaps [2] - 34:12, 35:24
gee [1] - 11:3
given [7] - 9:6, 13:15, 20:2, 57:2, 69:18, 71:2, 75:15
glow [1] - 32:20
goodness [1] - 60:11
gotcha [1] - 35:3
gradient [1] - 34:10
granted [1] - 67:16
great [3] - 53:24, 76:2, 76:21
greater [13] - 15:20, 16:6, 16:10, 16:15, 17:13, 17:22, 18:3, 18:12, 18:21, 35:16, 35:23, 44:21, 46:17
grew [1] - 10:15
grid [1] - 11:5, 22:13, 44:25, 45:16, 50:1, 50:5,

50:20, 50:23, 50:24, 50:25, 51:11, 65:23, 65:24, 67:21
grippiness [1] - 35:13
grippy [2] - 34:15, 35:8
ground [1] - 68:18
guess [1] - 50:14

**H**

half [2] - 10:17, 47:7
halfway [1] - 77:8
halt [1] - 68:19
hand [2] - 7:16, 54:25
handled [1] - 61:9
handles [2] - 29:11, 30:19
hands [2] - 6:5, 69:2
hanging [1] - 72:19
happy [1] - 53:10
hard [6] - 25:15, 36:20, 58:15, 64:8, 71:1, 79:3
Harrison [1] - 46:12
hate [1] - 7:18
hear [4] - 9:4, 21:12, 22:24, 23:19
heard [2] - 36:13, 65:14
Hearing [1] - 1:6
hearing [1] - 63:10
HEARING [1] - 1:10
heart [1] - 60:12
heavily [1] - 40:24
height [28] - 15:18, 15:20, 16:6, 16:10, 16:16, 16:21, 16:23, 17:2, 17:13, 17:22, 18:1, 18:3, 18:5, 18:12, 24:17, 44:19, 44:21, 45:1, 45:3, 46:3, 46:15, 46:17, 50:20, 65:19, 66:1, 67:3
heights [2] - 11:6, 18:2
held [2] - 57:15, 58:23
help [3] - 5:6, 71:11, 71:13
helpful [2] - 45:23, 68:1
herein [1] - 61:15
higher [3] - 17:1, 18:5, 18:12
himself [1] - 46:11
hip [1] - 63:20
history [23] - 11:9, 11:24, 12:7, 12:19, 12:24, 14:24, 16:14, 25:5, 25:18, 30:6, 30:7, 33:10, 38:16, 39:4, 39:9, 39:16, 40:2, 51:5, 64:18, 65:8, 65:21, 67:13
holding [2] - 37:2, 37:4, 57:2
holds [1] - 77:11
Honor [100] - 4:7, 4:12, 4:15, 4:23, 5:19, 5:23, 6:11, 6:17, 7:9, 7:12, 7:15, 7:18, 8:5, 8:9, 8:18, 8:25, 9:9,

10:2, 10:6, 10:14, 10:21, 13:8, 15:23, 20:19, 21:10, 21:13, 22:6, 23:20, 24:12, 24:13, 24:19, 24:22, 26:1, 27:1, 27:9, 27:20, 27:25, 28:24, 31:3, 31:11, 34:7, 34:17, 34:25, 36:11, 37:10, 40:18, 41:3, 41:20, 41:25, 42:1, 43:1, 43:7, 43:21, 44:8, 44:11, 44:17, 45:9, 46:2, 47:2, 47:10, 47:21, 48:20, 48:23, 50:12, 50:17, 51:14, 51:20, 52:12, 52:17, 53:1, 56:12, 58:4, 58:25, 59:15, 60:18, 60:23, 61:21, 62:4, 62:19, 63:6, 63:13, 63:19, 66:15, 66:18, 67:23, 68:9, 68:13, 68:17, 69:14, 69:17, 69:24, 70:4, 72:5, 72:8, 72:25, 73:11, 74:2, 74:5, 74:18, 75:24

**HONORABLE** [1] - 1:10

**house** [4] - 13:20, 76:11, 76:14

**houses** [2] - 14:1, 76:15

**Hungry** [1] - 76:25

**husband** [1] - 77:7

**I**

**identical** [1] - 16:21

**identified** [2] - 26:22, 61:25

**identify** [1] - 61:24

**identities** [1] - 4:6

**imagine** [2] - 25:15, 36:1

**immeasurable** [1] - 49:21

**immediately** [1] - 54:17

**impact** [3] - 29:2, 35:4, 35:6

**impermissibly** [4] - 15:7, 15:15, 18:8, 20:12

**impervious** [8] - 9:22, 9:23, 9:24, 12:2, 32:12, 40:9, 40:11, 65:4

**important** [1] - 40:1

**improper** [2] - 8:24, 21:5

**impurities** [2] - 52:9, 52:11

**IN** [1] - 1:21

**inappropriate** [1] - 7:23

**INC** [1] - 1:7

**inclined** [4] - 53:25, 54:21, 55:13, 74:5

**include** [1] - 12:1

**included** [4] - 28:10, 28:21, 42:4, 42:8

**includes** [4] - 5:3, 11:6, 14:24, 28:4

**including** [4] - 12:2, 46:6, 60:8, 70:16

**inclusion** [1] - 52:8

**inconsistency** [1] - 55:20

**incorporate** [1] - 61:14

**incorporated** [1] - 61:15

**incorrectly** [1] - 60:1

**increased** [1] - 29:12

**indefinite** [21] - 19:4, 19:11, 19:14, 19:20, 20:9, 20:25, 21:4, 46:22, 53:4, 53:6, 53:9, 53:11, 53:20, 57:2, 57:7, 57:9, 57:24, 58:11, 61:6, 62:24

**indefiniteness** [6] - 21:7, 57:11, 57:14, 58:23, 67:9

**independently** [2] - 75:10, 75:11

**indestructible** [1] - 29:3

**Indiana** [1] - 77:15

**Indianapolis** [2] - 1:21, 77:15

**indicating** [1] - 38:1

**indication** [1] - 34:25

**individual** [3] - 22:5, 57:4, 57:21

**indulgence** [1] - 8:19

**inexpensive** [1] - 71:9

**inflicted** [1] - 72:17

**informal** [1] - 71:20

**infringe** [5] - 32:23, 33:17, 33:19, 35:11, 44:1

**infringed** [2] - 7:24, 60:13

**infringement** [13] - 4:25, 8:14, 8:21, 9:17, 11:9, 26:24, 27:3, 44:7, 44:11, 57:6, 57:23, 73:14, 73:21

**infringes** [1] - 43:3

**infringing** [8] - 7:21, 8:5, 8:22, 8:23, 28:3, 28:10, 29:21, 40:17

**initial** [1] - 22:21

**inserted** [1] - 31:1

**inside** [3] - 26:12, 29:5, 29:6

**instance** [4] - 26:21, 27:4, 45:10, 46:1

**instructive** [1] - 57:1

**intend** [1] - 23:3

**intended** [3] - 10:24, 19:9, 67:13

**intent** [1] - 29:22

**interesting** [3] - 38:15, 61:20, 77:13

**intermediate** [3] - 11:12, 65:1, 65:3

**interpret** [1] - 19:20, 65:17

**interpretation** [9] - 16:8, 18:22, 19:12, 25:4, 25:6, 25:19, 29:18, 34:2, 62:24

**interpretations** [1] - 12:18

**interpreted** [3] - 5:4, 11:16, 52:7

**interpreting** [5] - 13:7, 13:23, 27:10, 52:11, 64:13

**introduce** [1] - 4:9

**introductions** [1] - 4:5

**invention** [27] - 5:3, 8:24, 10:22, 11:4, 11:16, 12:5, 12:13, 12:23, 22:11, 22:14, 24:23, 26:23, 27:16, 28:5, 28:21, 29:8, 29:22, 30:1, 30:22, 32:2, 32:3, 33:8, 33:24, 36:8, 40:12, 45:11, 45:20

**inventors** [4] - 12:1, 12:4, 27:14, 30:7

**invite** [2] - 4:5, 6:3

**involved** [1] - 72:19

**irregular** [1] - 50:10

**irregularly** [2] - 20:5, 20:18

**issue** [35] - 5:9, 8:12, 9:21, 11:9, 12:22, 13:10, 14:9, 15:17, 18:16, 19:23, 20:19, 20:20, 37:16, 38:16, 46:21, 46:23, 48:21, 51:18, 53:3, 54:13, 55:15, 55:17, 55:19, 55:20, 57:12, 58:24, 58:25, 64:9, 65:16, 67:7, 71:17, 73:17, 75:15

**issued** [4] - 42:4, 42:10, 60:16, 61:9

**issues** [7] - 43:13, 54:9, 57:14, 64:7, 68:20, 71:12, 79:3

**issuing** [1] - 12:25

**item** [1] - 51:19

**Items** [1] - 9:6

**items** [1] - 5:3

**iterations** [1] - 54:13

**itself** [7] - 11:18, 14:22, 29:8, 42:7, 44:1, 53:15, 65:8

**J**

**Jamestown** [5] - 1:14, 76:5, 76:6, 76:20, 77:6

**January** [1] - 77:12

**job** [4] - 56:14, 70:9, 71:12, 73:24

**John** [2] - 1:23, 4:15

**Jones** [1] - 73:4

**JUDGE** [1] - 1:11

**judge** [2] - 69:4, 75:14, 78:25

**Judge** [4] - 33:15, 35:9, 72:15, 73:4

**jump** [1] - 19:17

**June** [1] - 68:5

**jurisdiction** [1] - 73:2

**K**

**keep** [3] - 29:6, 71:6, 72:14

**keeps** [4] - 14:16, 31:13, 32:17, 34:13

**key** [1] - 38:17

**kind** [4] - 41:22, 57:19, 61:19, 68:18

**kit** [4] - 27:1, 27:4, 28:9, 52:18

**knowledge** [1] - 53:18

**known** [1] - 15:5

**knows** [1] - 79:2

**L**

**language** [41] - 12:3, 14:10, 14:14, 15:18, 15:24, 18:17, 20:20, 21:1, 23:22, 25:6, 25:14, 27:7, 27:11, 28:2, 28:7, 28:14, 33:7, 34:3, 36:6, 38:5, 38:12, 38:20, 38:23, 39:2, 39:9, 39:11, 39:18, 39:22, 42:5, 43:9, 44:24, 45:24, 46:10, 46:24, 52:18, 56:14, 58:3, 58:12, 64:10, 64:19, 67:13

**larger** [26] - 15:21, 16:5, 16:10, 16:16, 16:17, 16:20, 16:23, 17:2, 17:6, 17:14, 17:21, 17:23, 18:2, 18:6, 18:13, 24:18, 44:22, 45:4, 46:3, 46:18, 47:12, 49:16, 67:4

**largest** [1] - 45:7

**last** [7] - 24:10, 39:25, 59:2, 64:6, 65:15, 68:12, 76:5

**Law** [1] - 1:13

**law** [14] - 25:7, 25:9, 25:10, 25:13, 25:20, 25:21, 27:12, 36:18, 37:15, 63:3, 71:2, 72:16, 74:5, 79:2

**layer** [67] - 9:22, 9:23, 9:24, 10:6, 10:7, 11:2, 11:12, 11:19, 12:2, 12:12, 12:22, 18:18, 22:12, 23:1, 23:4, 23:5, 23:6, 23:7, 23:23, 23:24, 28:19, 28:20, 29:20, 30:11, 30:12, 30:13, 30:15, 30:16, 30:17, 30:18, 31:12, 31:13, 31:14, 31:15, 32:9, 32:10, 32:22, 33:13, 33:16, 33:18, 33:19, 33:21, 33:23, 34:5, 34:11, 34:14, 34:15, 35:10, 35:14, 35:17, 38:5, 38:6, 38:13, 38:14, 40:6, 40:9, 40:11, 40:19, 64:13, 65:3, 65:4, 65:5, 65:6, 65:11

**layered** [5] - 7:3, 39:12,

39:19, 40:3, 64:21

**layers** [27] - 5:12, 6:25, 7:1, 7:13, 9:10, 11:18, 12:2, 12:6, 12:9, 12:13, 12:14, 12:23, 29:17, 30:8, 30:11, 33:2, 33:8, 38:9, 38:13, 40:17, 64:10, 64:14, 64:24, 65:1, 65:9, 65:12

**laymen's** [1] - 13:25
**learn** [2] - 25:10
**learned** [1] - 79:4
**least** [12] - 14:11, 15:19, 15:21, 36:25, 39:23, 44:20, 44:22, 46:16, 46:18, 48:15, 55:16, 57:1
**leave** [4] - 65:13, 75:21, 75:22, 79:1
**left** [4] - 54:25, 72:20, 76:10, 78:18
**left-hand** [1] - 54:25
**legal** [3] - 19:25, 36:18, 74:12
**less** [1] - 20:22
**letter** [1] - 25:7
**license** [4] - 8:10, 8:21, 40:20, 63:5
**licensed** [1] - 60:7
**licensing** [4] - 41:16, 42:12, 43:12, 60:11
**light** [8] - 7:23, 18:9, 31:22, 56:21, 56:22, 64:12, 64:23
**lighting** [1] - 32:22
**lights** [2] - 32:20, 32:21
**likely** [2] - 62:25, 71:25
**limit** [1] - 16:24
**limitation** [9] - 14:25, 34:18, 44:18, 44:25, 45:6, 46:14, 51:3, 54:12, 58:16
**limitations** [5] - 20:12, 24:4, 24:5, 24:8, 44:17
**limited** [7] - 7:20, 11:17, 12:11, 12:22, 14:20, 29:16, 70:20
**limiting** [1] - 30:8
**limits** [5] - 16:14, 20:16, 27:6, 29:25
**line** [1] - 61:12
**lines** [1] - 50:9
**litigation** [1] - 75:8
**live** [2] - 69:2, 76:5
**Liz** [1] - 72:20
**LLP** [2] - 1:19, 1:22
**local** [1] - 4:8
**locking** [1] - 19:16
**look** [24] - 5:8, 5:11, 5:17, 6:4, 7:15, 8:13, 8:16, 9:2, 15:9, 15:12, 16:3, 22:19, 30:5, 37:21, 39:4, 46:5, 47:5, 49:3, 53:17, 56:7, 58:1, 58:2, 62:11, 71:9

**looking** [7] - 12:15, 25:5, 29:15, 73:10, 73:12, 77:3, 77:5
**looks** [1] - 78:11
**LOUISE** [1] - 1:10
**love** [2] - 10:20, 58:2
**lower** [9] - 5:20, 18:17, 23:5, 23:23, 33:22, 38:6, 38:14, 65:5
**lying** [1] - 13:18

## M

**ma'am** [1] - 78:22
**magistrate** [2] - 69:4, 75:14
**major** [2] - 18:17, 23:5
**Malpass** [1] - 64:23
**manufacture** [4] - 42:6, 42:10, 42:11, 61:13
**manufactured** [3] - 5:25, 8:10, 42:21
**manufacturing** [4] - 6:2, 11:11, 17:25, 60:6
**mark** [1] - 72:13
**marked** [1] - 61:11
**market** [2] - 42:19, 77:8
**marketing** [1] - 78:24
**Markman** [1] - 44:9
**material** [11] - 11:3, 11:5, 29:3, 34:21, 35:5, 35:16, 35:19, 35:22, 53:19, 53:25
**materials** [4] - 28:11, 52:8, 55:18, 64:25
**matter** [5] - 4:3, 25:22, 37:15, 46:20, 73:13
**McDonald's** [1] - 78:6
**McGurk** [1] - 2:1
**mean** [15] - 11:17, 13:24, 14:5, 14:6, 31:25, 32:18, 33:19, 37:14, 39:22, 51:6, 53:6, 53:8, 58:14, 63:2
**meaning** [7] - 13:15, 13:16, 14:5, 14:8, 20:1, 20:2, 20:9
**meaningless** [1] - 67:21
**means** [15] - 13:4, 13:11, 13:17, 14:7, 14:14, 14:18, 20:4, 23:7, 23:25, 34:3, 36:15, 39:15, 53:11, 63:4
**measurable** [22] - 14:21, 14:25, 15:6, 15:16, 20:10, 20:15, 20:17, 48:18, 48:22, 49:1, 49:7, 49:9, 49:10, 49:18, 50:10, 50:15, 51:2, 51:6, 51:15
**measure** [4] - 15:11, 18:20, 67:8, 67:10
**measured** [1] - 49:14
**measurements** [1] - 55:25
**measures** [2] - 55:22, 59:13

**measuring** [2] - 51:8, 56:6
**mechanical** [1] - 2:23
**mediation** [2] - 70:17, 70:21
**mediator** [4] - 69:5, 69:13, 70:3, 70:9
**meet** [2] - 24:8, 58:15
**meeting** [2] - 77:11, 77:18
**memento** [1] - 72:14
**memorable** [1] - 72:18
**mentioned** [4] - 21:6, 22:12, 55:9, 60:15
**merely** [1] - 34:8
**Meridian** [1] - 1:20
**met** [3] - 58:8, 58:20
**metal** [2] - 29:1, 35:18
**method** [11] - 42:11, 53:14, 53:15, 53:24, 55:7, 55:17, 56:2, 56:3, 56:6, 59:5, 60:17
**methodology** [6] - 57:4, 57:21, 58:5, 58:7, 58:10, 58:18
**microscope** [1] - 50:4
**Middle** [1] - 2:1
**middle** [2] - 32:8, 34:5
**middlemen** [1] - 42:22
**might** [8] - 22:4, 31:17, 34:4, 50:2, 50:14, 70:20, 77:3
**MILGATE** [60] - 5:19, 6:22, 7:18, 8:2, 8:18, 21:13, 21:18, 21:22, 22:9, 26:1, 26:4, 26:7, 26:10, 26:14, 27:22, 36:11, 37:4, 37:10, 37:20, 40:15, 40:18, 41:3, 41:6, 41:9, 41:15, 41:24, 43:21, 44:8, 44:16, 47:10, 47:21, 48:8, 48:20, 48:23, 49:8, 49:11, 49:22, 50:12, 53:10, 53:23, 54:6, 57:10, 58:2, 59:15, 61:21, 62:4, 63:8, 63:13, 66:7, 66:23, 69:9, 70:4, 72:25, 73:11, 74:1, 74:11, 75:22, 77:15, 77:18, 78:9
**Milgate** [2] - 1:20, 4:18
**mimic** [1] - 56:16
**minimum** [2] - 61:16
**minute** [1] - 65:24
**misreading** [1] - 57:25
**misrepresenting** [1] - 42:16
**miss** [2] - 62:17, 63:21
**missed** [1] - 53:2
**misspeaking** [1] - 51:21
**misspoke** [1] - 27:20
**mode** [1] - 62:15
**moment** [1] - 54:10
**money** [3] - 70:1, 71:4, 71:7
**morning** [4] - 4:2, 4:7, 4:12, 4:15

**morph** [1] - 50:1
**most** [3] - 13:6, 25:8, 72:18
**mother** [1] - 77:2
**motion** [1] - 73:1
**mouthful** [1] - 24:14
**move** [1] - 13:8
**moved** [1] - 10:16
**MOYE** [3] - 4:15, 77:21, 77:25
**Moye** [2] - 1:23, 4:16
**MR** [83] - 4:7, 4:12, 4:15, 4:22, 5:22, 6:7, 6:10, 6:14, 6:17, 6:21, 7:4, 7:8, 7:12, 7:17, 8:4, 8:25, 9:8, 9:19, 10:1, 10:5, 10:11, 10:14, 10:16, 13:10, 17:4, 17:16, 21:9, 26:12, 27:9, 27:24, 31:3, 32:10, 33:18, 34:7, 34:16, 34:24, 35:4, 35:15, 41:20, 42:1, 42:3, 43:1, 43:3, 43:7, 43:16, 50:17, 51:9, 52:16, 53:1, 59:18, 60:20, 60:23, 61:1, 62:19, 63:19, 64:4, 66:15, 66:18, 67:23, 68:9, 68:13, 68:17, 69:17, 69:23, 72:4, 72:8, 72:14, 72:15, 74:18, 75:24, 76:4, 76:8, 76:11, 76:14, 76:19, 76:24, 77:5, 77:10, 77:21, 77:25, 78:5, 78:11, 78:14
**MS** [60] - 5:19, 6:22, 7:18, 8:2, 8:18, 21:13, 21:18, 21:22, 22:9, 26:1, 26:4, 26:7, 26:10, 26:14, 27:22, 36:11, 37:4, 37:10, 37:20, 40:15, 40:18, 41:3, 41:6, 41:9, 41:15, 41:24, 43:21, 44:8, 44:16, 47:10, 47:21, 48:8, 48:20, 48:23, 49:8, 49:11, 49:22, 50:12, 53:10, 53:23, 54:6, 57:10, 58:2, 59:15, 61:21, 62:4, 63:8, 63:13, 66:7, 66:23, 69:9, 70:4, 72:25, 73:11, 74:1, 74:11, 75:22, 77:15, 77:18, 78:9
**Multilayer** [1] - 36:21
**multiple** [11] - 12:9, 12:12, 12:13, 12:22, 14:19, 30:10, 30:11, 64:13, 65:9, 65:12, 67:7
**must** [9] - 13:24, 16:9, 16:15, 17:1, 17:13, 18:11, 18:12, 20:15, 65:19

## N

**N-o-r-i-a-n** [1] - 27:23
**nail** [1] - 37:18
**names** [1] - 46:11

**narrow** [9] - 18:8, 24:23, 31:19, 40:8, 45:10, 45:14, 45:20, 51:17, 66:22

**narrowed** [5] - 23:12, 38:18, 39:5, 39:7, 39:18

**narrows** [3] - 15:7, 15:15, 33:7

**Nature** [1] - 27:18

**nature** [1] - 75:16

**Nautilus** [1] - 58:13

**NC** [2] - 1:18, 2:2

**NE** [1] - 1:23

**near** [2] - 13:18, 14:7

**necessarily** [2] - 13:19, 13:24

**necessary** [4] - 63:9, 70:21, 73:24, 75:1

**need** [12] - 5:4, 15:11, 31:24, 35:18, 37:15, 49:14, 63:5, 71:15, 75:14, 76:22, 78:2, 78:7

**needs** [3] - 53:5, 75:19, 78:25

**neighbor's** [1] - 13:20

**neighborhood** [1] - 76:5

**never** [2] - 34:25, 70:24

**new** [4] - 19:15, 30:15, 30:16, 36:13

**New** [2] - 1:5, 2:2

**next** [8] - 14:9, 15:17, 18:16, 19:23, 38:21, 43:14, 43:17, 70:15

**nice** [1] - 76:23

**non** [12] - 11:14, 11:19, 14:16, 17:12, 22:23, 28:19, 29:13, 31:16, 33:20, 33:22, 38:12, 61:13

**non-skid** [9] - 11:14, 14:16, 22:23, 28:19, 29:13, 31:16, 33:20, 38:12, 61:13

**non-slip** [3] - 11:19, 17:12, 33:22

**Norian** [9] - 27:23, 29:24, 30:24, 31:5, 31:22, 32:24, 33:6, 52:16, 52:20

**NORTH** [1] - 1:1

**North** [2] - 1:5, 4:16

**notereading** [1] - 2:24

**notes** [1] - 26:19

**nothing** [17] - 14:22, 14:23, 14:24, 16:12, 16:13, 16:14, 20:13, 20:16, 29:17, 29:21, 32:6, 65:7, 65:8, 72:4, 75:2, 75:5, 75:11

**notice** [1] - 25:15

**November** [1] - 61:24

**nowhere** [3] - 51:3, 51:4

**Number** [1] - 68:5

**number** [16] - 4:25, 34:17, 34:18, 45:15, 47:8, 50:21, 60:1, 60:2, 61:4, 61:6, 63:5, 74:18, 74:20, 74:24, 75:3, 75:5

**numbers** [1] - 26:3

# O

**objection** [1] - 7:19

**objections** [1] - 30:9

**obtain** [1] - 47:16

**obviously** [5] - 13:3, 35:25, 40:23, 73:20, 74:1

**occur** [1] - 65:23

**OF** [2] - 1:1, 1:10

**of'** [3] - 36:24, 52:5, 52:7

**offering** [1] - 60:21

**Office** [9] - 12:1, 12:4, 12:21, 22:18, 23:16, 27:14, 42:9, 46:5

**old** [3] - 35:20, 36:25, 77:18

**once** [2] - 11:20, 42:11

**one** [76] - 4:22, 5:1, 5:10, 5:16, 5:21, 6:12, 6:15, 6:25, 7:19, 8:19, 10:18, 10:25, 11:25, 12:5, 15:3, 15:8, 15:12, 15:13, 16:3, 17:12, 17:19, 17:20, 17:23, 18:2, 18:3, 18:11, 18:12, 21:7, 23:3, 24:25, 25:1, 25:8, 26:21, 28:25, 29:2, 29:3, 29:19, 30:4, 34:17, 44:1, 45:7, 47:11, 47:22, 48:12, 49:5, 49:15, 49:18, 50:21, 51:19, 51:23, 52:15, 54:16, 56:17, 58:8, 58:11, 59:10, 60:2, 61:4, 62:12, 64:4, 66:16, 66:17, 67:10, 67:18, 67:19, 67:20, 70:3, 71:25, 74:18, 75:4, 78:18

**ones** [4] - 18:5, 45:3, 47:12, 54:12

**open** [3] - 37:7, 38:2, 78:17

**open-ended** [1] - 37:7

**opened** [2] - 5:11, 25:20

**opening** [11] - 4:20, 7:6, 9:4, 12:11, 22:1, 31:11, 37:22, 44:14, 59:6, 59:21, 64:15

**opinion** [6] - 33:16, 73:6, 73:13, 73:16, 73:18, 73:19

**opinions** [2] - 48:25, 73:6

**opportunity** [4] - 63:10, 63:12, 69:3, 74:6

**opposed** [2] - 42:17, 52:14

**opposing** [2] - 51:22, 61:10

**opposite** [2] - 16:19, 39:17

**oral** [1] - 73:8

**orange** [3] - 5:24, 6:1, 6:13

**order** [11] - 5:6, 8:6, 14:1,

17:10, 20:15, 23:14, 24:15, 29:17, 63:21, 68:24, 70:13

**ordinarily** [2] - 52:9, 58:18

**ordinary** [21] - 11:1, 13:14, 13:16, 14:4, 14:8, 15:4, 15:11, 20:1, 20:2, 25:16, 39:2, 49:18, 54:17, 56:17, 58:9, 58:11, 59:10, 60:4, 61:6, 62:12, 74:12

**Ordinary** [1] - 61:16

**originally** [1] - 8:9

**ornament** [1] - 72:18

**otherwise** [1] - 27:6

**outlined** [1] - 38:16

**outside** [7] - 28:12, 28:17, 30:14, 31:7, 32:1, 33:3, 46:25

**outstanding** [2] - 43:10, 73:1

**overall** [1] - 44:24

**owner** [1] - 78:19

# P

**P.A** [1] - 1:16

**p.m** [1] - 79:7

**packaged** [1] - 6:15

**pad** [3] - 11:15, 22:24, 38:13

**page** [3] - 21:24, 45:25, 64:16

**Page** [1] - 3:4

**pages** [3] - 21:21, 21:23, 22:7

**paid** [1] - 40:20

**paint** [4] - 10:9, 34:13, 34:20, 35:2

**painting** [1] - 10:24

**paper** [6] - 53:16, 53:22, 54:16, 55:18, 56:5, 61:18

**parameters** [3] - 24:6, 24:7, 54:8

**pardon** [1] - 58:22

**part** [9] - 7:4, 15:8, 28:4, 28:21, 34:17, 47:7, 53:15, 57:14, 68:6

**partial** [1] - 78:6

**particular** [2] - 19:10, 66:6

**parties** [3] - 49:13, 57:3, 74:24

**party** [1] - 69:4

**past** [1] - 40:20

**Patent** [13] - 4:10, 12:1, 12:4, 12:21, 22:17, 23:15, 23:16, 27:14, 42:9, 46:5, 52:6, 64:23, 68:5

**patent** [57] - 4:25, 5:3, 8:10, 8:12, 9:21, 10:23, 11:10, 12:17, 12:25, 13:4, 13:7,

14:18, 14:22, 15:23, 16:1, 16:18, 23:13, 23:14, 24:15, 24:19, 25:9, 25:10, 25:13, 27:10, 28:13, 28:22, 38:12, 40:4, 40:5, 42:4, 42:6, 42:8, 42:10, 43:4, 45:17, 46:10, 47:7, 47:16, 54:24, 55:5, 55:21, 57:7, 57:24, 59:5, 60:8, 60:15, 61:9, 61:12, 62:3, 62:5, 62:9, 63:2, 64:24, 65:8, 67:1, 75:8

**patentable** [3] - 23:17, 24:24, 47:18

**patented** [2] - 22:20, 28:24

**Peachtree** [1] - 1:23

**people** [1] - 5:4

**percent** [1] - 37:11

**perhaps** [6] - 5:6, 35:9, 35:22, 51:22, 63:11, 72:11

**perimeter** [7] - 14:21, 15:6, 15:16, 20:10, 20:17, 48:19, 50:15

**Person** [1] - 61:16

**person** [4] - 15:11, 25:16, 60:4, 61:6

**phase** [2] - 43:14, 43:17

**phrase** [1] - 36:23

**pick** [2] - 17:11, 67:18

**picture** [1] - 55:1

**Pie** [1] - 77:6

**piece** [2] - 54:4, 72:7

**pieces** [1] - 53:16

**pile** [1] - 42:21

**pincite** [1] - 64:17

**pinpoint** [1] - 64:17

**pithy** [1] - 51:14

**pizza** [1] - 77:5

**place** [3] - 30:12, 76:23, 78:17

**placed** [2] - 18:19, 55:4

**placing** [1] - 53:25

**plain** [4] - 25:6, 25:14, 37:22, 39:2

**plaintiff** [9] - 4:21, 21:17, 23:12, 33:15, 40:17, 50:13, 59:6, 72:2, 73:7

**Plaintiff** [1] - 1:5

**Plaintiff's** [8] - 3:6, 3:8, 60:22, 60:24, 68:4, 72:7, 72:9, 72:13

**plaintiff's** [4] - 25:13, 49:3, 64:15, 73:7

**Plaintiffs** [1] - 1:13

**plaintiffs** [9] - 4:6, 9:20, 22:10, 22:22, 24:23, 39:5, 39:14, 40:10, 59:3

**plaintiffs'** [3] - 39:21, 45:8, 54:24

**plane** [3] - 53:25, 54:21, 77:16

**plastic** [3] - 10:8, 31:14, 32:10
**plate** [1] - 63:5
**pleasure** [1] - 4:13
**plural** [1] - 45:1
**Plus** [7] - 6:24, 40:14, 40:24, 41:11, 42:18, 43:9, 48:2
**ply** [6] - 7:25, 8:1, 8:3, 9:18, 10:3
**PO** [1] - 1:17
**Point** [1] - 76:8
**point** [19] - 5:23, 22:6, 24:22, 24:25, 38:24, 39:25, 44:1, 44:3, 49:12, 51:13, 53:9, 56:19, 59:2, 60:20, 64:6, 66:24, 70:18, 71:15, 74:2
**pointed** [5] - 12:9, 30:5, 47:5, 64:11, 64:16
**points** [5] - 38:17, 43:22, 59:9, 63:22, 64:1
**Pollack** [2] - 1:20, 4:18
**POLLACK** [60] - 5:19, 6:22, 7:18, 8:2, 8:18, 21:13, 21:18, 21:22, 22:9, 26:1, 26:4, 26:7, 26:10, 26:14, 27:22, 36:11, 37:4, 37:10, 37:20, 40:15, 40:18, 41:3, 41:6, 41:9, 41:15, 41:24, 43:21, 44:8, 44:16, 47:10, 47:21, 48:8, 48:20, 48:23, 49:8, 49:11, 49:22, 50:12, 53:10, 53:23, 54:6, 57:10, 58:2, 59:15, 61:21, 62:4, 63:8, 63:13, 66:7, 66:23, 69:9, 70:4, 72:25, 73:11, 74:1, 74:11, 75:22, 77:15, 77:18, 78:9
**Pollack-Milgate** [2] - 1:20, 4:18
**POLLACK-MILGATE** [60] - 5:19, 6:22, 7:18, 8:2, 8:18, 21:13, 21:18, 21:22, 22:9, 26:1, 26:4, 26:7, 26:10, 26:14, 27:22, 36:11, 37:4, 37:10, 37:20, 40:15, 40:18, 41:3, 41:6, 41:9, 41:15, 41:24, 43:21, 44:8, 44:16, 47:10, 47:21, 48:8, 48:20, 48:23, 49:8, 49:11, 49:22, 50:12, 53:10, 53:23, 54:6, 57:10, 58:2, 59:15, 61:21, 62:4, 63:8, 63:13, 66:7, 66:23, 69:9, 70:4, 72:25, 73:11, 74:1, 74:11, 75:22, 77:15, 77:18, 78:9
**position** [12] - 17:4, 17:9, 19:3, 19:8, 20:11, 20:24, 21:1, 33:4, 49:11, 69:18, 74:3, 74:16

**positions** [1] - 74:14
**possession** [1] - 62:21
**possibly** [1] - 10:11
**potentially** [6] - 22:4, 28:3, 50:4, 62:6, 70:6, 74:21
**pour** [1] - 34:19
**practiced** [1] - 77:21
**practicing** [1] - 75:8
**pre** [1] - 6:12
**preamble** [2] - 39:11, 64:19
**precise** [2] - 39:17, 46:10
**prepared** [1] - 62:1
**presentation** [1] - 21:14
**presented** [1] - 71:13
**Presidio** [1] - 56:24
**presumably** [1] - 28:6
**presumption** [1] - 36:22
**pretty** [1] - 36:1
**previous** [1] - 45:21
**primarily** [1] - 70:17
**privilege** [1] - 73:15
**problem** [8] - 22:16, 51:1, 52:21, 53:19, 54:19, 54:20, 58:8, 67:9
**problematic** [1] - 10:19
**problems** [1] - 45:7
**procedure** [8] - 18:16, 18:24, 19:2, 19:9, 21:3, 34:8, 56:4
**procedures** [2] - 61:15, 68:7
**Proceedings** [1] - 2:23
**process** [9] - 6:3, 30:3, 37:13, 37:14, 44:9, 54:21, 57:15, 61:23, 71:3
**processes** [1] - 17:25
**produced** [2] - 2:24, 6:16
**product** [23] - 6:23, 7:21, 7:24, 19:10, 30:9, 40:4, 40:19, 40:25, 41:12, 42:6, 42:7, 42:8, 43:24, 44:5, 44:6, 44:12, 44:15, 46:25, 48:7, 48:9, 60:12, 65:10
**production** [1] - 60:16
**products** [8] - 6:25, 8:5, 8:20, 8:22, 40:21, 45:5, 48:2, 60:17
**projecting** [6] - 14:11, 15:2, 46:15, 48:14, 48:18, 49:4
**proofing** [1] - 28:25
**proper** [8] - 19:18, 44:9, 57:3, 57:20, 59:24, 62:8, 76:6, 76:21
**properly** [2] - 17:10, 75:3
**properties** [4] - 31:16, 32:23, 33:20, 35:5
**proportion** [1] - 67:11
**proposals** [1] - 70:14
**proposed** [7] - 13:18, 15:1, 15:25, 19:3, 20:4, 20:8,

69:16
**proposition** [2] - 36:19, 74:4
**propositions** [1] - 25:8
**prosecuted** [1] - 63:3
**prosecution** [28] - 11:9, 11:24, 12:7, 12:17, 12:19, 12:24, 14:24, 16:14, 23:11, 25:5, 25:18, 30:6, 30:8, 33:10, 38:16, 39:4, 39:9, 39:16, 40:2, 47:14, 51:4, 61:9, 64:18, 65:7, 65:21, 67:12
**protect** [1] - 10:25
**protective** [3] - 11:14, 22:23, 38:12
**provide** [4] - 4:23, 10:25, 37:15, 74:7
**provided** [2] - 20:3, 20:6
**PTAB** [1] - 52:11
**publicly** [2] - 18:25, 59:23
**Pug** [1] - 76:25
**pulled** [1] - 58:18
**purely** [1] - 9:11
**purpose** [2] - 8:15, 63:1
**purposes** [2] - 10:24, 35:17, 47:23
**push** [1] - 70:19
**Put** [6] - 6:24, 40:14, 40:16, 40:24, 41:2, 41:11, 41:23, 42:17, 42:18, 42:25, 43:9, 43:24, 43:25, 45:5, 48:1
**put** [8] - 4:6, 29:19, 32:11, 44:10, 49:9, 69:1, 70:16, 72:12
**puts** [1] - 46:25
**putting** [3] - 25:15, 44:4, 74:14

## Q

**questions** [2] - 21:10, 21:11
**quick** [2] - 48:11, 63:25
**quickly** [5] - 13:13, 48:4, 51:20, 64:6, 64:17
**quite** [1] - 53:6
**quoted** [1] - 38:11

## R

**raise** [2] - 57:13, 59:2
**raised** [2] - 59:9, 62:8
**Raleigh** [4] - 1:18, 77:22, 77:25, 78:3
**random** [1] - 67:19
**rate** [3] - 55:11, 55:12

**rather** [1] - 19:13
**reach** [3] - 34:11, 48:4, 48:10
**reaction** [1] - 31:6
**read** [13] - 8:11, 17:9, 18:9, 20:12, 25:10, 33:23, 36:22, 39:16, 56:20, 56:21, 58:4, 59:7
**readily** [1] - 15:10
**reading** [3] - 7:23, 37:22, 56:16
**reads** [6] - 17:16, 17:17, 18:14, 18:15, 25:17, 67:24
**ready** [1] - 70:10
**reaffirmed** [2] - 36:25, 38:4
**reagent** [1] - 31:6
**real** [2] - 11:3, 38:24
**really** [19] - 10:16, 23:8, 38:15, 39:15, 39:21, 40:1, 40:25, 45:24, 49:1, 51:19, 55:16, 57:8, 59:3, 60:3, 63:25, 64:6, 70:20, 73:10, 73:23
**reason** [8] - 7:14, 13:14, 42:14, 42:15, 48:1, 51:12, 61:8, 77:10
**reasonable** [1] - 58:13
**reasons** [3] - 15:8, 33:5, 60:2
**received** [2] - 59:8, 70:11
**recitation** [3] - 39:12, 60:8, 64:20
**recited** [1] - 52:9
**record** [6] - 4:6, 6:23, 7:2, 15:10, 34:17, 35:1
**recorded** [1] - 2:23
**refer** [2] - 22:7, 45:9
**reference** [2] - 43:18, 61:14, 68:6
**referred** [3] - 26:17, 57:18, 75:15
**referring** [3] - 21:14, 27:18, 51:24
**refers** [1] - 44:25
**reflect** [2] - 71:8, 72:11
**regard** [3] - 44:15, 50:9, 65:15
**regardless** [1] - 11:21
**regards** [6] - 11:13, 12:8, 12:21, 30:10, 42:17, 65:18
**rejected** [3] - 38:20, 42:9, 64:22
**rejection** [1] - 45:19
**rejections** [5] - 12:8, 12:12, 12:25, 33:12
**related** [7] - 27:16, 32:2, 40:11, 41:10, 42:25, 73:14, 73:16
**relating** [1] - 73:8
**relation** [1] - 40:1

**relationships** [1] - 47:9
**relative** [1] - 17:19
**relevant** [1] - 7:22
**relied** [1] - 73:20
**relying** [2] - 8:6, 12:8
**remain** [1] - 48:9
**remember** [1] - 26:18
**remind** [3] - 37:2, 43:2, 69:7
**remiss** [1] - 71:7
**renders** [2] - 53:20, 58:10
**repair** [1] - 52:18
**reply** [3] - 12:10, 58:22
**report** [1] - 69:7
**Reporter** [1] - 2:1
**require** [2] - 65:23, 67:18
**required** [5] - 24:23, 45:6, 45:10, 45:14, 45:19
**requiring** [2] - 44:19, 46:14
**resilient** [10] - 18:18, 22:13, 23:5, 38:6, 38:14, 45:16, 50:1, 65:5, 67:21
**resolution** [3] - 48:4, 48:11, 69:1
**resolve** [1] - 58:25
**resolved** [1] - 43:13
**respect** [6] - 22:21, 24:6, 36:15, 44:18, 46:24, 59:9
**respectful** [1] - 71:2
**respectively** [1] - 16:21
**respond** [4] - 36:10, 62:1, 68:23, 75:23
**responded** [1] - 59:3
**response** [5] - 13:1, 45:18, 59:9, 66:5
**responses** [2] - 30:10, 33:12
**responsive** [1] - 75:11
**rest** [1] - 53:25
**restaurant** [2] - 76:2, 78:19
**restriction** [2] - 52:5, 52:6
**result** [2] - 19:2, 48:6
**results** [2] - 21:3, 56:17
**review** [2] - 11:23, 63:20
**revolves** [1] - 10:22
**rewrite** [1] - 56:14
**rightfully** [1] - 72:21
**RMR** [1] - 2:1
**Road** [3] - 1:14, 1:23, 76:5
**road** [2] - 19:19, 71:17
**ROBERT** [1] - 1:4
**rolling** [1] - 71:6
**rubber** [3] - 11:5, 35:17, 65:6
**Rule** [1] - 71:8
**ruling** [2] - 69:20, 75:17
**runs** [1] - 50:24

## S

**safe** [1] - 79:5
**sake** [1] - 5:13
**sales** [1] - 43:11
**Sandra** [2] - 71:23, 72:21
**save** [1] - 71:3
**scenario** [1] - 26:21
**schedule** [1] - 63:16
**scheduling** [1] - 63:23
**scope** [22] - 11:16, 11:22, 13:4, 15:7, 18:8, 28:12, 28:17, 28:21, 28:22, 30:14, 30:23, 31:7, 32:1, 33:3, 36:2, 36:7, 46:25, 49:20, 56:2, 58:19, 62:2, 73:8
**second** [6] - 13:10, 16:6, 39:1, 44:3, 46:22, 54:18
**see** [22] - 5:12, 9:9, 9:11, 15:12, 24:22, 32:8, 32:21, 37:21, 38:21, 39:4, 45:15, 46:2, 46:4, 51:12, 52:22, 55:25, 56:8, 58:5, 62:11, 72:19, 74:9, 77:2
**seeing** [1] - 21:17
**seeking** [2] - 73:15, 73:23
**seem** [1] - 49:12
**sell** [1] - 41:1
**selling** [2] - 11:11, 41:23
**sense** [5] - 22:4, 40:10, 49:24, 56:14, 65:20
**sentence** [1] - 70:16
**serve** [1] - 63:1
**set** [2] - 36:23, 67:14
**settle** [1] - 52:24
**settled** [1] - 25:8
**settlement** [1] - 69:7
**several** [1] - 66:25
**severely** [1] - 51:18
**shape** [6] - 20:10, 20:15, 20:18, 49:22, 50:10, 51:15
**shaped** [2] - 20:5, 20:18
**shapes** [1] - 45:13
**sheet** [2] - 32:22, 35:18
**shooting** [1] - 63:20
**short** [3] - 4:22, 58:3, 63:11
**shorter** [2] - 47:12, 66:17
**show** [1] - 55:6
**shown** [3] - 21:19, 45:22, 54:24
**shows** [6] - 11:24, 28:2, 39:17, 47:6, 55:1, 65:9
**shut** [1] - 64:1
**side** [8] - 29:1, 29:2, 29:3, 30:20, 54:25, 69:2, 75:16
**signaling** [1] - 28:2
**signals** [1] - 27:11
**simply** [5] - 15:1, 20:18, 32:10, 62:20

**Simulation** [1] - 27:18
**single** [8] - 13:6, 18:18, 19:23, 23:23, 23:24, 38:5, 38:6, 38:20
**sit** [4] - 24:25, 48:13, 59:24, 63:8
**sitting** [1] - 42:20
**sized** [2] - 17:19, 65:24
**sizes** [11] - 11:6, 14:12, 14:20, 15:20, 15:22, 17:5, 44:20, 44:22, 45:2, 45:13, 45:15, 46:17, 46:19, 48:16, 48:19, 66:9, 66:11, 66:14
**ski** [1] - 19:17
**skid** [9] - 11:14, 14:16, 22:23, 28:19, 29:13, 31:16, 33:20, 38:12, 61:13
**skill** [11] - 5:4, 25:16, 49:19, 54:17, 56:18, 58:9, 58:11, 59:10, 60:5, 61:7, 62:12
**Skill** [1] - 61:16
**slap** [1] - 35:21
**sled** [5] - 54:22, 55:2, 55:3, 55:6, 55:9
**slide** [16] - 18:19, 20:22, 23:4, 26:2, 26:14, 38:10, 38:11, 38:17, 38:21, 45:9, 45:21, 45:22, 46:9, 54:24, 54:25, 55:25
**Slide** [1] - 39:8
**sliding** [8] - 14:17, 19:16, 31:14, 32:17, 34:10, 55:21, 56:10, 56:11
**slip** [3] - 11:19, 17:12, 33:22
**slope** [1] - 19:17
**small** [3] - 10:19, 24:25, 26:5
**smaller** [25] - 15:19, 16:3, 16:9, 16:15, 16:20, 16:22, 16:25, 17:6, 17:12, 17:20, 17:22, 18:3, 18:4, 18:11, 24:16, 44:19, 45:2, 46:2, 46:16, 47:13, 65:18, 67:2, 67:3, 67:19
**Smith** [1] - 1:16
**soaked** [1] - 35:1
**soaking** [1] - 34:14
**sold** [1] - 42:22
**solely** [1] - 33:13
**solid** [2] - 29:1, 51:15
**someone** [1] - 69:16
**sometimes** [2] - 15:24, 57:15
**somewhere** [1] - 70:10
**soon** [1] - 68:23
**sorry** [6] - 7:8, 26:4, 27:20, 63:19, 67:2
**sort** [4] - 7:10, 48:4, 50:1, 50:5

**sorts** [1] - 46:11
**sought** [2] - 22:20, 22:22
**sound** [1] - 28:25
**soundproof** [1] - 29:3
**soundproofing** [1] - 29:6
**sounds** [2] - 31:19, 41:20
**spaces** [1] - 33:22
**Spanish** [1] - 77:8
**spatula** [1] - 27:3
**speaking** [1] - 51:25
**speaks** [1] - 61:4
**specific** [7] - 21:2, 23:25, 24:7, 35:17, 35:25, 58:17, 77:2
**specifically** [7] - 17:18, 17:24, 52:10, 58:22, 59:20, 73:12, 73:17
**specification** [47] - 14:14, 14:23, 16:2, 16:13, 16:18, 17:17, 17:18, 18:10, 18:15, 18:21, 18:23, 20:14, 20:21, 21:2, 29:4, 32:14, 33:9, 38:8, 40:12, 42:5, 45:12, 46:21, 50:18, 50:19, 51:4, 51:9, 51:11, 53:17, 54:2, 54:5, 54:16, 54:23, 55:1, 55:10, 56:2, 56:16, 56:19, 56:20, 56:22, 58:14, 58:17, 59:7, 66:3, 66:21, 66:24, 67:15, 67:24
**specified** [1] - 23:23
**specify** [4] - 23:25, 24:9, 24:11, 24:16
**specimen** [2] - 55:2
**speedy** [1] - 71:9
**spherical** [1] - 47:7
**spoken** [1] - 53:3
**spoon** [4] - 28:10, 28:12, 30:2, 52:19
**spray** [1] - 29:5
**spraying** [1] - 30:20
**squarely** [1] - 34:1
**St** [1] - 2:1
**stage** [1] - 70:15
**standard** [3] - 19:25, 61:14, 68:7
**start** [4] - 4:5, 4:21, 22:9, 78:24
**started** [4] - 5:24, 6:1, 38:19, 45:11
**starts** [3] - 50:22, 50:25, 53:13
**State** [1] - 77:11
**state** [1] - 50:6
**statement** [8] - 4:20, 7:7, 9:4, 22:2, 31:11, 37:22, 40:3, 44:14
**STATES** [2] - 1:1, 1:11
**States** [1] - 68:5
**states** [2] - 44:23, 46:13

**static** [4] - 55:22, 56:5, 56:9, 59:13

**status** [1] - 69:11

**Stay** [16] - 6:24, 40:14, 40:16, 40:24, 41:1, 41:11, 41:23, 42:17, 42:18, 42:25, 43:9, 43:24, 43:25, 45:5, 48:1

**stay** [2] - 51:7, 78:14

**stenography** [1] - 2:23

**Stichter** [1] - 46:12

**stick** [1] - 35:22

**sticker** [1] - 72:12

**stickier** [1] - 35:8

**sticky** [2] - 10:7, 14:16

**still** [8] - 13:21, 16:22, 30:17, 30:18, 41:1, 42:19, 43:10, 43:12

**stir** [1] - 28:10

**stitching** [6] - 5:24, 6:2, 6:9, 6:10, 6:13, 24:2

**stop** [2] - 41:4, 75:14

**stopped** [1] - 41:23

**stops** [1] - 50:22

**story** [1] - 24:24

**straightforward** [5] - 5:2, 5:5, 10:22, 22:11, 31:12

**strangely** [1] - 59:8

**streamers** [3] - 29:11, 30:19, 32:5

**Street** [1] - 1:20

**street** [2] - 32:7, 78:17

**structure** [8] - 8:4, 14:15, 14:16, 29:1, 39:13, 39:20, 62:25, 64:21

**structures** [1] - 9:10

**structuring** [1] - 71:19

**stuck** [1] - 77:7

**stupid** [1] - 34:5

**submit** [1] - 63:11

**subsequently** [1] - 69:13

**substantial** [1] - 47:25

**substantially** [2] - 16:21, 40:21

**substantively** [1] - 40:25

**successful** [1] - 69:12

**suggest** [3] - 31:20, 46:14, 69:3

**suggested** [1] - 8:20

**suggestions** [1] - 78:4

**suggests** [1] - 68:24

**Suite** [2] - 1:14, 1:24

**summarily** [1] - 42:9

**superior** [1] - 41:11

**support** [4] - 18:19, 37:16, 54:15, 54:16

**supported** [5] - 14:14, 16:1, 20:6, 33:9, 50:18

**supports** [2] - 14:8, 21:2

**supposed** [2] - 55:8, 62:8

**sur** [1] - 58:22

**sur-reply** [1] - 58:22

**surface** [21] - 10:7, 11:1, 11:2, 17:12, 18:4, 18:18, 18:19, 23:6, 28:25, 32:16, 32:17, 33:22, 34:8, 34:9, 35:6, 35:8, 35:24, 54:15, 54:16, 54:18

**surfaces** [2] - 28:25, 61:13

**Systems** [1] - 27:18

# T

**T548** [6] - 18:20, 20:21, 34:6, 34:22, 61:14, 68:7

**tab** [1] - 61:11

**tackier** [1] - 35:19

**tackiness** [2] - 35:16, 35:23

**talks** [1] - 55:21, 58:4

**taller** [5] - 24:17, 45:3, 47:11, 66:16, 67:20

**tanner** [1] - 75:7

**TAPPI** [24] - 18:20, 20:21, 24:4, 24:5, 24:8, 34:6, 34:22, 46:21, 53:12, 53:17, 54:11, 54:15, 54:23, 55:1, 55:8, 55:22, 56:2, 56:3, 56:16, 58:14, 61:5, 61:14, 63:4, 68:7

**teach** [1] - 46:13

**teaches** [2] - 16:19, 59:5

**Technical** [1] - 56:25

**telephone** [2] - 71:19, 71:24

**term** [16] - 11:15, 13:11, 13:15, 15:5, 19:23, 20:1, 20:5, 20:8, 25:24, 27:15, 36:23, 45:8, 52:3, 52:5, 56:11, 74:12

**terminated** [2] - 41:17, 42:12

**termination** [1] - 43:11

**terms** [18] - 5:12, 7:13, 8:14, 9:12, 13:7, 13:14, 13:25, 17:7, 22:4, 41:17, 42:23, 44:10, 58:14, 65:21, 67:7, 69:1, 74:12, 74:14

**TERRACINO** [1] - 1:4

**Terracino** [1] - 4:4

**Terracinos** [6] - 38:17, 40:22, 45:10, 47:15, 73:13, 74:7

**Terracinos's** [3] - 25:12, 55:5, 66:25

**test** [26] - 19:18, 36:13, 36:17, 53:14, 53:15, 53:24, 55:7, 55:17, 56:5, 57:4, 57:21, 58:5, 58:7, 58:16,

58:18, 59:5, 59:7, 59:13, 59:22, 59:23, 59:25, 61:15, 68:7

**tested** [4] - 19:10, 19:16, 20:21, 35:2

**testifying** [3] - 74:22, 75:7

**testimony** [2] - 59:1, 74:25

**testing** [14] - 18:16, 18:24, 19:2, 19:9, 19:15, 20:20, 21:3, 34:8, 35:1, 53:4, 54:18, 60:9, 60:16

**tests** [1] - 34:8

**THE** [130] - 1:10, 4:2, 4:14, 4:19, 6:5, 6:9, 6:12, 6:15, 6:20, 7:6, 7:10, 7:16, 7:25, 8:17, 9:2, 9:7, 9:18, 9:24, 10:3, 10:9, 10:12, 10:15, 13:9, 17:3, 17:15, 21:8, 21:11, 21:16, 21:20, 22:8, 25:23, 26:3, 26:6, 26:9, 26:13, 27:8, 30:25, 32:8, 33:14, 34:4, 34:13, 34:22, 35:3, 35:7, 36:9, 37:2, 37:8, 37:19, 40:13, 40:16, 41:1, 41:4, 41:7, 41:13, 41:22, 42:2, 42:24, 43:2, 43:5, 43:14, 43:20, 44:4, 44:13, 47:3, 47:20, 48:7, 48:12, 48:21, 49:2, 49:10, 49:21, 50:8, 50:13, 51:7, 52:14, 52:21, 53:8, 53:21, 54:3, 56:23, 57:17, 59:12, 59:16, 60:19, 60:21, 61:19, 62:3, 62:17, 63:7, 63:9, 63:15, 64:3, 66:5, 66:11, 66:16, 67:22, 67:25, 68:11, 68:15, 68:18, 69:15, 69:21, 70:2, 70:12, 72:6, 72:11, 72:16, 73:3, 73:22, 74:9, 74:17, 75:13, 75:25, 76:7, 76:9, 76:12, 76:16, 76:22, 77:1, 77:7, 77:13, 77:16, 77:20, 77:23, 78:2, 78:7, 78:13, 78:15, 78:22, 78:23

**theirs** [1] - 5:16

**themselves** [1] - 42:4

**thereby** [1] - 73:14

**therefore** [3] - 19:11, 32:23, 61:5

**therewith** [1] - 52:10

**thinking** [2] - 21:25, 28:23

**third** [6] - 40:6, 40:9, 40:11, 54:20, 67:14, 69:4

**third-party** [1] - 69:4

**Thornburg** [4] - 1:19, 1:22, 4:16, 4:18

**three** [11] - 7:1, 7:3, 8:1, 8:3, 9:18, 23:9, 37:24, 44:5, 66:9, 71:23, 74:24

**three-layered** [1] - 7:3

**three-ply** [3] - 8:1, 8:3, 9:18

**three-tiered** [1] - 44:5

**throw** [2] - 7:19, 65:25

**tied** [1] - 17:24

**Tienda** [1] - 77:9

**tier** [2] - 48:7, 48:9

**tiered** [3] - 44:5, 44:6, 44:15

**today** [8] - 4:4, 7:5, 21:15, 22:24, 23:19, 24:22, 62:1, 79:5

**together** [2] - 23:10, 71:11

**tomorrow** [2] - 75:17, 77:19

**tonight** [1] - 78:1

**top** [20] - 10:6, 11:2, 11:19, 12:12, 12:22, 22:12, 23:9, 29:14, 30:11, 30:15, 30:17, 31:12, 31:15, 32:16, 33:13, 34:14, 34:20, 35:6, 55:4, 64:13

**totally** [1] - 76:13

**touch** [1] - 69:13

**touching** [2] - 13:19, 13:24

**towards** [1] - 71:14

**townhouses** [1] - 14:2

**Tracy** [1] - 2:1

**Trade** [1] - 4:10

**tradition** [1] - 72:16

**traditionally** [1] - 36:5

**training** [1] - 32:4

**TRANSCRIPT** [1] - 1:10

**transcript** [1] - 2:24

**transitional** [1] - 36:23

**travels** [1] - 79:5

**treat** [1] - 12:5

**tree** [1] - 72:20

**Tresino** [1] - 46:12

**trial** [1] - 71:6

**triangle** [2] - 72:6, 72:21

**tried** [2] - 42:7, 47:15

**Trimaco** [18] - 4:4, 5:21, 5:24, 6:1, 6:6, 8:11, 11:11, 40:19, 40:20, 42:3, 42:15, 42:21, 46:25, 53:11, 60:5, 60:10, 60:16

**TRIMACO** [1] - 1:7

**Trimaco's** [5] - 42:16, 43:25, 49:17, 62:9, 74:3

**trip** [2] - 15:24, 45:24

**trouble** [1] - 78:23

**truck** [2] - 76:24, 77:3

**true** [3] - 27:14, 44:14, 45:5

**try** [4] - 21:23, 24:14, 51:17, 68:25

**trying** [10] - 19:6, 26:18, 31:20, 35:20, 39:22, 51:13, 51:14, 65:17, 66:7, 66:19

**turnoff** [1] - 76:20

**two** [69] - 5:9, 6:6, 6:19, 6:24, 6:25, 7:25, 8:1, 10:1,

10:3, 10:16, 10:25, 11:18, 12:6, 12:18, 14:1, 14:11, 15:3, 15:19, 15:21, 17:5, 17:10, 17:19, 18:10, 22:15, 23:10, 28:24, 29:16, 31:1, 31:2, 32:15, 33:5, 33:8, 34:18, 38:8, 38:13, 39:12, 39:19, 40:3, 40:17, 40:19, 41:6, 44:6, 44:15, 44:20, 44:22, 45:1, 46:16, 46:18, 48:7, 48:9, 48:15, 48:19, 48:25, 49:5, 53:16, 55:24, 61:6, 64:6, 64:7, 64:21, 65:24, 66:2, 66:11, 66:14, 71:23, 74:20, 75:5

**two-layer** [1] - 40:19
**two-layered** [4] - 39:12, 39:19, 40:3, 64:21
**two-ply** [3] - 7:25, 8:1, 10:3
**two-tier** [2] - 48:7, 48:9
**two-tiered** [2] - 44:6, 44:15
**type** [1] - 19:10

## U

**U.S** [1] - 64:23
**unable** [2] - 47:16, 58:12
**uncertainty** [1] - 19:5
**undefined** [1] - 49:25
**under** [12] - 8:10, 8:20, 25:19, 34:9, 36:18, 44:9, 44:11, 50:4, 54:5, 61:2, 61:23, 69:25
**underlying** [1] - 35:17
**undermine** [2] - 74:15, 76:13
**underneath** [3] - 9:25, 22:13, 55:3
**understood** [4] - 8:25, 27:15, 39:6, 39:18
**undertake** [1] - 70:21
**unfair** [1] - 35:10
**unfold** [1] - 71:3
**unfortunately** [1] - 56:13
**unintrusive** [1] - 26:11
**UNITED** [2] - 1:1, 1:11
**United** [1] - 68:4
**unless** [5] - 13:13, 21:9, 30:14, 50:3, 70:19
**unlike** [1] - 4:25
**unopened** [1] - 5:16
**unpackaged** [1] - 6:12
**unrecited** [1] - 36:24
**unrelated** [1] - 26:23
**unsupported** [1] - 65:20
**up** [20] - 4:3, 7:16, 10:15, 12:17, 23:20, 26:18, 28:2, 35:7, 36:21, 38:25, 39:1, 39:12, 39:19, 43:16, 46:1,

64:20, 65:9, 71:18, 72:1, 78:8
**upper** [11] - 23:1, 23:4, 23:5, 23:6, 23:7, 23:24, 38:5, 38:13, 65:5, 65:11
**uses** [1] - 56:11

## V

**VA** [1] - 1:15
**various** [1] - 11:6
**verbatim** [1] - 42:5
**versions** [1] - 6:6
**versus** [4] - 22:25, 25:3, 37:16, 56:10
**view** [5] - 44:23, 46:6, 47:19, 48:17, 67:9
**Virginia** [3] - 4:10, 10:17, 77:11
**virtue** [1] - 48:2
**visit** [1] - 76:23

## W

**wait** [1] - 43:19
**waived** [1] - 57:16
**waiving** [1] - 73:14
**Wake** [1] - 4:8
**walk** [1] - 24:21
**wall** [6] - 28:24, 29:2, 29:5, 29:6, 30:20, 35:21
**wants** [1] - 72:2
**Ward** [1] - 1:16
**warehouses** [1] - 42:20
**warned** [1] - 32:24
**waste** [1] - 70:1
**waterproof** [2] - 29:7, 30:21
**welcome** [2] - 4:19, 19:21
**well-established** [1] - 74:4
**Wendy's** [1] - 78:5
**WESTERN** [1] - 1:2
**whatsoever** [1] - 65:21
**wheels** [1] - 32:4
**Whereby** [2] - 18:17, 20:20
**wherein** [1] - 45:2
**whiz** [1] - 11:3
**whole** [4] - 12:13, 12:23, 30:9, 65:10
**Williamsburg** [3] - 1:15, 10:13, 76:1
**willing** [1] - 69:24
**Wilmington** [1] - 73:4
**winter** [1] - 77:11
**wish** [1] - 15:8
**withhold** [1] - 63:23
**WOOD** [1] - 1:10
**word** [1] - 68:12
**words** [2] - 10:9, 37:14

**world** [1] - 25:15
**woven** [6] - 22:25, 23:4, 23:7, 29:14, 35:5, 38:13
**wrap** [3] - 29:20, 30:18, 31:17
**write** [1] - 68:16
**writing** [1] - 76:22
**written** [2] - 65:22, 73:8
**wrote** [1] - 69:21

## Y

**yard** [1] - 13:21
**year** [1] - 35:20
**year's** [1] - 72:18
**years** [3] - 10:17, 41:6, 77:22

## Z

**Zegler** [6] - 45:14, 45:19, 46:7, 46:12, 47:17, 65:16