**APPENDIX OF EVIDENCE IN
SUPPORT OF DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

**Exhibit 4**

# Exhibit 6

# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

| | |
|---|---|
| ROBERT TERRACINO and<br>BRADIE TERRACINO,<br><br>    Plaintiffs,<br><br>v.<br><br>TRIMACO, INC., f/k/a TRIMACO, LLC<br>    and<br>CHARLES COBAUGH,<br>    and<br>DAVID C. MAY,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)   Civil Action No.: 5:22-CV-15-FL<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## AMENDED DISCLOSURE OF ASSERTED CLAIMS AND PRELIMINARY INFRINGEMENT CONTENTENTIONS PURSUANT TO LOCAL PATENT RULE 303.1

Come now the plaintiffs, Robert and Bradie Terracino by counsel and for their Amended Disclosure Of Asserted Claims and Preliminary Infringement Contentions as required by the U.S. District Court, Eastern District of North Carolina Local Patent Rules, state as follows:

**I.** Plaintiffs reserve the right to amend these Disclosures should more information become available that is disclosable under the applicable Rules.

**II.** **Disclosures Under D.N.C. Local Patent Rule 303.1**

    1. **303.1(a)** Each claim of each patent in suit that is allegedly infringed by each opposing party including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted.

**DISCLOSURE: Each of claims 1 – 10 are infringed by Trimaco's "Stay Put" and "Stay Put Plus" canvas drop cloths under 35 U.S.C. § 271(a).**

2. <u>**303.1(b)**</u>    Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus must be identified by name or model number, if known. Each method or process must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process.

**DISCLOSURE: Trimaco has manufactured and sold and/or continues to manufacture and sell two specific infringing products that are dropcloths. Both dropcloths are or have been created and sold by Trimaco in three separate sizes: 9' by 12', 4' by 12', and 6' by 8'. The two products are sold as the Trimaco "Stay Put" and "Stay Put Plus" canvas drop cloths. The "Stay Put" canvas drop cloth is Trimaco item number 04311 (in 9' x 12' size), 04318 (in 4' x 12' size), 04319 (in 6' x 8' size), and is still being sold in the marketplace. The "Stay Put Plus" canvas drop cloth is Trimaco item number 04321 (in 9' x 12' size), 04328 (in 4' x 12' size), 04329 (in 6' x 8' size), and is still being sold in the marketplace.**

3. **303.1(c)** A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality, including each element that such party contends is governed by the sixth paragraph of 35 U.S.C. § 112, and the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function.

**DISCLOSURE: See chart below. Each element of the patent in suit is contained within the infringing drop cloths identified above. No elements in the claims are subject to 35 U.S.C. § 112 (f) (Paragraph 6).**

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| 1. A non-skid protective cloth or pad, consisting of: | The sample non-skid drop cloth is "[a] non-skid protective cloth or pad."<br><br>FIG. 1 below is a picture taken by counsel of the sample product from the plain woven upper layer (A) side of the sample product, with a corner of the sample product folded back on itself to expose the lower resilient layer (B) of the sample product, a composition of which is discussed in greater detail below with regard to the express features set forth in claim 1.<br><br>NOTE: The stitching (C) will be discussed in detail below as well.<br><br>FIG. 1 |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface; | FIG. 2 below is a close-up picture taken by counsel of the sample product shown in FIG. 1 from the same relevant perspective. It is clear from the detail shown in FIG. 2 that the upper layer (A) of the sample product has "a single, absorbent, plain woven upper layer" (A), which is "free from any projecting cut pile" and has "an upper and a lower major surface." As seen in FIG. 2, upper layer A is a "single, absorbent, plain woven upper layer." Moreover, it is clear from the detail shown in FIG. 2 that upper layer A is "free from any projecting cut pile." Finally, upper layer A has an upper major surface (A1) and a lower major surface (A2), visible through the lower resilient layer B of the sample product.<br><br><br>FIG. 2 |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, | FIG. 3 below is an even more close-up picture taken by counsel of the sample product shown in FIGs. 1 and 2 to highlight the detail in the single lower, resilient layer (B) of the sample product. As shown in FIG. 3, the single lower, resilient layer (B) has a "lower major surface," which is shown facing counsel's camera in this picture. The single lower, resilient layer, as shown then necessarily has an opposite "upper major surface," which is "disposed adjacent said lower layer of said single, absorbent, woven upper layer," as the lower layer of the upper layer A is even more clearly visible in FIG. 3 behind the single lower, resilient layer (B). Because FIG. 3 is taken more closely, these details are even more pronounced than they are in FIG. 2 *supra*.<br><br><br><br>FIG. 3 |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, | FIG. 4 below is yet an even more close-up picture taken by counsel of the sample product shown in FIGs. 1-3 to even more clearly highlight the detail in the single lower, resilient layer B of the sample product. Again here, it is clear that a necessarily present upper major surface of the single lower resilient layer B is disposed adjacent the lower layer of the single, absorbent, plain woven upper layer of the sample product.<br><br><br><br>FIG. 4<br><br>As shown, in FIGs. 1-3, but in much greater detail in FIG. 4, the lower resilient layer B of the sample product "compris[es] a network of downward projecting bumps interconnected one to another by a resilient grid,"<br><br>FIG. 4 clearly shows that the sample product includes a network of downward projecting bumps (*e.g.*, B1.1 and B1.2), which project beyond any "height" of the separately shown "resilient grid" (B2) by which the downward projecting bumps are interconnected in a network. |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and | With the detail shown in FIG. 4 *supra,* it is also clear that said downward projecting bumps compris[e] bumps having at least two different circumferential sizes."<br><br>In FIG. 4, for example, compare the circumferential sizes of the highlighted downward projecting bumps B1.1 and B1.2. These are but two distinct examples of visually discernible "at least two different circumferential sizes to the downward projecting bumps.<br><br>Moreover, because the sizes and shapes of the downward projecting bumps are virtually unconstrained, it necessarily follows that implicit in the structure of the lower resilient layer of the sample product that "each [of the downward projecting bumps has a height and that there will be pairs that can be shown that meet the criteria "said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes," as the claims do not require that *all* of the comparisons meet this criteria. |
| c) stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer; | FIGs. 1 and 2 *supra* clearly show the detail of the edges of the sample product in which an edge of the single, absorbent, upper, woven layer is folded or doubled over the edge of the single lower resilient layer and the stitching penetrates all of the layers in this configuration thereby necessarily being "disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer." |
| whereby when said lower major surface of said single lower resilient layer is placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification is greater than approximately 0.75. | Based on a configuration of the "lower major surface of said single lower resilient layer" of the sample non-skid drop cloth, it is understood that when "placed on a support surface, a Sliding Coefficient of Friction measured in accordance with TAPPI T548 specification [would be] greater than approximately 0.75."<br><br>This functional limitation is a result of the structural configuration of the complete structure as defined by the claim which, if not literally infringed, would be infringed under the doctrine of equivalents. |
| 2. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, woven, upper layer comprises a plain woven cotton fabric. | The material composition for the "single, absorbent, woven, upper layer" of the sample non-skid drop cloth, which met the limitations of claim 1, clearly comprises a plain woven cotton fabric, literally or through equivalents. *See* FIG. 1 *supra*. |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| 3. The non-skid protective cloth or pad as recited in claim 1, wherein said single, absorbent, woven, upper layer comprises canvas. | The material composition for the "single, absorbent, woven, upper layer" of the sample non-skid drop cloth, which met the limitations of claim 1, clearly comprises canvas, literally or through equivalents. *See* FIG. 1 *supra*. |
| 4. The non-skid protective cloth or pad as recited in claim 1, wherein said downward projecting bumps comprise a shape selected from the group: spherical, quasi-spherical, and amorphous. | There can be no dispute that the "downward projecting bumps" on the sample non-skid drop cloth have "a shape selected from the group: spherical, quasi-spherical, and amorphous." *See, e.g.*, FIGs. 3 and 4 *supra*. |
| 5. The non-skid protective cloth or pad as recited in claim 1, wherein said downward projecting bumps are separated one from another by an inter-bump space. | There can be no dispute that the "downward projecting bumps" on the sample non-skid drop cloth "are separated one from another by an inter-bump space." Again here this claim does not state that all of the downward projecting bumps must necessarily meet this limitation. FIGs. 3 and 4 *supra* show instances in which the sample product meets this limitation. |
| 6. A non-skid protective cloth or pad, consisting of: | The substantive analysis of claims 6-10 *infra* precisely mirrors that of claims 1-5 *supra,* with similar reference to FIGs. 1-5. The sample non-skid drop cloth is "[a] non-skid protective cloth or pad." |
| a) a single, absorbent, plain woven upper layer free from any projecting cut pile and having an upper and a lower major surface; | There can be no dispute that the sample non-skid drop cloth has "a single, absorbent, a plain woven upper layer," which is "free from any projecting cut pile" and has "an upper and a lower major surface." |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| b) a single lower, resilient layer having an upper and a lower major surface, said upper major surface of said single lower resilient layer being disposed adjacent said lower layer of said single, absorbent, woven upper layer, said lower major surface comprising said lower resilient layer comprising a network of downward projecting bumps interconnected one to another by a resilient grid, said downward projecting bumps comprising bumps having at least two different circumferential sizes, said downward projecting bumps each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes; and | There can be no dispute that the sample non-skid drop cloth has "a single lower, resilient layer" that has "an upper and a lower major surface." <br><br> In the sample non-skid drop cloth, "said upper major surface of said single lower resilient layer [is] disposed adjacent said lower layer of said single, absorbent, woven upper layer." <br><br> In the sample non-skid drop cloth, "said lower major surface comprises said lower resilient layer comprising[:]" <br><br> (a) "a network of downward projecting bumps interconnected one to another by a resilient grid," <br><br> (b) "said downward projecting bumps comprising bumps" <br><br>     (i)   "having at least two different circumferential sizes," and <br><br>     (ii)   "each having a height, said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes. |
| c) stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer; | There can be no dispute that the sample non-skid drop cloth has "stitching disposed through both said single, absorbent, upper, woven layer and said single lower resilient layer." |
| whereby when tested in accordance with TAPPI T548 specification, an average slide angle is no less than approximately 40°. | Based on a configuration of the "lower major surface of said single lower resilient layer" of the sample non-skid drop cloth, it is understood that "when tested in accordance with TAPPI T548 specification, an average slide angle [would be] no less than approximately 40°." <br><br> This functional limitation is a result of the structural configuration of the complete structure as defined by the claim which, if not literally infringed, would be infringed under the doctrine of equivalents. |

| USPN 9,044,917 | ACCUSED INSTRUMENTALITY |
|---|---|
| 7. The non-skid protective cloth or pad as recited in claim 6, wherein said single, absorbent, woven, upper layer comprises a plain woven cotton fabric. | The material composition for the "single, absorbent, woven, upper layer" of the sample non-skid drop cloth, which met the limitations of claim 1, was not separately evaluated. |
| 8. The non-skid protective cloth or pad as recited in claim 6, wherein said single, absorbent, woven, upper layer comprises canvas. | The material composition for the "single, absorbent, woven, upper layer" of the sample non-skid drop cloth, which met the limitations of claim 1, was not separately evaluated. |
| 9. The non-skid protective cloth or pad as recited in claim 6, wherein said downward projecting bumps comprise a shape selected from the group: spherical, quasi-spherical, and amorphous. | There can be no dispute that the "downward projecting bumps" on the sample non-skid drop cloth have "a shape selected from the group: spherical, quasi-spherical, and amorphous." |
| 10. The non-skid protective cloth or pad as recited in claim 6, wherein said downward projecting bumps are separated one from another by an interbump space. | There can be no dispute that the "downward projecting bumps" on the sample non-skid drop cloth "are separated one from another by an interbump space." |

4. **303.1(d)** Whether each element of each asserted claim is claimed to be literally present or present under the doctrine of equivalents in the Accused Instrumentality.

   **DISCLOSURE:  See chart above.**

5. **303.1(e)** For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled.

   **DISCLOSURE:  The patent at issue is a Continuation-in-Part of application No. 12/460,763 which was filed on July 27, 2009 and published on January 27, 2011 as US 20110017341 A1.  Each of claims 1-10 in the patent at issue is entitled to the priority date of application No. 12/460,763.**

6. **303.1(f)** If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim.

   **DISCLOSURE:  None.**

II. **Document Production Accompanying Disclosure Under D.N.C. Local Patent Rule 303.1**

   1. **303.2(a)** Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to

evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, the claimed invention prior to the date of application for the patent in suit. A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102.

**DISCLOSURE: None.**

2. **303.2 (b)** All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to Local Patent Rule 303.1(e), whichever is earlier.

**DISCLOSURE: The priority date relied upon by Plaintiffs is July 27, 2009 – 14 years prior to the date of this disclosure. Plaintiffs are currently unaware of any existing documents responsive to this disclosure requirement but are continuing to search as of the date of this disclosure. Any such documents will be provided if and when they are located.**

3. **303.2(c)** A copy of the file history for each patent in suit.

**DISCLOSURE: The file history for the patent in suit was attached to Plaintiff's Initial Patent Disclosures per Local Patent Rules and identified by Bates Nos. PLFs. 00001-00205.**

4. **303.2(d)** Documents evidencing a party's standing (e.g., a written assignment) to bring a claim or claims of alleged infringement of the patent or patents in suit.

**DISCLOSURE: Plaintiffs Robert and Bradie Terracino are the named inventors of the patent in suit, and have not assigned or otherwise transferred rights in the patent in suit.**

Dated: August 14, 2023

                                              **ROBERT TERRACINO AND BRADIE TERRACINO**

                                              /s/ Duncan G. Byers
                                                Of Counsel

Duncan G. Byers
Va. Bar ID #48146
BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, VA 23185
Telephone: (757) 317.2779
Facsimile: (757) 231.3797
dbyers@byerslaw.com
      *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th Day of August, 2023, I served the foregoing Plaintiffs' Disclosure Of Asserted Claims and Preliminary Infringement Contentions via electronic mail on the following:

John M. Moye (NC State Bar No. 35463)
BARNES & THORNBURG LLP
4208 Six Forks Road, Suite 1010

Raleigh, North Carolina 27609
Tel. (919) 536-6200
Fax (919) 536-6201
jmoye@btlaw.com

Deborah Pollack-Milgate
Joseph L. Fehribach
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313
Fax (317) 231-7433
deborah.pollackmilgate@btlaw.com
joseph.fehribach@btlaw.com

*Counsel for Defendants*

/s/Duncan G. Byers
Duncan G. Byers
Va. Bar ID #48146
BYERS LAW
1769 Jamestown Road, Suite 120
Williamsburg, VA 23185
Telephone: (757) 317.2779
Facsimile: (757) 231.3797
dbyers@byerslaw.com
*Counsel for Plaintiffs*