IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-15-FL

| | |
|---|---|
| ROBERT TERRACINO and<br>BRADIE TERRACINO, Individuals,<br><br>Plaintiffs,<br><br>v.<br><br>TRIMACO, INC.,<br><br>Defendant. | **DEFENDANT'S MEMORANDUM<br>IN SUPPORT OF RENEWED<br>MOTION TO COMPEL<br>DISCOVERY** |

Defendant Trimaco, Inc. ("Trimaco", "Defendant"), pursuant to Federal Rules of Civil Procedure 26, 34, and 37, hereby submits this Memorandum in support of its Renewed Motion to Compel Robert and Bradie Terracino ("Plaintiffs" or "Terracinos") to produce documents sought in Defendant's Requests for Production related to Claim Construction (the "Requests"). Specifically, Trimaco seeks compliance with respect to Request No. 2, which sought, among other things, documents related to the "Opinion Regarding Infringement of U.S. Patent No. 9,044,917" ("Opinion"). Dkt. 56-1. Plaintiffs continue to object to production of these documents despite their waiver of the attorney client privilege and work product protection. *See* Exhibit 1. Defendant also seeks fees for the expenses incurred in making this Motion, pursuant to Fed. R. Civ. P. 37(a)(5)(A), in particular as this is the third Motion to Compel Defendant has been forced to file.

**INTRODUCTION**

Defendant submitted their first Motion to Compel on December 18, 2023 (Dkt. 55, 56), asking the Court to compel disclosure of all documents responsive to Request No. 2, as relevant to claim construction issues. Based on Plaintiffs' statement that there was nothing responsive to produce, effectively obviating Defendant's Motion, the Court denied Defendant's Motion to

Compel. *See* Dkt. 70 at 3 (noting Plaintiffs' representations that there was nothing responsive to produce). Acknowledging the ambiguity created by the Plaintiffs' response to RFP No. 2, however, which had appeared to indicate that there *were* in fact responsive documents, this Court ordered Plaintiffs to provide Defendant with a supplemental clarifying response to RFP No. 2. *Id.*

After determining that there, in fact, were documents responsive to Request No. 2, Defendant filed a Renewed Motion to Compel. *See* Dkt. 75. The Court, believing that Plaintiffs' actions were the product of "imprecision rather than misrepresentation," deemed Request No. 2 "re-served" and ordered Plaintiffs to respond or object by August 5th, 2024. *See* Dkt. 85 at 3. Plaintiffs did respond by August 5th and have since supplemented their response twice, most recently on August 23rd, 2024. *See* Exhibit 1. However, Plaintiffs continue to withhold additional documents on the basis that they are protected as attorney work-product and as expert communications under Fed. R. Civ. P. 26(b)(4)(C).[1] Plaintiffs are wrong on both fronts.

Plaintiffs chose to waive both the attorney-client privilege and work product immunity when they asserted and relied upon the Opinion in their Complaint. *See* ¶ 61, Dkt. 1-8. At that time, opinion counsel was not an expert, nor was he anticipated to be an expert. Accordingly, Defendant was and is entitled to all documents that fall within the scope of this subject matter waiver. These documents were and are highly relevant to the question of infringement because the Opinion eliminates any discussion of the transitional phrase "consisting of" versus "comprising," the basis for which Defendant is entitled to explore and cross-examine. These documents are all

---

[1] The failure to obtain the documents sought may have been prejudicial to Trimaco. For example, it would have been highly relevant to this Court's claim construction analysis, even as extrinsic evidence, if Plaintiffs were advised that claim 1 could not be construed to cover a third layer in view of the closed term "consisting of," as well as Plaintiffs' disclaimer of a third layer during prosecution. To the extent that such documents exist and the failure to produce them undermined Trimaco's ability to put forward its claim construction position, Trimaco reserves the right to seek additional fees.

the more relevant as statements against interest in the adjudication of infringement in this matter. They certainly meet the low threshold of discoverability under Fed. R. Civ. P. 26 as "relevant." It is appropriate for this Court to compel production of all documents responsive to Defendant's Requests and order Plaintiffs to pay for all reasonable expenses incurred in making this motion, including attorney's fees, particularly in light of their role in forcing Trimaco to file three separate motions.

**BACKGROUND FACTS**

Plaintiffs filed their Complaint on January 7, 2022. *See* Dkt. 1. In the Complaint, Plaintiffs rely on the "Opinion Regarding Infringement of U.S. Patent No. 9,044,917" in their claim for patent infringement against Defendant. *Id.* at ¶ 61, Dkt. 1-8. The Opinion is addressed specifically to the client, the Terracinos. *Id.*

Defendant served its Requests on Plaintiffs on August 24, 2023. Defendant's Request No. 2 references the Opinion relied on by Plaintiffs and states: "Produce all Documents constituting or concerning any opinion or draft opinions, assessments, or evaluations made by You or on Your behalf, whether written or oral, relating to the scope, claim interpretation, infringement, validity, or enforceability of the Asserted Claims of the '917 Patent, and including but not limited to any such documents related to Docket Entry 1-8, dated January 7, 2022." Dkt. 56-1. Plaintiffs refused to produce documents related to this Request, but have since produced a limited number of redacted and what they assert to be non-privileged communications.[2]

Trimaco submitted a Motion to Compel on December 18, 2023 (Dkt. 55, 56), asking the Court to compel disclosure of all documents responsive to Defendant's Requests. This Court

---

[2] The background facts concerning this motion are set forth more fully in Trimaco's original motion to compel and supporting memorandum, which are incorporated by reference herein. Dkt. 55, 56.

3

denied Defendant's Motion to Compel because it appeared that Plaintiffs had represented that there was nothing responsive to produce. Dkt. 70 at 3. Plaintiffs' Supplemental Response ordered by the Court then indicated that there were documents responsive to RFP No. 2 that they were withholding and had not been logged on a privilege log. Pursuant to this Court's Order dated July 25, 2024 (Dkt. 85), Plaintiffs submitted another amended response, provided a privilege log, and produced a select number of documents. Exhibit 1. Plaintiffs again refuse to produce documents, however, that are subject to the waiver of privilege they willingly committed with the filing of the complaint.

## **ARGUMENT**

**A.     Plaintiffs Waived the Attorney-Client Privilege and Work Product Protection by Asserting and Relying on an Opinion of Counsel.**

"The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *In re EchoStar Commc'ns Corp.,* 448 F.3d 1294, 1300 (Fed. Cir. 2006). This privilege is at the discretion of the client, however. *Id.* The client can waive the attorney-client privilege when, for instance, it uses the advice to establish a defense. *Id.* "It [is] established that if a party interjects the 'advice of counsel' as an essential element of a claim or defense, then all advice received concerning the same subject matter is discoverable, not subject to protection by the attorney-client privilege, and, by logical extension, admissible at trial." *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 391 (4th Cir. 2015). Thus, "[W]hen a party defends its actions by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter. *In re EchoStar Commc'ns Corp.,* 448 F.3d at 1300.[3]

---

[3] Federal Circuit law applies in connection with the determination of what materials are discoverable in a patent case "if those materials relate to an issue of substantive patent law." *Id.* at 1298 (citations omitted).

4

Plaintiffs, in their supplemented answer to Request No. 2, state that: "Neither of the Plaintiffs nor any third party have communicated with Plaintiffs' expert Daniel Tanner, Esq., with regards to any of the areas of inquiry in Defendant's Request for Production of Documents No. 2." *See* Exhibit 1 at 1-2. This appears to be an after the fact attempt to take back the clear and unmistakable waiver that occurred in January of 2022. Indeed, the Opinion prepared by counsel Tanner is addressed specifically to Robert and Bradie Terracino and indicates that Plaintiffs engaged Tanner "via counsel, to review and investigate the potential infringement of U.S. Patent No. 9,044,917", not as an expert for this litigation. *See* Dkt. 1-8 at 1. Plaintiffs voluntarily produced and chose to rely upon the Opinion in their Complaint against Defendant. Having chosen to waive privilege at the very beginning of this lawsuit, Plaintiffs cannot now shield other documents or communications with opinion counsel whilst using the Opinion as a sword against Defendant. The Terracinos should be required to disclose all communications between their attorneys on the matter of the '917 patent in connection with the opinion they chose to rely on at the time they filed the Complaint.

Likewise, "a party may discover work product if the party waives its immunity." *In re EchoStar Commc'ns Corp.*, 448 F.3d at 1302. In determining where to draw the line on the scope of the waiver, a district court "should balance the policies to prevent sword-and-shield litigation tactics with the policy to protect work product." *Id.* Subject matter waiver may be found in the work product context when "it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed." *Minebea Co. v. Papst,* 228 F.R.D. 34, 37 (D.D.C. 2005). Such a situation might arise, for example, "where a party expressly agreed to disclose attorney work product or where it deliberately disclosed documents in an attempt to gain a tactical advantage." *Id*. (noting that one example of using privileged material to gain a

5

tactical advantage and warranting subject matter waiver includes voluntarily disclosing an infringement analysis to an adversary in an attempt to procure a license agreement). Here, Plaintiffs attempted a tactical advantage when they disclosed the Opinion. Having now presumably understood its weaknesses, Plaintiffs would prefer to shield any communications or work product related to the Opinion.

Plaintiffs have also waived work-product immunity with respect to other documents relating to the Opinion, including documents and communications with facts that support the positions taken by opinion counsel in the Opinion. Indeed, his opinion both sets forth the law of claim construction, Dkt. 1-8, at 3, and construes the claim terms to find infringement, *id.* at 8-14. Trimaco is entitled to seek discovery into the basis for those constructions and alleged infringement, given Plaintiffs' reliance on the opinion of counsel. *See* Dkt. 56 at 5 (citing cases), and *supra*. To provide the infringement opinion, counsel was required to construe the claims, including the terms "consisting of" and "comprising." In sum, Plaintiffs chose to use the Opinion as a sword against Trimaco in order to gain a tactical advantage, to support their claim of infringement. Having waived work product immunity in doing so, Plaintiffs and counsel cannot now shield production of other information concerning the same subject matter.

**B.     Daniel Tanner was not an expert when the Opinion was relied upon.**

It should be noted as an initial matter that Plaintiffs *did not object* on the basis that Request No. 2 sought disclosure of expert testimony prematurely. *See* Dkt. 50-3 at 3. Only after being given a second chance to respond to Defendant's Request No. 2 did Plaintiffs attempt to shield themselves under this pretense. Regardless, assuming for a moment that patent counsel could or would be denoted an expert in this matter, Plaintiffs cite no case law establishing their radical proposition, namely, that a party can provide an opinion of counsel, rely on it affirmatively, and then shield its contents retroactively by declaring its author an "expert." This position, too, raises

6

serious issues from a fairness perspective and runs contrary to case law holding that reliance upon and voluntary disclosure of an opinion of counsel has the effect of a subject matter waiver. *See* Dkt. 56 at 5 (citing cases), and *supra*. The Opinion was not provided, initially, in connection with Fed. R. Civ. P. 26 disclosures, but instead to support the Plaintiffs' Complaint. As such, reliance on the opinion has the effect of waiver.

Furthermore, the Opinion itself indicates that Tanner did not consider himself an expert when the Opinion was prepared and relied upon. With regard to claim limitations related to TAPPI T548, Tanner's Opinion states: "We understand that this feature/limitation is standard and easily provable, *likely through an expert declaration*, that the sample non-skid drop cloth includes this feature of the claim." *See* Dkt. 1-8. at 11 and 13 (emphasis added). These statements indicate that an expert would be retained by Plaintiffs, not that Tanner was engaged to be an expert. Tanner has since been retained as the only technical expert disclosed by Plaintiffs under Fed. R. Civ. P. 26(a)(2).[4] *See* Exhibit 2 at 1. Plaintiffs have merely reproduced the Opinion as the expert report required under Rule 26(a)(2), further showing that documents and communications related to this subject matter were never properly shielded pursuant to this Rule.[5]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' disclosure and reliance on an Opinion of Counsel has waived attorney-client privilege and work product immunity for all other documents related to the same subject matter, and within the scope of waiver. Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), Defendant renews its motion to compel Plaintiffs to produce all documents responsive to the

---

[4] Separately, Trimaco will move to exclude Tanner as an expert given the fact that his "Opinion" does not begin to comply with the requirements for Disclosure of Expert Testimony pursuant to Fed. R. Civ. P. 26(a)(2)(B).

[5] The Opinion repeats statements such as "It is beyond dispute that the sample non-skid drop cloth includes this feature of the claims" without providing any factual information, such as measurements or other data, to support these assertions.

Requests. Further, pursuant to Fed. R. Civ. P. 37(a)(5)(A), Defendant requests that Plaintiffs be ordered to pay all reasonable expenses incurred in making this Motion, including attorney's fees, in view of its role in necessitating ongoing motion practice.

Respectfully submitted this 11th day of October, 2024.

*/s/ Deborah Pollack-Milgate*
John M. Moye (NC State Bar No. 35463)
BARNES & THORNBURG LLP
4208 Six Forks Road, Suite 1010
Raleigh, NC 27609
Tel. (919) 536-6200 | Fax (919) 536-6201
jmoye@btlaw.com

Deborah Pollack-Milgate*
Joseph L. Fehribach*
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313 | Fax (317) 231-7433
deborah.pollackmilgate@btlaw.com
joseph.fehribach@btlaw.com

*\*by special appearance*

*Counsel for Defendant Trimaco, Inc.*

# CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Deborah Pollack-Milgate*
Deborah Pollack-Milgate
BARNES & THORNBURG LLP
11 S. Meridian Street
Indianapolis, IN 46204
Tel. (317) 231-1313 | Fax (317) 231-7433
deborah.pollackmilgate@btlaw.com