IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CV-15-FL

| | |
|---|---|
| ROBERT TERRACINO and BRADIE TERRACINO, ) ) ) Plaintiffs, ) ) ) v. ) ) ) TRIMACO, INC., f/k/a/ TRIMACO, LLC, ) ) Defendant.[1] ) ) ) - - - - - ) TRIMACO, INC., f/k/a/ TRIMACO, LLC, ) ) Counterclaimant, ) ) ) v. ) ) ) ROBERT TERRACINO and BRADIE TERRACINO, ) ) ) Counter-Defendants. ) | **ORDER** |

This matter comes before the court on defendant's motion for summary judgment (DE 96) and plaintiffs' motion for extension of time to complete discovery (DE 102). The court held

---

[1] The case caption reflects termination of former defendants Charles Cobaugh ("Cobaugh") and David C. May ("May"), as a result of the court's March 27, 2023, dismissal order, and as confirmed at hearing held December 10, 2024. (See Tr. (DE 120) at 4). For ease of reference, the court sets forth the statement of the case and the facts herein without repeated reference to former defendants Cobaugh and May, as they are not pertinent to the issues raised by the instant motion.

1

hearing on the motions December 10, 2024, and ordered supplemental briefing, which has been received. In this posture, the issues raised are ripe for ruling. For the following reasons, defendant's motion is granted and plaintiffs' motion is terminated as moot.

## STATEMENT OF THE CASE

Plaintiffs commenced this action January 7, 2022, filing the operative amended complaint April 18, 2022, wherein they assert claims for patent infringement, fraudulent inducement, breach of contract, unconscionability, violations of the Federal Defend Trade Secrets Act, and the North Carolina Unfair and Deceptive Trade Practices Act. Plaintiffs own U.S. Patent No. 9,044,917, (the "'917 patent" or the "patent"), entitled "non-skid protective cloth or pad," with an abstract including the description of a "two-layer, non-skid protective cloth or pad for use as a painter's drop cloth." ('917 Patent (DE 17-1) at 1).

Defendant makes and sells two products that allegedly infringe the '917 patent: a "Stay Put Canvas," which includes a "canvas layer and a surface grip layer," and a "Stay Put Canvas Plus," which includes these layers plus a "liquid barrier." (Am. Compl. (DE 17) ¶61). Defendant moved to dismiss all of plaintiffs' claims, or in the alternative, for plaintiffs to provide a more definite statement on their patent infringement claim. The court granted in part and denied in part the motion to dismiss March 27, 2023, dismissing all of plaintiffs' claims except for the patent infringement claim, and denying defendant's motion for more definite statement. Terracino v. Trimaco, Inc., No. 5:22-CV-15-FL, 2023 WL 2656753, at *9 (E.D.N.C. Mar. 27, 2023).

Thereafter, defendant answered and filed counterclaims for declaratory judgment of non-infringement, and declaratory judgment for declaration that the case is exceptional and frivolous under 35 U.S.C. § 285, and attorneys' fees. Case management order entered June 9, 2023, provided for claim construction discovery to conclude December 7, 2023. Other deadlines and

limitations on discovery, such as expert disclosures, were left for determination "following the court's order on claim construction, if warranted." (DE 32 at 2).

The court entered its claim construction order April 29, 2024, which includes the following constructions of disputed claims in the '917 patent in favor of defendant and contrary to plaintiffs:[2]

    c.    Disputed term – "Said downward projecting bumps comprising bumps having at least two different circumferential sizes"

        i.    Plaintiffs' construction: Downward projecting bumps where each of the bumps has one of two or more different circumferences
        ii.    Defendants' construction: The downward projecting bumps have a <u>measurable boundary or perimeter</u> of two or more sizes
        iii.    Court's construction: Said downward projecting bumps comprising bumps having at least two different <u>measurable boundaries or perimeters</u>

(Claim Construction Order (DE 72) at 14) (quoting '917 Patent, Claims 1 and 6) (emphasis added).

    e.    Disputed Term – "Said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes"

        i.    Plaintiffs' construction: A first bump of a smaller circumference relative to a second bump of greater circumference has a height that is greater than the height of the second bump
        ii.    Defendants' construction: <u>Each of the circumferentially smaller bumps must have a greater height than that of the circumferentially larger bumps</u>
        iii.    Court's construction: <u>Each of the circumferentially smaller bumps must have a greater height than that of the circumferentially larger bumps</u>

(Id. at 16) (emphasis added).

Plaintiffs moved for reconsideration of the court's constructions, and the court denied plaintiffs' motion for reconsideration September 25, 2024. Specifically, the court reconfirmed its

---

[2]    The court emphasizes herein constructions that favor defendant's positions, including herein only those constructions that are most pertinent to the analysis of the instant summary judgment motion. There were several other constructions that either favored plaintiffs' positions or are not material to the instant analysis. (E.g., Claim Construction Order (DE 72) at 9 ("A non-skid protective cloth or pad, consisting of"), 12 ("adjacent"), 15 ("amorphous"), 21 ("TAPPI T548 specification"), 24 ("Sliding Coefficient of friction")).

holding that the term "consisting of" properly is construed as "limited to." (Order (DE 92) at 3). The court also rejected plaintiffs' arguments related to the court's constructions of terms related to a "sliding coefficient of friction" and the assembly of the lower layer. (Id. at 4). The court also rejected defendant's motion for reconsideration pertaining to a single sentence in the court's September 25, 2024, order: "plaintiffs remain free to argue that defendants' product infringes the '917 patent notwithstanding the addition of a third layer." (Id. at 5).

In the meantime, over defendant's objection, May 20, 2024, the court provided for an additional period of fact and expert discovery beginning on that date and concluding November 12, 2024. (Order (DE 77) at 2). The court also set a December 12, 2024, deadline for dispositive and Daubert motions, and the court noted that any "motion pursuant to Federal Rule of Civil Procedure 11," could be filed 21 days after the court's order on dispositive motions. (Id. at 3). On September 25, 2024, the court extended the deadline for expert discovery to November 26, 2024.

Defendant filed the instant motion for summary judgment October 9, 2024, relying upon a statement of facts and exhibits comprising: 1) the '917 patent, 2) defendant's first set of requests for admissions to plaintiffs, 3) plaintiffs' Rule 26(a) expert disclosures, 4) plaintiffs' infringement contentions, 5) an "Opinion Regarding Infringement of U.S. Patent No. 9,044,917" (the "opinion") by an attorney Daniel A. Tanner, III ("Tanner"), produced on behalf of plaintiffs, and 6) correspondence between plaintiffs' counsel and Tanner.

Plaintiffs' opposition rests upon a responsive statement of material facts. At the same time, plaintiffs moved to withdraw or amend admissions, relying upon amended responses to defendant's requests for admission. Defendant replied in support of its motion for summary judgment and in opposition to plaintiffs' motion to withdraw or amend admissions, with reference to correspondence between counsel.

Plaintiffs also filed the instant motion for extension of time October 11, 2024, to extend the deadline for plaintiffs to provide an expert damages report, until 21 days after defendant provides full and complete responses to plaintiffs' discovery requests regarding its sales. That same date, defendant filed a motion to compel discovery seeking documents related to the opinion of Tanner.

November 20, 2024, the court noticed the matter for Rule 16(a) conference and motions hearing December 10, 2024, and the court stayed deadlines for the close of expert discovery and dispositive and Daubert motions.

At hearing, the court found good cause to allow plaintiffs to "withdraw the[ir] admissions born of failure to respond and to amend the admissions in the form that [was] offered at docket entry 112-1." (Tr. (DE 120) at 44). The court denied defendant's motion to compel, and held in abeyance plaintiff's motion for extension of time pending summary judgment ruling. The court allowed plaintiffs to supplement their response to summary judgment, making "it very clear the door is not wide open for plaintiff[s]." (Id. at 45-46). The court noted "the only thing the [request for more time] related to was the depositions of the respective experts that took place the last week in November" 2024, and plaintiffs could "weave in [their] amended requests for admission and the answers of record," but no further responses to written discovery served previously. (Id.). The court noted: "The focus of your additional argument would be on those two expert depositions and your amended requests for admission." (Id. at 46). The court allowed defendant to file a "reply with reflection on whatever it is that is added in the [plaintiffs'] response." (Id. at 46-47).

Plaintiffs' supplemental response in opposition to summary judgment followed, January 3, 2025, relying upon expert report and deposition of defendant's expert Christine Cole ("Cole"), as well as deposition of Tanner, and a "supplemental opinion regarding infringement" by Tanner,

5

dated December 31, 2024 (the "supplemental opinion"). Defendant then filed its supplemental reply, January 17, 2025.

## STATEMENT OF THE FACTS

The undisputed facts may be summarized as follows. The '917 patent, issued June 2, 2015, includes ten claims, "with claims 1 and 6 being independent claims." (Def's Stmt. (DE 98) ¶ 5).[3] Claims 1 and 6 each recite: "said downward projecting bumps comprising bumps having at least two different circumferential sizes," and "said height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes." (Id. ¶ 6).

Defendant filed November 2, 2015, a patent application, U.S. Provisional Pat. App. No. 62/249,806 for "Slip-Resistant Protective Mat" ("the '806 application"), (Ans. (DE 29) ¶ 49).[4] Defendant "subsequently filed Patent Cooperation Treaty (PCT) Application No. PCT/US2016/060109 (the 'PCT Application') on November 2, 2016, claiming the benefit of the '806 application." (Id. ¶ 54). "The PCT Application was subsequently nationalized in the United States as U.S. Pat. App. No. 15/770,913, filed on April 25, 2018 ('the '913" Application')." (Id.). "The '913 Application subsequently issued as U.S. Pat. No. 10,683,607 (the '607 patent') on June 16, 2020." (Id. ¶ 55).

Defendant's '607 patent is entitled "slip-resistant protective mat," and, by way of background, it describes the following in its abstract: "A non-slip mat comprises an absorbent top

---

[3] Pursuant to Local Civil Rule 56.1, the court cites to those portions of defendant's statement of material facts that are not disputed by plaintiffs.

[4] The court cites to defendant's answer to the complaint in those portions where it admits allegations in the complaint, with reference to the corresponding paragraph number of the complaint. See United States v. Pabst Brewing Co., 384 U.S. 546, 550 (1966) (noting "[t]he record in this case includ[ed] admissions by [defendant] in its formal answer to the [plaintiff's] complaint"); Fed R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

layer, an impermeable middle layer, a non-slip bottom layer, and a reinforced outer hem." (See id.; Compl. Ex. 6 (DE 17-6) at 1). "[T]he '913 Application and the issued '607 patent specifically state in the specification that "in some embodiments, the first layer, the second layer, and the third layer are connected through a first process and a second process that is different from the first process. In some embodiments, the first process is lamination and the second process is stitching." (Def's Ans. (DE 29) ¶ 57).

Defendant has "made and sold Stay Put drop cloths in a version without a third layer and with a third layer." (Id. ¶ 61). Defendant's Stay Put drop cloths "are manufactured, imported, and/or sold in the United States and/or internationally." (Id. ¶ 60). Defendant "operates manufacturing plants in Surprise, Arizona; Manning, South Carolina; Ridgefield, Washington; and Elk Grove Village, Illinois." (Id. ¶ 9). Defendant's Stay Put products are sold by "Amazon.com, Home Depot, Lowe's, Blain's Farm and Fleet, MyTarp.com, Harbor Freight Tools, Mutual Screw & Supply, W.W. Grainger, Inc. (Grainger Industrial Supply), Ace Hardware, and Sherwin-Williams." (Id. ¶ 62).

## COURT'S DISCUSSION

A.    Motion for Summary Judgment

    1.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

7

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

The sole remaining claim by plaintiffs is one for patent infringement. "An infringement analysis entails two steps[:] The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc). Here, the court has already determined the construction of the claims, as this is "purely a matter of law." Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc). Accordingly, the second step of infringement analysis remains.

"The patentee has the burden of proving infringement by a preponderance of the evidence." Duncan Parking Techs., Inc. v. IPS Grp., Inc., 914 F.3d 1347, 1360 (Fed. Cir. 2019). "The second step of an infringement analysis requires that the patentee prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent." Zelinski v. Brunswick Corp., 185 F.3d 1311, 1316 (Fed. Cir. 1999).

"To prove literal infringement, the patentee must show that the accused device contains each and every limitation of the asserted claims." Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1215 (Fed. Cir. 2014) (emphasis in original). "To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." Southwall Techs., Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995). "In order to prove direct infringement, a patentee must either point to specific instances of direct infringement or show that the accused device necessarily infringes the patent in suit." ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd., 501 F.3d 1307, 1313 (Fed. Cir. 2007).

"Under the doctrine of equivalents, 'a product or process that does not literally infringe . . . the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence'

9

between the elements of the accused product or process and the claimed elements of the patented invention.'" Unidynamics Corp. v. Automatic Prod. Int'l, Ltd., 157 F.3d 1311, 1322 (Fed. Cir. 1998) (quoting Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17 (1997)), abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008).

Here, defendant has met its initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. Defendant contends "[t]here is no genuine issue of material fact that the Stay Put drop cloths do not satisfy [the] claims limitations." (Def's Mem. (DE 97) at 10). Defendant points to statements by Tanner as a demonstration that plaintiffs have no evidence that defendant's products contain all the limitations in the patent claims. For example, defendant cites the statement by Tanner in his opinion that "[i]t should be noted that [the] 'height' relationship need not exist in all circumstances, but just needs to exist in instances, which it does, so as to prove infringement." (Id. (quoting Tanner Op. (DE 1-8) at 10)) (emphasis added).

Further, now that defendant no longer can rely upon plaintiffs' admissions as a basis for summary judgment, defendant relies upon the contention that "[p]laintiffs have submitted no evidence demonstrating the presence of either limitation in the Accused Products," comprising "measurable" bumps and the "height" limitations on the bumps. (Def's Supp. Reply (DE 121) at 5). As such, both in support of its initial motion and in its supplemental reply, defendant has reiterated its position that there is no evidence creating a genuine issue of fact in plaintiff's favor as to each claim limitation. Therefore, defendant has met its initial summary judgment burden.

On the issue of defendant's burden, plaintiffs suggest that defendant's argument is insufficient because defendant does not itself rely upon any admissible evidence to support its

position of non-infringement. (See, e.g., Pls' Resp. (DE 110) at 3 ("Tanner's opinion . . . is not a 'fact' that can be relied upon by Defendant in support of its Motion."); Pls' Stmt. of Facts (DE 110-1 ¶ 25 ("[A] statement by counsel to Plaintiffs' expert is inadmissible for the purposes of both trial and Defendant's Motion[.]")). This suggestion is unavailing, however, because there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex, 477 U.S. at 323. Indeed, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. As defendant has met its initial burden, the court must now turn to the next step in the summary judgment analysis.

Plaintiffs have not met their burden to "come forward with specific facts showing that there is a genuine issue for trial" on the issue of infringement. Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586–87. In particular, the evidence upon which plaintiffs rely does not show that "the accused device contains <u>each and every limitation</u> of the asserted claims," regarding those two limitations defendant points to in support of its motion. Ericsson, Inc., 773 F.3d at 1215 (emphasis in original).

      a.      Measurable Borders or Perimeters

First, plaintiffs' have not come forward with evidence showing that defendant's products have "downward projecting bumps comprising bumps having at least two different circumferential sizes," construed to mean "having at least two different <u>measurable</u> boundaries or perimeters." (Claim Construction Order (DE 72) at 9; '917 Patent (DE 17-1) 8:44-46; 9:14-15) (emphasis added). Indeed, the record is limited regarding the characteristics of the bumps on defendant's accused products. Plaintiffs rely upon testimony of their designated expert, Tanner, and

11

defendant's designated expert, Cole. Neither testimony, however, gives rise to a reasonable inference that the accused products' projecting bumps all have "measurable" boundaries or perimeters.

For example, plaintiffs rely upon Tanner's testimony stating as follows: "Q. . . . Can you say what the - - what the circumference is of any bump? A. Yes, ma'am. You can - - oh, specifically, no. But can I look at them and go, yep, there is at least two different sizes, I can certainly see that. In fact - - I'll just leave it at that." (Tanner Dep. (DE 119-3) at 44-45). Plaintiffs also rely upon Cole's testimony including as follows:

> Q . . . [You] say towards the bottom of Page 8 in your report that, as confirmed by plaintiffs and plaintiffs' expert, <u>there are instances</u> where circumferentially larger bumps have a greater height than circumferentially smaller bumps. I agree that this is the case. So how did you determine which bumps had a larger circumference, and which bumps had a smaller circumference, if none of the bumps that you looked at you could measure?
>
> A   Let me draw your attention on that same Page 8 of my report, which is the last sentence in the first paragraph. Assuming, however, that one were to roughly approximate a boundary between and among the various bumps, that rough approximation would demonstrate various sizes and heights of the bumps.
>
> Q  Okay. So did you roughly approximate a boundary between and among the various bumps that you looked at?
>
> A  Visually, yes. . . .
>
> Q  Right. But you did make a determination in comparing bumps as to some that were circumferentially larger than others that were circumferentially smaller. You did make that determination, <u>at least on some of them</u>, correct?
>
> A  Correct.

(Cole Dep. (DE 119-2) at 50-51, 53) (emphasis added). Plaintiffs also cite Tanner's supplemental opinion, which provides commentary on Cole's testimony and opinion, including that "no 'more precise' measurement needs to be determined beyond an observation that <u>some bumps</u> are of a

(larger) size and other bumps are of a (smaller) size as is discernible through visual observation."
(Tanner Supp. Op. (DE 119-4) at 3-4) (emphasis added).

The testimony of Tanner and Cole permits an inference that some of the bumps in the accused products are measurable, in the sense that their size can be visually evaluated.[5] However, it is not reasonable to infer from their testimony that all of the bumps in the accused products are measurable, given the qualifications in each of the excerpts cited above. (Tanner Dep. (DE 119-3) at 44 ("Can you say what the - - what the circumference is of any bump?") (emphasis added); Cole Dep. (DE 119-2) at 37 ("[O]ne might find a bump or two which is not directly connected to another bump.") (emphasis added); Tanner Supp. Op. (DE 119-4) at 4 ("[S]ome bumps are of a (larger) size and other bumps are of a (smaller) size.") (emphasis added). Without all of the bumps of the accused products with this characteristic, it cannot be said that "every limitation set forth in [the] claim [is] found in [the] accused product, exactly." Southwall Techs., Inc., 54 F.3d at 1575 (emphasis added).

      b.      Height of Each Bump

Second, plaintiffs' have not come forward with evidence showing that defendant's products have the limitation of "[s]aid height of bumps having the smaller of said at least two different circumferential sizes being greater than said height of bumps having said larger of said at least two circumferential sizes," construed by the court to mean "[e]ach of the circumferentially smaller bumps must have a greater height than that of the circumferentially larger bumps." (Claim Construction Order (DE 72) at 16; '917 Patent (DE 17-1) 8:47-50; 9:16-20). Instead, plaintiffs point to Tanner's opinions that "identifying bumps that meet the criteria is sufficient to show that

---

[5] In so holding, the court does not address defendant's additional argument, for purposes of the instant motion, that a bump that can be "visually evaluate[d]" is not equivalent to being "measurable." (Def's Supp. Mem. (DE 121) at 9).

13

the Trimaco drop cloths meet the limitations of claims 1 and 6." (Pls' Supp. Mem. (DE 119) at 6). Plaintiffs also point to Tanner's testimony that "he could not state that all of the circumferentially smaller bumps are taller than all the circumferentially larger bumps." (Id. (citing Tanner Dep. (DE 119-4) 52:18-24)).

Plaintiffs suggest this evidence is sufficient to show the claim limitations are met, because the evidence does not rule out the possibility that all bumps in the accused products meet the required limitations. They argue, for example, that defendant "has not pointed to anything demonstrating that Plaintiffs or Mr. Tanner . . . agree that there are bumps on the Trimaco drop cloth that <u>do not</u> meet the specific height/circumference limitations in claims 1 and 6." (Pls' Supp. Mem. (DE 119) at 6) (emphasis added). They also argue that "there is no factual evidence before the Court that shows" that there are "bumps that fall outside of those limitations." (Id. at 5 n. 1).

However, it is plaintiff's burden to "prove that the accused device embodies every limitation in the claim, either literally, or by a substantial equivalent." Zelinski, 185 F.3d at 1316. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A plaintiff cannot "defeat a defendant's properly supported motion for summary judgment . . . without offering any concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 249. The lack of evidence regarding whether all bumps in the accused product meet the claim limitations thus is fatal to plaintiffs' position, not defendant's position.

Plaintiffs suggest, in the alternative, that the court's claim construction does not require that "all of the downward-projecting bumps on the infringing products must meet the limitations

14

of claims 1 and 6" regarding height and circumference. (Pls' Supp. Mem. (DE 119) at 6). The court, however, already addressed and rejected this argument:

> Primarily at issue is whether all the bumps must follow this pattern, that is, whether any bump that is skinnier than another bump must also be taller than that bump. Defendants argue that the language of the claim requires this result. Plaintiffs argue that as long as any two bumps fit this pattern, all the rest of the bumps may diverge. The court agrees with defendants.

(Claim Constr. Order (DE 72) at 17). Likewise, the court reasoned:

> Plaintiffs, however, argue that as long as any one skinny bump is taller than any one fat bump, the claim language is met, while defendants argue that all bumps which are skinnier than a given bump must also be taller than that bump. Both the term's use of the word "said," which references an earlier phrase indicating that the term applies to each bump, and the term's use of plural nouns, dictate this result. . . . Thus, the height of each bump with a smaller circumference is greater than the height of each bump with a larger circumference.

(Id. at 17-18). In sum, the court's claim construction determination requires as a matter of law that all of the downward-projecting bumps on the infringing products must meet the limitations of claims 1 and 6 regarding height and circumference.

Plaintiffs further "contend that there is a material fact in dispute with regards to the interpretation of the Court's claim construction" on the basis of the Tanner supplemental opinion. (Pls' Mem. (DE 119) at 9). The court's construction of the claim terms, however, is itself an issue of law, not a question of fact. Cybor Corp., 138 F.3d at 1454. Plaintiffs, in effect, request the court to reconsider its claim construction ruling on this issue of whether some or all of the bumps in the accused products must meet these limitations. This request is unavailing on several levels.

First, plaintiffs already moved once for reconsideration of the court's claim construction order, and they did not then move to have the court reconsider its ruling regarding the scope of the height and circumference limitations. (See Pls' Mem. (DE 82)). Those portions of the Tanner supplemental opinion and plaintiffs' arguments challenging the court's claim construction not only are untimely, but also they are beyond the scope of the court's express instructions in reopening

15

briefing that "[t]he focus of your additional argument would be on those two expert depositions and your amended requests for admission." (Tr. (DE 120) at 46).

Second, plaintiffs do not purport to meet the standard for reconsideration: "[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Virginia, LLC, 899 F.3d 236, 257 (4th Cir. 2018).

Third, plaintiffs have not shown a clear error causing manifest injustice in the court's claim construction ruling. Plaintiffs argue that two references to the term "comprising" in Claims 1 and 6 should permit a broad construction of the disputed term regarding circumference and height:

> Since the first "comprising" precedes the "network of downward projecting bumps," it is Plaintiffs' position that the correct interpretation of the Court's claim construction is that the claims do not limit the "bumps" to only that configuring [sic] described following the "comprising" terms as the first "comprising" precedes all descriptions of the "downward projecting bumps." That is Mr. Tanner's interpretation as well. Ex. 4 pp. 5-7.

(Pls' Mem. (DE 119) at 9). The initial difficulty with plaintiffs' argument is that it, itself, lacks clarity, much less demonstrates a clear error causing manifest injustice. The court already carefully considered the plain language of the claims, concluding that, "[t]hough dense, the language is susceptible only to defendants' interpretation," particularly in light of the use of the terms "each" and "said" in the disputed claim language. (Order (DE 72) at 17-18). The court also coupled its consideration of the claim language with the unique prosecution history of these claims, recognizing that "[p]art of the specification points in the opposite direction," but determining that "[p]laintiffs added the term at issue December 26, 2014, in order to overcome rejections based on prior art." (Id. at 20 (citing DE 43-6 at 49)). Plaintiffs' argument based upon the repetition of the

16

word "comprising" in the amended claim language does not alter this result. Plaintiffs thus have not demonstrated that a different claim construction is required.

In sum, defendant has met its burden of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. In turn, plaintiffs have not met their burden to "come forward with specific facts showing that there is a genuine issue for trial" on the issue of infringement. Matsushita Elec. Indus. Co. Ltd., 475 U.S. at 586–87. Therefore, summary judgment on the issue of infringement must be awarded in favor of defendant.

B.  Motion for Extension of Time and Remaining Proceedings

Having determined that defendant is entitled to summary judgment in its favor on the issue of infringement, plaintiffs' motion for extension of time for further discovery on the issue of damages necessarily must be terminated as moot.

This leaves the question whether there are any further proceedings remaining to be completed before the court enters final judgment on the merits. In its November 20, 2024, order, the court stayed deadlines for dispositive and Daubert motions. (DE 115). Then, at hearing December 10, 2024, the court confirmed the pendency of defendant's counterclaims and forecasted giving the parties "an opportunity following [summary judgment] ruling for the parties to confer and submit a joint status report to this Court with respect to issues remaining." (Tr. (DE 120) at 47-48). Therefore, the court directs the parties to confer and file a joint status report setting forth the parties' position(s) on whether further proceedings are required prior to entry of final judgment, and if so to propose a schedule for discovery or briefing regarding the same, and if not to confirm the court now may enter final judgment on the basis of the instant grant of summary judgment in defendant's favor, and close the case.

## CONCLUSION

Based on the foregoing, defendant's motion for summary judgment (DE 96) is GRANTED and plaintiffs' motion for extension of time to complete discovery (DE 102) is TERMINATED AS MOOT. The parties are DIRECTED to confer and file, within 14 days of the date of this order, a joint status report as directed herein.

SO ORDERED, this the 27th day of March, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge